## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SMITH & WESSON BRANDS, INC., SMITH & WESSON SALES COMPANY, and SMITH & WESSON INC., | CIVIL ACTION |
| Plaintiffs, | CASE NO. 2:20-CV-19047-KM-ESK |
| v. | |
| GURBIR S. GREWAL, *in his official capacity as Attorney General of the State of New Jersey* and NEW JERSEY DIVISION OF CONSUMER AFFAIRS, | |
| Defendants. | |

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

Christopher M. Strongosky
Amanda Laufer Camelotto
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Tel: 973-520-2550
christopher.strongosky@dlapiper.com
amanda.camelotto@dlapiper.com

Joseph A. Turzi (admitted *pro hac vice*)
Edward S. Scheideman (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Tel: (202) 799-4000
joe.turzi@dlapiper.com
edward.scheideman@dlapiper.com

*Attorneys for Plaintiffs*
*Smith & Wesson Brands, Inc.*
*Smith & Wesson Sales Company*
*Smith & Wesson Inc.*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 5

I.   The Attorney General's Attempted Suppression of Smith & Wesson's Constitutional Rights ......................................................................................................................... 5

II.  The Attorney General Issues A Facially Invalid Subpoena Seeking Almost Exclusively Documents Relating to Opinions and Value Judgements on the Second Amendment. ..... 7

III. The Attorney General's Retaliatory Enforcement Proceeding. ......................................... 9

IV.  State Court Action Is Imminent. ..................................................................................... 10

LEGAL STANDARD ......................................................................................................... 11

ARGUMENT ...................................................................................................................... 11

I.   THE ALL WRITS ACT AND THE ANTI-INJUNCTION ACT EXPRESSLY AUTHORIZE THE COURT TO ENJOIN THE PROCEEDINGS IN NEW JERSEY STATE COURT ................................................................................................................. 11

    A.   The Attorney General's Retaliatory and Unconstitutional Actions May Be Enjoined Pursuant to 42 U.S.C. § 1983 ................................................................... 12

    B.   This Court Should Also Enjoin the New Jersey State Court Action in Aid of Its Jurisdiction in This Case. ............................................................................................ 16

II.  THIS COURT SHOULD ENJOIN THE DEFENDANTS AND THE NEW JERSEY STATE COURT ACTION. ................................................................................................. 19

    A.   Smith & Wesson Has a Likelihood of Success in This Litigation. ........................... 19

        1.   The Attorney General's Retaliatory Actions, Standing Alone, Are a Violation of Smith & Wesson's Constitutional Rights. ..................................................... 19

        2.   Smith & Wesson Has a Reasonable Probability of Success on Its Other Constitutional Claims. ...................................................................................... 20

    B.   Smith & Wesson Will Suffer Immediate and Irreparable Harm Absent a Temporary Restraining Order and An Injunction. ...................................................................... 22

    C.   There Is No Possibility of Harm to Other Interested Parties from an Injunction. ...... 23

    D.   An Injunction Furthers the Public Interest. ............................................................... 23

CONCLUSION ................................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*44 Liquormart, Inc. v. Rhode Island*,
    517 U.S. 484 (1996) ........................................................................................... 13

*Ass'n for Fairness in Bus., Inc. v. New Jersey*,
    82 F.Supp.2d 353 (D.N.J. 2000) ....................................................................... 22

*Atl. Coast Demolition and Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cnty.*,
    988 F. Supp. 486 (D.N.J. 1997) .................................................................. 12, 18

*Baloga v. Pittston Area Sch. Dist.*,
    927 F.3d 742 (3d Cir. 2019) ............................................................................... 13

*Bantam Books, Inc v. Sullivan*,
    372 U.S. 58 (1963) ............................................................................................. 21

*Birchfield v. North Dakota*,
    136 S. Ct. 2160 (2016) ....................................................................................... 13

*Borough of Duryea, Pa. v. Guarnieri*,
    564 U.S. 379 (2011) ..................................................................................... 13. 16

*Camara v. Municipal Court of City of San Fran.*,
    387 U.S. 523 (1967) ........................................................................................... 13

*CBS, Inc. v. Davis*,
    510 U.S. 1315 (1994) ......................................................................................... 21

Council of Alt. Political Parties v. Hooks,
    121 F.3d 876 (3d Cir. 1997) ............................................................................... 23

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ............................................................................................. 4

*Douglas v. Ashcroft*,
    374 F.3d 230 (3d Cir. 2004) ............................................................................... 23

*Gibson v. Florida Leg. Investigation Cmte.*,
    372 U.S. 539 (1963) ........................................................................................... 13

*GJJM Enters., LLC v. City of Atl. City*,
    293 F. Supp. 3d 509 (D.N.J. 2017) .................................................................... 23

*Greater Philadelphia Chamber of Commerce v. City of Philadelphia*,
    949 F.3d 116 (3d Cir. 2020) ............................................................................... 22

*Grewal v. Smith & Wesson Sales Co., Inc.*,
    Dkt. No. ESX-C-000025-21 (N.J. Super. Ct.) ..................................................... 1

*Hill v. Martin*,
    296 U.S. 393 (1935) ........................................................................................... 12

*In re Diet Drugs (Phentermine / Fenfluramine / Dexfenfluramine) Prod. Liab. Litig.*,
    369 F.3d 293 (3d Cir. 2004) ............................................................................... 12

*In re Diet Drugs*,
    282 F.3d 220 (3d Cir. 2002) (quoting *Winkler v. Eli Lilly & Co.,* 101 F.3d 1196, 1202 (7th Cir.
    1996) ........................................................................................................................................... 17

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    314 F.3d 99 (3d Cir. 2002).......................................................................................................... 12

*In re Revel AC, Inc.*,
    802 F.3d 558(3d Cir. 2015)......................................................................................................... 20

*Int'l Foodsource, LLC v. Grower Direct Nut Co.,*
    No. 16-3140, 2016 WL 41507486 (D.N.J. Aug. 3, 2016) ......................................................... 11

*Interior Motives, Inc. v. Salvatore,*
    No. 20-5178, 2020 WL 2611517 (D.N.J. May 22, 2020)........................................................... 11

*Interstate Commerce Comm'n v. Brimson*,
    154 U.S. 447 (1894) .................................................................................................................... 15

