UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

SMITH & WESSON BRANDS, INC.,
SMITH & WESSON SALES
COMPANY, and SMITH & WESSON
INC.

      Plaintiffs,

      v.

GURBIR S. GREWAL, in his official
capacity as Attorney General of the
State of New Jersey and NEW
JERSEY DIVISION OF CONSUMER
AFFAIRS

      Defendants.

Hon. John Michael Vazquez, U.S.D.J.
Hon. Edward S. Kiel, U.S.M.J.

Docket No. 2:20-cv-19047

## CIVIL ACTION

## (ELECTRONICALLY FILED)

Motion Return Date:  June 21, 2021

---

BRIEF ON BEHALF OF DEFENDANTS' MOTION TO DISMISS
PURSUANT TO *FED. R. CIV. P.* 12(b)(1) and 12(b)(6)

---

**GURBIR S. GREWAL**
ATTORNEY GENERAL OF NEW
JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625
*Attorney for Defendants Gurbir S. Grewal
 and New Jersey Division of Consumer
Affairs*

Stephanie J. Cohen
Angela Cai
Assistant Attorneys General
 Of Counsel and On the Brief

Robert J. McGuire
Justine M. Longa
Michael T. Moran
Kai W. Marshall-Otto
John T. Passante
Tim Sheehan
Deputy Attorneys General
 On the Brief

# **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ............................................................1

PROCEDURAL HISTORY AND STATEMENT OF FACTS .............................3

    A.    *The New Jersey Consumer Fraud Act* ................................3

    B.    *The Subpoena* ................................................7

    C.    *Procedural History* ..........................................8

STANDARDS OF REVIEW ............................................................10

ARGUMENT ........................................................................11

    I.    THIS COURT SHOULD ABSTAIN FROM INTERFERING WITH THE ONGOING STATE ENFORCEMENT PROCEEDING .....................................11

        A.    *The Subpoena Enforcement Action Qualifies For* Younger *Abstention* ..............................12

            1.    *The Subpoena Enforcement Action Constitutes An Ongoing Civil Enforcement Proceeding* ...............................13

            2.    *The Subpoena Enforcement Action Likewise Involves Orders In Furtherance Of State Court Judicial Function* ..................16

        B.    *The* Middlesex *Factors Are Satisfied, Triggering* Younger *Abstention* ..............................17

    II.    THIS COURT SHOULD DISMISS UNDER RULE 12(b)(6)................................................21

A.    *The Subpoena Does Not Violate The Second Amendment Or PLCAA Simply Because Plaintiff Sells Firearms* ...................................................................21

    1.    *Plaintiff's Second Amendment Claim Fails* ..................21

    2.    *Plaintiff's PLCAA Claim Fails* .....................................27

B.    *The Subpoena Does Not Violate The First Amendment* ............................................................................29

C.    *Plaintiff's Fourth, Fifth and Fourteenth Amendment Claims Fail* .............................................34

D.    *The Allegations Do Not Support Plaintiff's Claim* .................36

E.    *The Subpoena Does Not Violate The Commerce Clause* ......................................................................................39

III.    THE CLAIMS AGAINST DCA ARE INDEPENDENTLY BARRED BY SOVEREIGN IMMUNITY ..................................................................................40

CONCLUSION ................................................................................40

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACRA Turf Club, LLC v. Zanzuccki*,
  748 F.3d 127 (3d Cir. 2014)....................................................................12, 13

*Arbitron Inc. v. Cuomo*,
  No. 08-8497, 2008 WL 4735227 (S.D.N.Y. Oct. 27, 2008) .............................18

*Arcara v. Cloud Books, Inc.*,
  478 U.S. 697 (1986)...........................................................................23, 33

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................10

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Atty. Gen. N.J.*,
  910 F.3d 106 (3d Cir. 2018)........................................................................24

*Backpage.com v. Hawley*,
  No. 17-1951, 2017 WL 5726868 (E.D. Mo. Nov. 28, 2017) ..........14, 15, 16, 20

*Bowers v. NCAA*,
  475 F.3d 524 (3d Cir. 2007), *amended on reh'g* (2007) ...................................40

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997).......................................................................10

*Chao v. Cmty. Tr. Co.*,
  474 F.3d 75 (3d Cir. 2007)..........................................................................35

*Cuomo v. Dreamland Amusements, Inc.*,
  No. 08-6321, 2008 WL 4369270 (S.D.N.Y. Sept. 22, 2008)............................19

*District of Columbia v. Heller*,
  554 U.S. 570 (2008)...................................................................................25

*Donaldson v. Read Mag.*,
  333 U.S. 178 (1948)...................................................................................24

*EEOC v. University of Pa.*,
  850 F.2d 969 (3d Cir. 1988).........................................................................18

*EP Henry Corp. v. Cambridge Pavers, Inc.*,
   383 F. Supp. 3d 343 (D.N.J. 2019) ................................................................30

*Exxon Mobil Corp. v. Schneiderman*,
   316 F. Supp. 3d 679 (S.D.N.Y. 2018) ......................................................*passim*

*Fairfield Cmty. Clean Up Crew Inc v. Hale*,
   735 F. App'x 602 (11th Cir. 2018) ................................................................19

*Fenwick v. Kay Am. Jeep. Inc*.,
   72 N.J. 372 (1977) ..........................................................................................5

*Goldstein v. Galvin*,
   719 F.3d 16 (1st Cir. 2013) ...........................................................................38

*In re Grand Jury Subpoena Duces Tecum*,
   143 N.J. Super. 526 (Law. Div. 1976) ...........................................................35

*Greco v. Grewal*,
   No. 19-19145, 2020 WL 7334194 (D.N.J. Dec. 11, 2020) .............................13

*Hartman v. Moore*,
   547 U.S. 250 (2006) .......................................................................................32

*Hicks v. Miranda*,
   422 U.S. 332 (1975) .......................................................................................18

*Holland v. Rosen*,
   895 F.3d 272 (3d Cir. 2018) ..........................................................................26

*Interactive Media Entm't & Gaming Ass'n v. Att'y Gen.*,
   580 F.3d 113 (3d Cir. 2009) ..........................................................................25

*J. & W. Seligman Co. v. Spitzer*,
   No. 05-7781, 2007 WL 2822208 (S.D.N.Y. Sept. 27, 2007) ...........................20

*Juidice v. Vail*,
   430 U.S. 327 (1977) ..................................................................................16, 17

*Kovacs v. State of N.J. Dep't of Labor & Workforce Dev.*,
   841 F. App'x. 425 (3d Cir. 2021) ...................................................................11

*Kugler v. Romain*,
   279 A.2d 640 (N.J. 1971)............................................................................4, 20

*Leathers v. Medlock*,
   499 U.S. 439 (1991)........................................................................................23

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.*,
   865 F. Supp. 2d 529 (D.N.J. 2011)................................................................31

*Lupin Pharms. v. Richards*,
   No. 15-1281, 2015 WL 4068818 (D. Md. July 2, 2015)...........................17, 19

*Illinois ex rel. Madigan v. Telemarketing Assocs.*,
   538 U.S. 600 (2003)..........................................................................24, 30, 32

*Malhan v. Sec'y U.S. Dep't of State*,
   938 F.3d 453 (3d Cir. 2019)............................................................................11

*McDonald v. City of Chicago, Ill.*,
   561 U.S. 742 (2010)........................................................................................25

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*,
   457 U.S. 423 (1982)................................................................................12, 17

*Newark Cab Ass'n v. City of Newark*,
   901 F.3d 146 (3d Cir. 2018)............................................................................34

*NYLife Distrib. v. Adherence Grp.*,
   72 F.3d 371 (3d Cir. 1995)..............................................................................18

*PDX N. Inc. v. Comm'r N.J. Dep't of Labor & Workforce Dev.*,
   978 F.3d 871 (3d Cir. 2020).......................................................... 11, 12, 13, 17

*Pena v. Lindley*,
   898 F.3d 969 (9th Cir. 2018)..........................................................................23

*Philips v. Cty of Allegheny*,
   515 F.3d 224 (3d Cir. 2008)............................................................................10

*Pitt News v. Fisher*,
   215 F.3d 354 (3d Cir. 2000)............................................................................26

*Prescott v. Slide Fire Solutions, LP*,
    410 F. Supp. 3d 1123 (D. Nev. 2019)...............................................................29

