# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SMITH & WESSON BRANDS, INC., SMITH & WESSON SALES COMPANY, and SMITH & WESSON INC., | CIVIL ACTION |
| **Plaintiffs,** | CASE NO. 2:20-CV-19047-JMV-ESK |
| v. | |
| GURBIR S. GREWAL, *in his official capacity as Attorney General of the State of New Jersey* and NEW JERSEY DIVISION OF CONSUMER AFFAIRS, | |
| **Defendants.** | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Christopher M. Strongosky
Amanda Laufer Camelotto
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Tel: (973) 520-2550
christopher.strongosky@dlapiper.com
amanda.camelotto@dlapiper.com

Joseph A. Turzi (admitted *pro hac vice*)
Edward S. Scheideman (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Tel: (202) 799-4000
joe.turzi@dlapiper.com
edward.scheideman@dlapiper.com

*Attorneys for Plaintiffs*
*Smith & Wesson Brands, Inc.*
*Smith & Wesson Sales Company*
*Smith & Wesson Inc.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND.....................................................................................................2

   I.    The Attorney General's Improper Use of His Prosecutorial Power. ................................ 2

   II.   The Subpoena and Smith & Wesson's Response. ......................................................... 3

   III.  The Attorney General's Retaliatory State Court Suit. ...................................................... 3

ARGUMENT.............................................................................................................................4

   I.    Younger Abstention Is Inappropriate............................................................................... 4

        A.   None of the Required "Exceptional Circumstances" Is Present................................ 5

             1.    The New Jersey Action Is Not "Akin to a Criminal Prosecution." .................... 6

             2.    The State Action Does Not Involve Orders Uniquely in Furtherance of the State Court's Ability to Perform Its Judicial Function. ................................ 8

        B.   Even if Sprint's Exceptions Were Met, Middlesex Still Precludes Abstention. ......... 9

        C.   Equitable Considerations Preclude Abstention. ...................................................... 11

             1.    Smith & Wesson Does Not Have an Adequate Remedy in State Court. ........... 11

             2.    The Attorney General's Bad Faith Precludes Abstention................................. 12

   II.   Smith & Wesson Has Plausibly Pleaded Its Claims. ..................................................... 14

        A.   Smith & Wesson's First Amendment Claims Cannot Be Dismissed....................... 14

             1.    The Subpoena Targets Protected Opinion Speech................................................ 14

             2.    The Administrative Subpoena Violates the First Amendment. ......................... 17

             3.    The Complaint Plausibly Pleads a Claim for Viewpoint Discrimination. ......... 18

             4.    The Complaint Plausibly Alleges Retaliation.................................................... 19

             5.    The Complaint Plausibly Pleads Prior Restraint................................................ 20

        B.   The Complaint Plausibly States Claims for Violations of Smith & Wesson's and Citizens' Second Amendment Rights. .......................................................... 21

             1.    Smith & Wesson Alleges Violations of Its Second Amendment Rights. .......... 21

             2.    The Complaint Plausibly Alleges that the Rights of Citizens to Purchase and Bear Firearms Are Being Violated................................................................. 23

         C.   The Complaint Plausibly Pleads Violations of Smith & Wesson's Fourth, Fifth, and Fourteenth Amendment Rights. ............................................................ 24

        D.   The Complaint Plausibly Alleges that the PLCAA Bars the Subpoena.................... 26

             1.    A CFA Proceeding Would Be Barred Under the PLCAA................................. 26

             2.    The CFA Does Not Fall Within the PLCAA's "Marketing Exception."........... 26

        E.   The Complaint Plausibly Alleges a Dormant Commerce Clause Violation. ............ 29

i

F.    The Attorney General's Arguments as to "Improper Motive" Are Flawed. ............. 29

III.   Even if the Claims Against DCA Are Dismissed for Sovereign Immunity,
the Action Against the Attorney General May Proceed under Section 1983. .................. 30

CONCLUSION........................................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*44 Liquormart, Inc. v. R.I.*,
  517 U.S. 484 (1996)................................................................................................17

*615 River Rd. Partners, LLC v. Borough of Edgewater*,
  No. 17-cv-12659, 2019 WL 1930755 (D.N.J. Apr. 30, 2019)................................5

*ACRA Turf Club, LLC v. Zanzuccki*,
  748 F.3d 127 (3d Cir. 2014)...............................................................6, 7, 8, 9, 10

*In re Addonizio*,
  53 N.J. 107 (1968) ................................................................................................24

*Alexander v. CIGNA Corp.*,
  991 F. Supp. 427 (D.N.J. 1998) ...........................................................................15

*Arbitron Inc. v. Cuomo*,
  No. 08-cv-8497, 2008 WL 4735227 (S.D.N.Y. Oct. 27, 2008)............................11

*Arcara v. Cloud Books, Inc.*,
  478 U.S. 697 (1986)...................................................................................20, 21, 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................14

*Backpage.com v. Hawley*,
  No. 17-cv-1951, 2017 WL 5726868 (E.D. Mo. Nov. 28, 2017)..........................8, 9

*Baloga v. Pittston Area Sch. Dist.*,
  927 F.3d 742 (3d Cir. 2019)..................................................................................19

*Bantam Books, Inc v. Sullivan*,
  372 U.S. 58 (1963)...........................................................................................20, 21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................1, 14

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*,
  476 U.S. 573 (1986)..............................................................................................29

*CBS, Inc. v. Davis*,
  510 U.S. 1315 (1994)............................................................................................20

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
    447 U.S. 557 (1980).........................................................................................17

*Chiropractic All. of N.J. v. Parisi*,
    854 F. Supp. 299 (D.N.J. 1994) ...........................................................13, 14

*City of New York v. Beretta U.S.A. Corp*
    524 F.3d 384 (2008).................................................................................27, 28

*Cobb v. Sup. Jud. Ct. of Mass.*,
    334 F. Supp. 2d 50 (D. Mass. 2004) ......................................................14

*Colo, River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976)................................................................................4

*Cuomo v. Clearing House Ass'n, LLC*,
    557 U.S. 519 (2009)................................................................................26

*Cuomo v. Dreamland Amusements, Inc.*,
    No. 08-6321, 2008 WL 4369270 (S.D.N.Y. Sept. 22, 2008) .................11

*District of Columbia v. Heller*,
    554 U.S. 570 (2008)......................................................................15, 16, 23

*EEOC v. Univ. of Pa.*,
    850 F.2d 969 (3d Cir. 1988)...................................................................11

*Eisenstadt v. Baird*,
    405 U.S. 438 (1972)...............................................................................23

*Exxon Mobil Corp. v. Schneiderman*,
    316 F. Supp. 3d 679 (S.D.N.Y. 2018)...................................................29

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) ................................................................21

*Fairfield Cmty. Clean Up Crew, Inc. v. Hale*,
    735 F. App'x 602 (11th Cir. 2018) .......................................................11

*Fed. Election Comm'n v. Machinists Non-Partisan Pol. League*,
    655 F.2d 380 (D.C. Cir. 1981)..........................................................18, 19

*Freedom Holdings Inc. v. Spitzer*,
    357 F.3d 205 (2d Cir.2004)...................................................................29

*Gonzalez v. Waterfront Comm'n of N.Y. Harbor*,
    755 F.3d 176 (3d Cir. 2014).................................................................6, 8

*Hamilton v. Bromley*,
   862 F.3d 329 (3d Cir. 2017) ............................................................................4

*Handschu v. Police Dep't of City of N.Y.*,
   219 F. Supp. 3d 388 (S.D.N.Y. 2016) ............................................................25

*Hartman v. Moore*,
   547 U.S. 250 (2006) ......................................................................................20

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*,
   No. 05-cv-2164, 2007 WL 852521 (D. Kan. Mar. 16, 2007) ...............................18

*Hicks v. Miranda*
   422 U.S. 332 (1975) ...............................................................................10, 11

*Holland v. Rosen*,
   895 F.3d 272 (3d Cir. 2018) ..........................................................................24

*Ileto v. Glock, Inc.*
   565 F.3d 1126 (2009) ..............................................................................27, 28

*Jaffery v. Atl. Cnty. Prosecutor's Off.*,
   695 F. App'x 38 (3d Cir. 2017) .................................................................4, 12

*Joseph J. Murphy Realty, Inc. v. Shervan*,
   159 N.J. Super. 546 (App. Div. 1978) ............................................................15

*Juidice v. Vail*,
   430 U.S. 327 (1977) ......................................................................................9

*La. Debating & Literary Ass'n v. City of N.O.*,
   42 F.3d 1483 (5th Cir. 1995) .........................................................................10

*Lazaridis v. Wehmer*,
   591 F.3d 666 (3d Cir. 2010) ..........................................................................12

*Leathers v. Medlock*,
   499 U.S. 439 (1991) ......................................................................................22

*Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. Waterfront Comm'n of N.Y.
   Harbor*,
   512 F. Supp. 781 (S.D.N.Y. 1981) ...........................................................17, 19

*Lupin Pharms., Inc. v. Richards*,
   No. 15-cv-1281, 2015 WL 4068818 (D. Md. July 2, 2015) ..................................9

*Major League Baseball v. Crist*,
   331 F.3d 1177 (11th Cir. 2003) .....................................................................25

*Malhan v. U.S. Sec'y of State*,
  938 F.3d 453 (3d Cir. 2019)................................................................8

