UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

SMITH & WESSON BRANDS, INC.,
SMITH & WESSON SALES
COMPANY, and SMITH &
WESSON, INC.

     Plaintiffs,

     v.

GURBIR S. GREWAL, in his official
capacity as Attorney General of the
State of New Jersey and NEW
JERSEY DIVISION OF CONSUMER
AFFAIRS

     Defendants.

Hon. John Michael Vazquez, U.S.D.J.
Hon. Edward S. Kiel, U.S.M.J.

Docket No. 2:20-cv-19047

**<u>CIVIL ACTION</u>**

**(ELECTRONICALLY FILED)**

Motion Return Date: July 6, 2021

_____

REPLY BRIEF ON BEHALF OF DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)
_____

**GURBIR S. GREWAL**
ATTORNEY GENERAL OF NEW
JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625
*Attorney for Defendants Gurbir S. Grewal
and New Jersey Division of Consumer
Affairs*

Stephanie J. Cohen
Angela Cai
Assistant Attorneys General
 Of Counsel and On the Brief

Robert J. McGuire
Justine M. Longa
Michael T. Moran
John T. Passante
Tim Sheehan
Deputy Attorneys General
 On the Brief

## **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ................................................................1

ARGUMENT .........................................................................................2

I.    THIS COURT SHOULD ABSTAIN UNDER *YOUNGER* ................2

    A.    *That The State Court Enforcement Proceedings Are Not Yet Over Is Irrelevant To The* Younger *Analysis* .......................................................2

    B.    *The Court Should Not Interfere With State Court Judicial Functions*................................................5

    C.    *The* Middlesex *Factors Are Plainly Met*.....................6

II.    EVEN IF *YOUNGER* DID NOT APPLY, DISMISSAL UNDER RULE 12(b)(6) IS APPROPRIATE.......................8

    A.    *Plaintiff Has No Valid Second Amendment Claim* ....................8

    B.    *Plaintiff's PLCAA Claim Falls Short*........................10

    C.    *Plaintiff Cannot Show Retaliatory Motive, Dooming Its First, Fourth, and Fourteenth Amendment Claims* ................................................11

    D.    *Plaintiff's Remaining First Amendment Arguments Also Fail*.......................................................13

    E.    *Plaintiff's Commerce Clause Arguments Lack Merit* ...........................................................15

CONCLUSION ......................................................................................15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arcara v. Cloud Books, Inc.*,
  478 U.S. 697 (1986)..................................................................................8, 13

*Backpage.com v. Hawley*,
  No. 17-1951, 2017 WL 5726868 (E.D. Mo. Nov. 28, 2017) ..........................4, 5

*City of New York v. Beretta U.S.A. Corp.*,
  524 F.3d 384 (2d Cir. 2008) .............................................................11

*Cutler v. Green*,
  754 F. App'x 96 (3d Cir. 2018) ...........................................................2

*Eisenstadt v. Baird*,
  405 U.S. 438 (1972)........................................................................10

*Exxon Mobil Corp. v. Schneiderman*,
  316 F. Supp. 3d 679 (S.D.N.Y. 2018) ...........................................12, 13

*Forty One News, Inc. v. Cty. of Lake*,
  491 F.3d 662 (7th Cir. 2007) ...............................................................6

*Hartman v. Moore*,
  547 U.S. 250 (2006)........................................................................12

*Hicks v. Miranda*,
  422 U.S. 332 (1975)........................................................................6

*Holland v. Rosen*,
  895 F.3d 272 (3d Cir. 2018) ................................................................9

*Ileto v. Glock, Inc.*,
  565 F.3d 1126 (9th Cir. 2009) ..........................................................11

*Jaffrey v. Atl. Cty. Prosecutor's Off.*,
  No. 15-6937, 2016 WL 8692847 (D.N.J. Apr. 8, 2016),
  *aff'd*, 695 F. App'x 38 (3d Cir. 2017)................................................8

*Juidice v. Vail*,
430 U.S. 327 (1977)...................................................................................5

