## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SMITH & WESSON BRANDS, INC., SMITH & WESSON SALES COMPANY, and SMITH & WESSON INC., | CIVIL ACTION |
| Plaintiffs, | CASE NO. 2:20-CV-19047-JMV-ESK |
| v. | |
| GURBIR S. GREWAL, *in his official capacity as Attorney General of the State of New Jersey* and NEW JERSEY DIVISION OF CONSUMER AFFAIRS, | |
| Defendants. | |

## PLAINTIFFS' SUR-REPLY IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Christopher M. Strongosky
Amanda Laufer Camelotto
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Tel: 973-520-2550
christopher.strongosky@dlapiper.com
amanda.camelotto@dlapiper.com

Joseph A. Turzi (admitted *pro hac vice*)
Edward S. Scheideman (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Tel: (202) 799-4000
joe.turzi@dlapiper.com
edward.scheideman@dlapiper.com

*Attorneys for Plaintiffs*
*Smith & Wesson Brands, Inc.*
*Smith & Wesson Sales Company*
*Smith & Wesson Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ........................................................................................................... 2

I.     Younger Abstention Is Inappropriate............................................................ 2

      A.   None of the Required "Exceptional Circumstances" Is Present................... 2

          1.   The Motion to Compel Action Is Not "Akin to a Criminal Prosecution."........... 2

          2.   The State Action Does Not Involve Orders Uniquely in Furtherance of the State Court's Ability to Perform Its Judicial Function.................................. 4

      B.   Middlesex Precludes Abstention Even if One of Sprint's Exceptions Is Met............. 5

      C.   Equitable Considerations Preclude Abstention. .......................................... 6

          1.   Smith & Wesson Does Not Have an Adequate Remedy in State Court. ............ 6

          2.   The Attorney General's Bad Faith Precludes Abstention. .................................. 7

II.    Smith & Wesson Has Plausibly Pled Its Claims.......................................... 7

      A.   Smith & Wesson's First Amendment Claims Should Not Be Dismissed. ................. 8

      B.   The Complaint Plausibly States Second Amendment Claims................................. 10

      C.   The Fourth, Fifth, and Fourteenth Amendment Claims Are Plausibly Pled. ............ 13

      D.   The Complaint Plausibly Alleges that the PLCAA Bars the Subpoena.................... 14

      E.   The Complaint Plausibly Alleges a Dormant Commerce Clause Violation. ............ 15

CONCLUSION...................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*44 Liquormart, Inc. v. R.I.*,
    517 U.S. 484 (1996)...................................................................................................10

*ACRA Turf Club, LLC v. Zanzuccki*,
    748 F.3d 127 (3d Cir. 2014).................................................................................2, 3, 4

*Alexander v. CIGNA Corp.*,
    991 F. Supp. 427 (D.N.J. 1998) ...............................................................................8

*Arcara v. Cloud Books, Inc.*,
    478 U.S. 697 (1986)...................................................................................................11

*Baloga v. Pittston Area Sch. Dist.*,
    927 F.3d 742 (3d Cir. 2019)......................................................................................10

*Brown-Forman Distillers Corp. v. New York State Liquor Auth.*,
    476 U.S. 573 (1986)...................................................................................................15

*Chippewa Trading Co. v. Cox*,
    365 F.3d 538 (6th Cir. 2004) .....................................................................................6

*City of New York v. Beretta U.S.A. Corp.*,
    524 F.3d 384 (2d Cir. 2008)................................................................................14, 15

*District of Columbia v. Heller*,
    554 U.S. 570 (2008)......................................................................................................9

*Eisenstadt v. Baird*,
    405 U.S. 438 (1972)...................................................................................................13

*Exxon Mobil Corp. v. Schneiderman*,
    316 F. Supp. 3d 679 (S.D.N.Y. 2018)......................................................................10

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) ...............................................................................11, 12

*Forty One News, Inc. v. Cnty. of Lake*,
    491 F.3d 662 (7th Cir. 2007) ......................................................................................5

*Grewal v. 22Mods4All, Inc.*,
    No. ESX-C-244-19, slip op. (N.J. Super. Ct. Ch. Div. May 24, 2021) ....................3

i

*Hartman v. Moore,*
547 U.S. 250 (2006)..................................................................................14

*Hicks v. Miranda,*
422 U.S. 332 (1975)....................................................................................5

*Holland v. Rosen,*
895 F.3d 272 (3d Cir. 2018)......................................................................12

*Ileto v. Glock, Inc.,*
565 F.3d 1126 (9th Cir. 2009) ..................................................................15

*Illinois Ass'n of Firearms Retailers v. City of Chicago,*
961 F. Supp. 2d 928 (N.D. Ill. 2014) ........................................................12

*Jaffery v. Atlantic County Prosecutor's Office,*
695 F. App'x 38 (3d Cir. 2017) ...................................................................7

*Juidice v. Vail,*
430 U.S. 327 (1977)....................................................................................5

*Leathers v. Medlock,*
499 U.S. 439 (1991)..................................................................................11

