## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SMITH & WESSON BRANDS, INC., SMITH & WESSON SALES COMPANY, and SMITH & WESSON INC., | CIVIL ACTION |
| Plaintiffs, | CASE NO. 2:20-CV-19047-JXN-ESK |
| v. | |
| GURBIR S. GREWAL, *in his official capacity as Attorney General of the State of New Jersey* and NEW JERSEY DIVISION OF CONSUMER AFFAIRS, | |
| Defendants. | |

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

Courtney G. Saleski
**DLA PIPER LLP (US)**
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
Tel:  215-656-2431
courtney.saleski@dlapiper.com

Christopher M. Strongosky
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Tel: 973-520-2550
christopher.strongosky@dlapiper.com

Joseph A. Turzi (admitted *pro hac vice*)
Edward S. Scheideman (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Tel: 202-799-4000
joe.turzi@dlapiper.com
edward.scheideman@dlapiper.com

*Attorneys for Plaintiffs Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, Smith & Wesson Inc.*

# TABLE OF CONTENTS

INTRODUCTION........................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 4

I.     The Attorney General's Attempt to Suppress Smith & Wesson's Rights. ........................ 4

II.    The Attorney General Issues A Facially Invalid Subpoena Seeking Documents Relating to Opinions and Value Judgements on the Second Amendment. ....................................... 6

III.   The Attorney General's Retaliatory State Court Enforcement Proceeding. ...................... 8

IV.   The State Court Failed to Address Constitutional and Other Legal Bases for Staying the Subpoena........................................................................................................................ 10

V.    The State Court Production Deadline Is Imminent........................................................... 12

LEGAL STANDARD ................................................................................................... 13

ARGUMENT ................................................................................................................ 13

I.     The All Writs Act and the Anti-Injunction Act Authorize the Court to Enjoin the Proceedings in New Jersey State Court. ............................................................................. 13

     A.   The Attorney General's Unconstitutional Actions May Be Enjoined Pursuant to 42 U.S.C. § 1983. .............................................................................................................. 14

     B.   This Court Should Also Enjoin the New Jersey State Court Action in Aid of Its Jurisdiction in This Case. .......................................................................................... 15

II.    This Court Should Stay the New Jersey State Court Action. .......................................... 17

     A.   Smith & Wesson Has a Reasonable Chance of Success in This Litigation. ............. 18

         1.   Smith & Wesson Has a Reasonable Chance of Success on Its First Amendment Viewpoint Discrimination Claim.......................................................................... 18

         2.   Smith & Wesson Has a Reasonable Chance of Success on its Prior Restraint Claim..................................................................................................................... 19

         3.   The Attorney General's Retaliatory Actions Are a Violation of Smith & Wesson's Constitutional Rights. ........................................................................ 20

         4.   Enforcement of the Subpoena Would Unlawfully Compel Speech................... 22

         5.   The Attorney General's Actions Have Also Impinged on Smith & Wesson's Protected Speech. ............................................................................................... 23

         6.   Smith & Wesson Has a Reasonable Chance of Success on Both of Its Second Amendment Claims. ........................................................................................... 24

         7.   Smith & Wesson Has a Reasonable Chance of Success on Its Fourth and Fifth Amendment Claims. ........................................................................................... 26

         8.   Smith & Wesson Has a Reasonable Chance of Success Because the Attorney General's Investigation and Subpoena Enforcement Action Are Preempted by the PLCAA............................................................................................................ 27

     B.   Smith & Wesson Will Suffer Immediate and Irreparable Harm Absent a Temporary Restraining Order and An Injunction. ....................................................................... 28

C.   A Stay of the State Court Order Will Not Harm Other Interested Parties. ............... 29

D.   An Injunction Furthers the Public Interest. .............................................................. 30

**CONCLUSION** ....................................................................................................................... **30**

# TABLE OF AUTHORITIES

*44 Liquormart, Inc. v. R. I.*,
517 U.S. 484 (1996)......................................................................................15, 23

*Arcara v. Cloud Books, Inc.*,
478 U.S. 697 (1986)...............................................................................................19

*Ass'n for Fairness in Bus., Inc. v. New Jersey*,
82 F. Supp. 2d 353 (D.N.J. 2000) ........................................................................29

*Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cnty.*,
988 F. Supp. 486 (D.N.J. 1997) .....................................................................14, 16

*Baloga v. Pittston Area Sch. Dist.*,
927 F.3d 742 (3d Cir. 2019)..................................................................................20

*Bantam Books, Inc v. Sullivan*,
372 U.S. 58 (1963) .................................................................................................19

*Birchfield v. N.D*,
136 S. Ct. 2160 (2016)...........................................................................................15

*Borough of Duryea, Pa. v. Guarnieri*,
564 U.S. 379 (2011)...............................................................................................20

*Bubbles N' Bows LLC v. Fey Pub. Co.*,
No. 06–5391, 2007 WL 2406980 (D.N.J. Aug. 20, 2007)....................................24

*C.N. v. Ridgewood Bd. of Educ.*,
430 F.3d 159 (3d Cir. 2005)..................................................................................22

*Camara v. Mun. Ct. of City & Cnty. of San Fran.*,
387 U.S. 523 (1967)...............................................................................................15

*CBS, Inc. v. Davis*,
510 U.S. 1315 (1994).............................................................................................20

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
447 U.S. 557 (1980).........................................................................................22, 24

*City of New York v. Beretta U.S.A. Corp.*,
524 F.3d 384 (2d Cir. 2008)..................................................................................28

*Council of Alt. Political Parties v. Hooks*,
121 F.3d 876 (3d Cir. 1997)..................................................................................30

iii

*In re Diet Drugs*,
  282 F.3d 220 (3d Cir. 2002)......................................................................15, 16, 17

*In re Diet Drugs Prod. Liab. Litig.*,
  369 F.3d 293 (3d Cir. 2004)......................................................................14

*District of Columbia v. Heller*,
  554 U.S. 570 (2008)......................................................................24. 26

*Dombrowski v. Pfister*,
  380 U.S. 479 (1965)......................................................................29

*Douglas v. Ashcroft*,
  374 F.3d 230 (3d Cir. 2004)......................................................................30

*Elrod v. Burns*,
  427 U.S. 347 (1976)......................................................................29

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011)......................................................................25

*F.C.C. v. League of Women Voters of Cal.*,
  468 U.S. 364 (1984)......................................................................22

*Gibson v. Fla. Leg. Investigation Cmte.*,
  372 U.S. 539 (1963)......................................................................15

*GJJM Enters., LLC v. City of Atl. City*,
  293 F. Supp. 3d 509 (D.N.J. 2017)......................................................................30

*Handschu v. Police Dep't of City of N.Y.*,
  219 F. Supp. 3d 388 (S.D.N.Y. 2016)......................................................................27

*Hartman v. Moore*,
  547 U.S. 250 (2006)......................................................................22

*Illinois Ass'n of Firearms Retailers v. City of Chicago*,
  961 F. Supp. 2d 928 (N.D. Ill. 2014)......................................................................25

*Int'l Foodsource, LLC v. Grower Direct Nut Co.*,
  No. 16-cv-3140, 2016 WL 4150748 (D.N.J. Aug. 3, 2016)......................................................................13

*Interior Motives, Inc. v. Salvatore*,
  No. 20-cv-5178, 2020 WL 2611517 (D.N.J. May 22, 2020)......................................................................13

*Issa v. Sch. Dist. of Lancaster*,
  847 F.3d 121 (3d Cir. 2017)......................................................................17

*Kaselaan & D'Angelo Assocs., Inc. v. Soffian*,
   290 N.J. Super. 293 (App. Div. 1996) ............................................................11, 17

*Kos Pharms. Inc. v. Andrx Corp.*,
   369 F.3d 700 (3d Cir. 2004)...........................................................................13

*Kowalski v. Tesmer*,
   543 U.S. 125 (2004).......................................................................................26

*Major League Baseball v. Crist*,
   331 F.3d 1177 (11th Cir. 2003) ....................................................................27

*Met. Opera Ass'n v. Local 100*,
   239 F.3d 172 (2d Cir. 2001) ..........................................................................19

*Miller v. Mitchell*,
   598 F.3d 139 (3d Cir. 2010)......................................................................20, 21

*Mitchum v. Foster*,
   407 U.S. 225 (1972)...................................................................................4, 14