*Issa v. Sch. Dist. of Lancaster*,
    847 F.3d 121 (3d Cir. 2017)................................................................................................... 19, 20

*Kaselaan & D'Angelo Assocs., Inc. v. Soffian,*
    290 N.J. Super. 293 (N.J. App. Div. 1996) ................................................................................. 19

*Kos Pharms. Inc. v. Andrx Corp*.,
    369 F.3d 700 (3d Cir. 2004)........................................................................................................ 11

*Met. Opera Ass'n v. Local 100*,
    239 F.3d 172 (2d Cir. 2001)........................................................................................................ 21

*Miller v. Mitchell*,
    598 F.3d 139 (3d Cir. 2010)................................................................................................... 13. 15

*Mitchum v. Foster*,
    407 U.S. 225 (1972) ..........................................................................................................5, 13, 16

*Monzo v. Bazos*,
    313 F. Supp. 3d 626 (E.D. Pa. 2017) .......................................................................................... 19

*NAACP v. Alabama*,
    357 U.S. 449 (1958) .................................................................................................................... 13

*Nebraska Press Ass'n v. Stuart*,
    427 U.S. 539 (1976) .................................................................................................................... 21

*Piper v. Portnoff Law Assocs.*,
    262 F. Supp. 2d 520 (E.D. Pa. 2003) .......................................................................................... 17

*Rosenberger v. Rector and Visitors of Univ. of Va.*,
    515 U.S. 819 (1995) .................................................................................................................... 20

*Silverman v. Berkson*,
    141 N.J. 412 (1995) .................................................................................................................... 15

*Tatum v. Chrysler Grp. LLC.*,
    No. 10-CV-4269, 2011 WL 1253847 (D.N.J. Mar. 28, 2011)..................................................... 20

*Thomas v. Independence Tp.*,
    463 F.3d 285 (3d Cir. 2006) ................................................................. 13

*Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*,
    655 F. Supp. 2d 581 (W.D. Pa. 2009) ................................................... 19

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .................................................................................. 19

*Yancoskie v. Delaware River Port Auth.*,
    78 N.J. 321 (1978) ................................................................................ 19

**Statutes**

28 U.S.C. § 1651 ........................................................................................... 12

28 U.S.C. § 2283 ........................................................................................... 12

42 U.S.C. § 1983 ........................................................................................ 4, 12

**Other Authorities**

Andrew Ross Sorkin, "The Most Important Gun Lawsuit You've Never Heard Of," The New
    York Times, Mar. 2, 2021, https://www.nytimes.com/2021/03/02/business/dealbook/gun-
    control-lawsuit-new-jersey.html ........................................................... 21

Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/naming-and-
    shaming (last visited March 9, 2021) ..................................................... 6

**Rules**

13 Moore's Federal Practice - Civil § 65.31 (2020) ..................................... 11

Pursuant to and in accordance with Federal Rule of Civil Procedure 65, Plaintiffs Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, and Smith & Wesson Inc. (collectively, "Smith & Wesson" or "Plaintiffs") hereby submit this Memorandum in Support of their Application for the Entry of a Temporary Restraining Order and a Preliminary Injunction to enjoin, restrain, and prohibit Defendants from continuing to pursue or prosecute their claims against Smith & Wesson in the New Jersey Superior Court, where Defendants are seeking to enforce a state administrative subpoena issued to Smith & Wesson,[1] as well as to enjoin and otherwise stay the New Jersey state court action during the pendency of the adjudication of Smith & Wesson's claims before this Court.[2]

## INTRODUCTION

Smith & Wesson is compelled to file this application seeking immediate injunctive relief due to retaliatory and punitive actions taken by Defendant Gurbir Grewal, the New Jersey Attorney General ("Attorney General"), and the Acting Director of the Division of Consumer Affairs (collectively, "Defendants") in New Jersey state court in response to Smith & Wesson's filing of its Initial Complaint in this Court.  That retaliatory action consists of asking the New Jersey Superior Court, through an Order to Show Cause, to impose draconian sanctions, including ordering the cessation of Smith & Wesson's business in New Jersey, a prior restraint on Smith & Wesson's protected speech (which the Attorney General broadly characterizes as "advertising") and contempt, until Smith & Wesson relinquishes its objections in this Court and provides the documents requested by his administrative subpoena (the "Subpoena").  The state court issued an Order directing Smith & Wesson to provide responsive papers on or before March 11, 2021 and

---

[1] *See Grewal v. Smith & Wesson Sales Co., Inc.*, Dkt. No. ESX-C-000025-21 (N.J. Super. Ct.).

[2] Plaintiffs bring this application upon the facts set forth in their Amended Complaint, filed pursuant to Fed. R. Civ. P. 15(a), accompanying papers, and the arguments set forth herein.

show cause on March 18, 2021 why the court should not enforce the Attorney General's motion to enforce the Subpoena.

The Attorney General seeks this relief in a manner designed to preempt Smith & Wesson from arguing before this Court, let alone vindicating its substantial constitutional objections. Despite the fact that no court has ordered that the Subpoena be enforced, and that it has now been months since Smith & Wesson filed this action, the Attorney General has moved on a summary and expedited basis in state court, which has provided an extremely limited window of time for Smith & Wesson to respond. The Attorney General further demands that the state court enforce the Subpoena and compel compliance "irrespective of the merits" of the action before this Court. *See* Declaration of Edward S. Scheideman, Esq. ("Scheideman Decl."), Ex. 2, Attorney General and Acting Director of the New Jersey Division of Consumer Affairs' State Court Filing, Dkt. No. ESX-C-25-21 (N.J. Super. Ct. Feb. 12, 2021).

That the Attorney General's action is purely retaliatory is apparent from his own arguments to the state court. He explicitly asserts as a basis for his actions his view that Smith & Wesson's filings in the federal court demonstrate that Smith & Wesson believes "it is above the law" and "need not answer to those charged with enforcing the law." The argument is virtually an admission that the Attorney General filed his lawsuit precisely because Smith & Wesson challenged his Subpoena in federal court.