*Pryor v. NCAA*,
    288 F.2d 548 (3d. Cir. 2002)...........................................................................39

*Rearick v. Wiedemer*,
    No. 11-624, 2012 WL 3231096 (M.D. Pa. Aug. 6, 2012)................................22

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999)........................................................................................33

*Rhett v. Evans*,
    576 F. App'x 85 (3d Cir. 2014)........................................................................40

*In re Riddell Concussion Reduction Litig.*,
    121 F. Supp. 3d 402 (D.N.J. 2015)..................................................................31

*Rumsfeld v. Forum of Academic and Institutional Rights, Inc.*,
    547 U.S. 47 (2006)..........................................................................................32

*Sambrano v. Savage Arms*,
    338 P.3d 103 (N.M. Ct. App. 2014) ................................................................28

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014)..............................................................................7

*SEC v. McGoff*,
    647 F.2d 185 (D.C. Cir. 1981) ........................................................................29

*SEC v. Wheeling-Pittsburgh Steel Corp.*,
    648 F.2d 118 (3d Cir. 1981)............................................................................39

*Shea v. Office of Thrift Supervision*,
    934 F.2d 41 (3d Cir. 1991)..............................................................................19

*Smith & Wesson Corp. v. City of Gary*,
    875 N.E.2d 422 (Ind. Ct. App. 2007) .............................................................29

*Soto v. Bushmaster Firearms Int'l, LLC*,
    202 A.3d 262 (Conn. 2019).............................................................................28

*Sprint Commc'ns, Inc. v. Jacobs*,
    571 U.S. 69 (2013)...................................................................................*passim*

*Stroman Realty v. Martinez*,
    505 F.3d 658 (7th Cir. 2007)...................................................................20

*In re Subpoena Duces Tecum*,
    228 F.3d 341 (4th Cir. 2000)...................................................................35

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*,
    139 S. Ct. 2449 (2019)...........................................................................39

*UMDNJ v. Corrigan*,
    347 F.3d 57 (3d Cir. 2003)......................................................................35

*United States v. LaSalle Nat'l Bank*,
    437 U.S. 298 (1978)................................................................................35

*United States v. Marzzarella*,
    614 F.3d 85 (3d Cir. 2010)................................................................21, 24

*United States v. Powell*,
    379 U.S. 48 (1964)..................................................................................35

*United States v. Salerno*,
    481 U.S. 739 (1987)................................................................................34

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*,
    425 U.S. 748 (1976)................................................................................30

*Wearly v. Federal Trade Comm'n*,
    616 F.2d 662 (3d Cir. 1980)....................................................................19

*Wharton v. Danberg*,
    854 F.3d 234 (3d Cir. 2017)....................................................................34

*Younger v. Harris*,
    401 U.S. 37 (1971)..................................................................................*passim*

*Zimmer v. N.J. Div. of Child Prot. & Permanency*,
    No. 15-2524, 2016 WL 234844 (D.N.J. Jan 20, 2016) ...........................22

## Statutes and Regulations

15 U.S.C. § 7901(b)(1) ..........................................................................................27

15 U.S.C. § 7903(5)(A) ..........................................................................................27

N.J. Stat. Ann. § 2C:21-7(e) ...................................................................................15

N.J. Stat. Ann. § 52:17B-5.7 ....................................................................................4

N.J. Stat. Ann. § 56:8-2 ......................................................................................5, 24

N.J. Stat. Ann. § 56:8-3 ......................................................................................4, 35

N.J. Stat. Ann. § 56:8-4 .........................................................................................13

N.J. Stat. Ann. § 56:8-6 ..................................................................................6, 14, 16

N.J.A.C. 13:45A-4.1(b) ..........................................................................................31

N.J.A.C. 13:45A-9.2(a) ..........................................................................................31

Fed. R. Civ. P. 12(b)(1) ..........................................................................................10

Fed. R. Civ. P. 12(b)(6) ..........................................................................................10

## **PRELIMINARY STATEMENT**

This Court should dismiss the Amended Complaint for one central reason: it seeks to turn an ongoing state-initiated consumer-protection investigation into a federal constitutional case. In October 2020, the New Jersey Division of Consumer Affairs ("DCA" or "Division") sent an investigatory subpoena ("Subpoena") to a company that markets and sells its products in the State, seeking to determine whether its advertisements and marketing available to New Jersey customers violated the New Jersey Consumer Fraud Act ("CFA" or "Act"). That approach is routine; like similar state consumer agencies all across the country, the Division regularly investigates advertising claims regarding the safety, effectiveness, and benefits of a variety of goods and services—with recent examples including airbags, opioids, and medical devices—in order to protect consumers from unlawful business practices. And when an entity refuses to produce documents, the CFA permits the Division to initiate an action in the New Jersey Superior Court to enforce the subpoena, just as it did here, and just as it has done repeatedly when other companies refuse to comply with subpoenas.

The only thing unusual about this consumer protection investigation is that Smith & Wesson Brands, Inc. and affiliated companies (collectively "Smith & Wesson" or "Plaintiff") rushed into federal court, alleging that the Subpoena and related state court enforcement proceeding contravene a smorgasbord of federal

constitutional provisions. In Plaintiff's telling, the simple act of looking into whether their advertisements mislead consumers would violate the First Amendment, Second Amendment, Fourth Amendment, Equal Protection Clause, Due Process Clause, Dormant Commerce Clause, and a federal statute. Rather than comply with the subpoena or attempt to engage in any good-faith effort to narrow its scope, Plaintiff decided it would be best served by using this Court as a sword against a lawful state investigation into potentially misleading advertising practices. This Court should reject that effort for two independently sufficient reasons: the Amended Complaint does not belong in federal court, and Plaintiff's constitutional claims lack merit.

First, there is a good reason why this Court is not in the business of evaluating state disputes over consumer protection subpoenas—such arguments belong in state court. As the federal courts have repeatedly recognized, any time a State initiates a qualifying civil enforcement proceeding in state court, that court is the best forum to evaluate the related legal claims and defenses. That abstention doctrine, known as *Younger* abstention, applies squarely to this dispute. *See Younger v. Harris*, 401 U.S. 37 (1971). There is an ongoing subpoena enforcement action in New Jersey court; it implicates important state interests both in investigating fraudulent practices and in obtaining responses to subpoenas; and the New Jersey Superior Court is an adequate and available forum to consider Plaintiff's constitutional claims. To allow this case to proceed would thus disrespect state courts' important role, and it would allow for

2

and incentivize forum shopping—and risk turning this Court into an all-too-frequent forum for disputes over the scope and validity of state administrative subpoenas.

Second, wherever these issues are heard, Plaintiff cannot prevail. The Division's decision to issue an administrative subpoena to investigate whether Smith & Wesson's advertisements mislead consumers does not offend the Constitution; this commonplace exercise of the police power to protect residents from fraud does not inhibit lawful speech, anyone's right to bear arms, equal protection of the laws, or any other right. And while Smith & Wesson tries to get around the weaknesses in its theories by claiming the Attorney General has impermissibly singled it out for unfair treatment, the facts pleaded fall far short of plausibly alleging that Smith & Wesson was targeted because of the product it sells. There is nothing remarkable about the underlying investigation; instead, what singles out this action is *Plaintiff's* efforts to pull this Court into a quotidian subpoena dispute.

The ongoing proceedings in New Jersey Superior Court offer Plaintiff a full and fair opportunity to make its arguments—as tenuous as they may be. That court, rather than this one, should assess (and ultimately reject) them.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

### A.    *The New Jersey Consumer Fraud Act*

The CFA protects vulnerable consumers from fraudulent and unconscionable practices. First enacted in 1960, the Act empowers the New Jersey Attorney General

3

to investigate potential violations and to promulgate rules that have the force of law. N.J. Stat. Ann. § 56:8-3, -4. In 1971, the Legislature amended the CFA to transform it into "one of the strongest consumer protection laws in the nation" by broadly making unlawful every "unconscionable commercial practice[]" and expanding the New Jersey Attorney General's enforcement powers. Governor's Press Release for Assembly Bill No. 2402, at 1 (Apr. 19, 1971).