*Matal* v. *Tam*,
  137 S. Ct. 1744 (2017) (Kennedy, J., concurring) ..............................18

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
  457 U.S. 423 (1982)..............................................................9, 10, 11

*Mitchum v. Foster*,
  407 U.S. 225 (1972)................................................................1

*Monaghan v. Deakins*,
  798 F.2d 632 (3d Cir. 1986), *aff'd in part*,
  *vacated in part*, 484 U.S. 193 (1988)....................................5

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992)................................................................26

*Mulholland v. Marion Cnty. Election Bd.*,
  746 F.3d 811 (7th Cir. 2014) ................................................8

*N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*,
  669 F.3d 374 (3d Cir. 2012)................................................25

*NAACP v. Alabama*,
  357 U.S. 449 (1958)................................................................1

*Nat'l Inst. of Family & Life Advocs. v. Becerra*,
  138 S. Ct. 2361 (2018)............................................................17

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
  491 U.S. 350 (1989)................................................................4

*Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*,
  477 U.S. 619 (1986)................................................................18

*Online Merchants Guild v. Cameron*,
  468 F. Supp. 3d 883 (E.D. Ky. 2020), *rev'd on other grounds*,
  No. 20-cv-5723, 2021 WL 1680265 (6th Cir. Apr. 29, 2021) ................7, 9

*Pasqua v. Council*,
  No. 00-cv-2418 (D.N.J. Mar. 8, 2001), *aff'd sub. nom. Anthony v. Council*,
  316 F.3d 412 (3d Cir. 2003)....................................................5

*PDX N., Inc. v. Comm'r N.J. Dep't of Lab. & Workforce Dev.*,
  978 F.3d 871 (3d Cir. 2020)................................................6, 8

*People by James v. Exxon Mobil Corp.*,
    119 N.Y.S.3d 829, 2019 WL 6795771 (N.Y. Sup. Ct., N.Y. Cnty. 2019) ...........................30

*Powers v. Ohio*,
    499 U.S. 400 (1991).........................................................................................................23

*Prescott v. Slide Fire Sols., LP*,
    410 F. Supp. 3d 1123 (D. Nev. 2019)...........................................................................28

*Rearick v. Wiedemer*,
    No. 11-cv-624, 2012 WL 3231096 (M.D. Pa. Aug. 6, 2012).................................22

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999).........................................................................................................20

*In re Riddell Concussion Reduction Litig.*,
    121 F. Supp. 3d 402 (D.N.J. 2015) ..............................................................................15

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
    487 U.S. 781 (1988).........................................................................................................17

*Rosenberger* v. *Rector & Visitors of Univ. of Va.*,
    515 U.S. 819 (1995)..................................................................................................18, 19

*In re Rule 45 Subpoena Issued to Cablevision Sys.*,
    No. 08-347, 2010 WL 2219343 (E.D.N.Y. Feb. 5, 2010) .....................................18

*In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corp. Dated July
23, 2020*,
    No. 20-80141, 2020 WL 7202818 (N.D. Cal. Dec. 7, 2020)............................13, 18

*Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*,
    547 U.S. 47 (2006)...........................................................................................................16

*SEC v. McGoff*,
    647 F.2d 185 (D.C. Cir. 1981) ......................................................................................18

*Selevan v. N.Y. Thruway Auth.*,
    584 F.3d 82 (2d Cir. 2009).............................................................................................29

*Semple v. Griswold*,
    934 F.3d 1134 (10th Cir. 2019) ....................................................................................16

*Silverman v. Berkson*,
    141 N.J. 412 (1995) ...........................................................................................................7

*Smith & Wesson Corp. v. City of Gary*,
    875 N.E.2d 422 (Ind. Ct. App. 2007)..........................................................................27

*Soto v. Bushmaster Firearms Int'l, LLC*,
    202 A.3d 262 (Conn. 2019) ................................................................28

*Sprint Commc'ns, Inc. v. Jacobs*,
    571 U.S. 69 (2013) ................................................................ *passim*

*Sweezy v. New Hampshire*,
    354 U.S. 234 (1957) ................................................................1, 17

*The Pitt News v. Fisher*,
    215 F.3d 354 (3d Cir. 2000) ................................................................24

*Tracy Rifle & Pistol LLC v. Harris*,
    339 F. Supp. 3d 1007 (E.D. Cal. 2018) ................................................................16

*U.S. v. Marzzarella*,
    614 F.3d 85 (3d Cir. 2010) ................................................................21, 24

*Weston Capital Advisors, Inc. v. PT Bank Mutiara, Tbk*,
    738 F. App'x 19 (2d Cir. 2018) ................................................................9

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ................................................................18

*Wichert v. Walter*,
    606 F. Supp. 1516 (D.N.J. 1985) ................................................................12

*Williams v. Red Bank Bd. of Educ.*,
    662 F.2d 1008 (3d Cir. 1981) ................................................................13

*Younger v. Harris*,
    401 U.S. 37 (1971) ................................................................ *passim*

*Zimmer v. N.J. Div. of Child Prot. & Permanency*,
    No. 15-cv-2524, 2016 WL 234844 (D.N.J. Jan 20, 2016) ................................................................22

*Zurcher v. Stanford Daily*,
    436 U.S. 547 (1978) ................................................................25

**Statutes**

15 U.S.C. § 7903(3)-(5) ................................................................26

15 U.S.C. § 7903(5)(A)(iii)(I)-(II) ................................................................27

42 U.S.C. § 1983 ................................................................30

N.J.S.A. § 56:8-6 ................................................................12

N.J.R. Civ. P. 1:9-6(a)-(b)...............................................................................................................12

Plaintiffs Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, and Smith & Wesson Inc. (collectively, "Smith & Wesson") hereby submit this Brief in Opposition to Defendants' Motion to Dismiss.  For the reasons discussed below, the motion should be denied.

## PRELIMINARY STATEMENT

The Attorney General characterizes his actions as "routine" and the dispute over his October 13, 2020 administrative subpoena (the "Subpoena") as "quotidian."  But the Amended Complaint alleges that the Subpoena is part of a larger campaign to silence Second Amendment speech disfavored by the Attorney General.  Smith & Wesson asserts several constitutional challenges to the Attorney General's abuse of prosecutorial power, supported by extensive factual allegations that must be taken as true at this stage.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).  Those allegations, not the Attorney General's pleas to the contrary, govern this motion.

In *NAACP v. Alabama*, 357 U.S. 449 (1958), the Supreme Court held that threshold constitutional challenges *must* be resolved before any subpoena may be enforced.  The Supreme Court has also emphasized that constitutional scrutiny is particularly important where, as here, the State's actions are alleged to impinge upon highly sensitive areas such as freedom of speech and the communication of ideas.  *Sweezy v. New Hampshire*, 354 U.S. 234, 245 (1957).

A fundamental role of federal courts is to protect the people from unconstitutional action under color of state law.  *Mitchum v. Foster*, 407 U.S. 225, 242 (1972).  Serving in this role, federal courts have regularly found that the issuance of subpoenas can violate First Amendment rights and other constitutional rights.  Smith & Wesson plausibly alleges these constitutional transgressions through detailed factual allegations.  The Attorney General's arguments to the contrary are unavailing, and in many instances raise factual issues not appropriate for resolution at this stage. For these reasons, the Attorney General's motion to dismiss should be denied.

## FACTUAL BACKGROUND

**I.      The Attorney General's Improper Use of His Prosecutorial Power.**

The Attorney General has made clear that he will employ the full police power of the State to coerce Smith & Wesson to abandon its political views and support his Second Amendment-related policies.  Amended Complaint ("AC") ¶¶ 77-82.  He has partnered with anti-Second Amendment activists such as Giffords Law Center ("Giffords"), Brady, and Do Not Stand Idly By, which have been explicit in their goal of restricting Americans' freedom to own and carry firearms, and to limit the firearms industry's ability to manufacture and sell firearms.  AC ¶¶ 28-42, 83-92.

In May 2018, at a press conference with Giffords, Governor Murphy announced an "unprecedented" gun-related litigation initiative, which would "combine the investigative and enforcement powers of the State with the expertise of the nation's leading gun litigation coalition." AC ¶ 122.  A Giffords press release touted that its partners in the "FACT litigation coalition" would "work closely with New Jersey" under the Attorney General's leadership.  AC ¶ 85.  The "FACT litigation coalition" is a consortium of major law firms committed to "unprecedented cooperation" in pursuing gun control policies, and it has been charged with finding ways to circumvent legislative and Second Amendment protections.  AC ¶¶ 31, 93-101.

In August 2018, the Attorney General issued a Request for Qualifications ("RFQ") for "Firearms Counsel."  The RFQ sought only law firms that had "substantial experience" with firearms litigation or similar "*public safety impact litigation* claims," AC ¶ 87, and made clear that the Attorney General would delegate his immense prosecutorial power to these firms and pay them on a contingency basis, thus creating an effective "bounty system" that is fundamentally inconsistent with his obligation to neutrally and impartially administer justice.  AC ¶¶ 88-92.

At a March 12, 2019 press conference, the Attorney General "signed on" with the activists' anti-firearms agenda and committed to undertake the "next step" in his campaign by directly (and

falsely) linking Smith & Wesson to gun crimes.  AC ¶¶ 103-04.  His goal is to compel Smith & Wesson to adopt the State's viewpoint on the Second Amendment by "*naming and shaming*" it, and he will not stop until that goal is accomplished.  AC ¶ 104.  Further underscoring that this is no "garden variety" campaign, a few months later, at a New York University conference, Attorneys General and FACT law firms (including the Attorney General's Firearms Counsel) discussed using consumer protection and false advertising litigation to target firearms manufacturers.  AC ¶ 37.