*Leathers v. Medlock*,
499 U.S. 439 (1991)...................................................................................8

*Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*,
538 U.S. 600 (2003)..................................................................................15

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*,
457 U.S. 423 (1982).................................................................................3, 6

*National Inst. of Family & Life Advocates v. Becerra*,
138 S. Ct. 2361 (2018)............................................................................15

*Online Merch. Guild v. Cameron*,
468 F. Supp. 3d 883 (E.D. Ky. 2020),
*vacated on other grounds*, 995 F.3d 540 (6th Cir. 2021) ....................................4

*PDX N. Inc. v. Comm'r N.J. Dep't of Labor & Workforce Dev.*,
978 F.3d 871 (3d Cir. 2020) ....................................................................3

*Pennzoil Co. v. Texaco, Inc.*,
481 U.S. 1 (1987).....................................................................................7

*Perez v. Ledesma*,
401 U.S. 82 (1971)...................................................................................7

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970).................................................................................15

*Pitt News v. Fisher*,
215 F.3d 354 (3d Cir. 2000) ....................................................................9

*Prescott v. Slide Fire Solutions, LP*,
410 F. Supp. 3d 1123 (D. Nev. 2019)....................................................11

*In re Riddell Concussion Reduction Litig.*,
121 F. Supp. 3d 402 (D.N.J. 2015)........................................................14

*Soto v. Bushmaster Firearms Int'l, LLC*,
202 A.3d 262 (Conn. 2019) ....................................................................11

*Sprint Commc'ns, Inc. v. Jacobs*,
   571 U.S. 69 (2013) ...............................................................................2, 4, 5

*Tatum v. Chrysler Grp. LLC*,
   No. 10-4269, 2011 WL 1253847 (D.N.J. Mar. 28, 2011) ..................................14

*UMDNJ v. Corrigan*,
   347 F.3d 57 (3d Cir. 2003) ...............................................................12

*United States v. Marzzarella*,
   614 F.3d 85 (3d Cir. 2010) ...............................................................9

**Statutes**

15 U.S.C. § 7901(b)(1).............................................................................10

15 U.S.C. § 7903(5)(A).........................................................................10, 11

N.J. Stat. Ann. § 2C:21-7(e) ...................................................................4

N.J. Stat. Ann. § 56:8-2........................................................................14

N.J. Stat. Ann. § 56:8-3........................................................................12

N.J. Stat. Ann. § 56:8-6.........................................................................2

## **PRELIMINARY STATEMENT**

Plaintiff strains mightily in its opposition brief to argue that the State's mere subpoena for information—to determine whether Smith & Wesson's representations to New Jersey consumers violate state law—itself violates the federal Constitution. But Plaintiff is wrong on the law, and wrong about which court should evaluate the merits of its claims. As to the forum, principles of *Younger* abstention demand that these questions play out in the ongoing subpoena enforcement action in New Jersey Superior Court, where Plaintiff moved to quash and makes the same arguments it does here, and where a state court already held oral argument. Because *Younger* abstention aims to prevent federal intervention in state court processes like this one, this Court should abstain, and allow that state judge to rule.

As to the merits, Plaintiff's opposition repeats the sheer speculation and legal hyperbole in its Amended Complaint, but does nothing to counter the facts that require dismissal: (1) the Attorney General had valid authority to issue the Subpoena to secure information as to whether Plaintiff violated the Consumer Fraud Act (CFA); (2) similar subpoenas have been served on companies across a wide variety of products and services; and (3) similar enforcement actions have been initiated when there is non-compliance. Plaintiff's claim it should be immune from the CFA by dint of the product it sells is specious. And its claim that statements by public officials supporting gun safety are evidence of improper motive fares no better.

## ARGUMENT

## I.   THIS COURT SHOULD ABSTAIN UNDER *YOUNGER*.

Federal courts should abstain when a civil enforcement action meets criteria that make it "akin to a criminal prosecution" in "important respects," or if it involves "certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79-80 (2013).