*Illinois ex rel. Madigan v. Telemarketing Associates,*
538 U.S. 600 (2003)....................................................................................9

*Malhan v. Sec'y U.S. Dep't of State,*
938 F.3d 453 (3d Cir. 2019)........................................................................4

*Middlesex Cnty. Ethics Committee v. Garden State Bar Ass'n,*
457 U.S. 423 (1982)................................................................................5, 6

*Miller v. Bonta,*
No. 19-CV-1537, 2021 WL 2284132 (S.D. Cal. June 4, 2021)..........9, 13

*Mulholland v. Marion Cnty. Election Bd.,*
746 F.3d 811 (7th Cir. 2014) .....................................................................4

*Online Merchants Guild v. Cameron,*
468 F. Supp. 3d 883 (E.D. Ky. 2020) .........................................................3

*Pennzoil Co. v. Texaco, Inc.,*
481 U.S. 1 (1987)........................................................................................6

*Pitt News v. Fisher,*
215 F.3d 354 (3d Cir. 2000)................................................................12, 13

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
   227 F.3d 489 (5th Cir. 2000) ............................................................................9

*Prescott v. Slide Fire Solutions, LP*,
   410 F. Supp. 3d 1123 (D. Nev. 2019) ..........................................................15

*In re Riddell Concussion Reduction Litigation*,
   121 F. Supp. 3d 402 (D.N.J. 2015) .................................................................8

*Riley v. Nat'l Fed'n of Blind of N.C., Inc.*,
   487 U.S. 781 (1988) .........................................................................................9

*Silverman v. Berkson*,
   141 N.J. 412 (1995) ..........................................................................................3

*Soto v. Bushmaster Firearms Int'l, LLC*,
   202 A.3d 262 (Conn. 2019) ...........................................................................15

*Sprint Commc'ns, Inc. v. Jacobs*,
   571 U.S. 69 (2013) ...............................................................................2, 3, 4, 5

*UMDNJ v. Corrigan*,
   347 F.3d 57 (3d Cir. 2003) .............................................................................14

*United States v. Marzzarella*,
   614 F.3d 85 (3d Cir. 2010) .............................................................................12

*Virginia v. Am. Booksellers Ass'n, Inc.*,
   484 U.S. 383 (1988) .........................................................................................9

*Younger v. Harris*,
   401 U.S. 37 (1971) ................................................................................ *passim*

**Statutes**

15 U.S.C. § 7903(3)-(5) ........................................................................................14

N.J.S.A. § 56:8-6 ...................................................................................................6

N.J.S.A. § 56:8-13 .................................................................................................3

**Other Authorities**

N.J.R. Civ. P. 1:9-6(a)-(b)......................................................................................6

## PRELIMINARY STATEMENT

The Attorney General's Motion to Dismiss presents two issues: (1) whether *Younger* abstention is warranted and (2) whether Smith & Wesson has plausibly pled its claims. His legal and factual arguments fail as to the first issue, not least of all because he admits that his later-filed state court action is a "quotidian subpoena dispute," *i.e.*, an ordinary motion to compel — hardly the sort of quasi-criminal action that supports *Younger* abstention. He fails on the second issue because he does not address Smith & Wesson's factual allegations, much less show how they fail to state the claims alleged. Instead, the Attorney General presents generalized conclusions of "fraud" untethered from the controlling factual allegations. That is not enough under Rule 12.

There is no constitutionally sound justification for the October 14, 2020 administrative subpoena ("Subpoena"). When asked by the state court to identify an "anchor" for his sweeping Subpoena (*i.e.*, what "specific statements and what specific products" indicated or even suggested a potential CFA violation), the Attorney General could articulate none. To wit:

- Regarding his theory of fraud, he stated "it's not appropriate to disclose here, because (a) it's our investigative thinking and our strategy, and (b) we don't have all of the arguments yet[]." May 27, 2021 Hearing Tr. (Ex. 1, "Tr.") at 37:16-23.
- He further declined to state whether Smith & Wesson had violated any relevant law, only vaguely replying that "we have concerns that there might be a violation of the regulation. We haven't conclusively determined that yet, nor have we conclusively determined that there's a statutory violation." *Id.* at 38:13-22.
- The Attorney General does not even "yet know what advertisements will be at issue, let alone which specific statements might violate the CFA." *Id.* at 11:17-19.

These admissions are telling given that the investigation is premised on consumer fraud involving public acts that should in theory be readily discernible. The admissions show that the Attorney General is engaged in an unconstitutional fishing expedition and a baseless search for a "crime," and thus establish his overreach of prosecutorial power. This is one of the central reasons why *Younger* abstention should not apply and why Smith & Wesson's claims are sufficiently pled.