*Monzo v. Bazos*,
   313 F. Supp. 3d 626 (E.D. Pa. 2017) ............................................................17

*N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*,
   669 F.3d 374 (3d Cir. 2012)...........................................................................27

*NAACP v. Alabama*,
   357 U.S. 449 (1958)..................................................................................10, 15

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982).......................................................................................20

*Nat'l Inst. of Family & Life Advocs. v. Becerra*,
   138 S. Ct. 2361 (2018)...................................................................................23

*NE. Pa. Freethought Society v. Cnty. of Lackawanna Transit Sys.*,
   938 F.3d 424 (3d Cir. 2019)...........................................................................18

*Neb. Press Ass'n v. Stuart*,
   427 U.S. 539 (1976).......................................................................................19

*Piper v. Portnoff Law Assocs.*,
   262 F. Supp. 2d 520 (E.D. Pa. 2003) ............................................................16

*Powers v. Ohio*,
   499 U.S. 400 (1991).......................................................................................26

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    314 F.3d 99 (3d Cir. 2002)........................................................................14

*In re Revel AC, Inc.*,
    802 F.3d 558 (3d Cir. 2015)...................................................................20

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
    487 U.S. 781 (1988)..........................................................................22, 23

*Rosenberger* v. *Rector & Visitors of Univ. of Va.*,
    515 U.S. 819 (1995)................................................................................18

*In re Rule 45 Subpoena Issued to Cablevision Sys.*,
    No. MISC 08–347, 2010 WL 2219343 (E.D.N.Y. Feb. 5, 2010)............10

*In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp. Dated July 23, 2020*,
    337 F.R.D. 639 (N.D. Cal. 2020).............................................................10

*See v. City of Seattle*,
    387 U.S. 541, 544 (1967)........................................................................27

*Semple v. Griswold*,
    934 F.3d 1134 (10th Cir. 2019) .............................................................22

*Sensient Colors Inc. v. Allstate Ins. Co.*,
    193 N.J. 373 (2008) .........................................................................11, 17

*Sweezy v. New Hampshire*,
    354 U.S. 234 (1957)................................................................................29

*Tatum v. Chrysler Grp. LLC.*,
    No. 10-4269, 2011 WL 1253847 (D.N.J. Mar. 28, 2011) ......................24

*Thomas v. Independence Twp.*,
    463 F.3d 285 (3d Cir. 2006)...................................................................20

*Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*,
    655 F. Supp. 2d 581 (W.D. Pa. 2009).....................................................17

*Turner Broad. Sys. v. F.C.C.*,
    512 U.S. 622 (1994)................................................................................18

*U.S. v. Marzzarella*,
    614 F.3d 85 (3d Cir. 2010)...............................................................25, 26

*United States v. Stevens*,
    559 U.S. 460 (2009)................................................................................26

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .................................................................................................17

*Zurcher v. Stanford Daily*,
    436 U.S. 547 (1978) .............................................................................................27

**Statutes**

15 U.S.C. § 7901 .....................................................................................................28

15 U.S.C. § 7903 .....................................................................................................28

28 U.S.C. § 1651 .....................................................................................................13

28 U.S.C. § 2283 .....................................................................................................13

42 U.S.C. § 1983 ...................................................................................................3, 14

**Other Authorities**

First Amendment ............................................................................................. *passim*

Second Amendment ........................................................................................ *passim*

Fourth Amendment .........................................................................................26, 27

Fifth Amendment ............................................................................................26, 27

Fourteenth Amendment ...........................................................................7, 9, 27, 28

13 Moore's Federal Practice - Civil § 65.31 (2020) .................................................13

Pursuant to Federal Rule of Civil Procedure 65 and Local Civil Rule 65.1, Plaintiffs Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, and Smith & Wesson Inc. (collectively, "Smith & Wesson" or "Plaintiffs") hereby submit this Brief in Support of their Application for the Entry of a Temporary Restraining Order and a Preliminary Injunction.  Plaintiffs respectfully ask this Court to stay enforcement by the New Jersey Superior Court of Defendants' October 13, 2020 administrative subpoena (the "Subpoena"),[1] until the threshold questions of its constitutionality, and therefore its enforceability, are resolved by this Court.[2]  Such action is warranted because those threshold issues have not yet been decided, and Smith & Wesson faces a production deadline of August 2, 2021.  Consequently, Smith & Wesson will suffer irreparable harm by having its fundamental constitutional rights violated if production proceeds.  In direct contrast, no harm of any sort will befall Defendants if the stay is granted because all documents targeted by the Subpoena have been preserved, the parties have entered into a tolling agreement, and no harm to the State of New Jersey will result from a stay.

## INTRODUCTION

Currently before this Court is Smith & Wesson's Amended Complaint (ECF No. 17), which outlines in detail – with extensive citation to the public record – why the Subpoena is unconstitutional, and therefore unenforceable.  The Subpoena expressly targets Smith & Wesson's opinions (such as whether the concealed carry of firearms enhances lifestyle or whether firearms help citizens defend their homes) and thereby aims to chill the company's speech.  It is just the

---

[1] On June 30, 2021, Judge Alper issued an Order in *Grewal v. Smith & Wesson Sales Co., Inc.*, Dkt. No. ESX-C-000025-21 (N.J. Super. Ct.), directing Smith & Wesson to comply with the Subpoena within 30 days (the "June 30, 2021 Order").  Declaration of Edward S. Scheideman, dated July 30, 2021 ("Scheideman Decl."), Ex. 11.

[2] Plaintiffs bring this application upon the facts set forth in their Amended Complaint, filed pursuant to Fed. R. Civ. P. 15(a), accompanying papers, and the arguments set forth herein.

1

latest phase in the Attorney General's campaign targeting Smith & Wesson because, and only because, Smith & Wesson stands on the opposite side of a public debate concerning Second Amendment issues.[3]   Compelled production of documents pursuant to this unconstitutional Subpoena will violate Smith & Wesson's First Amendment rights (among others).  As explained in the Amended Complaint, the Attorney General has embarked on a protracted campaign against Smith & Wesson because the company is an iconic brand and stands as a fierce advocate in support of Second Amendment viewpoints that directly contrast the Attorney General's own viewpoints. Am. Compl. ¶¶ 76-136.  The Attorney General has publicly promised to "turn the heat up" on Smith & Wesson and has done so by, among other things, publicly and falsely linking Smith & Wesson to "gun crimes."  Scheideman Decl., Exs. 19, 27.  To further "turn up the heat," the Attorney General joined forces with anti-Second Amendment groups in an effort to "combin[e] the investigative and enforcement powers of the State with the expertise of the nation's leading gun litigation coalition[.]"  Scheideman Decl., Ex. 22.

Two months after Smith & Wesson sought relief in this Court from the Attorney General's campaign and unconstitutional Subpoena, the Attorney General asked the New Jersey Superior Court to sidestep this action, compel compliance with the Subpoena, and impose draconian sanctions such as a ban on Smith & Wesson' speech and business activities in New Jersey — all while portraying his enforcement action as a "quotidian subpoena dispute."  ECF No. 29-1, at 3. Attempting an end run around scrutiny of his constitutional violations, he asked the state court to

---

[3] As of July 19, 2021, Gurbir S. Grewal is no longer the Attorney General.  The acting Attorney General is Andrew Bruck.  The same arguments apply as to Mr. Bruck, because he fully supports the former Attorney General's actions and is continuing the state court litigation, as the Assistant Attorney General has admitted.  Scheideman Decl., Ex. 13, at 15 ("General Grewal is no longer in office, and yet the State continues to pursue this case under the acting Attorney General.").

enforce the Subpoena "irrespective of the merits" of this federal action. Scheideman Decl., Ex. 4, at 2. The state court did so in a June 30, 2021 order, declining to address the majority of Smith & Wesson's constitutional objections and ordering the company to "respond fully" to the Subpoena by August 2, 2021. Scheideman Decl., Ex. 11.