Retaliation also is evident from the absence of a single fact warranting the Attorney General's radically disproportionate reaction to Smith & Wesson's suit to protect its constitutional rights. Nothing else has changed since the Attorney General issued his Subpoena. The ten years of "advertising" information requested did not suddenly become more relevant or pressing. No imminent threat of harm is identified. Indeed, one would search the Attorney General's papers in

2

vain to find even a thin reed on which to hang his claim for the relief requested.  The *only* thing that has changed is that Smith & Wesson has petitioned this Court to protect its rights.

The Attorney General's own actions also belie any need for the expedited and punitive relief he seeks in state court.  The Attorney General waited two months after Smith & Wesson filed the Initial Complaint to file the state court enforcement action, and then did so on a summary and expedited basis.  He did so after requesting two extensions of time to respond to the Initial Complaint in this action, the entry of an agreed order, and shortly before filing a motion to dismiss.

The Attorney General's weak basis for his extreme reaction rests entirely upon his false assertion that Smith & Wesson failed to respond to the Subpoena.  *See* Scheideman Decl., Ex. 5, Attorney General and Acting Director of the New Jersey Division of Consumer Affairs' Memorandum of Law in Support of Order to Show Cause, Case No. ESX-C-0000-25-21 (N.J. Super. Ct. Feb. 12, 2021), at 1-2.  But there is no denying that Smith & Wesson did respond to the Subpoena when it provided a timely 24-page response asserting the substantial constitutional and statutory objections that are now before this Court.  Those objections focused primarily on the fact that the Subpoena is nothing more than an attempt to categorize as "fraud" mere opinions and value judgments different than his on Second Amendment issues of safety and self-defense.  This effort is apparent on the face of the Subpoena, which demands that Smith & Wesson produce documents relating to opinions such as  (1) whether guns enhance safety; (2) whether Smith & Wesson's products can be legally carried by consumers in the state of New Jersey; (3) whether firearms enhance one's "lifestyle"; and (4) whether "novice, untrained [c]onsumers" can effectively use a Smith & Wesson firearm for personal or home defense.

None of this is proper.  First, opinions and value judgments cannot constitute "fraud."  But the Attorney General is doing much more.  He is assaulting Smith & Wesson's opinions and value

judgments *on topics related to safety and self-defense under the Second Amendment*.  Under the Supreme Court's ruling in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Attorney General cannot impose his value judgments and opinions on those who do not share his views, neither directly nor by coercion effectuated through sanctions or claims of "fraud."  The "enshrinement of constitutional rights necessarily takes certain policy choices off the table."  554 U.S. at 636.

Although the immediate issue is the Attorney General's retaliatory filing in the state court, the truth is that his entire "investigation" is nothing but retaliation.  The Subpoena is the latest step in a well-publicized and orchestrated effort by the Attorney General to target Smith & Wesson because it stands on the opposite side of a policy debate concerning Second Amendment issues. Specifically, the Attorney General has openly partnered with anti-Second Amendment groups and adopted their agenda of targeting firearms manufacturers; declared that he would "combin[e] the investigative and enforcement powers of the State with the expertise of the nation's leading gun litigation coalition" and "turn up the heat" on firearms manufacturers; effectively created a bounty system by hiring the same law firms used by anti-Second Amendment activists; and is conducting a public campaign accusing Smith & Wesson of being responsible for criminal acts involving firearms committed by unrelated third parties.

The Attorney General's retaliation for Smith & Wesson's petition to this Court, standing alone, warrants the imposition of a temporary restraining order and injunction against Defendants from pursuing or prosecuting their claims in the New Jersey state court action.  Smith & Wesson's constitutional claims are brought pursuant to 42 U.S.C. § 1983.  Under that statute, staying state court proceedings is appropriate where, like here, it is necessary "to protect the people from

unconstitutional action under color of state law, whether that action be executive, legislative, or judicial." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972).

A temporary restraining order and injunction is also warranted to protect this Court's jurisdiction and the integrity of the judicial system. The Attorney General's attempt to cause the state court to act on an expedited and summary basis, and irrespective of the merits of this case no less, serves no purpose but to prevent this Court from considering the important constitutional issues at stake, including the jurisdictional issue placed before this Court by the Attorney General himself.

## FACTUAL BACKGROUND

I.      **The Attorney General's Attempted Suppression of Smith & Wesson's Constitutional Rights.**

The Attorney General's retaliatory action in seeking a shutdown of Smith & Wesson's speech and business activities follows a pattern of hostility to the Second Amendment and attempted suppression of speech in support. He has been a fierce opponent of "open carry" and "concealed carry" policies, taking sides in the public gun debate by asserting that "[p]ublic carrying of firearms is dangerous to our residents and to law enforcement." Am. Compl. ¶ 78. And the Attorney General's hostility to opposing views extends even to the courts. He unabashedly stated that "the evidence is clear that when more people carry guns in public, public confrontations get more dangerous, not only for the public, but also for our law enforcement officers," and that the "[c]ourts have no basis to overrule these careful public safety determinations made by states[.]" *Id.* ¶ 80. True to his anti-Second Amendment goals, the Attorney General publicly vowed at a March 12, 2019 press conference that he intended to "turn up the heat" on perfectly lawful businesses which had engaged in no discernible wrongdoing – firearms manufacturers. *Id.* ¶ 77.

"Turning up the heat" apparently included the Attorney General publicly attacking the reputations of gun companies by suggesting that they were associated with or engaged in gun crimes, without having ever to justify his baseless allegations. *See* Am. Compl. ¶ 16. This approach was evident in the Attorney General's statements that he would "name and shame" gun manufacturers. *See* Am. Compl. ¶ 104. As defined by the Cambridge Dictionary, "naming and shaming" is "the activity of saying publicly that a person, company, etc. has behaved in a bad or illegal way."[3]

The value in naming and shaming for activists and an Attorney General abusing his authority is that the target is stripped of due process protections. That this is precisely the objective of the Attorney General is evidenced by the fact that the entire "name and shame" façade is based on deficient reports that the Attorney General must know to be false. *See* Am. Compl. ¶ 16. By publicly claiming that Smith & Wesson is connected to crimes, and presenting false evidence against it in the court of public opinion, the Attorney General has used the power of the State to impermissibly brand Smith & Wesson as a "bad actor" in an attempt to cause harm to Smith & Wesson's business and reputation. *Id.*

Not only did Smith & Wesson's Complaint explain this anti-Second Amendment agenda, it also exposed how the Attorney General had publicly aligned himself with anti-Second Amendment activists pursue it. He announced that he had "signed on" to the anti-Second Amendment agenda, and he publicly partnered with anti-Second Amendment groups such as Giffords. *Id.* ¶ 103. The Attorney General, in his own words, is using the "the investigative and

---

[3]    *See* Cambridge Dictionary, *available at* https://dictionary.cambridge.org/us/dictionary/english/naming-and-shaming .

enforcement powers of the State" to advance the interests of the same anti-Second Amendment activists. *Id.* ¶ 90.