The CFA is "intended to confer on the Attorney General the broadest kind of power to act in the interest of the consumer public." *Kugler v. Romain*, 279 A.2d 640, 648 (N.J. 1971).[1] That includes the ability to investigate potential consumer fraud, promulgate rules that have the force of law, issue cease-and-desist orders, and impose penalties for violations of such orders. N.J. Stat. Ann. §§ 56:8-3, -4, -18. If the Attorney General "believes it to be in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in, is engaging in or is about to engage in" any conduct proscribed by the Act, it may issue a subpoena. N.J. Stat. Ann. § 56:8-3; *id.* § 56:8-4 ("[T]he Attorney General . . . may issue subpoenas to any person . . . which shall have the force of law.").

The CFA's substantive scope is equally sweeping, protecting against nearly all consumer fraud and abuses in the marketing and sale of products. The CFA bars

---

[1] Since 1967, the Attorney General's powers and duties under the CFA have been delegated to an Office of Consumer Protection, which has since been incorporated into the Division. *See* N.J. Stat. Ann. §§ 52:17B-5.7; 52:17B-120.

deceptive advertising, whether accomplished intentional misrepresentation, or even knowing omission, or making a statement that unintentionally has the capacity to mislead a consumer. N.J. Stat. Ann. § 56:8-2; *see also Fenwick v. Kay Am. Jeep. Inc*., 72 N.J. 372, 378 (1977). In just the past few months, the Attorney General and Division have successfully investigated and resolved a wide range of actions, including settlements with: (1) an auto manufacturer pertaining to alleged failure to disclose danger related to airbags,[2] (2) businesses pertaining to the marketing of opioids that caused countless deaths in the State,[3] (3) a manufacturer relating to failure to disclose safety risks associated with a medical device,[4] and (4) sellers of unlawful firearm magazines while concealing the product's illegal nature.[5] In short, the CFA reaches across practices and industries, and the State's long history of consumer-protection enforcement confirms its broad scope.

Moreover, under the CFA, if a person "shall fail or refuse to . . . obey any subpoena issued by the Attorney General," the Attorney General is empowered to

---

[2] New Jersey Division of Consumer Affairs, Press Release dated August 25, 2020, available at:  https://www.njconsumeraffairs.gov/News/Pages/08252020.aspx
[3] New Jersey Division of Consumer Affairs, Press Release dated February 4, 2021, available at: https://www.njconsumeraffairs.gov/News/Pages/02042021B.aspx
[4] New Jersey Division of Consumer Affairs, Press Release dated March 23, 2021, available at: https://www.njconsumeraffairs.gov/News/Pages/03232021.aspx
[5] New Jersey Division of Consumer Affairs, Press Release dated September 10, 2020, available at: https://www.njconsumeraffairs.gov/News/Pages/09102020.aspx; New Jersey Division of Consumer Affairs, Press Release dated January 11, 2021, available at: https://www.njconsumeraffairs.gov/News/Pages/01112021.aspx

enforce the subpoena through the filing of an action in the New Jersey Superior Court. N.J. Stat. Ann. § 56:8-6. The CFA expressly provides that a court can then issue an order not only compelling compliance with the administrative subpoena's plain terms, but also "[a]djudging such person in contempt of court"; "vacating, annulling, or suspending [its] corporate charter"; and "restraining the sale or advertisement of any merchandise by such persons" who refuse to obey. *Id.* The Division and the Attorney General have routinely filed enforcement actions to compel compliance with subpoenas and sought the above-listed relief against a variety of entities that are subject to the law. *See, e.g.*, *Grewal v. Morris Invest, LLC*, ESX-C-16-20 (N.J. Sup. Ct. Ch. Div. 2020) (summary proceeding seeking to enforce subpoena and seeking other relief under CFA for failure to comply with subpoena to investigate potential fraud in connection with real-estate sales); *Grewal v. RD Legal Funding*, ESX-C-108-20 (N.J. Sup. Ct. Ch. Div. 2020) (same, relating to provision of cash advances to prospective plaintiffs in personal-injury suits); *Grewal v. N.Y. Dig. Prod.*, C-132-19 (N.J. Sup. Ct. Ch. Div. 2019) (same, relating to sale of electronics and product warranties); *Porrino v. Autoeastern Paramus*, C-204-17 (N.J. Sup. Ct. Ch. Div. 2017) (same, relating to auto sales); *Hoffman v. Safety Alert*

6

*USA*, C-131-15 (N.J. Sup. Ct. Ch. Div. 2015) (same, relating to sales of medical-alert device).[6]

B.    *The Subpoena*

On or about October 13, 2020, the Division served the administrative Subpoena on Plaintiff. ECF No. 17, Am. Compl., ¶ 65, Ex. 1. Like many CFA subpoenas, this one requests documents that will allow the Attorney General and Division to investigate whether Smith & Wesson violated the CFA by making misstatements or knowing omissions to New Jersey consumers about the safety, benefits, effectiveness, and legality of its products. For example, the Subpoena demands advertisements available to New Jersey consumers pertaining to the safety and defense benefits of owning a firearm and related marketing strategies, communications, and contracts. *Id.*, ¶¶ 1-2, 7-8, 14-16. The Subpoena also requests documents evaluating the veracity of the claims made in said advertisements and marketing available to state consumers, and documents demonstrating efforts by Plaintiff to determine whether its advertising practices comport with New Jersey law. *Id.*, ¶¶ 3, 5. It demands "[a]ll Documents Concerning any test, study, analysis, or evaluation considered or undertaken . . . which relates to, addresses, evaluates, proves, disproves, or substantiates any Claim made" in such advertisements. *Id.*, ¶

---

[6] These pleadings are collected in the attached McGuire Declaration, Exhibits B – F. A federal court may take judicial notice of the contents of the pleadings in another case. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

3. It seeks "[a]ll Documents, Including Policies, reports, and findings, Concerning any efforts by" Smith & Wesson to determine whether its advertisements "compl[y] with New Jersey law." *Id.*, ¶ 5. And it requests documentation pertaining to Plaintiff's sales in the State. *Id.*, ¶¶ 9-12.[7]

C.    *Procedural History*

After receiving the Subpoena, Smith & Wesson requested and received a thirty-day extension through December 14, 2020, to respond. *See* April 26, 2021 Declaration of Robert J. McGuire ("McGuire Decl."), Ex. A, at 4. To this day, it has not produced a single document in response or made any effort to meet and confer. *Id.* Instead, on December 14, 2020, Smith & Wesson stated in a letter to the Division that it would refuse to comply with the Subpoena. *Id.*

On the very next day, Smith & Wesson filed suit in federal court. ECF No. 1, Compl. Plaintiff's lawsuit, in essence, is premised on the proposition that New Jersey's top consumer-protection official is not entitled to information about how the company advertises and sells products in this State and whether it has evidence

---

[7] Contrary to Plaintiff's allegation, the Subpoena does not inquire into "whether private citizens *should* have the right to carry a concealed firearm."  Am. Compl. ¶ 3 (emphasis added). Instead, the Subpoena asks for all advertisements available to or accessible to New Jersey consumers and documents in the company's possession relating to "[w]hether Smith & Wesson Firearms *can* be legally carried and concealed by any Consumer, including New Jersey Consumers, while in New Jersey." Subpoena ¶¶ 1, 4(a) (emphasis added).

or other materials belying the claims it makes to consumers. Instead, Smith & Wesson asserts, the state Subpoena is "extra-legal[]" *id.* ¶3, because it purportedly violates constitutional rights.[8]

On February 12, 2021, the Attorney General and the Division commenced a subpoena enforcement action in New Jersey Superior Court. *See* McGuire Decl., Ex. A. Like other enforcement actions against non-compliant Subpoena subjects, this action asked the state court to direct production of the subpoenaed documents and to issue any other appropriate relief under the CFA. *See id.*, at 7. Smith & Wesson filed a response and cross-motion, asserting constitutional challenges to the Subpoena and the enforcement action. The action is currently pending before the Superior Court, with a hearing on the State's motion to enforce scheduled for May 27, 2021.

On February 22, 2021, Defendants moved to dismiss this federal action. ECF 14. Before Plaintiff's opposition to that motion was due, however, Plaintiff filed its Amended Complaint on March 10, 2021. ECF 17, Am. Compl. ("Am. Compl."). The Amended Complaint repeats almost all of the claims from the initial Complaint and adds a handful of First Amendment claims, including claims that the subpoena enforcement action was filed in state court as "retaliation" for the filing of this federal case. *Id.*, ¶ 133. Smith & Wesson simultaneously filed an Order to Show

---

[8] Plaintiff does not allege that the Subpoena seeks privileged communications.