In short, the public record shows a systematic, well-funded and coordinated campaign in which the Attorney General, and the anti-Second Amendment activists he has partnered with, publicly admit that their goal is to assail Second Amendment proponents until their views either conform to those of the activists or are eliminated from the public debate.  AC ¶¶ 76-101.

## II.     The Subpoena and Smith & Wesson's Response.

Against this backdrop, the Attorney General issued his Subpoena, which is based on the same theories advanced by the activists — *i.e.,* false advertising and consumer protection under the New Jersey Consumer Fraud Act (CFA).  The Subpoena demands that Smith & Wesson produce documents relating to its constitutionally protected *opinions*.  AC ¶¶ 66-75.  For example, the inquiry into whether Smith & Wesson's products can be legally carried by consumers in New Jersey seeks an opinion on the legal issue of constitutional carry.  Twenty states have opined, contrary to New Jersey, that constitutional carry is the law.  Similarly, the Attorney General seeks to "investigate" whether, in Smith & Wesson's opinion, owning a firearm "enhances" one's lifestyle, whether "novice, untrained [c]onsumers" can effectively use a firearm for defense, and whether "guns enhance safety."  Such value judgments and opinion cannot constitute fraud.

## III.    The Attorney General's Retaliatory State Court Suit.

Months after Smith & Wesson filed its original Complaint, the Attorney General moved to enforce the Subpoena in state court.  AC ¶¶ 126-36.  The retaliatory nature of that filing is evident:

3

he waited two months to file it on an expedited basis; he sought a finding of contempt and a bar on Smith & Wesson's business and speech "irrespective of the merits" of the action, when such penalties were unavailable as a matter of law; and admitted that he had *already* concluded that Smith & Wesson was actively deceiving its customers and potential customers. *Id.* The message was unequivocal — Smith & Wesson must relinquish its constitutional rights or suffer an immediate cessation of its business. This has been the goal of the Attorney General all along, and his actions are plainly unconstitutional and appropriate for this Court to scrutinize.

## ARGUMENT

I. *Younger* **Abstention Is Inappropriate.**

Federal courts have a "virtually unflagging obligation" to hear cases within their jurisdiction. *Colo, River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). In *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court reigned in *Younger* and made clear that *only* three "exceptional circumstances" can justify *Younger* abstention. Even in those cases, abstention is permissible only if the state action was "ongoing" at the time of federal filing, and only if it affords the federal plaintiff adequate opportunity to assert his federal defenses. *Id.* at 70 (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)). Finally, abstention is never appropriate if the state action was brought in bad faith or if the state court cannot remedy the federal plaintiff's injuries. *Jaffery v. Atl. Cnty. Prosecutor's Off.*, 695 F. App'x 38, 41 (3d Cir. 2017); *Younger v. Harris*, 401 U.S. 37, 43 (1971).

The Attorney General bears the burden of showing that abstention is warranted in this case.[1] *Sprint*, 571 U.S. at 81-82. "[T]he Court must accept as true plaintiff's allegations in the

---

[1] Contrary to the Attorney General's suggestion, AG Br. at 10, *Younger* abstention is not "a jurisdictional question." *Hamilton v. Bromley*, 862 F.3d 329, 334 (3d Cir. 2017); *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989). As a result, Smith & Wesson bears no burden to show that this Court has jurisdiction.

complaint." *Pasqua v. Council*, No. 00-2418, at 6 (D.N.J. Mar. 8, 2001) (Brown, J.) (Ex. 3 to Scheideman Decl.), *aff'd sub. nom. Anthony v. Council*, 316 F.3d 412 (3d Cir. 2003); *Monaghan v. Deakins*, 798 F.2d 632, 635 (3d Cir. 1986), *aff'd in part, vacated in part*, 484 U.S. 193 (1988).

The Attorney General fails to establish that the state action fits any of *Sprint's* "exceptional circumstances," and has not shown that the state proceeding was "ongoing" when Smith & Wesson filed in this Court. Moreover, he has insisted that the state court should not hear Smith & Wesson's federal objections to his Subpoena. AG St. Br. (Apr. 6, 2021) (Ex. 2 to Scheideman Declaration) at 14-16. The Amended Complaint plausibly alleges prosecutorial bad faith and, under New Jersey law, the state action cannot adequately remedy Smith & Wesson's injuries. For all these reasons, this Court must not abstain under *Younger*.

### A.   None of the Required "Exceptional Circumstances" Is Present.

Under *Sprint*, abstention is permitted only if there are (1) "ongoing state criminal prosecutions," (2) "quasi-criminal" "civil enforcement proceedings," or (3) pending civil proceedings involving certain orders "uniquely in furtherance of the state courts' ability to perform their judicial functions." 571 U.S. at 78, 81. "*Younger* extends . . . no further." *Id.* at 82; *see also 615 River Rd. Partners, LLC v. Borough of Edgewater*, No. 17-12659, 2019 WL 1930755, at *7 (D.N.J. Apr. 30, 2019) (Vasquez, J.) (holding that *Younger* only "narrowly extend[s]" beyond criminal proceedings; state action did not meet "narrow category of abstention-appropriate cases").

The Attorney General argues that by moving to compel in state court (in his words, "a quotidian subpoena dispute"), he hatched either a quasi-criminal "enforcement proceeding" or one involving orders uniquely in furtherance of the state courts' judicial function. Dkt. No. 29-1, AG Br. at 3, 12. He is wrong. Indeed, if true, his position would bar federal review of *any* state action that *might* one day result in a quasi-criminal civil enforcement action or a contempt order. That would make a mockery of *Sprint*'s fundamental holding.

### 1.   The New Jersey Action Is Not "Akin to a Criminal Prosecution."

The state court action is not an "enforcement proceeding" "'akin to a criminal prosecution'

in 'important respects.'"  *Sprint*, 571 U.S. at 78-79 (citation omitted).[2]  The Attorney General has

told the state court that the "only question it should resolve" is "whether to require . . . compliance

with an administrative subpoena[.]"  AG St. Br. (Feb. 12, 2021) (Scheideman Decl. Ex. 1) at 1.

He told this Court that "[t]here has been no determination that anything Smith & Wesson said in

its advertisements did in fact violate the CFA," and that he "very clearly isn't asking for [sanctions]

yet" in the motion-to-compel action.  AG Br. at 29; Dkt. No. 26 (Mar. 15, 2021 Tr.) at 18.

*Sprint* defined a "quasi-criminal" "enforcement proceeding" by citing actions that were

unmistakably punitive — bar disciplinary proceedings; a custody hearing against abusive parents;

welfare cheat proceedings; and proceedings against a school for sex discrimination.  *Id.* at 79.  The

Third Circuit has cited proceedings against a tax cheat and termination proceedings against a law-

enforcement officer accused of perjury.  *PDX N., Inc. v. Comm'r N.J. Dep't of Lab. & Workforce

Dev.*, 978 F.3d 871 (3d Cir. 2020); *Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176

(3d Cir. 2014).  A state action is "quasi-criminal" only if it is "more akin to a criminal prosecution

than are most civil cases."  *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 132 (3d Cir. 2014).

The state court "quotidian subpoena dispute" falls outside those narrow bounds.  AG Br. at 3.

To determine whether an action is quasi-criminal, courts consider whether (1) the action

was commenced by the State in its sovereign capacity, (2) the proceeding was initiated to sanction

the federal plaintiff for some wrongful act, (3) there are other similarities to criminal actions, such

as a preliminary investigation that culminated with the filing of formal charges, and (4) the State

---

[2] The Attorney General implies that a civil enforcement action need not be "akin to a criminal proceeding."  AG Br. at 13.  He is wrong.  "After *Sprint*, the threshold requirement for applying *Younger* abstention is that the state civil enforcement proceeding must be 'quasi-criminal' in nature."  *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014).

could have alternatively sought to enforce a parallel criminal statute. *ACRA Turf Club*, 748 F.3d at 138. Other than the Attorney General initiating the state action, none of these factors applies.

*First*, the Attorney General admits that the state court action was not initiated to "sanction" Smith & Wesson for a wrongful act. Mar. 15, 2021 Tr. at 16-18; AG Br. at 14 n.9. Rather, he claims that he is enforcing the Subpoena as part of a "routine" "investigation." AG Br. at 1. No CFA charges have been filed, so any CFA prosecution is (in his words) "hypothetical." AG St. Br. (Feb. 12. 2021) at 14. And because no order to comply exists, no contempt may be found. *Silverman v. Berkson*, 141 N.J. 412, 426 (1995). Only *if* Smith & Wesson disobeys a court order may contempt or another sanction be imposed. Those penalties, too, are hypothetical at this point.

This case is similar to *Online Merchants Guild v. Cameron*, 468 F. Supp. 3d 883 (E.D. Ky. 2020), *rev'd on other grounds*, No. 20-5723, 2021 WL 1680265 (6th Cir. Apr. 29, 2021), where an attorney general served administrative subpoenas on merchants under Kentucky's consumer protection law. Some of the merchants moved to quash in state court, while their trade association sought injunctive relief in federal court. The federal court declined to abstain because "[t]he purpose of the [state court] proceeding is simply to determine whether [a merchant] must comply with the CID," and "[a]ny consequence stemming from an unfavorable decision will not result in liability but, instead, [the merchant] will simply have to provide the requested information. *Such a result is a far cry from any criminal sanction*." 468 F. Supp. 3d at 898 (emphasis added). On appeal, the Sixth Circuit reversed the district court on the merits, but left its *Younger* analysis untouched. *See* 2021 WL 1680265 at *8-*12. That the Sixth Circuit reached the merits is evidence that it, too, saw an ordinary motion to compel as "a far cry from any criminal sanction."