> A. *That The State Court Enforcement Proceedings Are Not Yet Over Is Irrelevant To The* Younger *Analysis.*

This Court should abstain because there is a state civil-enforcement proceeding with "*one or more* of the following characteristics: '(1) the action was commenced by the State in its sovereign capacity, (2) the proceeding was initiated to sanction the federal plaintiff for some wrongful act, and (3) there are other similarities to criminal actions, such as a preliminary investigation that culminated with the filing of formal charges.'" *Cutler v. Green*, 754 F. App'x 96, 100 (3d Cir. 2018) (emphasis added). Plaintiff acknowledges the first disjunctive factor is met. (Opp. at 7.) Its arguments as to the latter two factors are meritless.

As to the second factor, Plaintiff argues that it has not *yet* been sanctioned for failure to obey the subpoena. (Opp. at 7.) But the law only requires such proceedings be "initiated." *Sprint*, 571 U.S. at 79. Here, the subpoena enforcement proceedings were initiated against Smith & Wesson for the wrongful act of failing to comply, for which the state court can impose sanctions. *See* N.J. Stat. Ann. § 56:8-6 (providing

2

that relief against the defendant include "[a]djudging such person in contempt of court" and other forms of sanction). Although there is not yet an order to comply, the proceeding "*may* result in sanctions for a wrongful act." *PDX N. Inc. v. Comm'r N.J. Dep't of Labor & Workforce Dev.*, 978 F.3d 871, 883-84 (3d Cir. 2020). The very nature of *Younger* is to "restrain federal courts from interfering with *ongoing* state judicial *proceedings*," 571 U.S. at 88 (emphasis added), not just judgments.[1] The Court should reject Plaintiff's illogical position, which would apparently bar abstention from any state proceeding—including criminal ones—where the ultimate sanction has not yet been imposed.

As to the third factor, Plaintiff appears to agree that the Attorney General has initiated "a preliminary investigation" that potentially results in "the filing of formal charges," but again quips that this particular investigation has not yet "culminated with the filing of formal charges." (Opp. at 17.) But that runs into two immediate problems. For one, while charges have not yet been filed for any CFA violations that the documents at issue may substantiate, that in no way undermines the fact that the

---

[1] *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), is instructive. There, the Court upheld the district court's decision to abstain under *Younger* where the attorney ethics proceedings were initiated by a local ethics commission, before adjudication by a state-wide Disciplinary Review Board and then the New Jersey Supreme Court. The Court held that even the initial proceedings are "of a character to warrant federal-court deference," *id.* at 434, and the lack of actual sanctions issued was not relevant to the abstention decision.

3

subpoena enforcement proceeding *itself* remains ongoing. For another, the *Sprint* Court noted that investigations "*often culminating* in the filing of a formal complaint or charges" can qualify for *Younger* abstention. *Sprint*, 571 U.S. at 79–80 (emphasis added). A CFA investigation is one such investigation, as it often leads to a formal complaint that may result in penalties akin to criminal ones for purposes of *Younger*.[2]

In urging this Court to reject the well-reasoned conclusions in *Backpage.com v. Hawley*, No. 17-1951, 2017 WL 5726868 (E.D. Mo. Nov. 28, 2017), Plaintiff points to a recent decision in *Online Merchants Guild v. Cameron*, 468 F. Supp. 3d 883 (E.D. Ky. 2020), *vacated on other grounds*, 995 F.3d 540 (6th Cir. 2021)—but that case is far afield. There, a trade association filed a federal suit against Kentucky's Attorney General challenging the constitutionality of state price-gouging statutes. Unlike here, the federal plaintiff was not a party to a state court proceeding. *Id.* at 890 n.4. Instead, the state only issued civil investigative demands against individual companies, and there was "no enforcement proceeding" at all. *Id.* at 899. That is why no party raised abstention in the first instance. *Id.* at 898. Those distinctions render *Online Merchants* irrelevant, and simply confirm that all analogous cases have recognized the need for abstention. (*See* Br. 12-20.)

---

[2] Moreover, Plaintiff's insistence that there is no parallel criminal statute inexplicably disregards the criminal analogue, N.J. Stat. Ann. § 2C:21-7(e). (*See* Br. at 15).