1

## ARGUMENT

I.     *Younger* Abstention Is Inappropriate.

A.     **None of the Required "Exceptional Circumstances" Is Present.**

The Attorney General fails to explain why his "quotidian subpoena dispute" — *i.e.*, one that is ordinary or mundane — meets any of *Sprint's* three narrow exceptions.  AG Br. at 3.[1]

1.     **The Motion to Compel Action Is Not "Akin to a Criminal Prosecution."**

A motion to compel is not a "quasi-criminal" "enforcement proceeding" under *Sprint*.[2] *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014).  An action is "quasi-criminal" if (1) "the action was commenced by the State in its sovereign capacity," (2) "[it] was initiated to sanction the plaintiff for some wrongful act," (3) "there are other similarities to criminal actions, such as a preliminary investigation that culminated with the filing of formal charges," and (4) "the State could have alternatively sought to enforce a parallel criminal statute."  *Id.*  Here, the Attorney General fails to show the state action was initiated to sanction Smith & Wesson for a "wrongful act," or that the state action bears any similarity to a criminal one.  Nor does he cite a parallel criminal statute that he could have used to enforce his non-self-executing Subpoena.

With regard to the second factor, the Attorney General has not accused Smith & Wesson of any act for which it can be sanctioned.  Repeatedly, he has told this the Court that the state action is simply a motion to compel.  AG Br. at 14 n.9.  He does not deny — indeed, he insists — that he is not asking the state court for sanctions.  Mar. 15, 2021 Tr. at 16-18.  And as a matter of law, he cannot.  In New Jersey, sanctions can be imposed only after a party has ignored a *binding*

---

[1] The Attorney General does not contest that he bears the burden of showing that abstention is warranted.  *Compare* Opp. at 4-5, *with* AG Reply at 2-8.

[2] The Attorney General now concedes (as he must) that to fall within *Sprint's* second category, a civil enforcement action must be "quasi-criminal."  *Compare* AG Br. at 13 *with* AG Reply at 2-4.

subpoena that has the force of law.  "No question of contempt may arise [in a motion-to-compel action] until all issues are determined adversely to a party and that party has refused to obey a final order of the court."  *Silverman v. Berkson*, 141 N.J. 412, 426-27 (1995).[3]  In other words, only *if* the court issues an order to compel, and only *if* Smith & Wesson were to disobey, would sanctions be cognizable.  That notional possibility does not render this "quotidian subpoena dispute" a "quasi-criminal" one.  AG Br. at 3; *ACRA Turf Club*, 748 F.3d at 141.  That ends the inquiry, as *Online Merchants Guild* rightly held: a motion-to-compel action is not "quasi-criminal."[4]

The Attorney General fails to meet the third factor because he points to no "similarities to criminal actions" in the state court proceeding.  *ACRA Turf Club*, 748 F.3d at 138.  The Attorney General muses that he might theoretically bring a CFA claim based on facts revealed by his investigation.  AG Reply at 2-3.  But that "hypothetical future CFA claim" is a red herring.  AG St. Br. (Apr. 6, 2021) at 14.  A preliminary investigation that *may* culminate in formal charges is *not* one of the indicia of a quasi-criminal action listed in *ACRA Turf Club*.  *Cf.* 748 F.3d at 138.  No state action has "culminated" in charges against Smith & Wesson — it has not been "charge[d]" with *anything* — and the Attorney General points to no other "similarities" to a criminal case.  *Id.* He would have this Court stretch *Sprint* to encompass *any* state action that could possibly lead to

---

[3] The substantive sanctions permitted for CFA violations (*see* N.J.S.A. § 56:8-13) are irrelevant. Just last month, the Superior Court made clear that flouting a CFA subpoena — even, in that case, a *court-ordered* one — is not itself a violation of the CFA.  *See Grewal v. 22Mods4All, Inc.*, No. ESX-C-244-19, slip op. at *16 (N.J. Super. Ct. Ch. Div. May 24, 2021) (attached as Ex. 2)

[4] The Attorney General's attempt to distinguish *Online Merchants Guild* based on the identity of the parties is unavailing because the parties' identity played no role in that court's abstention analysis.  *Online Merchants Guild v. Cameron*, 468 F. Supp. 3d 883 (E.D. Ky. 2020), *vacated on other grounds*, 995 F.3d 540 (6th Cir. 2021).  There as here, abstention was inappropriate "[b]ecause the . . . state litigation is *not the type of state civil proceeding which warrants abstention*" — it was not "akin to a criminal prosecution," and did not "involve orders . . . uniquely in furtherance of the state courts' ability to [function]."  *Id.* at 890 (emphasis added).

a future enforcement action.  But "[t]he possibility that a state proceeding may lead to a future prosecution of the federal plaintiff is not enough to trigger *Younger* abstention."  *Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 817 (7th Cir. 2014).  To abstain here would be reversible error.  *E.g.*, *ACRA Turf Club* 748 F.3d at 141-42.

Finally, the Attorney General does not even try to show that Smith & Wesson could have been criminally charged on the facts alleged in the state action.  The only allegation in state court is that Smith & Wesson objected to a non-self-executing subpoena.  Under no circumstances is that a crime.  The Attorney General points out that false advertising is a crime.  AG Reply at 4 n.2. But he has not filed charges against Smith & Wesson for false advertising and admits that he does not have the evidence to do so.  Ex. 1, Tr. at 47.  The criminal statute that he cites is irrelevant.