Given the fundamental constitutional rights at stake, Smith & Wesson is left with no choice but to file this application seeking immediate injunctive relief. Despite the fact that the Subpoena targets protected speech and violates numerous constitutional rights, and after giving short shrift to the constitutional issues at stake and treating them as an ordinary subpoena dispute, the state court has now ordered compliance. Further, the state court declined to stay its order to allow the deadline to be suspended so that Smith & Wesson can pursue an appeal to the New Jersey Appellate Division. On July 29, 2021, the Appellate Division also denied a stay to Smith & Wesson. Smith & Wesson is appealing to the New Jersey Supreme Court, but it is unclear whether it will grant a stay pending appeal prior to the production deadline. Consequently, Smith & Wesson potentially faces a Hobson's choice: either produce documents pursuant to the unconstitutional (and retaliatory) Subpoena, and thus sacrifice its constitutional rights, or refuse to produce and suffer crippling sanctions, including a forced cessation of the company's business in New Jersey, a prior restraint on its protected speech, and contempt. Forcing this choice upon any individual should be unacceptable under the law. These exigent circumstances cry out for the relief sought by Smith & Wesson because fundamental constitutional rights and irreparable damage to Smith & Wesson are at stake.

Smith & Wesson's constitutional claims are brought pursuant to 42 U.S.C. § 1983. Under that statute, staying state court proceedings is appropriate where, like here, it is necessary "to protect the people from unconstitutional action under color of state law, whether that action be

3

executive, legislative, or judicial." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972). The Attorney General's actions and the June 30, 2021 Order to produce documents, standing alone, warrant the imposition of an order enjoining enforcement of the Subpoena in the New Jersey state court action.

A stay is also warranted for an additional and independent reason — to protect this Court's jurisdiction and the integrity of the judicial system. The Attorney General's now-successful attempt to cause the state court to act on an expedited basis, and irrespective of the merits of this case no less, will prevent meaningful review because the constitutional injury will have occurred. Indeed, the Court is still in the process of considering the issue of whether it should abstain in this matter. This Court's intervention is necessary to ensure that Smith & Wesson's constitutional objections are heard before the clock runs out in state court, forcing Smith & Wesson to comply with an unconstitutional Subpoena and sacrifice its fundamental constitutional rights.

## FACTUAL BACKGROUND

### I.     The Attorney General's Attempt to Suppress Smith & Wesson's Rights.

The Attorney General's issuance of the Subpoena is just one step in a series of many, continuing to this day, that reflect a pattern of hostility to the Second Amendment and its advocates. He has made clear where he stands in the public debate — he has been a fierce opponent of "open carry" and "concealed carry" policies, taking sides in the public gun debate by asserting that "[p]ublic carrying of firearms is dangerous to our residents and to law enforcement." Scheideman Decl., Ex. 20. His hostility to opposing views also extends to the courts. He stated that "the evidence is clear that when more people carry guns in public, public confrontations get more dangerous, not only for the public, but also for our law enforcement officers," and that the "[c]ourts have no basis to overrule these careful public safety determinations made by states[.]" Scheideman Decl., Ex. 21. True to his anti-Second Amendment goals, the Attorney General publicly vowed to "turn up the heat" on firearms manufacturers. Scheideman Decl., Ex. 27.

"Turning up the heat" included the Attorney General publicly issuing "reports" that, without justification, falsely tied Smith & Wesson to "gun crimes." *See* Scheideman Decl., Ex. 19. This approach was congruent with Governor Phil Murphy's public promise to "name and shame" gun manufacturers.[4] *See* Scheideman Decl., Ex. 25. By claiming that Smith & Wesson is connected to crimes, and presenting false evidence against it in the court of public opinion, the Attorney General has used the power of the State to impermissibly brand Smith & Wesson as a "bad actor" in an attempt to cause harm to Smith & Wesson's business and reputation. These efforts will not relent until Smith & Wesson changes its viewpoints.

Not only did Smith & Wesson's Complaint establish this anti-Second Amendment agenda, it also exposed how the Attorney General had publicly aligned himself with anti-Second Amendment activists to pursue it. He announced that he had "signed on" to the anti-Second Amendment agenda, and he publicly partnered with anti-Second Amendment groups such as Giffords Law Center. Scheideman Decl., Ex. 26. In so partnering, he has facilitated not only an attack on Smith & Wesson by the State, but also attacks from outside groups. In short, the Attorney General is using the "the investigative and enforcement powers of the State" to advance the interests of the same anti-Second Amendment activists. Scheideman Decl., Ex. 22.

The Attorney General has hired the law firm, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, as his own "Special Firearms Counsel" to pursue firearms manufacturers on a contingency basis, thus creating a bounty system. Scheideman Decl., Exs. 23, 28. Paul Weiss is a member of the Firearms Accountability Counsel Task Force ("FACT"), which was established by anti-Second Amendment activist organizations Giffords Law Center and the Brady Center to Prevent Gun

---

[4] "Naming and shaming" is "the activity of saying publicly that a person, company, etc. has behaved in a bad or illegal way." *See* Cambridge Dictionary, *available at* dictionary.cambridge.org/us/dictionary/english/naming-and-shaming, last accessed July 29, 2021.

Violence.  Scheideman Decl., Ex. 18.  Paul Weiss has been shopping a "firearms false marketing theory" to at least one other state Attorney General that parallels the ideas advanced by the Attorney General in his attacks on Smith & Wesson.  Scheideman Decl., Ex. 29.

These facts are only the tip of the iceberg, as pleaded already by Plaintiffs.  Smith & Wesson refers to its Amended Complaint for other examples of specific steps taken by the Attorney General, in conjunction with anti-Second Amendment activists, to restrict the views and positions advanced by Smith & Wesson on matters of public debate.  *See* Am. Compl. ¶¶ 76-136.  The Subpoena and the enforcement action in New Jersey state court merely are the latest salvos in this illegitimate targeting of a lawful business based on its exercise of its constitutional rights.

## II.    The Attorney General Issues A Facially Invalid Subpoena Seeking Documents Relating to Opinions and Value Judgements on the Second Amendment.

Purportedly acting pursuant to the New Jersey Consumer Fraud Act ("CFA"), on October 14, 2020, the Attorney General served his Subpoena on Smith & Wesson.  Scheideman Decl., Ex. 1.  The information requested by the Subpoena cannot support any claim for fraud because it relates primarily to *opinions or value judgments* on legal issues or matters of current public debate.  *Id.* at 9.  Specifically, the Subpoena seeks documents related to purported statements as to, *inter alia*, (1) whether guns enhance safety; (2) whether Smith & Wesson's products can be legally carried by consumers in the state of New Jersey; (3) whether concealed carry of firearms enhance one's "lifestyle"; and (4) whether "novice, untrained [c]onsumers" can effectively use a Smith & Wesson firearm for personal or home defense.[5]  *Id.*

---

[5] Despite his focus on "safety," the Attorney General apparently ignores the user manuals for Smith & Wesson's firearms, which contain prominent safety warnings and encourage owners to seek formal training before using the product.  *See* Tengwall Decl. ¶ 10.  The Attorney General also seemingly has ignored Smith & Wesson's support for gun safety and responsible gun ownership initiatives, including the company's own #GUNSMARTS program, which provides gun usage and storage safety tips and other gun safety videos.  *Id.* ¶ 8.

Given the broad scope of the Subpoena and its serious constitutional transgressions, Smith & Wesson initially sought an extension of time from the Attorney General so that it could properly consider how to respond to the Subpoena. The Attorney General granted the requested extension, and the parties agreed that Smith & Wesson would serve its written responses to the Subpoena by December 14, 2020. Scheideman Decl., Ex. 2. On that date, Smith & Wesson served detailed, written objections to the Subpoena which explained that, among other things, the Subpoena impermissibly intruded on constitutionally protected speech. Scheideman Decl., Ex. 3.

Because the Subpoena targets protected opinion speech, the next day Smith & Wesson filed its Initial Complaint in this Court, asserting its constitutional and other claims. ECF No. 1. The Initial Complaint set forth in detail how the Attorney General is engaged in a pattern of conduct in violation of the First Amendment, including obvious viewpoint discrimination, as well as violations of the Second, Fourth, Fifth, and Fourteenth Amendments. *Id.* ¶ 4.