The Attorney General has taken concrete but legally questionable steps in pursuit of this alliance and its goals.  He has hired the activists' law firm, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, as his own "Special Firearms Counsel" specifically to pursue firearms manufacturers.  *Id.* ¶ 39.  Paul Weiss is a member of the self-styled Firearms Accountability Counsel Task Force ("FACT"), which was established by the anti-Second Amendment activist organizations Giffords and the Brady Center to Prevent Gun Violence. *Id.* ¶ 30.  Paul Weiss, along with Giffords, also has been shopping a "firearms false marketing theory" to state attorneys-general that appears to parallel the ideas advanced by the Attorney General in his attacks on Smith & Wesson.  *Id.* ¶ 95.

These facts are only the tip of the iceberg, as pleaded already by Plaintiffs.  Smith & Wesson refers to its Amended Complaint for example after example of specific steps taken by the Attorney General, in conjunction with anti-Second Amendment activists, to restrict the views and positions advanced by Smith & Wesson on matters of public debate.  *See id.* ¶¶ 76-136.  The Subpoena and the enforcement action in New Jersey state court merely are the latest salvos in this illegitimate targeting of a lawful business based on its exercise of its constitutional rights.

## II.   The Attorney General Issues A Facially Invalid Subpoena Seeking Almost Exclusively Documents Relating to Opinions and Value Judgements on the Second Amendment.

On October 14, 2020, the Attorney General served his Subpoena on Smith & Wesson.  *See* Scheideman Decl., Ex. 3, Administrative Subpoena.  Purportedly acting pursuant to the New Jersey Consumer Fraud Act, the Attorney General commanded Smith & Wesson to produce a vast collection of documents on topics which relate primarily to *opinions or value judgments* on legal issues or matters of current public debate, and thus cannot form the basis of any investigation

sounding in "fraud." *Id.* at 9.  The Subpoena seeks documents related to purported statements as to, *inter alia*, (1) whether guns enhance safety; (2) whether Smith & Wesson's products can be legally carried by consumers in the state of New Jersey; (3) whether firearms enhance one's "lifestyle"; and (4) whether "novice, untrained [c]onsumers" can effectively use a Smith & Wesson firearm for personal or home defense.[4]  *Id.*

Given the broad scope of the Subpoena and, the serious constitutional transgressions contained in it, Smith & Wesson initially sought from the Attorney General an extension of time so that it could give proper consideration of how to respond to the Subpoena.  The Attorney General granted the requested extension, and the parties agreed to a date certain—December 14, 2020—whereby Smith & Wesson would serve its written responses to the Subpoena.  On December 14, 2020, Smith & Wesson timely served detailed, written objections to the Subpoena which asserted its view that, among other things, the Subpoena impermissibly ventured into constitutionally protected opinions and speech.

The next day, Smith & Wesson filed its Initial Complaint in this Court, asserting its constitutional claims and other claims.  ECF No. 1.  The Initial Complaint contained a detailed factual record demonstrating how the Attorney General is engaged in a pattern of conduct in violation of the First Amendment, including obvious viewpoint discrimination, as well as violations of the Second, Fourth, Fifth, and Fourteenth Amendments.  *Id.* ¶ 4.  The Initial Complaint also alleged other claims, including preemption under the Protection of Lawful

---

[4] Despite his focus on "safety," the Attorney General apparently ignores the user manuals for Smith & Wesson's firearms, which contain prominent safety warnings and encourage owners to seek formal training before using the product.  *See* Am. Compl. ¶ 55.  The Attorney General also seemingly has ignored Smith & Wesson's support for gun safety and responsible gun ownership initiatives, including the company's own #GUNSMARTS program, which provides gun usage and storage safety tips and other gun safety videos.  *Id.* ¶ 56.

Commerce in Arms Act and violation of the Dormant Commerce Clause, and it requested injunctive relief prohibiting the Attorney General from enforcing the Subpoena.

The Initial Complaint explained how the Attorney General had targeted Smith & Wesson because of its outspoken support for the Second Amendment. *Id.* ¶ 136. It detailed Smith & Wesson's advocacy of viewpoints directly opposite those held and publicly proclaimed by the Attorney General. *Id.* ¶ 44-54. The Initial Complaint further discussed Smith & Wesson's "Principles for Responsible Engagement," in which the company recognizes its responsibility "to defend the Second Amendment." *Id.* ¶ 49. The Principles publicly proclaim that Smith & Wesson categorically rejects the blind pursuit by anti-Second Amendment activists of limitations on the private right of firearms ownership, committing instead to "support only those regulatory proposals that are consistent with the Second Amendment and that deliver demonstrable societal benefits." *Id.* ¶ 50.

As part of this commitment, Smith & Wesson has engaged in public advocacy against those seeking "the imposition of onerous and unnecessary regulations adversely impacting citizens' Second Amendment rights." *Id.* ¶ 52. To this end, Smith & Wesson has taken the public position that the Supreme Court's 2008 ruling in *Heller* "confirming the broad rights of citizens to possess firearms" is "settled law," a position directly at odds with the Attorney General's opposition to concealed carry rights. *Id.* ¶ 51.

## III.    The Attorney General's Retaliatory Enforcement Proceeding.

The Attorney General's response to Smith & Wesson's having exposed his illegitimate agenda and petitioning this court to protect its constitutional rights can only be defined as extreme and disproportionate. Even though the Subpoena has never been reviewed, much less enforced by a court, on February 12, 2021, the Attorney General sought a finding of contempt and sanctions in

state court through Order to Show Cause, which issued on February 22, 2021.  Scheideman Decl., Ex. 4, Order to Show Cause.