Cause that sought a preliminary injunction to prevent the state-court matter from proceeding. ECF 18. After a preliminary conference with this Court, Smith & Wesson voluntarily withdrew that application. ECF 25.

Defendants now move to dismiss Plaintiff's Amended Complaint.

## STANDARDS OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(1) challenges the federal court's subject matter jurisdiction. The plaintiff bears the burden of persuasion. *See Heges v. United* States, 404 F.3d 744, 750 (3d Cir. 2005). In considering a 12(b)(1) motion, a "court may not presume the truthfulness of plaintiff's allegations, but rather must 'evaluat[e] for itself the merits of [the] jurisdictional claims.'" *Id.*

Under Rule 12(b)(6), the Court may grant a motion to dismiss if the complaint fails to state a claim on which relief can be granted. Although courts must accept as true factual allegations, *Philips v. Cty of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008), they do not "credit a complaint's 'bald assertions' or 'legal conclusions.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997). Instead, a court looks to see whether the pleadings and legal conclusions "are supported by factual allegations," and whether, if true, "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## ARGUMENT

## I. THIS COURT SHOULD ABSTAIN FROM INTERFERING WITH THE ONGOING STATE ENFORCEMENT PROCEEDING.

This Court should abstain from adjudicating Plaintiff's challenge to this state consumer-protection subpoena. The Supreme Court has for decades recognized a "far-from-novel" exception to the general rule that federal courts typically decide any case over which they have jurisdiction: *Younger* abstention. That doctrine "requires federal courts to abstain from deciding cases that would interfere with certain ongoing state proceedings." *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019); *see also Kovacs v. State of N.J. Dep't of Labor & Workforce Dev.*, 841 F. App'x. 435 (3d Cir. 2021) ("If the target of a state enforcement action thinks the action violates federal law, ordinarily he must make that point to the enforcement agency—not to a federal court."). As the Third Circuit explained, *Younger* abstention serves an important "dual-purpose": (1) "to promote comity, 'a proper respect for state functions,' by restricting federal courts from interfering with ongoing state judicial proceedings and (2) to restrain equity jurisdiction from operating when state courts provide adequate legal remedies for constitutional claims and there is no risk of irreparable harm." *PDX N. Inc. v. Comm'r N.J. Dep't of Labor & Workforce Dev.*, 978 F.3d 871, 882 (3d Cir. 2020) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)).

11

There are two steps involved in any *Younger* analysis. First, a court must seek to determine whether the underlying state proceeding is the type to which abstention applies. As the Third Circuit reiterated in *PDX*, abstention is appropriate if that state proceeding fits within any of the following categories: "(1) criminal prosecutions, (2) civil enforcement proceedings, and (3) 'civil proceedings involving orders in furtherance of the state courts' judicial function.'" *Id.* (quoting *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014)). Second, if one or more categories is satisfied, this Court will also ask whether three "*Middlesex* factors" are satisfied: "(1) whether there are ongoing judicial proceedings; (2) whether those proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceeding to raise constitutional challenges." *Id.* (quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

Under this analysis, the Court must abstain. Smith & Wesson will have its day in court, but this is the wrong court.

A.    *The Subpoena Enforcement Action Qualifies For* Younger *Abstention.*

As a threshold matter, the subpoena-enforcement action in New Jersey Superior Court is undoubtedly a qualifying civil enforcement proceeding and/or a civil proceeding involving an order in furtherance of the state courts' judicial function.

1.  *The Subpoena Enforcement Action Constitutes An Ongoing Civil Enforcement Proceeding.*

This Court must abstain under *Younger* because the subpoena-enforcement action in state court is a qualifying civil enforcement proceeding. *Younger* most frequently, though not exclusively, applies to a civil enforcement proceeding if the suit is "akin to a criminal prosecution" in "important respects." *Sprint*, 571 U.S. at 79-80. Federal courts ask "whether (1) the action was commenced by the state in its sovereign capacity, (2) the proceeding was initiated to sanction the plaintiff for some wrongful act; and (3) there are other similarities to criminal actions, such as a preliminary investigation that culminated with the filing of formal charges." *PDX*, 978 F.3d at 883 (quoting *ACRA Turf*, 748 F.3d at 138); *see also Greco v. Grewal*, No. 19-19145, 2020 WL 7334194, at *7 (D.N.J. Dec. 11, 2020) (noting that "these factors are not a mandatory checklist for quasi-criminal proceedings; instead, a court determining a state proceeding's quasi criminal character weighs the factors above; no single factor is dispositive"). A holistic assessment leads inexorably to one conclusion—*Younger* applies to this civil enforcement proceeding.

First, both the Subpoena and the enforcement action were commenced by the State in its sovereign capacity, through the Attorney General and the DCA Director, pursuant to authority under the CFA. *See Sprint*, 571 U.S. at 79 (noting "[i]n cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the [state] action"); N.J. Stat. Ann. § 56:8-4, -6; McGuire Decl., Ex. A, ¶¶

13

7-8. As another court noted, a consumer-fraud subpoena-enforcement action is a textbook example of an initiation by a state actor under *Younger*. *See, e.g.*, *Backpage.com v. Hawley*, No. 17-1951, 2017 WL 5726868, at *8 (E.D. Mo. Nov. 28, 2017).

Second, the proceeding is initiated to sanction the Plaintiff for some wrongful act.[9] *Sprint*, 571 U.S. at 79. The CFA makes clear that the ongoing state-court action satisfies this in two different ways. For one, the CFA establishes that failure to obey a subpoena issued by the Attorney General is a wrongful act, and that such failures may be brought before a court for adjudication. Indeed, the Attorney General may apply for a court order "[a]djudging such person in contempt of court"; "vacating, annulling, or suspending [its] corporate charter"; and "restraining the sale or advertisement of any merchandise by such persons" who refuse to obey. N.J. Stat. Ann. § 56:8-6. Indeed, Plaintiff itself sees the CFA's remedies as sanctions. *See, e.g.*., Am. Compl., ¶¶ 45, 137, 145.

For another, the CFA allows the Attorney General to hold unscrupulous businesses accountable for their wrongful acts if the investigation uncovers unlawful conduct. *See id.* § 56:8-13 (providing violators are "liable to a penalty of not more than $10,000 for the first offense and not more than $20,000 for the second"). A

---

[9] Although the ultimate purpose of the state-court action is merely to secure compliance with the Subpoena, the court may impose sanctions under the CFA if noncompliance persists.

subpoena-enforcement action is a key step in that process. This "state-court action thus clearly involves an investigation with the potential to culminate in the filing of a formal complaint or charges." *Backpage.com*, 2017 WL 5726868, at *8; *see also Sprint*, 571 U.S. at 80 (explaining that while investigations "often culminat[e] in the filing of a formal complaint or charges," that is not required).

*Backpage.com* is particularly relevant. There, another state Attorney General issued civil investigative demands (CIDs) under his Merchandising Practices Act; the recipient sued in federal court, asserting a series of constitutional arguments. 2017 WL 5726868, at *5-6. The Attorney General then moved to enforce his CID in the appropriate state court, leading the federal court to abstain on *Younger* grounds. The court reasoned there was an ongoing investigation by a state actor (evidenced by the subpoena), it had in fact *already* led to the filing of a formal complaint for the noncompliance with the subpoena, and it had the potential to lead to other formal complaints for statutory violations in the future. *Id.* at *7. These points are even stronger in New Jersey, where there is a criminal analogue to the civil provisions being enforced in this case. *See* N.J. Stat. Ann. § 2C:21-7(e) (criminal deceptive business practice to make "a false or misleading statement in any advertisement addressed to the public . . . promoting the purchase or sale of property or services."). The teachings of *Backpage.com* fit this case hand-in-glove.

15

2.    *The Subpoena Enforcement Action Likewise Involves Orders In Furtherance Of State Court Judicial Function.*

Additionally or alternatively, this Court should find the subpoena-enforcement action in New Jersey Superior Court involves "certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions"—in particular, the ability to enforce state subpoenas. *Sprint*, 571 U.S. at 78. Once again, the decision in *Backpage.com* is instructive. There, the court held that "comity and federalism require[] abstention because the contempt power"—by which the state subpoena was to be enforced—lies at the core of the administration of a State's judicial system and such interference with the contempt process unduly interferes with the legitimate activities of the State." *Id.* (citations omitted). Those principles apply here: consistent with the statutory scheme laid out in N.J. Stat. Ann. § 56:8-6, *et. seq.*, the Attorney General seeks to hold Plaintiff in contempt for its noncompliance and to direct the production of the subpoenaed documents. *See* McGuire Decl., Ex. A, at 7.