*Second*, there exists no preliminary investigation that has *culminated* with the filing of formal charges. *Sprint*, 571 U.S. at 79-80 (emphasis added). It is not enough for *Younger* purposes

that the Attorney General *might* one day bring charges under the CFA.  *Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 817 (7th Cir. 2014).  In every case where the Supreme Court has found a quasi-criminal action under *Younger*, the state had *already* "commenced . . . proceedings by filing some type of formal complaint or charges."  *ACRA Turf Club,* 748 F.3d at 140.

The Attorney General ignores this authority and binding Third Circuit precedent in favor of a single unpublished decision. AG Br. at 14-15 (citing *Backpage.com v. Hawley*, No. 17-1951, 2017 WL 5726868 (E.D. Mo. Nov. 28, 2017)).  In that case, the court found that a subpoena enforcement action was "quasi-criminal" because it had "the *potential* to culminate in the filing of a formal complaint or charges."  2017 WL 5726868, at *6 (emphasis added).  But that is not the law: a quasi-criminal state action must have "culminated" (past tense) "with the filing of formal charges."  *ACRA Turf Club*, 748 F.3d at 138.  "[A] hypothetical future CFA claim," AG St. Br. (Feb. 12, 2021) at 14, is not a "pending" enforcement action.  *ACRA Turf Club*, 748 F.3d at 132. Existing charges are required.  *Malhan v. U.S. Sec'y of State*, 938 F.3d 453, 463-64 (3d Cir. 2019).

*Third*, there is no parallel criminal statute under which the Attorney General could have charged Smith & Wesson.  In the post-*Sprint* cases where the Third Circuit has found a "quasi-criminal" civil action, the state could have pursued criminal liability on the same facts alleged in its civil complaint.  *See Gonzalez*, 755 F.3d at 182 (lying under oath); *PDX N.*, 978 F.3d at 884 (tax evasion).  Here, by contrast, while there may be criminal analogs to parts of the CFA, Smith & Wesson has not been accused of violating that statute, so the penalties it permits are irrelevant.

## 2.    The State Action Does Not Involve Orders Uniquely in Furtherance of the State Court's Ability to Perform Its Judicial Function.

*Sprint's* third category, "proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions," does not apply.  *Sprint* pointed to two such orders: a finding of contempt and an order to post bond.  *Id.* at 78 (citing *Juidice v.*

*Vail*, 430 U.S. 327 (1977); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987)).  But no such "unique" order has issued in this case, let alone an order on the motion to compel.  The Attorney General argues that abstention is warranted if contempt might be found in the *future*, *see* AG Br. at 16-17, yet he fails to cite a precedential case stretching *Sprint* in this way.  Nor would such a holding make sense, because every judicial proceeding carries with it the *possibility* of a contempt finding.  *Weston Capital Advisors, Inc. v. PT Bank Mutiara, Tbk*, 738 F. App'x 19, 21 (2d Cir. 2018).  The Attorney General's reading of *Sprint* would render *Younger* abstention virtually boundless.

The two unpublished district court cases that the Attorney General cites made precisely the error that he urges on this Court.  AG Br. at 16-17.  The District of Maryland found that a motion-to-compel proceeding fell within *Sprint's* third category because the filing of the state action triggered "judicial oversight of the CIDs."  *Lupin Pharms., Inc. v. Richards*, No. 15-cv-1281, 2015 WL 4068818, at *4 (D. Md. July 2, 2015).  *Backpage.com* relied on *Lupin* to make the same mistake.  2017 WL 5726868, at *8.  But "judicial oversight" is not a judicial *order* (let alone a "unique" one), and "*Younger* extends . . . no further" than the "three narrow categories of cases" defined in *Sprint*.  *Sprint*, 571 U.S. at 82; *ACRA Turf Club*, 748 F.3d at 132.

By contrast, the only *published* opinion on point answered the question correctly.  In *Online Merchants Guild*, the court was asked to abstain in deference to a state action regarding the validity of a non-self-executing CID.  There, as here, the state court had not directed compliance, so there was no judicial "order" to evaluate.  And there, as here, there had been no finding of contempt, so *Juidice* (the prototypical contempt case that *Sprint* cited) was inapposite.  Accordingly, the court properly found that "[*Sprint's* third] category is clearly not implicated."  468 F. Supp. 3d at 898.

### B.   Even if *Sprint's* Exceptions Were Met, *Middlesex* Still Precludes Abstention.

Even if one of *Sprint's* "exceptional circumstances" existed (they do not), abstention is inappropriate unless each "additional" *Middlesex* factor is satisfied.  *Sprint*, 571 U.S. at 78, 81.

Because there is not "an ongoing state judicial proceeding" that offers "an adequate opportunity to raise [federal] challenges," this Court may not abstain.  *Id*. at 70.

*First*, at the time of federal filing, there was no "ongoing state judicial proceeding" to disturb.  Smith & Wesson brought this suit at an "appropriate time" in the life of the state investigation — *i.e.*, "the period between the threat of enforcement and the onset of formal enforcement proceedings."  *La. Debating & Literary Ass'n v. City of N.O.*, 42 F.3d 1483, 1490-91 (5th Cir. 1995) (citation omitted).  Two months later, the Attorney General moved to compel in state court and now demands abstention, based on his later-filed action.  But the "virtually unflagging" duty of a federal court to exercise its jurisdiction cannot turn on the gamesmanship of such a belated, unilateral tactical maneuver.  *Sprint*, 571 U.S. at 78.

Since *Sprint*, the appropriate time to consider whether an ordinary civil action is "ongoing" for *Middlesex* purposes is *the time of the federal filing*.  The Attorney General cites *Hicks v. Miranda* (1975), which held that abstention is allowable "where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court."  422 U.S. 332, 349.  *Middlesex* extended *Hicks* to civil actions.  But it was *Middlesex's* liberal approach to abstention — seeming to permit it in *any* case, no matter its posture, if the federal plaintiff would not be unduly prejudiced — that *Sprint* pointedly renounced.  *ACRA Turf Club*, 748 F.3d at 135-36.

Just as the *Middlesex* test cannot make a civil action "quasi-criminal," it cannot make a late-filed action "ongoing."  In *Middlesex*, judicial proceedings were "ongoing" because, at the time of federal filing, state bar disciplinary proceedings had already begun, which was, "in effect[,] a filing with the [state] Supreme Court."  457 U.S. at 433.  After *Sprint*, *Middlesex* may not be stretched beyond the quasi-criminal context.  571 U.S. at 81.  Here, no "judicial in nature"

proceeding predated the federal suit — only the issuance of a non-self-executing Subpoena.  The Attorney General may not later file a show-cause motion, cite *Hicks*, and demand abstention.  *Id*. *Sprint* ruled out that tactic.

Each of the cases that the Attorney General cites is pre-*Sprint*,[3] does not concern abstention,[4] or is distinguishable.  AG Br. at 18-19.  In *Fairfield Cmty. Clean Up Crew, Inc. v. Hale*, 735 F. App'x 602 (11th Cir. 2018), for example, the state had seized gambling devices before the federal filing, but did not move to condemn the property until ten days later.  *Id*. at 604.  That is a far cry from the *two months* it took the Attorney General to file his motion to compel.

*Second*, abstention is permissible only if the "constitutional claims of respondents can be determined in the state proceedings."  *Middlesex*, 457 U.S. at 435.  In this case, the Attorney General has insisted that the state court should not consider Smith & Wesson's constitutional objections to his Subpoena.  AG St. Br. (Feb. 12, 2021) at 14-16.  He calls those objections "premature," and asks the state court to ignore them and "simply compel compliance[.]"  *Id*. at 15, 16.  Mere weeks after making these representations in state court, he now presents the opposite argument to this Court, making assurances Smith & Wesson is able to "raise[] its constitutional arguments" in the state action.  AG Br. at 17.  This Court should reject such double-speak.

## C.   Equitable Considerations Preclude Abstention.

### 1.   Smith & Wesson Does Not Have an Adequate Remedy in State Court.

When the state court cannot "afford adequate protection" or provide an "adequate remedy" to the federal plaintiff, abstention is inappropriate.  *Younger*, 401 U.S. at 45, 43.  Months before the Attorney General's state filing, Smith & Wesson asked this Court to enjoin the enforcement of

---

[3] *E.g.*, *Arbitron Inc. v. Cuomo*, No. 08-8497, 2008 WL 4735227 (S.D.N.Y. Oct. 27, 2008); *Cuomo v. Dreamland Amusements, Inc.*, No. 08-6321, 2008 WL 4369270 (S.D.N.Y. Sept. 22, 2008).

[4] *E.g.*, *EEOC v. Univ. of Pa.*, 850 F.2d 969, 978 (3d Cir. 1988).