4

B. *The Court Should Not Interfere With State Court Judicial Functions.*

The Court should also reject Plaintiff's contention that only judicial contempt orders—and not the proceedings that accompany them—fall into the independent category of actions that concern "the state court's ability to perform its judicial function." *Sprint*, 571 U.S. at 586. Again, this incorrectly overlooks the fact that the proceedings themselves are key "judicial function[s]." (*See* Opp. at 19.) That is why *Juidice* says "that federal-court interference with the State's contempt *process* is 'an offense to the State's interest . . . likely to be every bit as great as it would be were this a criminal proceeding.'" *Juidice v. Vail*, 430 U.S. 327, 335–36 (1977) (emphasis added). Just as there is no requirement that *Younger* abstention applies only after a state court has issued a criminal judgment, there is no requirement that a federal court can only abstain after a state court has already issued its contempt order.

Indeed, Plaintiff's call for this Court to "enjoin any proceedings in the state courts of New Jersey to enforce the Subpoena," (Am. Compl., Dkt. 17 ¶ 218), strikes at the heart of state judicial function. It is difficult to imagine a more direct offense to "a State's interest in the contempt process, through which it vindicates the regular operation of its judicial system." *Juidice*, 430 U.S. at 335. No wonder courts consistently reject Plaintiff's position. *See Lupin Pharms*, 2015 WL 4068818, at *4; *Backpage.com*, 2017 WL 5726868, at *7. This Court should do the same.

C.  The Middlesex *Factors Are Plainly Met.*

Plaintiff's suggestion that the *Middlesex* factors are not satisfied falls short. The factors look to "(1) whether there are ongoing judicial proceedings; (2) whether those proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise constitutional challenges." 457 U.S. at 432. Plaintiff concedes the second (Opp. at 20), but contends neither the first nor third factors are satisfied here. Plaintiff is incorrect.

First, there are ongoing judicial enforcement proceedings in state court. The fact that Plaintiff initiated this action prior to the state court enforcement action is of no significance. For one, Plaintiff's own actions made it impossible for the Attorney General to act first, since it filed this Complaint in federal court the *day* after it told the Attorney General it would not comply with the Subpoena. Its characterization of the enforcement action as somehow "a belated, unilateral tactical maneuver," (Opp. at 20), is thus disingenuous. For another, regardless of Plaintiff's motives in this first-strike suit, the Supreme Court has already confirmed that *Younger* remains applicable where "state . . . proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in federal court." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975). No such proceedings have occurred. Plaintiff's argument is thus "a non-starter." *Forty One News, Inc. v. Cty. of Lake*, 491 F.3d 662, 666 (7th Cir. 2007).

6

As to the third factor, Plaintiff concedes that it *did* have the opportunity to raise constitutional arguments in state court, but continues to confusingly state that it "does not have an adequate remedy in state court." (Opp. at 11-12.) In the state court proceedings, Plaintiff both opposed the motion for enforcement and moved to quash the Subpoena, raising a litany of the same constitutional arguments along the way. *See* Supp. Decl. of Robert J. McGuire ("McGuire Supp. Decl."), Ex. A, Smith & Wesson Br. at 10-14. While the state court might disagree with Smith & Wesson, that is no reason to give it two bites at the same apple. The point of abstention is that the state court is the right forum to ultimately decide the merit of these constitutional claims. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[A] federal court should assume that state procedures will afford an adequate remedy.").[3]

Finally, Plaintiff makes baseless assertions that *Younger* cannot apply because the CFA subpoena was "frivolous," "in retaliation," and "constitute[d] harassment," insisting its say-so alone is enough. (Opp. 22-23). Not so. There is a high burden of proof for this exception, which applies "[o]nly in cases of *proven* harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction." *Perez v. Ledesma*, 401 U.S. 82, 85 (1971) (emphasis added); *see*

---

[3] Smith & Wesson argues that the Attorney General urged the state court to disregard its constitutional claims. But the Attorney General only argued, as it did here, that the claims are premature because the Subpoena does not burden constitutional rights. That the state court might agree is no reason for this Court to take up the same issue.