### 2.    The State Action Does Not Involve Orders Uniquely in Furtherance of the State Court's Ability to Perform Its Judicial Function.

*Sprint* also permits abstention in deference to state proceedings involving orders "uniquely in furtherance of the state courts' ability to perform their judicial functions."  *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013).  The motion to compel action involves no such order.

The Attorney General's Subpoena is a unilateral *executive* action, not a court order.  The Third Circuit has held that state proceedings involving executive orders do not trigger abstention under *Sprint*.  In *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453 (3d Cir. 2019), the federal plaintiff sought to enjoin state officials from garnishing his wages.  Although the underlying alimony payments had been ordered by a New Jersey court and upheld on appeal, the Third Circuit held that his claim "does not challenge any judicial order at all.  It challenges 'executive action[s]' (bank levies) that have a layer of family court review—which means abstention is 'plainly inappropriate.'"  *Id.* at 463 (quoting *ACRA Turf Club*, 748 F.3d at 141 n.12).  Here, likewise, while the Subpoena has a "layer of . . . court review," the state action does not involve any judicial order.

4

The Attorney General's contention that a motion to compel is part of what *Juidice* called "the contempt process" is spurious.  AG Reply at 5.  *Juidice* spoke of the federal plaintiff's *past* "disobedience of a court-sanctioned subpoena, and the resulting process leading to a finding of contempt of court."  *Juidice v. Vail*, 430 U.S. 327, 335 (1977).  Here, no "court-sanctioned subpoena" is at issue, far less a "resulting process" to determine whether one has been disobeyed. Stretching *Juidice* to cover any case in which a state court is asked to give legal force to a subpoena — on the grounds that it may possibly lead to contempt — would make *Younger* virtually limitless.

### B.    *Middlesex* Precludes Abstention Even if One of *Sprint's* Exceptions Is Met.

Abstention is also inappropriate because there was no "ongoing state judicial proceeding" at the time of federal filing, and because the state court does not provide "an adequate opportunity to raise [federal] challenges."  *Sprint*, 571 U.S. at 81 (quoting *Middlesex Cnty. Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).  Each of these failures under *Middlesex*, standing alone, precludes abstention.

With respect to the first *Middlesex* requirement, the Attorney General does not even try to show that there was an "ongoing" state action when Smith & Wesson filed in this Court.  457 U.S. at 432.  Under *Sprint*, the relevant time for assessing whether an ordinary civil action is "ongoing" is the time of federal filing.  Opp. at 10-11.[5]  It is undisputed that no state proceeding that was "judicial in nature" existed when this suit was filed.  *Middlesex*, 457 U.S. at 433.  After *Sprint*, a State cannot divest a federal plaintiff of its right to a federal hearing via a late filing in state court.

As for *Middlesex's* second requirement, the Attorney General has failed to show that Smith & Wesson can get a fair hearing on its federal claims in state court.  He has told the state court not

---

[5]  *Hicks v. Miranda*, 422 U.S. 332 (1975), and *Forty One News, Inc. v. Cnty. of Lake,* 491 F.3d 662 (7th Cir. 2007), are irrelevant — the former concerns abstention only in the "criminal" context, 422 U.S. at 349, and both are pre-*Sprint*.

just that Smith & Wesson is *wrong*, but that its "constitutional objections are premature and *cannot be adjudicated*[.]" Ex. 1, Tr. at 6 (emphasis added); *see* AG Reply at 7 n.3.  In other words, just weeks after telling the state court that it *cannot consider* Smith & Wesson's constitutional arguments, he argues here that Smith & Wesson *can* receive a fair hearing on its federal claims in the state action.[6]  That disingenuous tactic, if successful, would deprive Smith & Wesson of *any* forum in which to make its case on the merits.  That is exactly what *Middlesex* prohibits.

### C.     Equitable Considerations Preclude Abstention.

#### 1.     Smith & Wesson Does Not Have an Adequate Remedy in State Court.

Under New Jersey law, the state court cannot remedy the injuries of which Smith & Wesson has complained in this Court.  Two months before any state proceeding existed, Smith & Wesson asked this Court to enjoin the Attorney General from (1) enforcing his Subpoena, and (2) continuing his politically motivated investigation of the company.  Am. Compl. ¶¶ 218-25.  By law, the state court can decide only the *subpoena's* lawfulness, not the *investigation's*.  N.J.S.A. § 56:8-6; N.J.R. Civ. P. 1:9-6(a)-(b).  It does not have jurisdiction to enjoin the Attorney General's ongoing efforts to chill Smith & Wesson's First Amendment rights.[7]  The state court cannot "adequate[ly] remedy" that properly alleged constitutional injury, so this Court may not abstain. *Younger*, 401 U.S. at 43; *see Chippewa Trading Co. v. Cox*, 365 F.3d 538, 541 (6th Cir. 2004)).