The Initial Complaint explained how the Attorney General targeted Smith & Wesson because of its public support for the Second Amendment. *Id.* ¶ 136. Smith & Wesson's "Principles for Responsible Engagement" recognize the company's responsibility "to defend the Second Amendment." Declaration of Kyle Tengwall ("Tengwall Decl."), Ex. 1. Smith & Wesson supports "only those regulatory proposals that are consistent with the Second Amendment and that deliver demonstrable societal benefits." *Id.* at A-1. As part of this mission, Smith & Wesson has publicly opposed those seeking "the imposition of onerous and unnecessary regulations adversely impacting citizens' Second Amendment rights." *Id.* And Smith & Wesson has taken the public position that the Supreme Court's 2008 ruling in *District of Columbia v. Heller* "confirming the broad rights of citizens to possess firearms" is "settled law," a position directly at odds with the Attorney General's publicly stated position. *Id.*

7

### III.    The Attorney General's Retaliatory State Court Enforcement Proceeding.

Seeking to side-step any determination of the threshold constitutional issues at stake, on February 12, 2021, the Attorney General moved to enforce the Subpoena in state court through an Order to Show Cause, asking the state court to rule "irrespective of the merits" of this case. Scheideman Decl., Ex. 4, at 2.  In his motion papers, the Attorney General demanded that Smith & Wesson "be held in contempt of Court for failing or refusing to obey the [Subpoena]" and restrained "from engaging in the advertisement or sale of any merchandise until it fully responds to the Subpoena."  *Id*.  In reality, given that the Attorney General's view of "advertising" encompasses any "opinion" on Second Amendment issues, he seeks a ban on all of Smith & Wesson's protected speech until the Company produces the requested documents.  The state court issued the Order to Show Cause on February 22, 2021.  Scheideman Decl., Ex. 5.  That same day, seeking to further undermine Smith & Wesson's federal suit, the Attorney General filed a Motion to Dismiss (ECF No. 14), bootstrapping from his state court enforcement action an argument that this Court should abstain under *Younger*.

To this day, the Attorney General has not explained the urgency for the relief he seeks, or any basis for the Subpoena.  The ten years of "advertising" information requested did not become more relevant or pressing after he moved to enforce the Subpoena, and the parties have entered into a tolling agreement extending the limitations period for claims brought by the Attorney General under the CFA.  The only explanation for the Attorney General's haste is that Smith & Wesson filed the instant suit to vindicate its constitutional rights.

For those reasons and many others, Smith & Wesson filed an Amended Complaint in this Court on March 10, 2021.  ECF No. 17.  The Amended Complaint sets forth additional facts demonstrating that the Attorney General's proceedings in state court, and the draconian sanctions requested, are a punitive response to Smith & Wesson's petitioning for federal relief.  That same

day, Smith & Wesson filed an initial Motion for Order to Show Cause for a Temporary Restraining Order and a Preliminary Injunction to enjoin the Attorney General's retaliatory state court enforcement proceeding.  ECF No. 18.  It later withdrew that motion after the state court set a briefing and hearing schedule in the Attorney General's enforcement proceeding, which eliminated the exigency underlying Smith & Wesson's request for injunctive relief.  ECF No. 25.

On March 11, 2021, Smith & Wesson submitted an opposition in the state court to the Order to Show Cause, along with a Cross-Motion to Dismiss, Stay, or Quash the Subpoena. Scheideman Decl., Ex. 6.  In its motion, Smith & Wesson argued that (1) the state court should stay the enforcement proceedings while the federal case goes forward so that Smith & Wesson's claims could be adjudicated in this Court; and (2) if the state court declined to stay the enforcement proceeding, it should dismiss the Attorney General's complaint and quash the Subpoena for violating Smith & Wesson's First, Second, Fourth, Fifth, and Fourteenth Amendment rights.  *Id.*

After briefing by the parties, the state court held a hearing on May 27, 2021.  Scheideman Decl., Ex. 10.  Notably, when prompted by the state court to articulate an "anchor" to justify his sweeping Subpoena requests — *i.e.*, to point to "specific statements [or] specific products" that may have violated the CFA — the Assistant Attorney General responded that "it's not appropriate to disclose here, because (a) it's our investigative thinking and our strategy, and (b) we don't have all of the arguments yet[.]"  *Id.* at 37:16-23.  He declined to state whether Smith & Wesson had violated any law, only vaguely replying that "we have concerns that there might be a violation of the regulation. We haven't conclusively determined that yet, nor have we conclusively determined that there's a statutory violation."  *Id.* at 38:13-22.  And he does not "yet know what advertisements will be at issue, let alone which specific statements might violate the CFA."  *Id.* at 11:17-19.

9

IV.     **The State Court Failed to Address Constitutional and Other Legal Bases for Staying the Subpoena.**

The state court issued its rulings on the motions on June 30, 2021 and served those rulings and accompanying orders on the parties by email on July 2, 2021.  *See* Scheideman Decl., Ex. 14. In summary, the state court declined to stay the enforcement action, ordered enforcement of the Subpoena, and denied Smith & Wesson's cross-motions.  However, in so ruling, the state court erred in several ways.  **First**, the state court declined to rule on the majority of Smith & Wesson's constitutional objections, in contravention of the Supreme Court's ruling in *NAACP v. Alabama*, 357 U.S. 449 (1958), which holds that threshold constitutional issues must be resolved before any production of documents can be compelled.  The state court limited that ruling to cases involving freedom of association.  Scheideman Decl., Ex. 14, at 8-9.  No such limitation exists in the law. *NAACP* addressed the trampling of constitutional rights that would occur if subpoenas were enforced without regard to their validity under the Constitution.  Those prophylactic principles have application beyond the freedom of association context, and courts have so found.  *See, e.g.*, *In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp. Dated July 23, 2020*, 337 F.R.D. 639, 649 (N.D. Cal. 2020); *In re Rule 45 Subpoena Issued to Cablevision Sys.*, No. MISC 08–347, 2010 WL 2219343, at *7-*11 (E.D.N.Y. Feb. 5, 2010).

**Second**, the state court justified its decision in part by rejecting Smith & Wesson's argument that the Subpoena targets protected opinion-based statements, and not anything remotely sounding in fraud.  Scheideman Decl., Ex. 14, at 11.  The state court found that the Subpoena's opinion-related topics (such as whether concealed carry of firearms enhances one's lifestyle or make it easier for a person to defend themselves) were not opinion, but rather, were "statements which have the capacity to mislead or which address product attributes and are measurable by research."  *Id*.  But the state court gave no indication as to *how* such opinions were misleading or

10

could be measured, and as noted above, the Attorney General previously admitted that he had no specific basis for the Subpoena – *i.e.*, nothing that even suggested a potential CFA violation. Those opinions, which can never be proven false because they are opinions, cannot form the basis of a consumer fraud action and, thus, the Attorney General's argument fails under any standard, including the very basic standard that the Subpoena must be reasonably related to a legitimate purpose. It simply is not. And the state court completely failed to address the "chilling effect" of the Attorney General's conduct on First and Second Amendment rights.

**Third,** the state court did not address the constitutional invalidity of the one basis proffered for the alleged Subpoena, New Jersey's Hazardous Products Regulation. As Smith & Wesson has explained to this Court, *see* Dkt. No. 30 at 16-17, the regulation as applied to Smith & Wesson would unconstitutionally compel speech by forcing Smith & Wesson to provide disclosure regarding New Jersey's laws or suffer sanctions for not doing so.

**Fourth**, the state court declined to follow New Jersey's "first-to-file" rule, which requires a subsequently filed action to be stayed when it involves the same or similar issues as an earlier-filed action. *Sensient Colors Inc. v. Allstate Ins. Co*., 193 N.J. 373, 387 (2008). The state court implied that the rule only applies to actions filed in separate states, Scheideman Decl., Ex. 14, at 6, which is of course wrong. Under New Jersey law, the first-to-file rule applies equally where there is a first-filed federal action and a subsequently filed state court action filed in the same state, as is the case here. *Kaselaan & D'Angelo Assocs., Inc. v. Soffian*, 290 N.J. Super. 293, 300 (App. Div. 1996). More importantly, the state court held that "special equities" – *i.e.*, the purported "tactical maneuver" by Smith & Wesson to file a federal lawsuit – justified setting aside the first-filed rule. Scheideman Decl., Ex. 14, at 8. But filing suit to vindicate one's constitutional rights, as Smith & Wesson did, is a constitutionally protected exercise of the right to petition, and it should

11

never be labeled as a "tactical maneuver," especially when such a finding is a basis for ordering compliance with a subpoena that violates those same constitutional rights.

The state court ordered that Smith & Wesson respond in full to the Subpoena within thirty days, and enjoined the company from destroying documents requested by the Subpoena.[6]  *Id.* at 1.