The state court action seeks to side-step these proceedings and any adjudication of Smith & Wesson's claims.  The Attorney General asks the state court to rule "irrespective of the merits" of this case.  He seeks a complete ban on Smith & Wesson "engaging in the advertisement or sale of any merchandise . . . ."  *Id.*  Of course, given that the Attorney General's view of "advertising" encompasses any "opinion" on Second Amendment issues, the reality is that he seeks a ban on all of Smith & Wesson's protected speech.  He asks that such sanctions remain in place until Smith & Wesson produces the requested documents, presenting Smith & Wesson with a Hobson's Choice of either relinquishing its well-founded objections to the Subpoena and its right to petition this Court, or risk severe damage to its business.

The Attorney General does not explain the sudden urgency for the extraordinary relief he seeks.  Nothing else has changed since the Attorney General issued his Subpoena.  The ten years of "advertising" information requested did not suddenly become more relevant or pressing.  To the contrary, he filed his state court action four months after serving the Subpoena, only after Smith & Wesson filed the instant suit and, obviously, only because Smith & Wesson filed its suit.

As a result of the Attorney General's actions, Smith & Wesson filed an Amended Complaint on March 10, 2021.  The Amended Complaint sets forth additional facts demonstrating that the Attorney General's proceedings in state court, and the draconian sanctions requested, are a punitive response to Smith & Wesson's petitioning this court for relief.

## IV.   State Court Action Is Imminent.

The state court has ordered Smith & Wesson to provide responsive papers on or before March 11, 2021 and has set March 18, 2021 as the hearing date on the Attorney General's motion to enforce the Subpoena.  Scheideman Decl., Ex. 4.

## LEGAL STANDARD

Smith & Wesson requests a temporary restraining order and preliminary injunction to: (1) enjoin, restrain, and prohibit Defendants from continuing to pursue or prosecute their claims against Smith & Wesson the New Jersey state court action; and (2) enjoin and otherwise stay the New Jersey state court action, during the pendency of the adjudication of Smith & Wesson's claims before this Court.  The issuance of a temporary restraining order is evaluated under the same standard whether to issue a preliminary injunction.  *See Interior Motives, Inc. v. Salvatore,* No. 20-5178, 2020 WL 2611517, at *2 (D.N.J. May 22, 2020) (citation omitted); *Int'l Foodsource, LLC v. Grower Direct Nut Co.,* No. 16-3140, 2016 WL 4150748, at *6 (D.N.J. Aug. 3, 2016). Where, as here, a "temporary restraining order is sought on notice to the adverse party, it may be treated by the court as a motion for a preliminary injunction."  *See* 13 Moore's Federal Practice - Civil § 65.31 (2020) (citation omitted).  In deciding whether to grant preliminary injunctive relief, the Court must consider four factors: (1) the likelihood that plaintiff will prevail on the merits; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued, and (4) the public interest.  *Kos Pharms.  Inc. v. Andrx Corp.*, 369 F.3d 700, 703 (3d Cir. 2004).

## ARGUMENT

I.    **THE ALL WRITS ACT AND THE ANTI-INJUNCTION ACT EXPRESSLY AUTHORIZE THE COURT TO ENJOIN THE PROCEEDINGS IN NEW JERSEY STATE COURT.[5]**

This Court has the authority to enjoin the New Jersey state court action initiated by the Attorney General in retaliation for Smith & Wesson having petitioned this Court for relief.  The

---

[5] Given the press of time created by the Attorney General's decision to proceed by Order to Show Cause, Smith & Wesson is also including a request in the state court proceeding that the New

authority arises under the All Writs Act, 28 U.S.C. § 1651, and the Anti-Injunction Act, 28 U.S.C. § 2283, two statutes which "act in concert."  *In re Diet Drugs (Phentermine / Fenfluramine / Dexfenfluramine) Prod. Liab. Litig.*, 369 F.3d 293, 305 (3d Cir. 2004).  If "an injunction falls within one of [the Anti–Injunction Act's] three exceptions, the All–Writs Act provides the positive authority for federal courts to issue injunctions of state court proceedings."  *Id.*  A district court "may enjoin state proceedings at any point in time from the institution to the close of the final process."  *Atl. Coast Demolition and Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cnty.,* 988 F. Supp. 486, 495 (D.N.J. 1997) (citing *Hill v. Martin*, 296 U.S. 393, 403 (1935)).

The Anti-Injunction Act authorizes federal courts to issue an injunction to stay state court proceedings (1) when expressly authorized by Act of Congress, (2) where necessary in aid of the federal court's jurisdiction, or (3) to protect or effectuate the federal court's judgments.  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 103 (3d Cir. 2002).  Here, an injunction staying the Attorney General's retaliatory New Jersey state court action is proper because (1) it is authorized by 42 U.S.C. § 1983; and (2) it is necessary to protect the Court's jurisdiction in this case.

### A.   The Attorney General's Retaliatory and Unconstitutional Actions May Be Enjoined Pursuant to 42 U.S.C. § 1983.

Section 1983 applies directly to the Attorney General's attempt to use coercive orders to force Smith & Wesson to relinquish its right to challenge the Subpoena.  As the Supreme Court has explained, "[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or

---

Jersey Superior Court stay its hand in its response to the Order to Show Cause pending resolution of the issues before this Court.

judicial." *Mitchum*, 407 U.S. at 242.  An attempt to use a contempt sanction to compel a party to relinquish constitutional rights is of particular concern to the federal courts, which are called on in such circumstances to determine the permissibility of the challenged actions.  *See Camara v. Mun. Court of City of San Fran.*, 387 U.S. 523, 532 (1967); *see also 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 513 (1996); *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2172 (2016); *Gibson v. Florida Leg. Investigation Cmte.*, 372 U.S. 539, 545 (1963); *NAACP v. Alabama*, 357 U.S. 449 (1958).

It is readily apparent that the Attorney General's unjustifiable demands are retaliatory.[6] Establishing such retaliation requires only a showing that (1) Smith & Wesson engaged in constitutionally protected conduct, (2) the Attorney General engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link existed between the protected conduct and the retaliatory action.  *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)*; see also Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (applying same test in Petition Clause case).