Precedent supports those first principles. As another court recently explained when confronted with nearly identical facts, the progenitor of this third category of *Younger* cases is *Juidice v. Vail*, 430 U.S. 327 (1977), in which "the Supreme Court found that abstention under *Younger* was appropriate in a federal class action suit brought by individuals who had been found in contempt by state court judges for disobeying subpoenas" on the basis that "'federal-court interference with the State's

16

contempt process is an offense to the State's interest . . . likely to be every bit as great as it would be were [it] a criminal proceeding.'" *Lupin Pharms. v. Richards*, No. 15-1281, 2015 WL 4068818, at *4 (D. Md. July 2, 2015) (quoting *Juidice*, 430 U.S. at 335). Although that case involved the failure to respond to a subpoena in a civil suit between private parties, and *Lupin* (like this case) involved the refusal to comply with an administrative subpoena, this reflects a "distinction without a difference." *Id.* After all, the court went on, the former is issued by a private attorney backed by the power of state courts, while CFA subpoenas "are issued by the Attorney General, but . . . can only be enforced after involving a state court." *Id.* Because the State and its courts have critical interests in ensuring subpoena compliance, the State's motion in state court to enforce a subpoena "requires [the court] to abstain under the third category of the *Younger* Doctrine" just as in *Juidice*. *Id.* Abstention is proper here.

B.   *The* Middlesex *Factors Are Satisfied, Triggering* Younger *Abstention*.

Because the Division's subpoena enforcement action falls into one or more of the qualifying *Younger* categories, the next question is whether the case meets the *Middlesex* factors. It does.

There is an ongoing proceeding to adjudicate the enforcement of the Subpoena in New Jersey Superior Court, where Plaintiff has already raised its constitutional arguments and which certainly can resolve them. *See PDX*, 978 F.3d at 882. That

the Superior Court subpoena enforcement action was filed after Plaintiff filed its federal Complaint makes no difference, as courts (including the Supreme Court) have found that *Younger* remains applicable "where state . . . proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in federal court." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975); *Arbitron Inc. v. Cuomo*, No. 08-8497, 2008 WL 4735227, at *3-4 (S.D.N.Y. Oct. 27, 2008) (abstaining where no proceedings on merits occurred in federal suit prior to filing of state-court action). That makes sense: applying such a rigid "first-to-file" rule would permit, and even incentivize, the very forum shopping that abstention is designed to prevent—encouraging entities who receive warning letters or state subpoenas to rush to this Court to eventually avoid *Younger*. *See generally EEOC v. University of Pa.*, 850 F.2d 969, 978 (3d Cir. 1988) ("Because the first-filed rule is based on principles of comity and equity, it should not apply when at least one of the filing party's motives is to circumvent local law and preempt an imminent subpoena enforcement action."); *NYLife Distrib. v. Adherence Grp.*, 72 F.3d 371, 383 (3d Cir. 1995) (instructing court in abstention case "to ensure . . . forum shopping or gamesmanship is not rewarded").

That test is dispositive here, where Plaintiff filed this action just one day after its deadline to respond to the Subpoena expired and where no federal proceedings of substance had occurred by the time the State filed its subpoena enforcement action

in state court. *See Fairfield Cmty. Clean Up Crew Inc v. Hale*, 735 F. App'x 602, 605 (11th Cir. 2018) (noting case where "district court had not held any hearings and [defendants] had not filed any substantive pleadings" by time state court action was initiated "is precisely the type of timeline that" can trigger *Younger*). Indeed, other courts have confronted this situation—where a subpoena recipient rushes to federal court and the State then moves to enforce in state court—and have applied *Younger* abstention. *See Cuomo v. Dreamland Amusements, Inc.*, No. 08-6321, 2008 WL 4369270, at *10 (S.D.N.Y. Sept. 22, 2008) (holding that "because the Motion to Compel came after the federal Complaint was filed but before any other proceedings in federal court, the *Younger* abstention doctrine applies in full force"); *Lupin*, 2015 WL 4068818, at *5 (recognizing that, while Attorney General did not file state action until after filing of preliminary injunction motion in federal court, "the Court has not made any substantive rulings to date" so "there is no basis for this Court to refuse to abstain").[10]

---

[10] This Court need not even define the precise contours of how much federal court proceeding is "too much" here because Plaintiff's suit was not valid at its inception. A challenge to an administrative subpoena before any sort of subpoena enforcement action by the issuer is unripe and unfit for Article III court review. *See, e.g.*, *Wearly v. Federal Trade Comm'n*, 616 F.2d 662, 665 (3d Cir. 1980); *Shea v. Office of Thrift Supervision*, 934 F.2d 41, 45 (3d Cir. 1991). The filing of an unripe, jurisdictionally-improper federal suit before a subpoena enforcement action can be initiated cannot defeat the otherwise-plain application of *Younger*. To say that such a regime would otherwise allow for gamesmanship would, if anything, be an understatement.

Because there is an ongoing state proceeding that can adjudicate Plaintiff's claims, the final question is whether that state-court action implicates important state interests. It does so for two reasons: it involves consumer protection, and it involves subpoena compliance. Regarding the former, the "state has an important interest in enforcing its consumer protection statutes and protecting the public from deceptive business practices." *Backpage.com*, 2017 WL 5726868, at *8; *see also id.* ("Because the state-court action here involves the state's efforts to enforce the state's consumer-protection laws, it satisfies the important state interests requirement."); *J. & W. Seligman Co. v. Spitzer*, No. 05-7781, 2007 WL 2822208, at *6 (S.D.N.Y. Sept. 27, 2007) (agreeing "investigating and preventing fraudulent conduct" is "important state interest"); *Stroman Realty v. Martinez*, 505 F.3d 658, 663-64 (7th Cir. 2007) (noting state interest in protecting against "fraudulent, dishonest and incompetent" business practices). That is especially true in New Jersey, where the Legislature took pains "to confer on the Attorney General the broadest kind of power to act in the interest of the consumer public" in adopting the CFA. *Kugler*, 279 A.2d at 648. And as to the latter, states have an interest in "enforcing subpoenas issued pursuant to state law" to protect "the integrity of its subpoena and contempt process." *J. & W. Seligman*, 2007 WL 2822208, at *6; *see also Dreamland*, 2008 WL 4369270, at *10 (confirming state "interest in enforcing its own laws and investigating their violation cannot seriously be disputed"). It follows that "the enforcement of subpoenas issued

pursuant to state law in furtherance of a fraud investigation [] represent an important and legitimate state interest." *J. & W. Seligman*, 2007 WL 2822208, at *6.

## II.    THIS COURT SHOULD DISMISS UNDER RULE 12(b)(6).

The investigation into whether Plaintiff's advertisements mislead consumers does not violate the Second Amendment, Protection of Lawful Commerce in Arms Act (PLCAA), First Amendment, Equal Protection Clause, Due Process Clause, Fourth Amendment, or Dormant Commerce Clause.

### A.    *The Subpoena Does Not Violate The Second Amendment Or PLCAA Simply Because Plaintiff Sells Firearms.*

Plaintiff's claims under the Second Amendment and PLCAA are meritless.(Counts VII, VIII, and XI.) A company is not shielded from state consumer-fraud liability or investigations solely because it happens to sell firearms.

#### 1.    *Plaintiff's Second Amendment Claim Fails.*

The Second Amendment does not shield firearms sellers from investigations into otherwise unlawful behavior, such as fraudulent or misleading advertising. Plaintiff's Second Amendment claims must be dismissed because the Subpoena— used to gather information about a potential violation of a law of general applicability—is not a restriction on gun ownership, and does not "impose a burden on conduct falling within the scope of the Second Amendment's guarantee." *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010); *see also id.* (explaining that if law "does not" impose such a burden, Second Amendment "inquiry is complete"

21

and challenge must fail). Moreover, although Plaintiff seeks to assert the Second Amendment rights of its customers, customers are not served by allowing a company to hide whether it made misrepresentations to them.