11

his Subpoena and declare his broader investigation unlawful.  AC ¶¶ 218-25.  The state court action is strictly limited to the issue of compulsion under the *instant* Subpoena. N.J.S.A. § 56:8-6; N.J.R. Civ. P. 1:9-6(a)-(b).  By law, the state court cannot enjoin the Attorney General's unlawful campaign against Smith & Wesson on a motion-to-compel proceeding.  Whether a different state court could provide such relief is irrelevant: *Younger* asks whether the "[p]arallel state-court proceedings," the ones that are actually "ongoing," are adequate.  *Sprint*, 571 U.S. at 77, 78. Because the remedies available in the current state action are limited, this Court must not abstain.

## 2. The Attorney General's Bad Faith Precludes Abstention.

Abstention is always inappropriate when "state proceedings are being undertaken in bad faith or for purposes of harassment." *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010).  The Third Circuit has instructed courts to consider whether an investigation (1) "was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was [brought] . . . in retaliation of the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions." *Jaffery*, 695 F. App'x at 41 (internal quotation marks omitted).  The Amended Complaint plausibly alleges each of these three factors.

*First*, the Subpoena seeks information that could not support a case for fraud under the CFA.  *See infra* at 14-17.  As the New York Times has recognized, the Attorney General's arguments are "disingenuous" and the Subpoena is "a Trojan horse to expose" Smith & Wesson's inner workings and fan political opposition to the company.  Am. Compl. ¶ 97 and n.18; *cf. Wichert v. Walter*, 606 F. Supp. 1516 (D.N.J. 1985).

*Second*, the Attorney General is intent on discouraging the exercise of constitutional rights. By his own admission, he is trying to "turn up the heat" on Smith & Wesson, whose political views he disfavors, AC ¶ 77, and whom his political allies have asked him to harass, *id*. ¶¶ 8-42.  After

Smith & Wesson filed suit in this Court, the Attorney General requested that the state court shut down *all* of Smith & Wesson's business and speech. *Id.* ¶¶ 4-9, 126-36. As he now admits, the state court could not at that time impose such draconian sanctions. *See* Mar. 15, 2021 Tr. at 16-18; AG Br. at 14 n.9. But that was not the point: retaliation was.

*Third*, as the Amended Complaint explains, the issuance of this Subpoena was also part of a coordinated effort by certain Attorneys General, supported by outside counsel, to hold firearms manufacturers like Smith & Wesson legally accountable for gun-related criminality for which they are not responsible. AC ¶¶ 28-42, 76-101. Evidence of bad faith can be shown by pointing to "something akin to a series of prosecutions." *Williams v. Red Bank Bd. of Educ.*, 662 F.2d 1008, 1022 n.14 (3d Cir. 1981). A nationwide effort to target the firearms industry is just that.

In *Google, Inc. v. Hood*, bad faith was found on similar facts. 96 F. Supp. 3d 584, 595 (S.D. Miss. 2015), *vacated on other grounds*, 822 F.3d 212 (5th Cir. 2016). There, Google alleged that an alliance of state Attorneys General was working with outside interests to harass companies in its industry. And it alleged that the Mississippi Attorney General's "investigation and issuance of [a] subpoena represented an effort to coerce Google to comply with his requests regarding content removal." *Id.* at 595. This was "significant evidence of bad faith" and so precluded abstention.[5] *Id.* Here, Smith & Wesson's case is even stronger: New Jersey's Attorney General has not only subpoenaed the company's records, but retaliated against it as well.

All of this evidence of bad faith is adequately pled in the Amended Complaint and must be taken as true. *Chiropractic All. of N.J. v. Parisi*, 854 F. Supp. 299, 307 (D.N.J. 1994). To the extent that the Attorney General disputes Smith & Wesson's factual allegations, Smith & Wesson

---

[5] On review, the Fifth Circuit did not disturb the lower court's "bad faith" finding, so it remains good law. *See* 822 F.3d 212, 223 (5th 2016) (affirming the district court on alternative grounds).

is entitled to discovery on this issue. *Cobb v. Sup. Jud. Ct. of Mass.*, 334 F. Supp. 2d 50, 54 (D. Mass. 2004). Any disputed facts must be resolved by the fact finder in light of the totality of the evidence. *See, e.g.*, *Chiropractic All.*, 854 F. Supp. at 307.

## II.   Smith & Wesson Has Plausibly Pleaded Its Claims.

To survive a motion to dismiss, a complaint need only contain sufficient factual matter to state a claim for relief that is simply plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Importantly, at the Rule 12 stage, all factual allegations contained in a complaint must be accepted as true, and the Court must draw all reasonable inferences in Smith & Wesson's favor. *Twombly*, 550 U.S. at 572.

### A.   Smith & Wesson's First Amendment Claims Cannot Be Dismissed.

The Attorney General does not dispute that Smith & Wesson plausibly pleads the elements of its First Amendment claims. Accordingly, none of these counts can be dismissed as a matter of law and the inquiry ends there. Rather, he argues that (1) because he is investigating "fraudulent" speech, the First Amendment does not apply; and (2) an administrative subpoena cannot "regulate" speech. This misses the point. The Constitution is not suspended because the State merely *suspects* fraudulent speech. And nowhere does Smith & Wesson allege that the Subpoena regulates speech; the Complaint alleges that the Attorney General's use of *this Subpoena under these circumstances* violates the Constitution. These allegations must be accepted as true.

#### 1.   The Subpoena Targets Protected Opinion Speech.

The Attorney General cites no authority to support his conclusion that the Constitution is suspended merely because an investigation targeting "fraudulent statements" exists. In any event, the Amended Complaint clearly alleges that the Subpoena addresses issues of *opinion and public debate*, which cannot be fraud. Indeed, no Subpoena topic addresses *any specific affirmative factual statement* that could be fraudulent, AC ¶¶ 65-75, because "to constitute a fact, a statement's

14

content must be susceptible of 'exact knowledge' at the time it is made." *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1998).[6]  Generalized statements regarding product safety are opinion, not fraud, as this Court recognized in *Tatum v. Chrysler Group*, when it found representations that a car was "very safe" were a "classic example[] of non-actionable opinion." No. 10-4269, 2011 WL 1253847, at *4 (D.N.J. Mar. 28, 2011).

The Attorney General claims the Subpoena is a tool to investigate the "factual bases" for Smith & Wesson's advertisements, but the cases he cites dealt with measurable and quantifiable statements that could be proven false, not opinion.  *See* AG Br. at 30-31.  *In re Riddell Concussion Reduction Litig.*, 121 F. Supp. 3d 402 (D.N.J. 2015), involved disprovable claims that football helmets reduced concussions.  *EP Henry Corp. v. Cambridge Pavers, Inc.* held that statements that are "plausibly demonstrable by objective testing and analysis of the products" are actionable under the CFA.  383 F. Supp. 3d 343, 352 (D.N.J. 2019).  None of the purported opinions here can be disproven or objectively tested, nor are they "verifiable and measurable."  *Id.* at 349.

Simply stated, the Attorney General concludes that any opinion that guns are useful for safety or self-defense is fraudulent, and therefore not entitled to First Amendment protection.  But this mandates the equally absurd conclusion that all persons advocating on this side of the public debate, whether journalist, academic, think tank, or neighbor, are targets for "fraud."  The result is not just a chilling effect; it is a direct suppression of opposing views under the Trojan horse of consumer protection.  The Supreme Court, however, in *District of Columbia v. Heller*, 554 U.S. 570, 636 (2008), removed this "policy choice" from the reach of the state's police power.

---

[6] As New Jersey's Appellate Division has explained, fraud is an exacting standard for any litigant to prove because "he must establish the falsity of a material representation of a presently existing or past fact." *Joseph J. Murphy Realty, Inc. v. Shervan*, 159 N.J. Super. 546, 551 (App. Div. 1978).

In *Heller*, the Court recognized that "a citizen has 'a right to carry arms in *defence* of his property or person, and to use them, if either were assailed with such force, numbers or violence as made it necessary *for the protection or safety of either*.'" 554 U.S. at 611 (emphasis added) (quoting *Johnson v. Tompkins*, 13 F. Cas. 840, 852 (C.C.E.D. Pa. 1833)). Further, the Second Amendment speaks of "security" as the reason for its existence. Statements speaking to a constitutionally enshrined policy decision and rights cannot constitute "fraud." As *Heller* recognized, "the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Id*. at 636. To wit, the Eastern District of California struck down a statute prohibiting firearms dealers from displaying handguns visible from outside their stores, holding that prohibited "policy choices" include violations of the First Amendment, because California could not accomplish its goals to combat handgun suicide and crime by violating the Constitution. *Tracy Rifle & Pistol LLC v. Harris*, 339 F. Supp. 3d 1007, 1019 (E.D. Cal. 2018).

In claiming that fraud may exist, the Attorney General points to only Smith & Wesson's supposed failure to advertise New Jersey's concealed carry laws, which, he contends, is required under the Hazardous Products Regulations. AG Br. at 31. But no Subpoena is required to resolve that claim. And for Rule 12 purposes, the Attorney General does not dispute that such statements would constitute (1) speech; (2) to which Smith & Wesson objects, and that (3) is compelled by the government — which is all that is needed to state a claim for compelled speech. *Semple v. Griswold*, 934 F.3d 1134, 1143 (10th Cir. 2019). Moreover, compelled speech is not permissible simply because the government's message is "factual."[7] There is no First Amendment distinction between "compelled statements of opinion" and "compelled statements of 'fact'" because both

---

[7] Nor does the Attorney General's reliance on *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 66 (2006), carry the day because the regulation there compelled conduct, not speech.