*also Jaffrey v. Atl. Cty. Prosecutor's Off.*, No. 15-6937, 2016 WL 8692847, at *2 (D.N.J. Apr. 8, 2016), *aff'd*, 695 F. App'x 38 (3d Cir. 2017) (same). Plaintiff simply cannot prove—and does not even allege—that the CFA subpoena was initiated "without hope of obtaining a valid" eventual judgment as to a CFA violation. Nor does Plaintiff have any answer for the fact that this Subpoena is no different from those the Attorney General pursues against others who engage in potentially deceptive marketing to New Jersey consumers. Firearms are simply no exception.

## II.   EVEN IF *YOUNGER* DID NOT APPLY, DISMISSAL UNDER RULE 12(b)(6) IS APPROPRIATE.

### A.  Plaintiff Has No Valid Second Amendment Claim.

As a threshold matter, Plaintiff has pled no cognizable Second Amendment violation. First, Plaintiff acknowledges that asking for information—which is all that the Subpoena does—does not infringe on *any individual's* Second Amendment rights and offers no basis for why this principle would apply differently to manufacturers. (Opp. at 32.) Second, Plaintiff admits that subpoena authority under the CFA is a rule of general applicability but argues that, as a manufacturer of firearms, it should be exempt from the subpoena's reach "as targeted to Smith & Wesson." (Opp. at 32.) But that is not how the law works. Just as Smith & Wesson could be investigated for violation of criminal law, *see Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1986), and just as it can be investigated for tax violations, *see Leathers v. Medlock*, 499 U.S. 439 (1991), it can be investigated for deceptive advertising.

8

Put differently, the CFA has no less force—and New Jersey consumers are not entitled to less protection—when the potential violation pertains to firearms.[4]

Even if the Subpoena could somehow violate Plaintiff's Second Amendment rights, Plaintiff has failed to plead how a manufacturer could assert such a violation. Plaintiff misconstrues *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010), as extending Second Amendment rights to manufacturers, (Opp. at 22.), but that court did no such thing. It held only that commercial regulations on the sale of firearms fall within the ambit of the Second Amendment because individual *citizens* have the "right to possess firearms for defense of hearth and home." *Id.* at 88, 91-92, n.8. Plaintiff cites no law holding that the Second Amendment protects a manufacturer's financial interests from a consumer protection inquiry or in defrauding its consumers with impunity. And the CFA hardly burdens the core of the right, and is justified by the State's important interest in investigating potential fraud.

Plaintiff also lacks the requisite relationship with potential customers to assert third party standing. Plaintiff fails to respond to directly on-point precedents like *Holland v. Rosen*, 895 F.3d 272 (3d Cir. 2018) and *Pitt News v. Fisher*, 215 F.3d 354 (3d Cir. 2000), both of which held that a business cannot assert standing on behalf

---

[4] Plaintiff also incorrectly insists that the Attorney General must identify "actionable false advertising" *before* serving a subpoena. (Opp. at 22.) This is, of course, not how an investigation works—the point of a subpoena is to provide documents that will help confirm or refute the presence of actionable conduct.

9

of potential customers. Instead, it relies on *Eisenstadt v. Baird*, 405 U.S. 438, 445 (1972), which is inapplicable. *Eisenstadt* involved a state statute that prohibited distribution of contraceptives to unmarried people and thus "materially impair[ed]" their rights. By contrast, even assuming this Subpoena somehow limits consumers' ability to buy guns *from Plaintiff*, it does not "materially impair[]" consumers' rights, as they can still buy from other manufacturers. Moreover, third party standing is impermissible because Plaintiff is being investigated for potentially misleading the very class of people for whom it purports to advocate. The incentives of the physician-plaintiff in *Eisenstadt*, however, were aligned with his patients, as he "challenge[d] the . . . statute that limited access to contraceptives" to them. *Id*.