---

[6] The Attorney General conflates this factor with whether the state court *remedies* are adequate. AG Reply at 7.  These are distinct inquiries for the Court not to abstain.  *Middlesex* requires an opportunity to set out one's federal *challenges*, 457 U.S. at 425, while *Younger* requires that the *remedies* available in state court are "adequate."  *Younger v. Harris*, 401 U.S. 37, 43 (1971).

[7] The Attorney General selectively quotes *Pennzoil Co. v. Texaco, Inc.*, asking this Court to "assume that state procedures will afford an adequate remedy."  481 U.S. 1, 15 (1987); *see* AG Reply at 7.  But in *Pennzoil*, the scope of the state proceeding was unclear, and no one gave the federal court any reason to think that the state court could not resolve all the parties' federal claims. But Smith & Wesson has proven, by pointing to an "unambiguous authority," the remedies in the state proceeding are statutorily limited.  *Pennzoil*, 481 U.S. at 15.  *Pennzoil* is therefore inapposite.

### 2.    The Attorney General's Bad Faith Precludes Abstention.

Smith & Wesson has plausibly alleged bad faith under the three factors of *Jaffery v. Atlantic County Prosecutor's Office*, 695 F. App'x 38, 41 (3d Cir. 2017) — (1) a baseless theory of liability; (2) prosecutorial retaliation; and (3) vexatious prosecutorial tactics. Opp. at 12-14. The Attorney General does not challenge any of the alleged facts. That silence alone is fatal to his argument.

Ignoring the plain language of the pleadings, the Attorney General argues that Smith & Wesson "does not even allege . . . that the Subpoena was initiated 'without hope of obtaining a valid' eventual judgment," and that the first *Jaffery* factor is therefore unmet. AG Reply at 8. But that is exactly what Smith & Wesson alleges. *See* Opp. at 12 ("[T]he Subpoena seeks information that could not support a case for fraud under the CFA."); *id*. at 14-17 (explaining why); Am. Compl. ¶¶ 3, 66-69. Likewise, his total inability to articulate a basis for his Subpoena, despite repeated requests from the state court, compels the conclusion that his investigation lacks any "objective hope of success" and was brought in bad faith. *Jaffrey*, 695 F. App'x at 41.

## II.    Smith & Wesson Has Plausibly Pled Its Claims.

Despite being given several opportunities, the Attorney General does not substantively address the well-pled facts supporting several of Smith & Wesson's claims, particularly its First, Fourth, Fifth, and Fourteenth Amendment claims. Absent any challenge to the sufficiency of the pleadings, those claims must be taken as properly pled and cannot be dismissed. *See* Opp. at 14, 24-25. Instead, the Attorney General attempts to villainize Smith & Wesson by claiming it is "defrauding" consumers, AG Reply at 9, and he does so despite already admitting that no such evidence exists. *See supra* at 1. But at this stage, the facts found within "the four corners" of the complaint must be accepted as true and all reasonable inferences drawn in Smith & Wesson's favor. The Attorney General's rhetoric is irrelevant to the pleading issues before this Court.

### A.      Smith & Wesson's First Amendment Claims Should Not Be Dismissed.

In the Amended Complaint, Smith & Wesson alleges that the Attorney General has targeted the company because he disfavors its speech and that he will continue targeting Smith & Wesson until it changes its own viewpoint.  But the Attorney General spends less than two pages addressing the First Amendment claims alleged: retaliation, viewpoint discrimination, infringement of political and commercial speech, and compelled speech.  AG Reply at 13-15.  Indeed, he fails to set forth any grounds as to why Smith & Wesson fails to state these claims.

What he does argue is at odds with the allegations and the record.  He claims that this case does not involve protected speech at all, because he is investigating "fraud" (which, he insinuates, has already occurred).[8]  AG Reply at 9.  Yet, when pressed at the state court oral argument to describe the basis or "anchor" of his sweeping investigation and Subpoena, the Attorney General could not cite a single specific advertisement.  Ex. 1, Tr. at 35-36, 38.  The Constitution demands more than speculation from the government when it seeks to impose such burdens on speech.

The Attorney General cites *In re Riddell Concussion Reduction Litigation*, 121 F. Supp. 3d 402 (D.N.J. 2015), to argue that he may rummage through Smith & Wesson's files to "confirm the underlying factual basis for a statement" and thus "discern fraud."  AG Reply at 14.  But *Riddell* involved claims that helmets reduced concussions, *i.e.*, claims susceptible to study and proof, just like a manufacturer's advertising that its products reduce the likelihood of conception.  *See Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1998).  The Attorney General's Subpoena "anchor" *only* related to the concept of self-defense — as if defending one's life and home may be studied in a laboratory or a controlled clinical trial.  Not so.  Advertising a firearm

---

[8]  The Attorney General falsely claims that Smith & Wesson concedes this point.  *Id.* at 13.  That is not the case; Smith & Wesson cites decades of precedent supporting the principle that a subpoena improperly violates the First Amendment if it chills speech.  *See* Opp. at 17-18 (collecting cases).

as related to self-defense is protected opinion speech.  *See* Opp. at 16 (citing *District of Columbia v. Heller*, 554 U.S. 570, 611 (2008)); *Miller v. Bonta*, No. 19-CV-1537, 2021 WL 2284132, at *45 (S.D. Cal. June 4, 2021) ("Government is not free to impose its own new policy choices on American citizens where Constitutional rights are concerned.").  Opinion speech consists of statements that do not "admit[] of being adjudged true or false" — that is, amenable to "empirical verification."  *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 496 (5th Cir. 2000).