## V.    The State Court Production Deadline Is Imminent.

The deadline for Smith & Wesson to produce documents pursuant to the Subpoena is August 2, 2021.  Scheideman Decl., Ex. 15.  As already noted, if it does not produce documents pursuant to the unconstitutional Subpoena, Smith & Wesson faces the looming prospect of sanctions, including contempt and crippling economic sanctions, despite the fact that its valid constitutional claims have not yet been adjudicated.

On July 7, 2021, Smith & Wesson filed a motion with the Superior Court to stay the June 30, 2021 Order so that the company can pursue an appeal.  After a hearing, that motion was denied on July 21, 2021.  *See* Scheideman Decl., Ex. 14.  On July 22, 2021, Smith & Wesson filed an application with the New Jersey Appellate Division to file an emergent motion to stay the June 30, 2021 order pending an appeal.  Scheideman Decl., Ex. 16.  The Appellate Division granted the application, set a briefing schedule, and issued an interim stay the same day.  Scheideman Decl., Ex. 17.  The Appellate Division denied Smith & Wesson's motion on July 29, 2021. *See* Scheideman Decl., Ex. 30.  Smith & Wesson is applying to the New Jersey Supreme Court for a stay, but given the August 2, 2021 deadline, it is unclear whether the Supreme Court will rule on that motion before the deadline passes.  Should the Supreme Court grant a full stay of the June 30, 2021 Order in the interim, Smith & Wesson will withdraw this Motion, which is filed as a necessity given the looming deadline in state court.

---

[6] Smith & Wesson does not contest the portion of the order enjoining the destruction of documents.

12

## LEGAL STANDARD

Smith & Wesson requests a temporary restraining order and preliminary injunction to enjoin and stay enforcement of state court's June 30, 2021 Order directing Smith & Wesson to produce documents pursuant to the Subpoena. A stay will allow Smith & Wesson's claims before this Court to be properly adjudicated and avoid the irreparable harm of violations of Smith & Wesson's constitutional rights – all while the status quo is preserved through the tolling agreement previously entered into by the parties. The Attorney General has not and cannot demonstrate harm.

The issuance of a temporary restraining order is evaluated under the same standard as whether to issue a preliminary injunction. *See Interior Motives, Inc. v. Salvatore,* No. 20-cv-5178, 2020 WL 2611517, at *2 (D.N.J. May 22, 2020) (citation omitted); *Int'l Foodsource, LLC v. Grower Direct Nut Co.,* No. 16-cv-3140, 2016 WL 4150748, at *6 (D.N.J. Aug. 3, 2016). Where, as here, a "temporary restraining order is sought on notice to the adverse party, it may be treated by the court as a motion for a preliminary injunction." *See* 13 Moore's Federal Practice - Civil § 65.31 (2020) (citation omitted). In deciding whether to grant preliminary injunctive relief, the Court must consider four factors: (1) the likelihood that plaintiff will prevail on the merits; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued, and (4) the public interest. *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 703 (3d Cir. 2004). As discussed below, all four factors weigh in Smith & Wesson's favor.

## ARGUMENT

### I. THE ALL WRITS ACT AND THE ANTI-INJUNCTION ACT AUTHORIZE THE COURT TO ENJOIN THE PROCEEDINGS IN NEW JERSEY STATE COURT.

This Court has the authority to enjoin and stay enforcement of the state court's June 30, 2021 Order under the All Writs Act, 28 U.S.C. § 1651, and the Anti-Injunction Act, 28 U.S.C.

13

§ 2283.  These two statutes "act in concert."  *In re Diet Drugs Prod. Liab. Litig.*, 369 F.3d 293, 305 (3d Cir. 2004).  If "an injunction falls within one of [the Anti–Injunction Act's] three exceptions, the All Writs Act provides the positive authority for federal courts to issue injunctions of state court proceedings."  *Id.*  A district court "may enjoin state proceedings at any point in time from the institution to the close of the final process."  *Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cnty.,* 988 F. Supp. 486, 495 (D.N.J. 1997) (citing *Hill v. Martin*, 296 U.S. 393, 403 (1935)).

The Anti-Injunction Act authorizes federal courts to issue an injunction to stay state court proceedings (1) when expressly authorized by Act of Congress, (2) where necessary in aid of the federal court's jurisdiction, or (3) to protect or effectuate the federal court's judgments.  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 103 (3d Cir. 2002).  Here, an injunction staying enforcement of the June 30, 2021 Order is proper because (1) Congress expressly authorized federal courts to stay state court proceedings in actions under 42 U.S.C. § 1983; and (2) it is necessary to protect the Court's jurisdiction in this case.  Either reason, standing alone, warrants the relief requested.

## A.    The Attorney General's Unconstitutional Actions May Be Enjoined Pursuant to 42 U.S.C. § 1983.

Section 1983 applies directly to the Attorney General's attack on Smith & Wesson's constitutional rights and his attempt to use coercive orders to force the company to relinquish its right to challenge the Subpoena.  As the Supreme Court has stated, "[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial."  *Mitchum*, 407 U.S. at 242.  While *any* attack on constitutional rights independently authorizes action under section 1983, the violations at issue

14

here — including an attempt to use a contempt sanction to compel a party to relinquish constitutional rights — are of particular concern to the federal courts, which are called on in such circumstances to determine the permissibility of the challenged actions.  *See Camara v. Mun. Ct. of City & Cnty. of San Fran.*, 387 U.S. 523, 532 (1967); *see also 44 Liquormart, Inc. v. R. I.*, 517 U.S. 484, 513 (1996); *Birchfield v. N. Dakota*, 136 S. Ct. 2160, 2172 (2016); *Gibson v. Florida Leg. Investigation Cmte.*, 372 U.S. 539, 545 (1963); *NAACP*, 357 U.S. at 449.

> **B.    This Court Should Also Enjoin the New Jersey State Court Action in Aid of Its Jurisdiction in This Case.**

An injunction to stay the state court action is also necessary because "the state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation." *In re Diet Drugs*, 282 F.3d 220, 234 (3d Cir. 2002) (quoting *Winkler v. Eli Lilly & Co.,* 101 F.3d 1196, 1202 (7th Cir. 1996)).  Put differently, as is certainly the case here, the state court action "interfere[s] with the federal court's own path to judgment." *Id.*

The Attorney General initiated the state court action to circumvent this proceeding and render any adjudication of Smith & Wesson's constitutional rights a nullity.  There can be no better example of this than the AG's own urging of the state court to enforce the Subpoena "irrespective of the merits" of Smith & Wesson's claims in this litigation.   That strategy has paid off, because the state court declined to consider the majority of Smith & Wesson's constitutional objections, let alone address them in a meaningful manner, and instead, simply ordered enforcement of the Subpoena.  Smith & Wesson now faces imminent irreparable harm of having to comply with a subpoena which is unconstitutional and unenforceable.

Courts considering an injunction under the "in aid of jurisdiction" provision of the Anti-Injunction Act evaluate three factors: (1) "the nature of the federal action to determine what kinds of state court interference would sufficiently impair the federal proceeding"; (2) whether "the state

court's actions . . . present a sufficient threat to the federal action"; and (3) "principles of federalism and comity" "to prevent needless friction between the state and federal courts." *In re Diet Drugs*, 282 F.3d at 234. "[W]here a state court proceeding amounts to an attack on a federal action, [a court is] more likely to find significant interference" and is "also less likely to find that comity demands deference to the state court action." *Id.* at 238. All three factors favor an injunction here.

As to the first factor, whether state court action would interfere with and impair the nature of the federal action, courts in this Circuit recognize that state court proceedings can be stayed to adjudicate a plaintiff's federal rights. *See, e.g.*, *Piper v. Portnoff Law Assocs.*, 262 F. Supp. 2d 520, 530 (E.D. Pa. 2003). The interference with this lawsuit is obvious because the state court has now ordered production notwithstanding that Smith & Wesson's federal claims are yet to be resolved by this Court. Further demonstrating that the Attorney General's goal is interference, he filed the state court action months after this action was filed, cognizant that threshold constitutional issues were at stake, and expressly asked the state court to compel compliance on an expedited basis "irrespective of the merits" of this lawsuit. Scheideman Decl., Ex. 4, at 2.