Smith & Wesson's challenge to the Subpoena easily falls within its constitutional right to petition.  *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011).  Just as easily established is the fact that the Attorney General's action is an "action sufficient to deter a person of ordinary firmness from exercising his constitutional rights."  *Miller v. Mitchell*, 598 F.3d 139, 152 (3d Cir. 2010).  The Attorney General seeks an order placing Smith & Wesson underneath the dual grindstones of compliance with an unconstitutional Subpoena, or a ban on all of Smith & Wesson's protected speech and business activities in New Jersey.  He specifically asks that a decimating economic sanction in New Jersey be imposed, and remain in place, until Smith & Wesson complies

---

[6] The Amended Complaint brings a claim for retaliation under the First Amendment.

with the Subpoena.  He adds to it a demand for a contempt sanction.  Such an all-or-nothing situation would make any normal person question whether to proceed with a lawsuit.

To be sure, Smith & Wesson would have preferred not to litigate against the virtually limitless resources of the State, but it has been given no choice.  The Attorney General has publicly allied himself with Anti-Second Amendment activists, adopted their agenda, hired their counsel on a contingency basis to pursue "impact litigation" against Smith & Wesson, and has falsely associated Smith & Wesson's lawful business with criminal activity.  In this context, a subpoena attacking value judgments and opinions is exposed as simply another attempt to bludgeon Smith & Wesson until it capitulates to the Attorney General's policy objectives.  A judgment has been rendered and the Attorney General now is in search of a theory by which to execute that judgment.  Because the Subpoena merely is a means to political ends, the process will not end until either the Attorney General achieves those illegitimate ends, or the Court puts a stop to it.  No matter how much Smith & Wesson would prefer not to be here, the Attorney General has left it with no option but to petition this Court to safeguard its rights.

As for a causal connection between the filing of this action and the Attorney General's actions, it is established first and foremost by his own arguments in state court.  The Attorney General argues that Smith & Wesson's filings in this Court demonstrates that Smith & Wesson believes "it is above the law" and "need not answer to those charged with enforcing the law." Scheideman Decl., Ex. 5, at 1.  These characterizations of Smith & Wesson's decision to file this lawsuit are essentially admissions that the Attorney General filed his lawsuit precisely because Smith & Wesson challenged his Subpoena in this Court rather than provide the documents requested.

Retaliation also is established by the Attorney General's completely unwarranted and disproportionate reaction to Smith & Wesson's challenge to his Subpoena.  He does not merely seek enforcement, but rather seeks to cripple Smith & Wesson's business in New Jersey until it relinquishes its objections and provides the documents.  The Attorney General has not even attempted to articulate any reason as to why Smith & Wesson's assertion of its constitutional rights is so unjustified or the potential harm to consumers so dire that it requires a total shutdown of Smith & Wesson in New Jersey.  No imminent harm is identified, no changed circumstances are explained, no new advertisement is identified – nothing.

The fact that there is no basis for the Attorney General's extreme reaction is further evidence that his "motive in bringing a prosecution is likely retaliatory, rather than a good faith effort to enforce the law[.]" *Miller*, 598 F.3d at 153.  And even were the Attorney General to assert that such an extraordinary and imminent danger did exist, it still would not explain why he singles out Smith & Wesson and sees no harm from other firearms manufacturers engaged in similar lawful practices.  The one consistent explanation is that he does so because, and only because Smith & Wesson has asserted its rights before this Court.

The nature of the Attorney General's retaliatory attack also is exposed by his disregard of fundamental due process considerations in his zeal to impose punitive measures.  He asks the state court to impose a summary contempt finding.  *See* Scheideman Decl., Ex. 4.  However, "[n]o question of contempt may arise until all issues are determined adversely to a party and that party has refused to obey a final order of the court." *Silverman v. Berkson*, 141 N.J. 412, 427 (1995) (citing *Interstate Commerce Comm'n v. Brimson*, 154 U.S. 447 (1894)).  "Bifurcation of the power, on the one hand of the agency to issue subpoenas and on the other hand of the courts to

15

enforce them, is an inherent protection against abuse of subpoena power." *Id.* (internal quotations and citation omitted).

The timing of the Attorney General's filing in state court also demonstrates that it was purely retaliatory. Until Smith & Wesson filed its action, the Attorney General had expressed no urgency requiring immediate action. He did not issue a cease and desist order for any identified imminent harm or dangerous condition as he is authorized to do under section 56:8-18 of the Consumer Fraud Act. That ambivalence not coincidentally changed when Smith & Wesson filed its Initial Complaint in this Court. Particularly when viewed in the context of the Attorney General's "name and shame" campaign and his hostility to Smith & Wesson's business and advocacy, it becomes clear that he is retaliating as part of an orchestrated plan to increase the pressure on Smith & Wesson and prevent the company from defending itself.

The Attorney General's extreme reaction can only be viewed for what it is, i.e., the use of a threat of debilitating sanctions, the sole purpose of which is to coerce Smith & Wesson to relinquish its constitutional rights. It is difficult to imagine a more obviously punitive action and it calls for this Court to exercise the power given to it by Congress as a "guardian[] of the people's federal rights—to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial." *Mitchum*, 407 U.S. at 242. An injunction to stay the New Jersey state court action is not only appropriate, but necessary, to protect Smith & Wesson's right to "to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea*, 564 U.S. at 387.

### B.   This Court Should Also Enjoin the New Jersey State Court Action in Aid of Its Jurisdiction in This Case.

An injunction to stay the state court action is also necessary because "the state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation." *In*

*re Diet Drugs*, 282 F.3d 220, 234 (3d Cir. 2002) (quoting *Winkler v. Eli Lilly & Co.,* 101 F.3d 1196, 1202 (7th Cir. 1996)).  Put differently, the state court action "must interfere with the federal court's own path to judgment."  *Id.*  This is precisely the circumstance here, because the Attorney General initiated the state court action to circumvent this proceeding and render any adjudication of Smith & Wesson's Constitutional rights a nullity.