An informational subpoena to a firearms manufacturer to produce information about its advertising claims imposes no "burden on conduct" relating to the "the right to possess firearms for defense of hearth and home." *Id.* at 88. For one, no Third Circuit precedent suggests that governmental action can burden Second Amendment rights when it *does not* impinge on any individual's possession or use of any firearm. More than that, the cases say just the opposite—that Second Amendment rights are not burdened when a government entity makes an informational inquiry of someone who possess firearms. *See Zimmer v. N.J. Div. of Child Prot. & Permanency*, No. 15-2524, 2016 WL 234844, at *12 (D.N.J. Jan 20, 2016) (holding that child protective services worker's inquiry into "Plaintiff's gun ownership and gun safety practices, or inspecting Plaintiff's firearms and gun safe, did not burden Plaintiff's rights to possess and carry firearms"); *Rearick v. Wiedemer,* No. 11-624, 2012 WL 3231096, at *3 (M.D. Pa. Aug. 6, 2012) (concluding that state employer's "mere questioning [an employee] about her gun permit does not rise to the level of a Second Amendment violation"). If informational requests of individual gun owners about use of firearms does not burden Second Amendment rights, an information subpoena to a gun manufacturer about its advertising of firearms cannot either.

Moreover, the CFA, which is a facially-neutral law that has nothing to do with the possession or use of firearms, does not burden constitutional rights just because it also applies to businesses that sell products used in the exercise of those rights. Take, for example, the Supreme Court's upholding of regulations based on public safety even when the business being regulated sells products that individuals use to exercise First Amendment rights. *See, e.g.*, *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 707 (1986) (upholding suspension of adult bookstore's ability to operate when investigation determined prostitution was occurring on premises and posed threat to public health, a violation of a generally neutral law); *Leathers v. Medlock*, 499 U.S. 439, 447 (1991) (rejecting cable service companies' challenge to "generally applicable tax" that is applied to broad range of services).

In the same manner here, such "rules of general applicability"—including the generally applicable CFA and subpoena authority it accords DCA—"do not violate the Second Amendment just because they place conditions on commercial sales, including sales of handguns used for self-defense." *Pena v. Lindley*, 898 F.3d 969, 1008 (9th Cir. 2018) (Bybee, J., concurring in part and dissenting in part). And while compliance with consumer-protection statutes can theoretically "affect the willingness of consumers to purchase the goods," such statutes "do[] not, for that reason, violate the Second Amendment—no more than taxes collected on the sales of religious materials restrict Free Exercise rights under the First Amendment." *Id.*

23

It cannot be that states lose their power to investigate consumer-protection violations when the subject happens to be a publisher, a manufacturer of birth control, or, in this case, a firearms seller. After all, potential purchasers of firearms—like potential purchasers of any other product—have an interest in receiving advertisements free of fraud.

Even if the Subpoena somehow does "burden" Second Amendment rights, it is nevertheless constitutionally proper. Because a CFA subpoena does not burden "the core Second Amendment right to self-defense in the home," intermediate scrutiny would apply to examine whether the State has an "important interest" in the CFA, and whether there exists "a reasonable fit between that asserted interest and the challenged law." *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Atty. Gen. N.J.*, 910 F.3d 106, 117, 119 (3d Cir. 2018); *Marzzarella*, 614 F.3d at 97.

Here, the CFA and the issuance of a Subpoena under its authority, prompted by concerns over Plaintiff's potentially misleading advertising claims, advances the State's "important interest" in protecting the public from false and deceptive advertising. *See* N.J. Stat. Ann. § 56:8-2; *see also Illinois ex rel. Madigan v. Telemarketing Assocs.*, 538 U.S. 600, 623-24 (2003); (recognizing government interest in "vigorously enforce[ing] antifraud law"); *Donaldson v. Read Mag.*, 333 U.S. 178, 190 (1948) (adding that "protect[ing] people against fraud . . . [is a] governmental power [that] has always been recognized."). There is a "reasonable

fit" between this interest and the Subpoena because the Subpoena "does not burden more conduct than is reasonably necessary." *N.J. Rifle*, 910 F.3d at 119. To comply, Plaintiff merely needs to answer questions and produce documents; it does not need to relinquish or stop selling firearms. *See District of Columbia v. Heller*, 554 U.S. 570, 626-27, n.26 (2008) (noting that "laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful regulatory measures").[11]

To sidestep the weakness in its Second Amendment claim, Smith & Wesson tries to assert constitutional claims on behalf of its customers. (Count VIII.) That claim must be dismissed for lack of standing. To establish third-party standing, "(1) the plaintiff must suffer injury; (2) the plaintiff and the third party must have a close relationship; and (3) the third party must face some obstacles that prevent it from pursuing its own claims." *Interactive Media Entm't & Gaming Ass'n v. Att'y Gen.*, 580 F.3d 113, 118 (3d Cir. 2009). Plaintiff fails every prong.

First, as explained above, Plaintiff cannot demonstrate a cognizable Second Amendment injury from a Subpoena that seeks information regarding their

---

[11] Although Smith & Wesson cites *Heller* for the proposition that "policy choices" to prevent fraud in firearms advertising are now "off the table," Am. Compl. ¶ 14, that case said nothing of the sort. By contrast, as the Supreme Court has reiterated, the Second Amendment "by no means eliminates" a state's "ability to devise solutions to social problems that suit local needs and values." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 785 (2010). For the reasons given above, that authority undoubtedly includes enforcement of its general consumer fraud laws.

25

advertising practices, and the Subpoena's impact on its operations are purely conjectural. Second, Plaintiff cannot rely on a hypothetical future customer to establish third-party standing. In *Holland v. Rosen*, 895 F.3d 272, 287 (3d Cir. 2018), the court held that a bail bonds business could not assert third-party standing on behalf of "potential . . . criminal defendant customers" to challenge state bail laws. As in *Holland*, "the hypothetical relationship" between Plaintiff and potential future customers who allegedly want to buy Smith & Wesson firearms is "not a close one; indeed, 'they have no relationship at all.'" *Id.* And in this case, the relationship is especially attenuated: it is unclear how compliance with the Subpoena would in any way impact Smith & Wesson's ability to sell firearms; and even if it did, customers have interests in receiving advertising *without* fraudulent or deceptive statements—making Smith & Wesson a particularly unsuitable representative of their interests. Third and finally, Plaintiff can make no showing that any future individual customers face obstacles from pursuing their own claims. *See Holland*, 895 F.3d at 288 (rejecting argument that indigent defendants cannot bring claims vindicating their constitutional rights); *Pitt News v. Fisher*, 215 F.3d 354, 362–63 (3d Cir. 2000) (holding newspaper cannot assert standing on behalf of advertisers or readers who have no "impediment to bringing their own suit to challenge the statute" in question). Plaintiff cannot establish third-party standing.

2.    *Plaintiff's PLCAA Claim Fails.*

In enacting PLCAA, Congress sought to protect federally-licensed firearms manufacturers and sellers from certain specific forms of civil liability—but made clear that other civil matters could still go forward. The statute thus expressly protects such firearms manufacturers and sellers from liability "for the harm *solely* caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended." 15 U.S.C. § 7901(b)(1) (emphasis added). To effectuate that regime, PLCAA provides that "[a] qualified civil liability action may not be brought in any Federal or State court," *id.* § 7902(a), and it defines a "qualified civil liability action" as a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the *criminal or unlawful misuse* of a qualified product by the person or a third party 15 U.S.C. § 7903(5)(A) (emphasis added). The statutory definition excludes "an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought"—meaning such lawsuits can still go forward. *Id.* § 7903(5)(A)(iii). This is commonly referred to as the "predicate exception."

Two flaws prove fatal to Plaintiff's PLCAA claim—this CFA investigation does not qualify as a "qualified civil liability action" in the first place, and it also fits into PLCAA's so-called "predicate exception." As to the former, the challenged administrative Subpoena—which exclusively seeks documents and information relating to Plaintiff's advertising practices—has nothing to do with any particular person's *misuse* of firearms, and PLCAA's bar therefore cannot apply to it. *See Sambrano v. Savage Arms*, 338 P.3d 103, 106 (N.M. Ct. App. 2014) ("[[T]o be a qualified civil liability action [under PLCAA], the harm or damages must result from the third party's criminal or unlawful misuse of a firearm."). Bluntly, the Division's investigation does not turn on any third party's use of the product. Instead, it focuses on representations made *by* the manufacturer *to* customers, and whether they were misleading. PLCAA does not apply.