"form[s] of compulsion burden[] protected speech." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 797-98 (1988).

Even with commercial speech, compulsion is prohibited because any such compulsion must be narrowly drawn and "not more extensive than is necessary to serve [New Jersey's] interest." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980). A more narrowly drawn and less burdensome method is obvious: modification of New Jersey's online permit form, required for every firearm purchase, to include the required statement. *See 44 Liquormart, Inc. v. R.I.*, 517 U.S. 484, 507 (1996). The Attorney General has the burden to show he can compel speech. *See Nat'l Inst. of Family & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2376 (2018). He cannot justify his violations of the First Amendment, much less prevail on a motion to dismiss.

### 2. The Administrative Subpoena Violates the First Amendment.

The Attorney General argues that subpoenas cannot violate the First Amendment because they do not "regulate" speech. AG Br. at 29. But this is not alleged in the Amended Complaint; rather, Smith & Wesson alleges the Attorney General's *use of the Subpoena* violates its First Amendment rights. Were the Attorney General's view correct, subpoenas could never be challenged or invalidated on First Amendment grounds. This is not the law, and courts routinely find that subpoenas can violate the First Amendment. In fact, the Supreme Court has specifically recognized that "the power of compulsory process [must] be carefully circumscribed when the investigative process tends to impinge upon such highly sensitive areas as freedom of speech[.]" *Sweezy v. New Hampshire*, 354 U.S. 234, 245 (1957).

Cases invalidating subpoenas on First Amendment and other constitutional grounds are legion. For example, in *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. Waterfront Comm'n of N.Y. Harbor*, 512 F. Supp. 781 (S.D.N.Y. 1981), administrative subpoenas seeking union

members' names were held unconstitutional and vacated because disclosure was likely to have a chilling effect on First Amendment rights.  *See also Fed. Election Comm'n v. Machinists Non-Partisan Pol. League*, 655 F.2d 380 (D.C. Cir. 1981); *In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corp. Dated July 23, 2020*, No. 20-80141, 2020 WL 7202818 (N.D. Cal. Dec. 7, 2020); *In re Rule 45 Subpoena Issued to Cablevision Sys.*, No. 08-347, 2010 WL 2219343 (E.D.N.Y. Feb. 5, 2010); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 WL 852521 (D. Kan. Mar. 16, 2007).  Even the threat of a subpoena with an investigation can chill First Amendment rights.  *White v. Lee*, 227 F.3d 1214, 1229 (9th Cir. 2000).[8]

### 3. The Complaint Plausibly Pleads a Claim for Viewpoint Discrimination.

The Attorney General does not dispute that the Amended Complaint plausibly pleads viewpoint discrimination, which simply requires that the government target speech when "the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."  *Rosenberger* v. *Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).  In other words, the test for viewpoint discrimination considers whether "the government has singled out a subset of messages for disfavor based on the views expressed."  *Matal* v. *Tam*, 137 S. Ct. 1744, 1766 (2017) (Kennedy, J., concurring).

The allegations in the Amended Complaint meet those criteria.  Smith & Wesson is not only an advocate of Second Amendment rights, but has publicly committed to opposing the Attorney General's views.  AC ¶¶ 54-62.  That the Attorney General has singled out those views for disfavor is evident from his public statements, ongoing campaign, and his "naming and

---

[8] The Attorney General's authority is unavailing.  *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 628 (1986), held that the government "violates no constitutional rights by merely investigating," but it relied on the facts of the case; it did not pronounce that investigations *never* violate constitutional rights.  As for *SEC v. McGoff*, 647 F.2d 185 (D.C. Cir. 1981), it held that *the laws at issue, as opposed to the subpoenas*, did not regulate expression.

shaming" Smith & Wesson and "turning the heat up" on it.  AC ¶¶ 16-17, 76, 113.  In the latest

step, the Attorney General now seeks to curb Smith & Wesson's speech by labeling opinions as

"fraud," in an attempt to chill Smith & Wesson's speech going forward.  AC ¶ 67; *see also Local*

*1814*, 512 F. Supp. at 788; *Machinists*, 655 F.2d at 382.  When Smith & Wesson sought to vindicate

its rights in this Court, the Attorney General (two months later) initiated the state court enforcement

action seeking to silence Smith & Wesson's speech under color of law.  These allegations implicate

precisely the "egregious form of content discrimination" that the Supreme Court has warned courts

to guard against.  *Rosenberger*, 515 U.S. at 829.  The Attorney General does not address this, and

therefore, Smith & Wesson's viewpoint discrimination claim cannot be dismissed.

### 4.    The Complaint Plausibly Alleges Retaliation.

Smith & Wesson alleges retaliation for exercising its First Amendment rights to petition

this Court and freely expressing its Second Amendment views.  To plead retaliation, Smith &

Wesson only needs to allege that (1) it engaged in constitutionally protected conduct, (2) the

Attorney General engaged in retaliatory action sufficient to deter a person of ordinary firmness

from exercising his constitutional rights, and (3) a causal link existed between the protected

conduct and the retaliatory action.  *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir.

2019).  All three elements are satisfied, because (1) the right to petition the courts and express

one's views is constitutionally protected conduct; (2) Smith & Wesson alleges that the Attorney

General issued the Subpoena and sought a shutdown of Smith & Wesson's business activities and

speech through the state court action, which would deter virtually anyone from exercising his right

to seek redress from the courts and speak; and (3) Smith & Wesson's views on firearms and filing

this suit were the reasons for the retaliatory conduct.  AC ¶¶ 65-82, 137-46.

The Attorney General challenges none of this.  Instead, he argues that Smith & Wesson

"must prove that the enforcement action was not independently justified."  AG Br. at 32.  That is

incorrect as a pleading matter — no "proof" is required at the Rule 12 stage.  The Attorney General has raised a factual issue regarding the justification for the Subpoena that cannot be resolved on a motion to dismiss.  The Attorney General's claim that his actions are "justified by the CFA" is irrelevant because it is also a factual issue.

Nor may this Court defer to a "presumption that a prosecutor has legitimate grounds for the action he takes[.]"  AG Br. at 32 (quoting *Hartman v. Moore*, 547 U.S. 250, 263 (2006)).  *Hartman* involved a decision on *summary judgment*, not a motion to dismiss, because this is a fact issue.  The same is true of *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999).  Further, that case involved selective prosecution, not retaliation.  No presumption applies at the Rule 12 stage when allegations must be accepted as true.

### 5.     The Complaint Plausibly Pleads Prior Restraint.

The elements of unlawful prior restraint are properly alleged: (1) the Attorney General's request for a total ban on Smith & Wesson's speech is a proactive measure that imposes a burden on First Amendment-protected activity; and (2) Smith & Wesson's speech and its filing of this suit constituted conduct with "a significant expressive element that drew the legal remedy in the first place."[9]  *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706 (1986).  The Attorney General argues that the relief he seeks in state court would have "nothing to do with any expressive conduct at all[]" because it would result from Smith & Wesson's "past failure to comply with the law requiring its compliance with the Subpoena."  AG Br. at 33-34.  But the Amended Complaint alleges that he seeks sanctions *in retaliation for Smith & Wesson exercising its First Amendment*

---

[9] There is a "heavy presumption" against prior restraint, *Bantam Books, Inc v. Sullivan*, 372 U.S. 58, 70 (1963), which can only be rebutted where there is a "great and certain" evil that "cannot be mitigated by less intrusive measures."  *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (Blackmun, J., in chambers).  The Attorney General cannot do so on a motion to dismiss; in any event, he articulates no such "evil," much less one demanding a total shutdown of speech.

*rights.*  AC ¶¶ 6-7, 142-46.  His lone case, *Arcara*, was decided on summary judgment and involved the shutdown of a bookstore after pervasive allegations of a prostitution ring operating on the premises.  No such criminal conduct is identified by the Attorney General here, so the heavy presumption in *Bantam* cannot be overcome.  Accordingly, Count V states a claim for prior restraint.

### B.    The Complaint Plausibly States Claims for Violations of Smith & Wesson's and Citizens' Second Amendment Rights.

#### 1.    Smith & Wesson Alleges Violations of Its Second Amendment Rights.

To state a Second Amendment claim, a plaintiff must allege: (1) that the challenged law imposes a "burden on conduct falling within the scope of the Second Amendment's guarantee," and (2) that the law does not pass means-end scrutiny.  *U.S. v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010).  Smith & Wesson states a claim for violation of its Second Amendment rights because it alleges that (1) the Subpoena and investigation place a burden on Smith & Wesson's ability to manufacture firearms by forcing the company to expend financial resources and causing financial risk and reputational harm, therefore impeding its ordinary course business activities,[10] and (2) the Subpoena and enforcement action are not justified by the Attorney General's purported goal of "prosecuting fraud."  *Id.* at 89

The Attorney General wrongly argues that manufacturers and sellers of firearms have no Second Amendment rights, but the law is exactly opposite — regulations on firearms sales "do not fall outside the scope of the Second Amendment[,]" and consequently "a court necessarily must examine the nature and extent of the imposed condition."  *Id.* at 91-92 n.8; *see also Ezell v. City of Chicago*, 651 F.3d 684, 696 (7th Cir. 2011).  In light of that precedent, this Court should reject

---

[10] The Attorney General argues that government action cannot "burden Second Amendment rights because it has not interfered with any individual's possession or use of any firearm."  AG Br. at 22.  Again, this is a fact issue that cannot be resolved at the Rule 12 stage.

the Attorney General's cited unpublished decisions.  *See Zimmer v. N.J. Div. of Child Prot. & Permanency*, No. 15-cv-2524, 2016 WL 234844 (D.N.J. Jan 20, 2016); *Rearick v. Wiedemer*, No. 11-cv-624, 2012 WL 3231096 (M.D. Pa. Aug. 6, 2012).  Those cases addressed whether one-time limited inquiries burdened *individuals'* rights, not manufacturers' Second Amendment rights.