### B.  *Plaintiff's PLCAA Claim Falls Short.*

PLCAA preempts only qualified civil liability actions, and the CFA Subpoena enforcement action (like any resulting CFA claim) is not one of them, as they can arise from a manufacturer's advertising regardless of whether any person ever uses its product, let alone "criminally or unlawfully misuse[s]" the product. 15 U.S.C. § 7903(5)(A). It does not impose liability "for the harm solely caused by [such] criminal or unlawful misuse of firearm products." 15 U.S.C. § 7901(b)(1). Plaintiff's surprising assertion that "the entire investigation centers on the use or misuse of firearms *by third parties*" (Opp. at 26) (emphasis added) is thus demonstrably false and unsupported by any plausibly pled facts.

10

Plaintiff also misconstrues the PLCAA's predicate exception, which is a separate and independent reason to dismiss the claim. Like the Connecticut Unfair Trade Practices Act in *Soto v. Bushmaster Firearms International, LLC*, 202 A.3d 262, 304 (Conn. 2019), the CFA falls squarely within the PLCAA's exemption of actions where "a manufacturer . . . knowingly violated a State or Federal statute applicable to the sale or marketing of the product." 15 U.S.C. § 7903(5)(A). The cases upon which Plaintiff relies, *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008), and *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009), involved statutes that those courts concluded were not applicable to the sale or marketing of the product, not as here, a statute that is specifically applicable to marketing of products such as Plaintiff's. As courts across the country have thus consistently opined, PLCAA did not abrogate a State's ability to prosecute state-law consumer-fraud claims against manufacturers. *See Beretta*, 524 F.3d at 404 (noting the predicate exception can apply when the statute "clearly can be said to implicate the purchase and sale of firearms"); *Soto*, 202 A.3d at 272; *Prescott v. Slide Fire Solutions, LP*, 410 F. Supp. 3d 1123, 1139 (D. Nev. 2019).

### C. Plaintiff Cannot Show Retaliatory Motive, Dooming Its First, Fourth, and Fourteenth Amendment Claims.

Smith & Wesson pleads no valid claim that the Attorney General singled it out without basis for a CFA subpoena. This dooms its First Amendment, Fourth Amendment, and Fourteenth Amendment claims. First, no plausible facts suggest

11

that the Attorney General lacked independent justification for issuing the Subpoena, which is fatal to a retaliatory motive claim. *See Hartman v. Moore*, 547 U.S. 250, 256-58 (2006). Simply put, the Attorney General can initiate a lawful CFA investigation and subpoena if he "believes it to be in the public interest that an investigation should be made" to determine if there is a violation. N.J. Stat. Ann. § 56:8-3; *UMDNJ v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003) (noting law enforcement can act "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not"). Plaintiff's self-serving assertion that it has not violated the law does not remove that justification and is not entitled to any weight. Moreover, that other governments have pursued deceptive advertising charges against Plaintiff further undergirds the Attorney General's basis for at least initiating a CFA *investigation* to determine whether the same is true here.

Second, just as in *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679 (S.D.N.Y. 2018), Plaintiff's jumble of assertions regarding the Attorney General's statements of general public concern about reducing gun violence form no plausible allegation that he acted with an improper motive. Plaintiff's responses to *Exxon* fail. For one, whether the New York Attorney General ultimately prevailed at the fraud trial is irrelevant to the core question in *Exxon*: whether the *investigation* violated the First Amendment. *Id.* at 706-07. For another, it makes no difference that Exxon's First Amendment claims were not rooted in identical bases as Plaintiff's. Instead,

what was dispositive there and here is that neither Exxon nor Plaintiff here adequately alleged that the law enforcement action was launched in retaliation for the exercise of free speech rights. The mere fact that the Attorney General made public statements supporting gun safety, or may share some views with gun-safety advocates, does not establish this Subpoena was served for an illegitimate purpose, let alone bar the State from investigating fraud. *See id.* 708, 712.