The only basis offered by the Attorney General for the overbroad and invalid Subpoena is an allegation that Smith & Wesson's advertisements omit language regarding concealed carry permits (Ex. 1, Tr. at 38).  But such a required disclaimer would unconstitutionally compel speech.  In any event, no subpoena would be necessary to examine the company's public advertisements. *See* Opp. at 16-17.  The Attorney General argues that this claim should be dismissed because Smith & Wesson's challenge to the regulation is premature.  AG Reply 14.  The law holds otherwise. *See, e.g.*, *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393, (1988) ("[T]he alleged danger of [a] statute [prohibiting images displayed in certain circumstances] is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution.").

In arguing that the compelled speech claims should be dismissed, the Attorney General also improperly conflates the issues of (1) whether the state may compel commercial speech with (2) whether it has done so in the least burdensome manner.  He cites *Illinois ex rel. Madigan v. Telemarketing Associates*, 538 U.S. 600, 624 (2003), for the principle that states can prosecute false or misleading representations as fraud.  AG Reply at 15.  But that is not the issue here.[9]  The Attorney General has chosen to tether his investigation to a regulation that compels speech in an

---

[9] The Attorney General argues the regulation only "requires accurate disclosure" of the law.  AG Reply at 14-15.  That ignores *Riley v. Nat'l Fed'n of Blind of N.C., Inc.*, 487 U.S. 781, 797-98 (1988) (no difference between compelled statements of opinion and statements of fact).

unconstitutionally burdensome way.  He has not attempted to explain why it would be insufficient for the State to place the requisite warning on the digital form that all prospective gun purchasers must complete.  This not only would be less burdensome but also more effective in achieving New Jersey's objective, as it would ensure that any potential gun purchaser received the notice.  Instead, he would mandate a complex regime throwing the burden on third parties and subjecting them to state prosecution.  Imagine if every state could require General Motors to include in all of its print advertisements, or all of its Tweets, separate disclaimers about all of the ways in which its vehicles could be illegally used.  That is not a least-burdensome approach, and it is fatal to the Attorney General's arguments.  *See 44 Liquormart, Inc. v. R.I.*, 517 U.S. 484, 507 (1996).

Finally, the Attorney General contends that Smith & Wesson has not pled a retaliatory motive as to its First Amendment claims.  AG Reply at 11.  Contrary to his unsupported assertions, that is not a required element, except for the retaliation claims.  And his argument ignores the fact that Smith & Wesson has pled numerous statements and actions that plausibly support an inference that the Attorney General is engaged in retaliation, which is all that is required at this stage.[10]  *See Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019).  Based on his conclusory statements and representations (AG Reply at 12-13), by which he presents alternate "factual" scenarios, it is readily apparent that the Attorney General seeks the equivalent of a summary judgment ruling, which is both factually and procedurally inappropriate.

### B.      The Complaint Plausibly States Second Amendment Claims.

Smith & Wesson alleges that (1) the Subpoena and investigation place a burden on the company's manufacture of firearms, and (2) the Subpoena and investigation are not justified by

---

[10] For the same reasons, the Attorney General's attempt to rely on *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679 (S.D.N.Y. 2018), as a model for his arguments fails.

the Attorney General's purported goal of "prosecuting fraud."  Opp. at 21-22.  That is all that is required to plead a Second Amendment claim.  The Attorney General does not challenge this, and particularly, that the Subpoena is hindering the company's ability to manufacture and sell firearms.

Instead, in his attempt to discredit these claims, the Attorney General employs a straw man argument that Smith & Wesson is demanding blanket immunity merely because it is a gun manufacturer.[11]  AG Reply at 8.  But Smith & Wesson is not asking for special treatment; rather, it alleges that the Attorney General is using his subpoena power in a biased manner, as shown by his public statements and the foundationally deficient Subpoena itself.  Opp. at 24.  The Attorney General's rote reliance on his previously cited authority only further distorts the issue.  *Leathers v. Medlock*, 499 U.S. 439 (1991), did not involve an "investigation" for "tax violations"; rather, it challenged whether a tax could be generally applied.  And *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706 (1986), is irrelevant, because it involved an *actual finding* of criminal activity.  In contrast, the Attorney General is still investigating, and "[t]here has been no determination that anything Smith & Wesson said in its advertisements did in fact violate the CFA."  AG Br. at 29.