As to the second factor, it also is equally obvious that the state court action presents a sufficient threat to this action. The state court has ordered production despite the constitutional challenges pending in this Court. And should the state court enter an order of contempt and ban Smith & Wesson's business activities and constitutionally protected speech, the Attorney General will have entirely side-stepped these proceedings and the numerous threshold constitutional arguments raised by Smith & Wesson, all of which are yet to be adjudicated in this forum. The "in aid of jurisdiction" exception gives this Court the power to issue an injunction to stay the state court action to avoid this precise scenario. *Atl. Coast Demolition*, 988 F. Supp. at 495.

Finally, principles of comity demand a stay of the June 30, 2021 Order, because Smith & Wesson filed its suit first and diligently raised its rights in this Court. The Attorney General then waited almost two months and retaliated against Smith & Wesson by filing the state court action, demanding summary relief on an expedited basis. This was an overt attempt to preempt this court's substantial federal interests and its adjudication of threshold constitutional issues. The Attorney General's vindictive filing thus constitutes an "attack" on the federal court litigation, which principles of comity dictate that this Court steadfastly reject. *In re Diet Drugs*, 282 F.3d at 238. Additionally, under principles of comity, courts typically give priority to the first-filed suit, which "aids in the 'prompt and efficient administration of justice' and avoids the economic waste and risk of conflicting judgments inherent in duplicative litigation." *Monzo v. Bazos*, 313 F. Supp. 3d 626, 630 (E.D. Pa. 2017) (internal quotation marks omitted). Indeed, this is the law in New Jersey as well. *See Sensient Colors*, 193 N.J. at 387; *Kaselaan,* 290 N.J. Super. at 300.

## II.     THIS COURT SHOULD STAY THE NEW JERSEY STATE COURT ACTION.

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits (which requires a showing of only a "reasonable chance, or probability of success"), that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). "If a plaintiff proves 'both' a likelihood of success on the merits and irreparable injury, it 'almost always will be the case' that the public interest favors preliminary relief. *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017) (citation omitted). Importantly, a court need only determine that the moving party would likely succeed *on just one claim* to issue injunctive relief. *Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*, 655 F. Supp. 2d 581, 590 (W.D. Pa. 2009). Smith & Wesson easily meets these factors.

17

A.    **Smith & Wesson Has a Reasonable Chance of Success in This Litigation.**

1.    **Smith & Wesson Has a Reasonable Chance of Success on Its First Amendment Viewpoint Discrimination Claim.**

Smith & Wesson has a reasonable chance of success on its First Amendment viewpoint discrimination claim, because as explained above, the Office of the Attorney General has targeted the company's speech, and "the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger* v. *Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995); *see also Turner Broad. Sys. v. F.C.C.*, 512 U.S. 622, 658 (1994) (viewpoint discrimination entails "the Government's preference for the substance of what the favored speakers have to say (or aversion to what the disfavored speakers have to say).").  As extensively detailed in the Amended Complaint, the series of actions taken by the Attorney General specifically targeting Smith & Wesson, including issuing the Subpoena, were taken because of Smith & Wesson's opinions, and specifically to restrict Smith & Wesson's speech.

Viewpoint discrimination is so insidious that it is "presumed to be unconstitutional," and merely curtailing speech "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction" is absolutely forbidden.  *Id.* at 828-829.  "[V]iewpoint discrimination is impermissible in *any forum*," and "[g]overnment actors . . . cannot restrict speech because they disapprove of the ideas expressed."  *Northeastern Pa. Freethought Society v. Cnty. of Lackawanna Transit Sys.*, 938 F.3d 424, 432, 436 (3d Cir. 2019) (emphasis added).

This is exactly what the Amended Complaint properly alleges here, in painstaking detail. Prior to the Subpoena being served, Attorney General Grewal's views were manifested in his repeated public statements, his attempts to link "crime guns" to gun manufacturers like Smith & Wesson through a misleading "name and shame" campaign, his coordination with anti-Second

18

Amendment activists, his hiring of outside counsel on a contingency basis for the purpose of anti-Second Amendment firearms litigation, and his goal to completely silence Smith & Wesson's speech.  During a protracted campaign, he threatened to "turn the heat up" and labeled Smith & Wesson as a bad actor.  Then, discriminating against Smith & Wesson's viewpoint on Second Amendment rights, he issued the Subpoena — using the cudgel of the CFA — because he disapproves of the ideas expressed by Smith & Wesson, and later initiated the state court enforcement action requesting sanctions that would put Smith & Wesson out of business in New Jersey.  The Subpoena and the enforcement action in New Jersey state court serve the same goal as the Attorney General's other previous actions and statements – i.e., silencing Smith & Wesson's views in the marketplace of ideas.

### 2. Smith & Wesson Has a Reasonable Chance of Success on its Prior Restraint Claim.

Smith & Wesson also has a reasonable chance of success on its prior restraint claim.  The relief that the Attorney General is pursuing in the state court — a proactive ban on Smith & Wesson's speech — is an impermissible prior restraint, because (1) it imposes a burden on First Amendment-protected activity; and (2) Smith & Wesson's speech and its filing of this suit constituted conduct with "a significant expressive element that drew the legal remedy in the first place." *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706 (1986).

Prior restraint constitutes "the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).  "When a prior restraint takes the form of a court-issued injunction, the risk of infringing on speech . . . increases." *Met. Opera Ass'n v. Local 100*, 239 F.3d 172, 176-77 (2d Cir. 2001).  Such restraints are subject to a "heavy presumption" against constitutional validity. *Bantam Books, Inc v. Sullivan*, 372 U.S. 58, 70 (1963)).  This "most extraordinary remed[y]" is *only* permitted "where the evil that would result

[from the speech] is both great and certain and cannot be mitigated by less intrusive measures." *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (Blackmun, J., in chambers).

Here, no such "evil" exists. To the contrary, the speech at issue pertains to fundamental constitutional rights, and the Attorney General has not identified a single purportedly fraudulent statement made by Smith & Wesson, much less the sort of "findings that adequately disclose the evidentiary basis . . ., that carefully identify the impact of [the defendants]' unlawful conduct, and that recognize the importance of avoiding the imposition of punishment for constitutionally protected activity." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 934 (1982). The sledgehammer of an absolute prior restraint on *all* of Smith & Wesson's speech in the state of New Jersey is hardly the kind of "less intrusive measure" envisioned by the Supreme Court.

### 3. The Attorney General's Retaliatory Actions Are a Violation of Smith & Wesson's Constitutional Rights.

The obvious retaliation discussed above also establishes "a reasonable chance, or probability, of winning." *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015). Establishing retaliation requires only a showing that (1) Smith & Wesson engaged in constitutionally protected conduct, (2) the Attorney General engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link existed between the protected conduct and the retaliatory action. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019); *see also Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (applying same test in Petition Clause case). All three elements are satisfied here.

**First**, Smith & Wesson's Subpoena challenge is an exercise of its constitutional right to petition. *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011).

**Second**, the Attorney General's enforcement action is "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Miller v. Mitchell*, 598 F.3d 139, 152

(3d Cir. 2010).  He seeks to place Smith & Wesson underneath the dual grindstones of compliance with an unconstitutional Subpoena, or a ban on all of Smith & Wesson's protected speech and business activities in New Jersey, unless Smith & Wesson complies with the Subpoena.  Such an all-or-nothing situation would make any normal person question whether to continue to proceed with a lawsuit to vindicate its fundamental constitutional rights or express protected opinions.

**Third**, there is a clear causal connection between Smith & Wesson's exercise of its right to petition and the Attorney General's actions.   After Smith & Wesson filed its federal action, the Attorney General filed the enforcement action in state court, seeking to cripple Smith & Wesson's business in New Jersey until it relinquishes its objections and provides the documents.   The Attorney General has not even attempted to articulate (and could not articulate when prompted by the state court) any reason for the Subpoena or why Smith & Wesson's assertion of its constitutional rights is so unjustified or the potential harm to consumers so dire that it would require a total shutdown of Smith & Wesson in New Jersey.  No imminent harm is identified, no changed circumstances are explained – nothing.  Despite this, in response to Smith & Wesson's lawsuit, the Attorney General filed his enforcement action in New Jersey seeking draconian sanctions.  This demonstrates that he Attorney General's "motive in bringing a prosecution is likely retaliatory, rather than a good faith effort to enforce the law[.]"  *Miller*, 598 F.3d at 153.