On these facts, application of the relevant factors makes evident the need for an injunction to stay the state court proceedings.  Courts considering an injunction under this provision of the Anti-Injunction Act evaluate three factors: (1) "the nature of the federal action to determine what kinds of state court interference would sufficiently impair the federal proceeding"; (2) whether "the state court's actions . . . present a sufficient threat to the federal action"; and (3) "principles of federalism and comity" "to prevent needless friction between the state and federal courts."  *In re Diet Drugs*, 282 F.3d at 234 (citation omitted).  "[W]here a state court proceeding amounts to an attack on a federal action, [a court is] more likely to find significant interference."  *Id.* at 238. In such situations, a court is "also less likely to find that comity demands deference to the state court action."  *Id.*  All three factors favor an injunction here.

With regard to whether state court action would interfere with and impair the nature of the federal action, courts in this Circuit recognize that state court proceedings can be stayed to allow for determination of a plaintiff's federal rights.  *See, e.g.*, *Piper v. Portnoff Law Assocs.*, 262 F. Supp. 2d 520, 530 (E.D. Pa. 2003).  The interference with and impairment of this lawsuit is palpable because the Attorney General admits that this is his goal.  In his own words, the Attorney General asks the state court to issue its extraordinary relief on a summary and expedited basis "irrespective of the merits" of this lawsuit.  Scheideman Decl., Ex. 5, at 2.  By telling the state court to ignore these proceedings, the Attorney General is trying to force Smith & Wesson to

capitulate long before this Court will get the opportunity to address the serious constitutional issues before it.  It could not be clearer that the state court action to enforce the Subpoena would interfere with and impair the nature of this federal action – that of addressing the threshold issue of the constitutionality of the Subpoena before it is enforced.

With respect to the second factor, it is similarly apparent that the state court action presents a sufficient threat to this action.  Should the state court enforce the Subpoena, order compliance, and ban Smith & Wesson's business activities and constitutionally protected speech, the Attorney General will have entirely side-stepped these proceedings and the numerous threshold constitutional arguments raised by Smith & Wesson, all of which are yet to be adjudicated in this forum.  The "in aid of jurisdiction" exception gives this Court the power to issue an injunction to stay the state court action to avoid this precise scenario.  *Atl. Coast Demolition*, 988 F. Supp. at 495.

Regarding the final factor, principles of comity demand a stay in this case, because Smith & Wesson filed its suit first and diligently raised its rights in this Court.  The Attorney General then waited almost two months and retaliated against Smith & Wesson by filing the state court action, demanding summary relief on an expedited basis, in an attempt to impede Smith & Wesson's federal suit, and deny this Court the chance to decide the issues raised by Smith & Wesson for itself.  The Attorney General's vindictive filing thus constitutes an "attack" on the federal court litigation, which principles of comity dictate that this Court steadfastly reject.  *In re Diet Drugs*, 282 F.3d at 238.

Additionally, under principles of comity, courts typically give priority to the first-filed suit, which "aids in the 'prompt and efficient administration of justice' and avoids the economic waste and risk of conflicting judgments inherent in duplicative litigation."  *Monzo v. Bazos*, 313 F. Supp.

3d 626, 630 (E.D. Pa. 2017) (internal quotation marks omitted).  New Jersey state courts also follow the "first to file" principle.  *See, e.g.*, *Yancoskie v. Delaware River Port Auth.,* 78 N.J. 321, 324 (N.J. 1978).  When an essentially identical action to one brought in New Jersey is pending in another jurisdiction, the "proper course under comity principles is not to exercise jurisdiction but to adhere to the general rule that the court which first acquires jurisdiction has precedence in the absence of special equities."  *Id.*.  Of course, New Jersey state courts apply this principle of comity in deferring to a previously filed federal court action.  *See, e.g.*, *Kaselaan & D'Angelo Assocs., Inc. v. Soffian,* 290 N.J. Super. 293, 300 (N.J. App. Div. 1996).

## II.   THIS COURT SHOULD ENJOIN THE DEFENDANTS AND THE NEW JERSEY STATE COURT ACTION.

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits (which requires a showing of only a "reasonable chance, or probability of success"), that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).  "If a plaintiff proves 'both' a likelihood of success on the merits and irreparable injury, it 'almost always will be the case' that the public interest favors preliminary relief.  *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017) (citation omitted).  Importantly, a court need only determine that the moving party would likely succeed *on just one claim* to issue injunctive relief.  *Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*, 655 F. Supp. 2d 581, 590 (W.D. Pa. 2009).

### A.   Smith & Wesson Has a Likelihood of Success in This Litigation.

#### 1.   *The Attorney General's Retaliatory Actions, Standing Alone, Are a Violation of Smith & Wesson's Constitutional Rights.*

The obvious retaliation discussed in Section I above easily establishes "a reasonable chance, or probability, of winning."  *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir.

2015).   While the "reasonable probability" standard does not "require that the right to a final decision after trial be 'wholly without doubt,'" *id.,* the facts here leave little doubt as to the Attorney General's improper retaliatory motives.   The Attorney General is engaged in the retaliatory conduct alleged, and his conduct constitutes interference with the right to petition this Court, thus implicating the sort of constitutional violation that section 1983 is designed to prevent.   In short, Smith & Wesson has done far more than merely establish the *prima facie* case on its retaliation claim required to demonstrate a likelihood of success.  *See Issa*, 847 F.3d at 131.

> ### 2.   *Smith & Wesson Has a Reasonable Probability of Success on Its Other Constitutional Claims.*

Smith & Wesson has identified many other claims on which it has a probability of success on the merits.   For example, the Complaint demonstrates how the Subpoena constitutes viewpoint discrimination, because it is the latest step, in a series of steps undertaken by the Attorney General, to attack Smith & Wesson because of its opinion that firearms are useful for self-defense.   Indeed, the Subpoena uses the term "safe" or "safety" no less than seven times.   Generalized representations regarding "safety," absent some product related issue constitute "classic examples of non-actionable opinion[.]"  *Tatum v. Chrysler Grp. LLC.*, No. 10-CV-4269, 2011 WL 1253847, at *4 (D.N.J. Mar. 28, 2011).   The same is true with respect to "lifestyle" choices, another value-based topic advanced by the Subpoena.   Viewpoint discrimination is presumed to be unconstitutional, and merely curtailing speech "when the specific motivating ideology or the opinion or perspective of the speaker is the rational for the restriction" is absolutely forbidden." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