Moreover, "[t]here is no doubt that statutes that govern the advertising and marketing of firearms potentially qualify as predicate statutes" expressly exempted from PLCAA. *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 303 (Conn. 2019). As courts across the country have explained, Congress did not abrogate states' authority to prosecute violations of consumer-protection laws. *See id.* at 272 (permitting Connecticut Unfair Trade Practices Act claim against manufacturers because PLCAA did not divest state legislature and courts' authority "to protect the people of Connecticut from the pernicious practices alleged in the present case");

28

*Prescott v. Slide Fire Solutions, LP*, 410 F. Supp. 3d 1123, 1139 (D. Nev. 2019) (permitting Nevada Deceptive Trade Practices Act claim for allegedly false statement that October 2017 Las Vegas concert shooter's rifles were equipped with ATF-approved "bump stocks"); *Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422, 434 (Ind. Ct. App. 2007) (finding claim against Smith & Wesson under Indiana's public nuisance statute not barred by PLCAA). By the terms of its express exception, then, PLCAA does not preempt consumer-protection cases, and it does not preempt subpoenas issued to investigate potential fraud.

B.    *The Subpoena Does Not Violate The First Amendment.*

Plaintiff asserts six First Amendment claims, but all are meritless.

First, although Plaintiff claims that the Subpoena has interfered with its rights of political and commercial speech (Counts II and VI) and that it improperly compels speech (Count IV), the Subpoena does not implicate the First Amendment at all, for two independently sufficient reasons. First, an administrative subpoena does not "regulate" speech; it only seeks the production of documents through a process prescribed by law. *See Ohio Civil Rights Comm'n v. Dayton Christian Sch.*, Inc., 477 U.S. 619, 628 (1986) (noting government "violates no constitutional rights by merely investigating" potentially unlawful conduct); *SEC v. McGoff*, 647 F.2d 185, 187 (D.C. Cir. 1981) (administrative subpoenas "do not directly regulate the content, time, place, or manner of expression"). There has been no determination that

anything Smith & Wesson said in its advertisements did in fact violate the CFA. As such, there has been no regulation of speech.

Second, this Subpoena, like all others under the CFA, seeks information that is not protected by the First Amendment. *See Madigan*, 538 U.S. at 612 ("[T]he First Amendment does not shield fraud."); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 771 (1976) ("Untruthful speech, commercial or otherwise, has never been protected for its own sake."). Because the Subpoena requests materials germane to determining whether Plaintiff's conduct constituted fraudulent or misleading speech, no First Amendment challenge is cognizable.[12]

And while Smith & Wesson protests that the State may not inquire into the validity of assertions of product safety, benefits, and effectiveness under the CFA because such statements are "opinion," this is simply not the case. Rather the Subpoena calls for the production of advertisements and factual bases for them; statements relating to products or product safety that a defendant knew to be false based on specific facts or studies in its possession are actionable under the CFA, and not protected by the First Amendment, because they are misrepresentations of fact. *See, e.g.*, *EP Henry Corp. v. Cambridge Pavers,* 383 F. Supp. 3d 343, 349-51 (D.N.J.

---

[12] There is also no support for Smith & Wesson's argument that it should not be "subject to varying and arbitrary standards for what constitutes 'fraud' in a given jurisdiction" because it is a national company. Am. Compl., ¶ 139. The Constitution does not shield a company from complying with New Jersey law when it makes sales to New Jersey residents simply because it also advertises in Oregon.

2019) (holding that statements that are "plausibly demonstrable by objective testing and analysis of the products" actionable under CFA); *In re Riddell Concussion Reduction Litig.*, 121 F. Supp. 3d 402, 418 (D.N.J. 2015) (finding statements suggesting helmet may reduce concussions based on "new concussion reduction technology" are actionable where study showed defendant's "helmets are no more capable of reducing the incidence of concussions than other football helmets on the market"); *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 540-41 (D.N.J. 2011) (representations that are "specific and measurable" can be actionable under the CFA as misrepresentations of fact).

Moreover, Plaintiff's claims that it is being "compelled" to speak in support of the States' firearms safety laws, *see* Am. Compl. ¶ 163, is especially puzzling. The State's longstanding Hazardous Product and Advertising Regulations, which make it unlawful to advertise a product to New Jersey consumers that is illegal to possess or use in this State without a permit unless the advertiser "clearly and conspicuously disclose[s]" that fact. N.J.A.C. 13:45A-4.1(b); *see also* N.J.A.C. 13:45A-9.2(a). That is logical: since the legality of a product obviously bears on the consumer's decision to buy it, sellers may not mislead their consumers on that score. But in requiring Smith & Wesson to accurate disclose what the law *is*, New Jersey does not require Smith & Wesson to take any position on what the law *should be*. An example helps to clarify: a retailer who tells a customer that large-capacity

magazine laws *should* be held invalid under the Second Amendment expresses an opinion, but any vendor who induces a New Jersey customer to purchase 100-round magazine without informing the customer that such magazines *are* unlawful in New Jersey has engaged in fraud. And there is no problem with the latter: the First Amendment does not prohibit "States from assuring that their residents are positioned to make informed choices," and states naturally "may seek to inform the public and prevent fraud through [] disclosure requirements." *Madigan*, 538 U.S. at 623–24. Plaintiff remains free to "express whatever view [it] may have" on the state's concealed carry laws. *Rumsfeld v. Forum of Academic and Institutional Rights, Inc.*, 547 U.S. 47, 64 (2006) (holding that federal statute requiring law schools to host military recruiters did not violate First Amendment). What it is not free to do, however, is to mislead through material omissions or by making a false or misleading statement to consumers.

Next, Plaintiff baselessly alleges that the subpoena enforcement action in New Jersey Superior Court violates its First Amendment rights to petition and to free speech, because it is "retaliation" for this federal action (Counts I &II). As an initial matter, to succeed on such a claim, Plaintiff must prove that the enforcement action was not independently justified. *See e.g.*, *Hartman v. Moore*, 547 U.S. 250, 256-58 (2006). It cannot. There is a "presumption that a prosecutor has legitimate grounds for the action he takes," *id.* at 263, and a prosecutor's motive "is particularly ill-

suited to judicial review," *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489-90 (1999). Here, the subpoena enforcement action is justified by the CFA itself and by Plaintiff's failure to comply. It is that refusal to comply that led to an enforcement action in the New Jersey Superior Court, not Plaintiff's filing in this Court. After all, the Attorney General and the Division do not sit on their hands after companies indicate their blanket refusal to produce documents and regularly file enforcement actions in New Jersey Superior Court requesting the exact same relief under the CFA against other noncompliant Subpoena recipients. *See supra* at 6-7 (collecting previous examples). Thus, its actions here were not "unique" and "retaliatory" at all; at most, it demonstrates a consistent commitment to enforcing consumer-protection laws in the face of noncompliance with ongoing investigations.

Plaintiff's "prior restraint" argument (Count V) is weaker still. Plaintiff states that if the New Jersey Superior Court were to issue an order restraining the company from engaging in advertising, offering for sale, or sale of merchandise in the state until it responds to the Subpoena, such a judicial action would be a prior restraint in violation of the First Amendment. But Plaintiff is simply incorrect, because the relief "would not be imposed on the basis of an advance determination that the distribution of particular materials is prohibited—indeed, the imposition of the [relief] has nothing to do with any expressive conduct at all." *Arcara*, 478 U.S. at 706. Instead,

the relief would issue because of Plaintiff's past failure to comply with the law requiring its compliance with the Subpoena. *See id.*

      C.   *Plaintiff's Fourth, Fifth and Fourteenth Amendment Claims Fail.*

Smith & Wesson's claims based on due process, equal protection, and the Fourth Amendment fare no better. First, Smith and Wesson fail to meet the high bar that the equal protection and due process claims (Counts IX and X). Because the CFA and the Subpoena do not contravene fundamental constitutional rights or implicate any suspect classifications, this Court can only find an equal protection violation if there is no "reasonably conceivable state of facts that could provide a rational basis" for New Jersey to have acted as it did. *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 156 (3d Cir. 2018). As discussed above, the State has far more than a rational basis for investigating potential fraud or other consumer-protection violations. Plaintiff has also pled no "conduct that 'shocks the conscience' . . . or interfer[ence] with rights 'implicit in the concept of ordered liberty,'" *United States v. Salerno*, 481 U.S. 739, 746 (1987), and therefore has no valid substantive due process claim.[13] It also cannot "disprove the actual existence of a valid

---

[13] The due process claims also fail under the "more-specific-provision" rule: when "a constitutional claim is covered by a specific constitutional provision," it "must be analyzed under the standard appropriate to that specific provision." *Wharton v. Danberg*, 854 F.3d 234, 246 (3d Cir. 2017).