The Attorney General also makes a strawman argument that the "CFA and subpoena authority it accords DCA" are "rules of general applicability" that allow conditions on commercial sales without violating the Second Amendment.  AG Br. at 23.  Smith & Wesson does not challenge the CFA or its conveyance of the subpoena power.  Rather, it challenges the Attorney General's use of the subpoena power *in this instance as targeted to Smith & Wesson*, as well as his ongoing campaign against the company and his retaliatory actions.  This case does not implicate the evenhanded administration of a generally applicable law, such as the tax in *Leathers v. Medlock*, 499 U.S. 439, 447 (1991).  Nor does it involve a law enforcement investigation and finding as to ongoing criminal activity, as in *Arcara*.  *See* AG Br. at 23.  The Attorney General admits that he is still investigating, and that "[t]here has been no determination that anything Smith & Wesson said in its advertisements did in fact violate the CFA."  *Id.* at 29.  This case does not involve mere "conditions on commercial sales" as he frames it, but rather a broader goal to cripple Smith & Wesson's ability to manufacture, market, and sell firearms.  *Id.* at 23.

The Attorney General's last resort is to argue that the State has an "important interest" that justifies the burden on Smith & Wesson — *i.e.*, protecting the public from false advertising.  *Id.* at 24.  But the Attorney General has identified no such actionable false advertising.[11]  There is simply no "interest" to justify the burden that the Attorney General has placed on Smith & Wesson.

---

[11] The Attorney General argues that "laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful regulatory measures[.]"  AG Br. at 24

### 2. The Complaint Plausibly Alleges that the Rights of Citizens to Purchase and Bear Firearms Are Being Violated.

Smith & Wesson has third party standing to bring a Second Amendment claim on behalf of New Jersey gun owners, because it alleges that (1) it suffered an injury in fact, (2) it has a close relation to gun owners, and (3) there is some hindrance to gun owners' ability to protect their interests. *Powers v. Ohio*, 499 U.S. 400, 411 (1991). *First*, Smith & Wesson alleges the deprivation of its Second Amendment rights as discussed above. *See supra* at 21-22; AC ¶¶ 2-4, 117-18, 123-25. The Attorney General scoffs at this overwhelming harm, labeling it "purely conjectural," AG Br. at 26, but that is a dispute of fact not suitable for resolution now.

*Second*, because Smith & Wesson is an advocate for the Second Amendment and is a manufacturer, it satisfies the "close relationship" requirement for third party standing. These facts are strikingly similar to *Eisenstadt v. Baird*, 405 U.S. 438, 445 (1972), where the Supreme Court held that a "close relationship" existed between a birth control advocate/distributor, and single people who wished to obtain contraceptives, because the relationship was "not simply that between a distributor and potential distributees, but that between an advocate of the rights of persons to obtain contraceptives and those desirous of doing so." The Attorney General attempts to dismiss Smith & Wesson's close relationship as one merely between a seller and "potential customers," AG Br. at 26 (citing *Holland v. Rosen*, 895 F.3d 272, 287 (3d Cir. 2018)), but Smith & Wesson's advocacy elevates the relationship beyond purely commercial concerns.[12] AC ¶¶ 54, 59.

---

(quoting *Heller*, 554 U.S. at 626-27 n.26). The Subpoena is not a "law" and imposes no generally applicable "conditions and qualifications."

[12] The Attorney General argues that "customers have interests in receiving advertising *without* fraudulent or deceptive statements — making Smith & Wesson a particularly unsuitable representative of their interests." AG Br. at 26. But he admits there has been no finding of fraud.

*Third*, New Jersey gun owners cannot protect their interests, because they have no standing to challenge enforcement of the Subpoena — *i.e.*, the very instrument by which he is violating their Second Amendment rights — in court. *See, e.g.*, *In re Addonizio*, 53 N.J. 107, 132 (1968). The Attorney General's cited cases address far different circumstances and do not implicate the procedural hurdles that firearms owners would face in challenging the Subpoena. *See Holland*, 895 F.3d at 288; *Pitt News v. Fisher*, 215 F.3d 354, 362-63 (3d Cir. 2000).

Finally, the Attorney General's actions harm firearms owners and buyers. The burden his actions place on Smith & Wesson's manufacture of firearms in turn impedes New Jersey citizens' ability to purchase and bear them. AC ¶¶ 115-25. Enforcement of the Subpoena will "impose[] a burden on conduct falling within the scope of the Second Amendment[.]" *Marzarella*, 614 F.3d at 89. That is all that Smith & Wesson must plead to survive dismissal, and it has done so.

## C.   The Complaint Plausibly Pleads Violations of Smith & Wesson's Fourth, Fifth, and Fourteenth Amendment Rights.

Smith & Wesson plausibly alleges that the Subpoena constitutes an unreasonable search and seizure under the Fourth Amendment because it is vastly overbroad, seeks information related to opinion or the basis of a legal position, demands information about lawful conduct that is protected under the First, Second, and Fourteenth Amendments, is not reasonably related to any legitimate investigative purpose, and is overly burdensome. AC ¶¶ 198-99. It is the Attorney General's burden to meet these threshold requirements, and the allegations in the Complaint demonstrate that burden cannot be satisfied. *See v. City of Seattle*, 387 U.S. 541, 544 (1967). Further, the Attorney General never disputes that the Subpoena is overly burdensome, AC ¶¶ 45, 199, which is sufficient grounds for the Court to deny dismissal. *See*, 387 U.S. at 544.

Instead, the Attorney General argues that he can investigate merely for its own sake. AG Br. at 35. But he does not have unfettered subpoena power; the Fourth Amendment prohibits

24

"investigations premised solely upon *legal* activity" because they are forbidden "fishing expeditions." *Major League Baseball v. Crist*, 331 F.3d 1177, 1182, 1187 (11th Cir. 2003). And when First Amendment rights are at issue, Fourth Amendment restrictions must be applied with "scrupulous exactitude." *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978).

The Complaint alleges that the investigation has no legitimate purpose. AC ¶¶ 3, 199. The Attorney General responds by concluding that consumers are being defrauded, but only points to a regulation that purportedly requires notice of New Jersey law to consumers. But no Subpoena is necessary, because he can determine compliance by referencing publicly available information. The Attorney General's argument that he can do as he pleases so long as he calls it an "investigation" is not enough, and certainly not on a motion to dismiss. Even if he could show a legitimate purpose in investigating false advertising, the Subpoena topics cannot bear on the truth or falsity of the advertisements because they concern opinion. *See supra* at 14-17.

The Attorney General also does not contest that Smith & Wesson has properly pled its Fifth and Fourteenth Amendment claims, and therefore they cannot be dismissed. An administrative subpoena fails the Fifth Amendment rational basis test when the state's proffered reasons do not support its action. *N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 398 (3d Cir. 2012). Aside from his assertion that his investigatory power is untrammeled, the Attorney General has only put forward one rationale for his investigation: the state requirement to advertise permit information, which cannot pass muster for the reasons set forth above. *See supra* at 17. An investigation of lawful, constitutionally-protected activity can never be a legitimate interest of the state. *See, e.g.*, *Handschu v. Police Dep't of City of N.Y.*, 219 F. Supp. 3d 388, 391 (S.D.N.Y. 2016). No matter the level of review, the Subpoena violates the Fifth and Fourteenth Amendments.

**D.      The Complaint Plausibly Alleges that the PLCAA Bars the Subpoena.**

The Protection of Lawful Commerce in Arms Act ("PLCAA") bars the Attorney General's Subpoena, because it bars any CFA action to which it may relate.  If a federal statute preempts a state prosecution, it prohibits any investigation in ostensible support of that prosecution.  *Cuomo v. Clearing House Ass'n, LLC*, 557 U.S. 519, 523 (2009); *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 380 (1992).

### 1.      A CFA Proceeding Would Be Barred Under the PLCAA.

The PLCAA prohibits "any governmental entity" from suing manufacturers or sellers of firearms for damages, injunctive or declaratory relief, or other relief, "resulting from the criminal or unlawful misuse" of firearms by third parties.  15 U.S.C. § 7903(3)-(5).

The Attorney General wrongly claims that any CFA action against Smith & Wesson would not "result[] from the criminal or unlawful misuse of firearms."  AG Br. at 27-28.  But as alleged in the Amended Complaint, and as clearly shown by the Subpoena topics and the Attorney General's public admissions, his entire investigation centers on the use or misuse of firearms by *third parties*.  That is precisely what the PLCAA forecloses.  Congress was alarmed by the rise of liability actions brought by federal and state governments and private interest groups against gun manufacturers and sellers, seeking "relief for the harm caused by the misuse of firearms by third parties[.]"  15 U.S.C. § 7901(3).  This is the kind of action that the Attorney General threatens. This Court should defer to Congress's intent, and not allow the Attorney General to launder a third-party tort liability through the CFA.