Finally, Plaintiff's claim that the subpoena enforcement action was retaliation for this federal suit is flatly disproven by the litany of examples where the Attorney General filed the same action against others who failed to comply with a subpoena. (*See* Br. at 6-7.) The prior restraint claim also fails, as the subpoena enforcement action was initiated for *past* failure to comply and not for protected speech. [5]

*D. Plaintiff's Remaining First Amendment Arguments Also Fail.*

Plaintiff's concession that the Subpoena itself—which seeks only factual information about representations about products, and not its subjective political views—does not regulate speech (Opp. at 17), is fatal to any claim of viewpoint discrimination. Moreover, Plaintiff's assertion that the Subpoena targets protected opinions only and not factual statements (Opp. at 14-15) is wrong for multiple reasons. For one, a subpoena is not required to identify "specific affirmative factual

---

[5] That *Arcara*, 478 U.S. 697, involved criminal conduct is irrelevant. A state action is not a prior restraint if it is not "imposed on the basis of an advance determination that the distribution of particular materials is prohibited." *Id.* at 705 n.2.

statement[s]" since the CFA applies also to "concealment, suppression, or omission[s]" of information as well as "unconscionable commercial practices." N.J. Stat. Ann. § 56:8-2. For another, what Plaintiff self-servingly asserts as opinion could be proven objectively false if, for example, subpoenaed documents reveal no factual basis exists for the statement. Thus, Plaintiff's position that it need not produce any documents based on its say-so that there is no fraud is backwards, and would mean no entity can be subpoenaed in a fraud investigation. Finally, Smith & Wesson has essentially acknowledged in state court that at least some requests in the Subpoena inquire about factual statements.[6] But it refuses to produce *any* documents at all. Cases like *In re Riddell Concussion Reduction Litigation*, 121 F. Supp. 3d 402 (D.N.J. 2015), confirm the underlying factual basis for a statement—what the Subpoena seeks—must be evaluated to discern fraud.[7] That Plaintiff sells firearms does not shield it from inquiry about whether it misrepresented the safety, effectiveness, and benefits of its products.

Plaintiff's challenge of the Hazardous Products Regulations is also premature, as no regulations have been enforced yet. *Id.* The compelled speech argument also

---

[6] *See* McGuire Supp. Decl., Ex. B, Hearing Tr., May 27, 2021 at 51:4-9 ("one example that the AG gave" regarding the firearm's "self-defense trigger and more effective than others" is related to "one request in [the Subpoena] . . . and that's 4E").
[7] The only case that Plaintiff cites, *Tatum v. Chrysler Group LLC*, No. 10-4269, 2011 WL 1253847, at *1, *4 (D.N.J. Mar. 28, 2011), is one in which both parties agreed the statements were non-actionable puffery, and does not apply here.

fails on the merits because the regulation only requires accurate disclosure of what New Jersey's concealed carry law is, not on what the law *should be*. It is like the difference between requiring a fast-food company to publish truthful calorie data (and holding them to account for fraud if they do not) and requiring the company to *endorse* calorie-publication laws. As in context after context, the State "may seek to inform the public and prevent fraud through such disclosure requirements." *Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 623 (2003).[8]

  E.  *Plaintiff's Commerce Clause Arguments Lack Merit.*

  Plaintiff has pled no facts to suggest the Subpoena violates the Dormant Commerce Clause. And Plaintiff cites no law holding that state consumer fraud laws violate the Clause. Combatting consumer fraud "effectuate[s] a legitimate local public interest," where "effects on interstate commerce are only incidental." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). The CFA thus validly applies to Plaintiff's advertisements to New Jersey residents—and does not suddenly become unlawful because of *Plaintiff*'s choice to market in other states.

## CONCLUSION

  This Court should dismiss the Amended Complaint in its entirety.

---

[8] *National Institute of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018), is inapposite as it turned on a lack of factual scientific consensus about whether chemical glyphosate causes cancer. By contrast, no debate exists about what New Jersey laws *factually* require for concealed carry.

Respectfully submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By:     /s/ Robert J. McGuire
        Robert J. McGuire
        Deputy Attorney General
        robert.mcguire@law.njoag.gov
        (609) 376-2787

Dated: June 7, 2021

16