The Attorney General also argues that manufacturers and other businesses associated with Second Amendment activities do not possess Second Amendment rights.  To the contrary, in *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), the Seventh Circuit held that a firing range business had standing *in its own right* (not just on behalf of gun bearers) to bring Second Amendment claims arising from a ban of firing ranges in Chicago.  651 F.3d at 696.  The Seventh Circuit reasoned that the firing range, "as a supplier of firing-range facilities, is harmed by the

---

[11] The Attorney General claims that Smith & Wesson "acknowledges that asking for information — which is all that the Subpoena does — does not infringe on *any individual's* Second Amendment rights[.]"  AG Reply at 8.  Not true.  Smith & Wesson discusses at length the burden the Attorney General's actions have on Smith & Wesson's manufacture of firearms and how they impede citizens' ability to purchase and bear them.  Opp. at 24 (citing Am. Compl. ¶¶ 115-25).

firing-range ban," and thus had standing. *Id.* The same logic applies here. Smith & Wesson, whose business is not merely related to Second Amendment activities, but also provides the very arms that are the subject of the Second Amendment, is being harmed by the Subpoena, and can therefore bring Second Amendment claims. *See* Am. Compl. ¶¶ 64, 115-25, 183.

The Attorney General does not even address *Ezell*, and instead claims that *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010), did not extend Second Amendment rights to manufacturers.[12] But *Marzzarella* did not limit Second Amendment claims to individual citizens, as the Attorney General argues. It clearly held that "[c]ommercial regulations on the sale of firearms do not fall outside the scope of the Second Amendment[.]" 614 F.3d at 92 n.8. It follows that any government action restricting the commercial production and sale of firearms must be capable of being challenged by the entities most affected — *i.e.*, manufacturers, distributors, and retailers. *See Illinois Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928 (N.D. Ill. 2014) (sales and transfers of guns are not outside the scope of the Second Amendment).

Smith & Wesson also has third party standing to bring claims on behalf of New Jersey gun bearers. The Attorney General cites *Holland v. Rosen*, 895 F.3d 272 (3d Cir. 2018), and *Pitt News v. Fisher*, 215 F.3d 354 (3d Cir. 2000), for the proposition that "a business cannot assert standing on behalf of potential customers" (AG Reply at 9-10), but as the Amended Complaint alleges, the citizens attempting to buy Smith & Wesson's products are being harmed *right now*, not "potentially." Am.. Compl. ¶¶ 115-25, 185. *Holland* spoke only as to "as yet unascertained" customers, 895 F.3d at 287, while *Pitt News* did not turn on future customers at all; it held, rather, that a newspaper could not establish that its advertisers were impeded from challenging the statute

---

[12]   The Attorney General's argument that the Second Amendment does not "protect[] a manufacturer's financial interests from a consumer protection inquiry or in defrauding its consumers with impunity" (AG Reply at 9) — is a baseless *ad hominem* attack and a *non sequitur*.

at issue.  215 F.3d at 362-63.  Here, Smith & Wesson alleges that citizens cannot challenge the Subpoena in court, and thus require intervention to preserve their constitutional rights.  Opp. at 24.

Finally, the Attorney General fails to distinguish *Eisenstadt v. Baird*, 405 U.S. 438 (1972), which supports third party standing in this case.  Like the contraceptives distributor in *Eisenstadt*, Smith & Wesson alleges that New Jersey gun owners' rights are being impaired by the Subpoena.[13] Am.. Compl. ¶¶ 115-25, 185.  To the extent that the Attorney General disagrees with the degree of that impairment — *e.g.*, claiming that consumers "can still buy from other manufacturers" — that is a dispute of fact not appropriate for resolution at this stage.  The Attorney General's only argument is that the company "is being investigated for potentially misleading the very class of people for whom it purports to advocate" and that its interests are not aligned with New Jersey citizens.  AG Reply at 10.  Once again, as the Attorney General has admitted, there has been no determination of fraud.  His speculation as to "fraud" is insufficient to defeat third party standing.

### C.    The Fourth, Fifth, and Fourteenth Amendment Claims Are Plausibly Pled.

The Attorney General wrongfully argues that Smith & Wesson's Fourth and Fourteenth Amendment claims are "doomed" because, in his view, he has not "singled [Smith & Wesson] out without basis for a CFA subpoena."  AG Reply at 11.  Setting aside his admission of a lack of basis for the Subpoena as described above, the Attorney General cites no authority to support his claim that Smith & Wesson must be "singled out" for there to be a constitutional violation.  No principle of law exists that the Constitution may be violated provided the State does so uniformly.