Further, the Attorney General's state court enforcement action is part of a line of retaliatory conduct against Smith & Wesson.  Smith & Wesson is an iconic, nationally recognized brand which has pronounced that it actively opposes "the imposition of onerous and unnecessary regulations adversely impacting citizens' Second Amendment rights."  This is unquestionably "constitutionally protected conduct" of the highest order, since "the expression of editorial opinion on matters of public importance . . . is entitled to the most exacting degree of First Amendment

protection." *F.C.C. v. League of Women Voters of Cal.*, 468 U.S. 364, 374-376 (1984).  As the Supreme Court has held, "[o]fficial reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right'[.]"  *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  Thus, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out."  *Id.*

### 4. Enforcement of the Subpoena Would Unlawfully Compel Speech.

Smith & Wesson also has a reasonable chance of success because, taken to its logical conclusion, the Subpoena would unconstitutionally compel speech.  "[F]orced speech that requires the private speaker to embrace a particular government-favored message" is unconstitutional.  *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 188 (3d Cir. 2005).  The Attorney General has argued that Smith & Wesson is required to inform consumers that New Jersey law requires a permit to carry a concealed weapon under the Hazardous Products Regulation, N.J.A.C. 13:45A-4.1(b).  But enforcement of the regulation would, by definition, constitute (1) speech; (2) to which Smith & Wesson objects, and that (3) is compelled by the government — which is all that is required to succeed on a claim for compelled speech.  *Semple v. Griswold*, 934 F.3d 1134, 1143 (10th Cir. 2019).  Moreover, compelled speech is not permissible simply because the government's message is "factual."  There is no First Amendment distinction between "compelled statements of opinion" and "compelled statements of 'fact'" because both "form[s] of compulsion burden[] protected speech."  *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 797-98 (1988).

Even if such required disclosures are classified as commercial speech, they are prohibited because any compulsion must be narrowly drawn and "not more extensive than is necessary to serve [New Jersey's] interest."  *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980).  A more narrowly drawn and less burdensome method is obvious: modification of New Jersey's online permit form, required for every firearm purchase, to include

the required statement.  *See 44 Liquormart,* 517 U.S. at 507.  The Attorney General has the burden to show he can compel speech, and he has not met that burden.  *See Nat'l Inst. of Family & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2376 (2018).

> 5. **The Attorney General's Actions Have Also Impinged on Smith & Wesson's Protected Speech.**

Additionally, Smith & Wesson has a reasonable chance of success on its First Amendment claims because its protected political and commercial speech rights are being violated by the Attorney General.  That violation will only be exacerbated if the Attorney General is granted his draconian wish of barring all of Smith & Wesson's marketing and advertising in the state of New Jersey.  Undoubtedly, the Attorney General will attempt to paint this as "pure" commercial speech that he is permitted to prohibit.  But the speech the Attorney General seeks to ban is not garden-variety commercial speech; it pertains to the ability of Americans to exercise their Second Amendment rights.  That is protected political speech.

An advertisement does not "retain[] its commercial character when it is inextricably intertwined with otherwise fully protected speech." *Riley*, 487 U.S. at 796.  Thus, "[r]egulation of a solicitation 'must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech … and for the reality that without solicitation the flow of such information and advocacy would likely cease." *Id.* (citation omitted).  Consequently, when courts "cannot parcel out the speech, applying one test to one phrase and another test to another phrase," they should apply the "test for fully protected expression" — i.e., strict scrutiny. *Id.*  Here, the Attorney General's attempted ban cannot meet strict scrutiny, because there is no compelling interest that can justify a ban on all of Smith & Wesson's speech in the state of New Jersey, nor is the ban narrowly tailored in any way, as evident from the sprawling scope of the relief sought in the enforcement action.

23

Even if Smith & Wesson's marketing and advertising is merely and purely commercial speech, the Attorney General's suppression of it still cannot pass intermediate scrutiny. Under the First Amendment, the government can only restrict non-misleading commercial speech if (1) the government's interest is substantial; (2) the regulation directly advances the interest asserted; and (3) the regulation is no more extensive than necessary to serve that interest. *Central Hudson*, 447 U.S. at 564. The Attorney General cannot show that any of the opinion-based marketing statements at issue in the Subpoena (e.g., whether a gun makes a home safer or whether concealed carry enhances one's lifestyle) are false or fraudulent. Indeed, as this Court has previously found, by their very definition, such statements cannot be classified as fraud. For example, in *Tatum v. Chrysler Grp. LLC.*, No. 10-4269, 2011 WL 1253847, at *4 (D.N.J. Mar. 28, 2011), this Court held that statements that a car was "very safe" constituted "classic examples of non-actionable opinion[.]" Similarly, in *Bubbles N' Bows LLC v. Fey Pub. Co.*, No. 06–cv-5391, 2007 WL 2406980, at *9 (D.N.J. Aug. 20, 2007), the Court ruled that "vague and ill-defined opinions" cannot be construed as a misrepresentation. Thus, the Attorney General has no right to an absolute ban of Smith & Wesson's speech. Nor does the he have a legitimate interest in prosecuting Smith & Wesson for non-misleading speech; such a prosecution is a blatant overreach of his powers. Thus, Smith & Wesson has a reasonable chance of prevailing on its First Amendment claims.

### 6. Smith & Wesson Has a Reasonable Chance of Success on Both of Its Second Amendment Claims.

The Second Amendment holds that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., 2nd Am. While the Second Amendment is often invoked to protect individual citizens' rights, *see Dist. of Columbia v. Heller*, 554 U.S. 570 (2008), the Third Circuit and other Circuits have held that "[c]ommercial regulations on the sale of firearms do not fall

outside the scope of the Second Amendment[.]"  *U.S. v. Marzzarella*, 614 F.3d 85, 91-92 n.8 (3d Cir. 2010).  Thus, the Second Amendment extends to gun manufacturers and sellers.  *Id.*

For example, in *Ezell v. City of Chicago*, 651 F.3d 684, 696 (7th Cir. 2011), the Seventh Circuit held that a supplier of firing range facilities had standing in its own right to bring a Second Amendment challenge to a city ordinance that mandated firing-range training as prerequisite to lawful gun ownership, while simultaneously prohibiting all firing ranges in city.  Similarly, in *Illinois Association of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928 (N.D. Ill. 2014), the court struck down a city ordinance banning all sales and transfers of guns in Chicago, because such transactions are not outside the scope of the Second Amendment.

Given that Smith & Wesson clearly has standing to bring its Second Amendment claim, the facts alleged in this case easily support the conclusion that these rights are being deprived by the Attorney General.  The Attorney General has partnered with anti-Second Amendment activists intent on damaging the company's brand, reputation, and financial vitality.  His investigation, issuance of the Subpoena, and now a retaliatory enforcement action, are forcing Smith & Wesson to expend substantial financial resources.  Tengwall Decl. ¶ 22.

Worse still, the Attorney General seeks to deprive Smith & Wesson of its rights by suggesting that any statements made by the company regarding the use of a gun for self-defense or safety (including the value of concealed carry), somehow fail to inform purchasers of the risks of carrying firearms.  He seeks to impose a separate set of values that view any attempt at self-defense as more dangerous than not.  Such an attack on opinion is not only impermissible, but also runs directly counter to the foundational principles of protection of persons and their homes, as enshrined in the Second Amendment and recognized by *Heller*.  The Attorney General cannot impose his value judgments and opinions on those who do not share his views, because the

"enshrinement of constitutional rights necessarily takes certain policy choices off the table." 554 U.S. at 636. The policy protected by the Second Amendment is clear: "a citizen has 'a right to carry arms in defence of his property or person, and to use them, if either were assailed with such force, numbers or violence as made it necessary *for the protection or safety of either*.'" *Id.* at 611 (quoting *Johnson v. Tompkins,* 13 F. Cas. 840, 850, 852 (CC Pa. 1833)). Just as "the First Amendment itself reflects a judgment by the American people that the benefits of its restrictions on the Government outweigh the costs[,]" *United States v. Stevens*, 559 U.S. 460, 470 (2010), the Second Amendment also reflects that same judgment regarding the benefits of owning firearms.

Smith & Wesson's Second Amendment claim on behalf of gun owners also has a reasonable chance of success. The Attorney General's ongoing campaign against Smith & Wesson has harmed it financially, hindering its ability to manufacture firearms. The natural consequence of this hindrance is the obstruction of citizens' ability to purchase and bear firearms. Smith & Wesson has standing to bring this claim because it has a "close relationship" to gun owners, who are unable to challenge the Subpoena in New Jersey state court and thus cannot challenge the violation of their Second Amendment rights.[7] *Powers v. Ohio,* 499 U.S. 400, 411 (1991). By limiting citizens' ability to purchase firearms, enforcement of the CFA will "impose[] a burden on conduct falling within the scope of the Second Amendment[.]" *Marzarella*, 614 F.3d at 89.