Smith & Wesson also has a reasonable probability of success on its First Amendment prior restraint claim.   The relief which the Attorney General is pursuing in the state court – a proactive ban on Smith & Wesson's protected speech for filing this action in response to his unconstitutional

Subpoena – is an impermissible prior restraint, which constitutes "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). "When a prior restraint takes the form of a court-issued injunction, the risk of infringing on speech . . . increases." *Met. Opera Ass'n v. Local 100*, 239 F.3d 172, 176-77 (2d Cir. 2001). Such restraints are subject to a "heavy presumption" against constitutional validity. *Bantam Books, Inc v. Sullivan*, 372 U.S. 58, 70 (1963)). This "most extraordinary remed[y]" is only permitted "where the evil that would result . . . is both great and certain and cannot be mitigated by less intrusive measures." *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (Blackmun, J., in chambers) (citation omitted). There can be no serious contention that merely asserting properly founded objections to the Subpoena and petitioning this Court to decide the threshold issue of the constitutionality of the Subpoena can constitute the type of "evil" which a prior restraint on protected speech could be justified.

Ultimately, and as the New York Times recently observed, the Attorney General's argument that this case concerns some sort of "garden-variety" subpoena is "disingenuous."[7] The Attorney General is on an obvious fishing expedition for documents which he can use to pursue his illegitimate agenda in partnership with the anti-Second Amendment activists and their lawyers, with which he has allied himself. But a detailed exploration of the many remaining constitutional and statutory transgressions alleged by Smith & Wesson in its Amended Complaint is not

---

[7] Andrew Ross Sorkin, "The Most Important Gun Lawsuit You've Never Heard Of," The New York Times, Mar. 2, 2021, *available at* https://www.nytimes.com/2021/03/02/business/dealbook/gun-control-lawsuit-new-jersey.html.

necessary for the stay requested here, because probable success on the retaliation has been established, and that alone is enough.[8]

B.   **Smith & Wesson Will Suffer Immediate and Irreparable Harm Absent a Temporary Restraining Order and An Injunction.**

Smith & Wesson will suffer immediate and irreparable harm should the Court not enjoin the state court proceedings.  The state court has set a hearing for March 18, 2021 ordering Smith & Wesson to show cause why judgment should not be entered against it.  Smith & Wesson faces severe draconian sanctions, including ordering the cessation of Smith & Wesson's business in New Jersey, a prior restraint on Smith & Wesson's protected speech, and contempt, until Smith & Wesson relinquishes its objections in this Court and provides the documents requested by the Subpoena.  The investigation and Subpoena, as well as the Attorney General's selective and retaliatory enforcement action in New Jersey state court, violate Smith & Wesson's constitutional rights.  Smith & Wesson has made a colorable claim that the acts of the Attorney General restrict some form of speech.  *Greater Philadelphia Chamber of Commerce v. City of Philadelphia*, 949 F.3d 116, 133 (3d Cir. 2020).   Such constitutional infringements "will often alone constitute irreparable harm."  *Ass'n for Fairness in Bus., Inc. v. New Jersey,* 82 F. Supp. 2d 353, 363 (D.N.J. 2000).  And the speech at issue is absolutely protected, making it impossible for the Attorney General to meet his burden to "justify its restriction on speech under whatever level of scrutiny is appropriate[.]"  *Id.*

---

[8] The Attorney General's actions are so obviously retaliatory, nothing else is needed to demonstrate the reasonable chance of success.  But Smith & Wesson has asserted a number of claims which show that the Attorney General's actions are driven by his hostility to the lawful commerce in firearms.  These claims arise under the Second, Fourth and Fifth Amendment rights, equal protection rights, due process rights, as well as violations of the Dormant Commerce Clause, and further claims that the Subpoena and enforcement action are preempted by the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901 *et seq.*

**C.** **There Is No Possibility of Harm to Other Interested Parties from an Injunction.**

It is apparent that the interference with Smith & Wesson's constitutional rights and the harm that would be caused by the relief requested outweighs any inconvenience to the Attorney General of following the appropriate judicial process. *See, e.g.*, *Douglas v. Ashcroft,* 374 F.3d 230, 233-34 (3d Cir. 2004). As discussed in Section I, no imminent harm or exigent circumstances require the precipitous action sought by the Attorney General in state court. In fact, the Attorney General already has filed a motion to dismiss this action, which would in the normal course resolve the Attorney General's issues. Should the Court enter judgment against Smith & Wesson on its claims, the Attorney General would then be free to proceed in New Jersey state court. No harm accrues to the Attorney General's case from a short delay. Thus, the balance of equities tips overwhelmingly in Smith & Wesson's favor.

**D.** **An Injunction Furthers the Public Interest.**

"In the absence of legitimate, countervailing concerns, the public interest clearly favors the protection of constitutional rights." *Council of Alt. Political Parties v. Hooks,* 121 F.3d 876, 883–84 (3d Cir. 1997). No countervailing concerns are at issue here. To the contrary, because the entire purpose of the stay would be to prevent the Attorney General from overreaching in the exercising of his power and overriding important constitutional rights, the public interest is best served by preventing him from doing so. A stay also serves the "public interest in preventing the hindrance of consumer choice as well as impediments to debate over issues of public policy." *GJJM Enters., LLC v. City of Atl. City*, 293 F. Supp. 3d 509, 521 (D.N.J. 2017).

## CONCLUSION

The Court should enter a temporary restraining order and preliminary injunction staying

the Subpoena enforcement proceedings in New Jersey Superior Court.

Respectfully submitted,

Dated:  March 10, 2021

*/s/ Christopher M. Strongosky*
Christopher M. Strongosky
Amanda Laufer Camelotto
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Tel: 973-520-2550
christopher.strongosky@dlapiper.com
amanda.camelotto@dlapiper.com

Joseph A. Turzi (admitted *pro hac vice*)
Edward S. Scheideman (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Tel:  (202) 799-4000
joe.turzi@dlapiper.com
edward.scheideman@dlapiper.com

*Attorneys for Plaintiffs*
*Smith & Wesson Brands, Inc.*
*Smith & Wesson Sales Company*
*Smith & Wesson Inc.*