[consumer-protection] . . . purpose" by the State. *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316 (1978).

The Fourth Amendment claims (Count XI) are weaker still. "An agency ordinarily 'can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" *UMDNJ v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003) (citing *United States v. Powell*, 379 U.S. 48, 57 (1964)); *see also* N.J. Stat. Ann. § 56:8-3. The State does not need probable cause, and a subpoena is valid so long as it lies "within the authority of the [requesting] agency," is "not . . . too indefinite," and is "reasonably relevant to the authorized inquiry." *Chao v. Cmty. Tr. Co.*, 474 F.3d 75, 79 (3d Cir. 2007). At this juncture, the State's burden is only to demonstrate the relevance of the requested documents by a "very light and minimal" showing. *In re Grand Jury Subpoena Duces Tecum*, 143 N.J. Super. 526, 536 (Law. Div. 1976). Moreover, "as a condition to maintaining the argument that an investigative subpoena is overly broad and oppressive, [Smith & Wesson] would have to be able to point to reasonable efforts on [its] behalf to reach accommodation with the government," which it has not alleged in this case. *In re Subpoena Duces Tecum*, 228 F.3d 341, 351 (4th Cir. 2000). In any event, evaluation of the scope of the demand for documents falls squarely within the state court's purview, and further demonstrates why *Younger* abstention is especially appropriate.

35

D.    *The Allegations Do Not Support Plaintiff's Claims*.

Plaintiff's constitutional arguments fail for another independent reason:  they all rely on the false premise that the instant Subpoena was served in furtherance of some improper motive. Because that bald conclusion lacks any supportive plausible allegations, it forms no basis to allow this case to proceed.

This is not the first time that a large company has attempted to evade investigation for potential consumer-protection violations on such a basis. In *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 705 (S.D.N.Y. 2018), Exxon challenged subpoenas issued by two state Attorneys General by claiming that the state officers' real purpose was to "retaliate against Exxon for, or to deter Exxon from, speech that is protected by the First Amendment" based on the company's views on climate change. *Id.* at 704. In support, Exxon cited statements by the two state Attorneys General about climate change, accused them of "deriding" Exxon's statements about the causes of climate change, and claimed outside activists had influenced the decision to issue subpoenas. *Id.* at 706.

The court flatly rejected those arguments, reasoning that Exxon failed to demonstrate the state officers were "pursuing an investigation even though [they] do[] not believe that Exxon may have committed fraud"—the staggeringly high bar. *Id.* at 707. First, the court rejected the company's urging of "false equivalence between [the state officers'] belief that climate change is a settled issue" and any

36

"inference" that investigating an oil company's potential fraud was "retaliat[ion] for" political speech. *Id.* at 707; *see also id.* ("The fact that [an official] believes climate change is real … does not mean the [official] does not also have reason to believe that Exxon may have committed fraud."). Second, the court also rebuffed Exxon's insistence that activists' attacks on Exxon established improper motive, finding Exxon did not "plausibly allege" either that "the activists have an improper purpose" or that meetings between activists and officials showed "the [officials] share the activists' improper purpose." *Id.* at 708; *see id.* at 712 (finding "the circumstantial evidence … fails to tie the AGs to any improper motive, if it exists, harbored by activists"). These failures were fatal.

That analysis squarely forecloses Plaintiff's claims, where the allegations of improper motive are even less well formed. The Amended Complaint primarily cites instances in which the Attorney General expressed a desire to reduce gun violence, opposed policies he believes are inconsistent with public safety and law enforcement safety, and stated his aim to "turn up the heat" on gun manufacturers in *another* context to urge them to take greater steps to reduce gun violence. *See* Am. Compl. ¶¶ 77, 78. Notably, unlike *Exxon*, none of the comments targeted Smith & Wesson in particular, meaning that they are even *less* probative of improper motive. But like in *Exxon*, the allegations do not plausibly show that the Division or Attorney General lack valid "reason to believe that [Plaintiffs] may have committed fraud" any more

than public comments about the opioid crisis undermine consumer-protection actions against the companies who fueled its rise. Public officials frequently comment on topics of public importance, but that is not carte blanche for companies to engage in fraud if they sell related products. *See Goldstein v. Galvin*, 719 F.3d 16, 30 (1st Cir. 2013) ("Not only do public officials have free speech rights, but they also have an obligation to speak out on matters of public concern."). Indeed, accepting Smith & Wesson's inference would put "attorneys general in a straight-jacket relative to their public comments." *Exxon*, 316 F. Supp. 3d at 710, n.29.

Plaintiff's effort to tie this investigation to the allegedly improper motive of certain activists is no more successful. *See* Am. Compl. ¶¶ 29-42. Plaintiff fails to plausibly show the activists who may welcome this investigation have an improper motive: the fact that someone seeks to reduce gun violence does not mean they "do not believe that there is a reasonable basis to investigate [this company] for fraud." *Exxon*, 316 F. Supp. 3d at 709. There is also simply no evidence that the Attorney General shares such allegedly improper motives just because he is sympathetic to the broader public safety goals. And there is no contention that an outside advocate could or did make the decision to issue the Subpoena,[14] as mere meetings with or

---

[14] Smith & Wesson harps on the fact that the State issued a Request for Qualifications for Special Counsel for Firearms Safety Litigation ("RFQ") but overlooks the counsel's limited role. Nothing in the RFQ empowers outside counsel to make ultimate investigative and litigation decisions; lawyers in the Attorney General's

broad public requests by advocates hardly substantiate claims of improper purpose. *See, e.g.*, *SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 130 (3d Cir. 1981) ("That the SEC commenced these proceedings as a result of the importuning of Senator Weicker or CF&I, even with malice on their part, is not a sufficient basis to deny enforcement of the subpoena"); *Exxon*, 316 F. Supp. 3d at 709 ("[E]ven if the climate activists did encourage the AGs to investigate Exxon … another logical leap is required to infer [that the AGs] agreed to do so without having a good faith belief that their investigations of Exxon were justified.").

Just as in *Exxon*, the entire theory of this case—that the Constitution has been violated by dint of an Attorney General's improper motive—lacks requisite plausible allegations to proceed. The Attorney General's work to reduce gun violence is not an excuse for Plaintiff to get out of a consumer-protection investigation.

E.    *The Subpoena Does Not Violate The Commerce Clause.*

Finally, Plaintiff's Dormant Commerce Clause claim is meritless. Plaintiff does not allege the State has unduly restricted interstate commerce in favor of its local economic interests or that non-resident businesses are treated differently from in-state ones. *See Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449,

---

office directly oversee them. *See* RFQ, § 1.1, available at https://www.nj.gov/oag/law/pdf/rfqs/Firearms-Safey-Litigation.pdf. Because these materials are quoted in the Amended Complaint, they can be considered by this Court. *Pryor v. NCAA*, 288 F.2d 548, 560 (3d. Cir. 2002).

2459 (2019). And while Plaintiff is not incorporated in New Jersey, the Subpoena seeks information available to New Jersey residents. *See* Subpoena at 9, ¶1. An investigation pursuant to a consumer-protection statute that protects a State's residents, including from conduct of companies based out of state, is a textbook example of permissible state action. *See, e.g.*, *Exxon*, 316 F. Supp. 3d at 712-13.

## III.   THE CLAIMS AGAINST DCA ARE INDEPENDENTLY BARRED BY SOVEREIGN IMMUNITY.

The Eleventh Amendment immunizes States, as well as entities that are "arms of the State," from suit in federal court. *Bowers v. NCAA*, 475 F.3d 524, 545 (3d Cir. 2007), *amended on reh'g* (2007). Here, all of the claims against DCA itself should be dismissed because DCA is an arm of the State and immune from claims in federal court. *See Rhett v. Evans*, 576 F. App'x 85, 88 (3d Cir. 2014).

## CONCLUSION

This Court should dismiss the Amended Complaint in its entirety.

Respectfully submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By:    /s/ Robert J. McGuire
          Robert J. McGuire
          Deputy Attorney General
          robert.mcguire@law.njoag.gov
          (609) 376-2787

Dated:  April 26, 2021

40