### *2.      The CFA Does Not Fall Within the PLCAA's "Marketing Exception."*

Nor does the Attorney General's CFA suit fall within the PLCAA's predicate exception, which excepts from preemption suits alleging that "a manufacturer or seller . . . knowingly violated a State or Federal statute applicable to the sale or marketing" of a firearm.  *Id.* § 7903(5)(A)(iii).

A *generally applicable* consumer fraud law—applicable to firearms and firewood alike—that would sweep in all manner of statutes is not what Congress had in mind when it carved out this limited exception,[13] and so the CFA cannot serve as a "predicate statute" under the PLCAA.

In *City of New York v. Beretta U.S.A. Corp.* (2008), the Second Circuit held that New York's general criminal nuisance statute was not a predicate. 524 F.3d 384. Although that law was *literally* applicable to the sale or marketing of a firearm, *Beretta* held that the predicate exception applies only to "statutes (a) that expressly regulate firearms, or (b) that courts have applied to the sale and marketing of firearms; [or (c)] that do not expressly regulate firearms but that clearly can be said to implicate the purchase and sale of firearms." *Id.* at 404. Similarly, in *Ileto v. Glock, Inc.* (2009), the Ninth Circuit held that California's general negligence statute was not a PLCAA predicate, even though it *could* be applied to gun sales or marketing. 565 F.3d 1126. This Court should follow *Beretta* and *Ileto*. The CFA does not expressly regulate firearms.[14] No court has applied it to the sale or marketing of a firearm. And it no more clearly regulates the firearms industry than the generic nuisance statute in *Beretta*. 524 F.3d at 404.

The Attorney General's cited cases are unavailing. *Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422 (Ind. Ct. App. 2007), from an intermediate state court, has been rejected by the Second and Ninth Circuits. In *Gary*, the court held that a nuisance statute was a PLCAA predicate. *Id.* at 434. But as *Ileto* found, *Gary*'s treatment of the PLCAA was cursory, making it of "limited persuasive value." 565 F.3d at 1135 n.5. Moreover, *Gary* rested on the alternative grounds that the "plaintiffs had [also] alleged violations of the state's *statutory firearm regulations*." *Id.*

---

[13] In describing this exemption, Congress pointed to laws tailored specifically to the sale and marketing of firearms and ammunition. 15 U.S.C. § 7903(5)(A)(iii)(I)-(II).

[14] That the Attorney General has prosecuted firearm manufacturers under the CFA, or settled CFA actions with them, is immaterial: *Beretta* asks whether "*courts* have applied [a statute] to the sale and marketing of firearms," not whether prosecutors have done so. 524 F.3d at 404.

*Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 303 (Conn. 2019), is inapposite. The Connecticut Supreme Court held that the state's Unfair Trade Practices Act ("CUTPA") satisfied the predicate exception. But in Connecticut, "CUTPA [had] long been among the primary vehicles for litigating claims that sellers of potentially dangerous products such as firearms have marketed those products in an unsafe and unscrupulous manner." *Soto*, 202 A.3d at 304. And the court pointed to *specific cases* where CUTPA had been applied to firearm manufacturers. *Id*. at 306 & n.49. CUTPA was therefore a predicate statute, *Soto* held, under the second prong of *Beretta*'s definition.[15] *Id*. at 306-08. Here, by contrast, no New Jersey court has applied the CFA to the seller or manufacturer of a firearm. Nor does the CFA mention firearms or target them.

*Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123 (D. Nev. 2019), misconstrued *Ileto*, which directly rejected the suggestion that the PLCAA "covers all state statutes that *could be applied* to the sale or marketing of firearms." *Ileto*, 565 F.3d at 1136. *Ileto* held that a law that *specifically* regulated firearm sales and/or marketing was necessary. *Id*. at 1134. Seizing on *Ileto*'s holding, *Prescott* held that because Nevada's Deceptive Trade Practices Act "specifically regulates the sale and marketing of goods" and because firearms are a consumer good, the Act regulates the sale and marketing of firearms. 410 F. Supp. 3d at 1139. But *Ileto* does not support this conclusion. Because the Attorney General aims to impose on Smith & Wesson liability "resulting from" the unlawful acts of third-party firearm users, and because no court has applied the CFA to a firearm manufacturer, his investigation and Subpoena are preempted.

---

[15] *Soto* also held that CUTPA "implicate[s] the purchase and sale of firearms" on the theory that a gun manufacturer or seller can be prosecuted for false marketing under the act. 202 A.3d at 306. *Beretta* expressly rejected this reading of the PLCAA. Its three-part definition was meant to pick out laws "that actually regulate the firearms industry," not those that *could* do so. 524 F.3d at 404.

### E.     The Complaint Plausibly Alleges a Dormant Commerce Clause Violation.

To plead a Dormant Commerce Clause claim, a litigant must allege one of three theories: that a state statute (1) clearly discriminates against interstate commerce in favor of intrastate commerce; or (2) imposes a burden on interstate commerce incommensurate with the local benefits secured; or (3) has the practical effect of extraterritorial control of commerce occurring outside the boundaries of the state.  *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 90 (2d Cir. 2009).  The Attorney General only addresses the first theory, and does not dispute that the application of the CFA to Smith & Wesson's nationwide advertising will have extraterritorial effect even though it purportedly applies only in New Jersey.  AC ¶¶ 140, 210; *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 585 (1986).  Because the advertisements in question are not fraudulent, *see supra* at 14-17, Smith & Wesson plausibly alleges that the "local benefits secured" by the Subpoena are "incommensurate" with the burden on interstate commerce.  AC ¶¶ 209-10; *Freedom Holdings Inc. v. Spitzer*, 357 F.3d 205, 216 (2d Cir. 2004).

### F.     The Attorney General's Arguments as to "Improper Motive" Are Flawed.

The Attorney General argues that the entire Complaint fails because the claims supposedly "all rely on the false premise that the instant Subpoena was served in furtherance of some improper motive" and that this conclusion lacks supporting allegations.  AG Br. at 46.  Both arguments fail. Taking the allegations in the Complaint as true, Smith & Wesson easily pleads an improper motive. *See* AC ¶¶ 2-42, 115-46.  And only the retaliation and Fifth Amendment claims require anything approaching such a motive, and the Attorney General points to no contrary authority.

The Attorney General's reliance on *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679 (S.D.N.Y. 2018), is meritless.  If anything, *Exxon* demonstrates the folly and danger of the Attorney General's careless assertions of "fraud" here.  In *Exxon*, the state court ultimately held that the suit against Exxon (*i.e.*, the one that gave rise to Exxon's attempt to vindicate its

constitutional rights in federal court) was "without merit," "hyperbolic," and the "result of an ill-conceived initiative" by the New York Attorney General. *People by James v. Exxon Mobil Corp.*, 119 N.Y.S.3d 829, 2019 WL 6795771, at *26 (N.Y. Sup. Ct., N.Y. Cnty. 2019). In ruling for Exxon, the court noted that the lawsuit arose from "politically motivated statements by [the] former New York Attorney General[]" and that there was no evidence for the state's claims despite "three and one-half years of investigation and pre-trial discovery that required ExxonMobil to produce millions of pages of documents and dozens of witnesses for interviews and depositions." *Id.* at *1. That is the path the Attorney General seeks, which is why this Court's intervention is necessary.

Moreover, the federal court ruling in *Exxon*, a nonbinding opinion from a different jurisdiction, is distinguishable. First, in *Exxon*, the parties agreed that allegations of an improper motive were essential to each of the claims. 316 F. Supp. 3d at 705. That is not the case here. Second, there were no allegations, as in this case, that (1) the Attorneys General retaliated for Exxon's attempt to vindicate its rights in federal court, or (2) the Attorneys General had integrated outside lawyers from activist groups into their prosecutorial team. AC ¶¶ 83-92. Third, *Exxon* did not grapple with First Amendment-protected speech as to fundamental rights under the Second Amendment. And *Exxon* implicated the underlying veracity of public and quantifiable disclosures to investors, rather than the general, opinion-based advertising statements at issue here. In short, the federal court *Exxon* decision yields no assistance to the Attorney General's argument.

## III.   Even if the Claims Against DCA Are Dismissed for Sovereign Immunity, the Action Against the Attorney General May Proceed under Section 1983.

Regardless of whether the Division of Consumer Affairs is immune under the Eleventh Amendment, under 42 U.S.C. § 1983, the Attorney General has no such immunity.

## CONCLUSION

For the reasons discussed herein, the Court should deny Defendants' Motion to Dismiss.

30

Respectfully submitted,

Dated:  May 17, 2021

*/s/ Christopher M. Strongosky*
Christopher M. Strongosky
Amanda Laufer Camelotto
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Tel: (973) 520-2550
christopher.strongosky@dlapiper.com
amanda.camelotto@dlapiper.com

Joseph A. Turzi (admitted *pro hac vice*)
Edward S. Scheideman (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Tel:  (202) 799-4000
joe.turzi@dlapiper.com
edward.scheideman@dlapiper.com

Courtney G. Saleski
**DLA PIPER LLP (US)**
One Liberty Place
1650 Market Street
Suite 5000
Philadelphia, PA 19103-7300
Tel: (215) 656-2431
courtney.saleski@dlapiper.com

*Attorneys for Plaintiffs*
*Smith & Wesson Brands, Inc.*
*Smith & Wesson Sales Company*
*Smith & Wesson Inc.*