In any event, the Attorney General's argument is flawed: he again ignores the extensive allegations that he has, in fact, singled out Smith & Wesson.  Am. Compl. ¶¶ 76-114.  Instead, he

---

[13] Limiting lawful access to firearms, even when others can be purchased, violates the Second Amendment where the "fit" of the limitation to the state's objectives is not reasonable.  *Miller v. Bonta*, No. 19-CV-1537-BEN (JLB), 2021 WL 2284132 (S.D. Cal. June 4, 2021).

places the burden on Smith & Wesson to "prove" that he "lacked independent justification for issuing the Subpoena[.]"  AG Reply at 12.  That burden-shifting is inappropriate at this stage, as is the Attorney General's attempt (*id.* at 13) to plead counter-facts regarding other cases involving subpoenas that supposedly "disprove[]" that his enforcement action constituted retaliation.[14]

The cases the Attorney General cites, *Hartman v. Moore*, 547 U.S. 250, 256-58 (2006), and *UMDNJ v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003), lend no support for his position.  *Hartman* was a summary judgment decision.  And *Corrigan* did not involve allegations of improper motive or retaliatory conduct; it turned instead on whether the Attorney General had the authority to issue subpoenas and conduct the relevant investigation.

Finally, the Attorney General *still* has not addressed the allegations as to the Fifth and Fourteenth Amendment claims.  Any arguments in favor of dismissing those claims are waived.

### D.	The Complaint Plausibly Alleges that the PLCAA Bars the Subpoena.

Under the PLCAA, government entities may not bring a civil action or administrative proceeding against manufacturers for relief "resulting from the criminal or unlawful misuse" of firearms by third parties. 15 U.S.C. § 7903(3)-(5).  That is what any action brought by the Attorney General under the CFA would do.  There is no independent justification for the Subpoena; it is the culmination of a campaign of harassment meant to punish Smith & Wesson for its purported connection to "gun violence" and "crime guns," and thus its purported responsibility for the actions of third parties.  Am. Compl. ¶¶ 76-82, 93-114.  That is what the PLCAA was enacted to prevent.

The Attorney General also fails to show why the predicate exception should apply.  He attempts to distinguish *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008), and

---

[14] The Attorney General refers to "other governments" and their purported pursuit of "deceptive advertising charges against" Smith & Wesson. The relevant facts and legal regimes of any such cases have no application to the conduct at issue here or its legality under the CFA.

14

*Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009) — which severely undermine his argument — as "involv[ing] statutes that those courts concluded were not applicable to the sale or marketing of the product, not as here, a statute that is specifically applicable to marketing of products[]."  AG Reply at 11.  But neither ruling suggested that consumer fraud statutes would satisfy the predicate exception *on their own*, or that statutes that could *potentially* apply to the marketing or sale of firearms satisfy the exception.[15]   Indeed, *Beretta* foreclosed such an expansive interpretation of the exception, limiting it to "statutes (a) that expressly regulate firearms, or (b) that courts have applied to the sale and marketing of firearms; [or (c)] that do not expressly regulate firearms but that clearly can be said to implicate the purchase and sale of firearms."  524 F.3d at 404.  The CFA does not fall into any of these categories, and thus does not satisfy the predicate exception.  Opp. at 27.

> **E.     The Complaint Plausibly Alleges a Dormant Commerce Clause Violation.**

The Attorney General does not dispute that the Subpoena has extraterritorial effect.  *See* Opp. at 29; AG Reply at 15.  He only asserts that the CFA does not "suddenly become unlawful because of *Plaintiff's* choice to market in other states."  AG Reply at 15.  Not so: the dormant commerce clause recognizes a company's right to do business in multiple states, and a law unduly burdening that exercise is impermissible.  *See Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 579 (1986). An attempt to invalidate a nationwide advertising campaign affects commerce in all fifty states and can hardly be characterized as "incidental."

> ### <u>CONCLUSION</u>

For the reasons discussed herein, the Court should deny Defendants' Motion to Dismiss.

---

[15] The Attorney General's misguided reliance on *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 304 (Conn. 2019), and *Prescott v. Slide Fire Solutions, LP*, 410 F. Supp. 3d 1123, 1139 (D. Nev. 2019) has already been addressed by Smith & Wesson.  *See* Opp. at 28.

Respectfully submitted,

Dated:  June 21, 2021                    */s/ Christopher M. Strongosky*
                                         Christopher M. Strongosky
                                         Amanda Laufer Camelotto
                                         **DLA PIPER LLP (US)**
                                         51 John F. Kennedy Parkway, Suite 120
                                         Short Hills, New Jersey 07078-2704
                                         Tel: 973-520-2550
                                         christopher.strongosky@dlapiper.com
                                         amanda.camelotto@dlapiper.com

                                         Joseph A. Turzi (admitted *pro hac vice*)
                                         Edward S. Scheideman (admitted *pro hac vice*)
                                         **DLA PIPER LLP (US)**
                                         500 Eighth Street, NW
                                         Washington, DC 20004
                                         Tel:  (202) 799-4000
                                         joe.turzi@dlapiper.com
                                         edward.scheideman@dlapiper.com

                                         Courtney G. Saleski
                                         **DLA PIPER LLP (US)**
                                         One Liberty Place
                                         1650 Market Street
                                         Suite 5000
                                         Philadelphia, PA 19103-7300
                                         Tel: (215) 656-2431
                                         courtney.saleski@dlapiper.com

                                         *Attorneys for Plaintiffs*
                                         *Smith & Wesson Brands, Inc.*
                                         *Smith & Wesson Sales Company*
                                         *Smith & Wesson Inc.*