### 7. Smith & Wesson Has a Reasonable Chance of Success on Its Fourth and Fifth Amendment Claims.

Smith & Wesson also has a reasonable chance of success on its Fourth Amendment claim. The Subpoena constitutes an unreasonable search and seizure because it is vastly overbroad, seeks

---

[7] Courts are "quite forgiving" in applying the close relationship requirement "when enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of the third parties' rights." *Kowalski v. Tesmer,* 543 U.S. 125, 130-131 (2004) (emphasis in original).

information related to opinion or the basis of a legal position, demands information about lawful conduct that is protected under the First, Second, and Fourteenth Amendments, is not reasonably related to any legitimate investigative purpose, and is overly burdensome.  Am. Compl. ¶¶ 198-99.  It is the Attorney General's burden to meet these threshold requirements, and that burden cannot be satisfied.  *See v. City of Seattle*, 387 U.S. 541, 544 (1967).  He does not have unfettered subpoena power; the Fourth Amendment prohibits "investigations premised solely upon *legal* activity" because they are forbidden "fishing expeditions."  *Major League Baseball v. Crist*, 331 F.3d 1177, 1182, 1187 (11th Cir. 2003).  That is particularly true when First Amendment rights are implicated; in such cases, Fourth Amendment restrictions must be applied with "scrupulous exactitude."  *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978).

Smith & Wesson also has a reasonable chance of success on its Fifth Amendment claim.  An administrative subpoena fails the Fifth Amendment rational basis test when the state's proffered reasons do not support its action.  *N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 398 (3d Cir. 2012).  Aside from his assertion that his investigatory power is unlimited, the Attorney General has only put forward one rationale for his investigation: the state requirement to advertise permit information, which cannot pass muster for the reasons set forth above.  An investigation of constitutionally-protected activity can never be a legitimate interest of the state.  *See*, *e.g.*, *Handschu v. Police Dep't of City of N.Y.*, 219 F. Supp. 3d 388, 391 (S.D.N.Y. 2016).

### 8.     Smith & Wesson Has a Reasonable Chance of Success Because the Attorney General's Investigation and Subpoena Enforcement Action Are Preempted by the PLCAA.

In addition to its constitutional claims, Smith & Wesson also has a reasonable chance of success because any action brought under the CFA (upon which the Subpoena is based) would be preempted by the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901–7903 (the "PLCAA").  The statute forbids a "qualified civil liability action" from being brought in any

Federal or State court, defining a "qualified civil liability action" as "a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer . . . for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party[.]"[8] 15 U.S.C. § 7903.  Congress meant to foreclose all manner of attacks on the firearms industry including "liability actions commenced or contemplated by . . . States, municipalities, and private interest groups" which would "expand civil liability in a manner never contemplated by the framers of the Constitution," and would "constitute a deprivation of the rights, privileges, and immunities guaranteed to a citizen of the United States under the Fourteenth Amendment to the United States Constitution."  15 U.S.C. § 7901(a)(7).

Here, the nightmare scenario envisioned by Congress has come to fruition.  The Attorney General is seeking information that could be used in litigation against Smith & Wesson for damages, whether by the Attorney General or by private parties.  Through the "name and shame" campaign, dissemination of the flawed "gun crime" reports, the Subpoena, and the enforcement action, the Attorney General has signaled that he seeks to hold Smith & Wesson accountable for crimes committed by others, which is precisely what the PLCAA was intended to prevent.

## B.   Smith & Wesson Will Suffer Immediate and Irreparable Harm Absent a Temporary Restraining Order and An Injunction.

Smith & Wesson will suffer immediate and irreparable harm should the Court not enjoin the state court proceedings.  The state court has set an August 2, 2021 deadline for Smith & Wesson

---

[8] The PLCAA has an exception for violations of "a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought."  15 U.S.C. § 7903.  This exception does not apply to laws of general applicability, *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 399-400 (2d Cir. 2008), which New Jersey's CFA is, in that it is aimed at fraudulent practices generally.

28

to produce documents pursuant to the unconstitutional Subpoena.  If it does not comply, Smith & Wesson faces a sword of Damocles in the form of draconian sanctions, including an order to cease its business in New Jersey, a prior restraint on its protected speech, and contempt.  The only other option is to comply and surrender constitutional rights.

Forced production of documents will also further compound the constitutional violations that Smith & Wesson has raised in state and federal courts, without meaningful consideration of those violations.  *See Sweezy v. New Hampshire*, 354 U.S. 234, 245, 254-55 (1957).  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  Compelled production in this highly politicized investigation will also have the inevitable effect of chilling the speech of Smith & Wesson and others on its side of the Second Amendment debate. The Supreme Court has recognized that the threat of prosecution will often discourage citizens from engaging in free speech.  *See Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965).  This intolerable chilling effect is an independent ground for this Court to find First Amendment injury.   Investigations may chill speech regardless of whether the state's efforts will be successful.  *Id.*  The Attorney General's actions send a clear signal that any Smith & Wesson advertisement seen in the state of New Jersey will be subject to investigation and possible civil enforcement proceedings.  Tengwall Decl. ¶ 21. They will also force Smith & Wesson to tailor its political and commercial messages out of concern of prosecution and harassment by the Attorney General, for entirely lawful conduct. *Id.* ¶ 20.  Such constitutional infringements "will often alone constitute irreparable harm."  *Ass'n for Fairness in Bus., Inc. v. New Jersey,* 82 F. Supp. 2d 353, 363 (D.N.J. 2000).  That is the case here.

### C.    A Stay of the State Court Order Will Not Harm Other Interested Parties.

The interference with Smith & Wesson's constitutional rights and the harm that would be caused by the Attorney General's requested relief outweighs any inconvenience to the Attorney

General from following the appropriate judicial process. *See, e.g.*, *Douglas v. Ashcroft,* 374 F.3d 230, 233-34 (3d Cir. 2004). The Attorney General has failed to identify any non-speculative harm to justify immediate production — *i.e.*, no concrete harm to consumers, and no changed circumstances. Although he speculates in his state court briefing that consumers *may* be misled in the meantime, that is pure conjecture. Moreover, the Attorney General has filed a motion to dismiss this action, which would in the normal course resolve his issues. Should this Court enter judgment against Smith & Wesson on its federal claims, the Attorney General would then be free to proceed in New Jersey state court. No harm accrues to his case from a short delay, and a tolling agreement between the parties shields his ability to brings claims under the CFA. Thus, the balance of equities tips overwhelmingly in Smith & Wesson's favor.

### D. An Injunction Furthers the Public Interest.

"In the absence of legitimate, countervailing concerns, the public interest clearly favors the protection of constitutional rights." *Council of Alt. Political Parties v. Hooks,* 121 F.3d 876, 883–84 (3d Cir. 1997). No countervailing concerns are at issue here. To the contrary, the entire purpose of the stay would be to prevent the violation of Smith & Wesson's constitutional rights from being violated while its claims are adjudicated. A stay also serves the "public interest in preventing the hindrance of consumer choice as well as impediments to debate over issues of public policy." *GJJM Enters., LLC v. City of Atl. City*, 293 F. Supp. 3d 509, 521 (D.N.J. 2017).

### CONCLUSION

The Court should enter a temporary restraining order and preliminary injunction staying the Subpoena enforcement proceedings in New Jersey Superior Court, as well as any enforcement of the court's June 30, 2021 Order.

Respectfully submitted,

Dated:  July 30, 2021

*/s/ Courtney G. Saleski*
Courtney G. Saleski
**DLA PIPER LLP (US)**
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
Tel: 215-656-2431
courtney.saleski@dlapiper.com

Christopher M. Strongosky
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Tel: 973-520-2550
christopher.strongosky@dlapiper.com

Joseph A. Turzi (admitted *pro hac vice*)
Edward S. Scheideman (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Tel: (202) 799-4000
joe.turzi@dlapiper.com
edward.scheideman@dlapiper.com

*Attorneys for Plaintiffs*
*Smith & Wesson Brands, Inc.*
*Smith & Wesson Sales Company*
*Smith & Wesson Inc.*

31