# EXHIBIT 11

**PREPARED BY THE COURT**

| | |
|---|---|
| GURBIR S. GREWAL, Attorney General of the State of New Jersey, and KAITLIN A. CARUSO, Acting Director of the New Jersey Division of Consumer Affairs<br><br>Plaintiffs,<br><br>vs.<br><br>SMITH & WESSON SALES CO., INC., a/k/a AMERICAN OUTDOOR BRANDS SALES CO., A/K/A SMITH & WESSON CORP.,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY ~~DIVISION~~<br>ESSEX COUNTY Hon. Jodi Lee Alper, P.J.Ch.<br><br>DOCKET NO.: C-25-21<br><br>CIVIL ACTION<br><br>**ORDER FOR SUBPOENA RESPONSES** |

FILED JUN 3 0 2021

**THIS MATTER** having been opened to the Court by way of a summary action pursuant to R. 4:67-1(a) by Chanel Van Dyke, Deputy Attorney General, for plaintiffs Gurbir S. Grewal, Attorney General of the State of New Jersey, and Kaitlin A. Caruso, Acting Director of the New Jersey Division of Consumer Affairs, and the Court having considered the supporting papers, opposition papers, and oral arguments placed on the record on May 27, 2021, and for the reasons set forth in the attached Statement of Reasons:

**IT IS** on this **30th** day of **June**, 2021 hereby:

1. **ORDERED** that defendant shall respond fully to the subject Subpoena within thirty (30) days; and it is further

2. **ORDERED** that defendant is enjoined from the destruction of any documents specifically requested in the Subpoena; and is further

3. **ORDERED** that a copy of this Order shall be served on all parties within seven (7) days of the date of entry of this Order.

_Jodi Lee Alper_

Jodi Lee Alper, J.S.C.

(X) Opposed
( ) Unopposed

## STATEMENT OF REASONS

**Re:** Gurbir S. Grewal, Attorney General of the State of New Jersey, et al. v. Smith and Wesson Corp.

C-25-21

### *Background*

On October 13, 2020 plaintiffs, New Jersey Attorney General, Gurbir Grewal, served a subpoena *duces tecum* on defendant, Smith and Wesson Corp. ("S&W') pursuant to the N.J. Consumer Fraud Act, N.J.S.A. 56:8-1 to 226. Among other things, the subpoena requests advertisements for S&W merchandise made available in New Jersey concerning home safety, "concealed carry", personal protection/safety/defense, or home defense benefits of a firearm. The subpoena also seeks documents relating to tests conducted regarding claims made in the advertisements.

The subpoena had a November 13, 2020 return date which was extended thirty days at the request of defendant. On December 14, 2020, S&W produced no documents but responded in writing to plaintiffs, citing its various constitutional objections to the document demands. On December 15, 2020 S&W filed a lawsuit in the U.S. District Court for the District of New Jersey asserting constitutional objections to the subpoena.

On February 12, 2021, the NJ Attorney General and the NJ Division of Consumer Affairs filed this Order to Show Cause to enforce the subpoena. S&W has cross-moved to dismiss the complaint, stay this enforcement action or quash the subpoena essentially for the following reasons:

1. S&W responded to the subpoena in writing raising issues of the validity and constitutionality of the subpoena followed by the federal lawsuit challenging its constitutionality;

1 of 13

2. S&W cannot be held in contempt because no final order has been issued;

3. The Attorney General has not established that the subpoena is reasonably related to a legitimate area of inquiry;

4. The actions of the Attorney General should be stayed, if not dismissed, because S&W filed its federal action challenging the subpoena two months before the Attorney General filed this enforcement action;

5. The Attorney General has not addressed the assertion that he is overreaching under the First and Second Amendments.

*Defendant's Argument*

S&W argues that the Attorney General does not present a legitimate inquiry into "purported" fraud under the Consumer Fraud Act because the subpoena targets opinions and protected speech regarding Second Amendment issues. It argues that the subpoena requests documents on "opinions and value judgements" in that it demands:

   a. Copies of advertisements for S&W merchandise available in New Jersey concerning home safety, concealed carry, personal protection, personal defense, personal safety, or home defense benefits of a firearm, and
   b. Documents regarding tests, etc. relating to claims made in the advertisements..

As a counter to this enforcement action, S&W asserts that it responded to the subpoena with its written objections. Even if these objections were inadequate, without a court order having been in place, there are no grounds to warrant sanctions. The Attorney General has not made a showing that the subpoena is reasonably related to a legitimate purpose; "a substantial showing" that the records contain evidence relevant and material to the issue, citing Greenblatt v. NJ Bd. Of Pharmacy 214 N.J. Sup. 269, 275 (App. Div. 1986).

S&W claims that the Attorney General improperly relies on NJAC 13:45A-4.1(b) relating to an unconscionable practice which would constitute fraud. This provision applies where a business entity markets or advertises "a consumer product that is illegal to possess or use in this state without a valid permit or license, where the possession or use, or the possession or use without a valid permit or license, would subject the person possessing or using the product to criminal prosecution" without clear and conspicuous disclosure that the product is illegal to possess or use in the state, or to possess or use in the state without a valid permit or license.

However, S&W argues that any such obligation to inform consumers of the concealed carry permit requirement under this regulation would be on the State or retailer, not the manufacturer.

S&W also argues the New Jersey regulation is unconstitutional because it impermissibly compels speech and is nothing more than an attack on opinions.

Thus, according to S&W, this matter should be stayed pending resolution of the federal claims relating to these issues. It relies upon the "first filed" rule that the court which first acquires jurisdiction has precedence in the absence of special equities citing to Sentient Colors v. Allstate 193 N.J., 387 (2008).

According to S&W, the subpoena should be quashed as unconstitutional on several grounds:

### 1. Unlawful Viewpoint Discrimination

The entire subpoena targets one specific viewpoint – those advocating for the Second Amendment and specifically that firearms may be used for self-defense.

### 2. S&W's Protected Political Speech Rights are being Violated.

The Court must apply strict scrutiny because speech does not retain its commercial character when it is inextricably intertwined with otherwise fully protected speech. Riley v. Nat'l

Fed. of the Blind of N. Carolina, Inc. 487 U.S. 781, 796 (1988). The Attorney General targets S&W to stop it from speaking. S&W asserts that its marketing and advertising is not merely and purely commercial speech. Under the First Amendment, when speech is neither misleading nor related to unlawful activity, the government can only restrict commercial speech if 1) the government interest is substantial, 2) the regulation directly advances the interest asserted, and 3) the regulation is no more extensive than necessary to serve that interest. Central Hudson G&E v. Pub. Serv. Comm'n NY 447 U.S. 557 (1980).

The Attorney General cannot chill S&W's speech through the "punitive" subpoena which targets the view of S&W. Furthermore, "prosecuting" S&W for "non-misleading" speech is beyond the powers of the Attorney General.

### 3. S&W's Equal Protection, Due Process, and Fourth Amendment Rights against Illegal Searches and Seizures

S&W contends that the Attorney General has "an axe to grind" against gun manufacturers and that he is violating S&W's rights against illegal searches and seizures. It concedes that an investigation may proceed "merely on the suspicion that the law is being violated, or even just because the State wants assurance that it is not." Univ. of Med. & Dentistry of NJ v. Corrigan 347 F.2d 57, 64 (3d Cir. 2003). However, a subpoena of corporate books must be limited in scope, relevant in purpose, and specific – not unreasonably burdensome. See v. City of Seattle 387 U.S. 541, 544 (1967). While acknowledging that the Attorney General may launch an investigation under the CFA if he merely believes it to be in the public interest, N.J.S.A. 56:8-3, it cannot be conducted as to "vague and ill-defined opinions."

For these reasons, S&W asserts that the Complaint to enforce the subpoena must be dismissed or the subpoena quashed or stayed pending the federal litigation relating to these issues.

### *Plaintiffs' Argument*

The Attorney General argues that the subpoena is legally sufficient. The CFA bars deceptive advertising through knowing omission, intentional misrepresentation, or a statement that unintentionally misleads a consumer. N.J.S.A. 56:8-2. Requests One and Two of the subpoena seek drafts of final versions of S&W advertisements to New Jersey consumers. Requests 3 and 6 seek studies, analyses, or evaluations regarding advertising claims related to safety risks and benefits of its products. Request 4 requests documents relating to advertising claims that S&W firearms are designed to be safer, more reliable, accurate, and effective than those of other manufacturers and claims that novice, untrained consumers could successfully and effectively use an S&W firearm for personal or home defense.

According to the Attorney General, these are run of the mill requests that will help ascertain whether or not misrepresentations were made to NJ consumers or if there was a failure to disclose pertinent information. There are numerous examples in the context of consumer fraud matters where Courts have determined that product claims which are specific and measurable are not puffery. Such a case, as cited by the Attorney General, is In re General Motors, LLC Ignition Switch Litig. where the Court determined that claims discussing "world-class engineering and advanced safety and security features" in vehicles could be objectively measured and thus were not puffery. 257 F. Supp. 3d. 372, 457 (S.D.N.Y. 2017).

Numerous other examples are provided by the Attorney General in which routine inquiries are made through CFA subpoenas and used to ascertain the veracity of advertising statements directed to NJ consumers. The CFA provides broad investigative tools and it is "intended to confer on the Attorney General the broadest kind of power to act in the interest of the consumer public" Kugler v. Romain 58 N.J. 522, 537 (1971).

*Analysis*

First Filing

Smith & Wesson asserts that because its federal lawsuit was filed prior to this subpoena enforcement action that this State action must be stayed or dismissed or the subpoena must be quashed. S&W relies upon Sentient Colors, Inc. v. Allstate Ins. Co. 193 N.J. 373 (2008).

It is noteworthy that the Sentient matter took place with filings in two states, not in a state and federal court.

Under the first filed rule, a New Jersey court will ordinarily stay or dismiss a civil action in deference to an already pending substantially similar lawsuit in "another state" unless compelling reasons dictate that it retain jurisdiction. Id. at 386.

However, the first filed rule is not an inflexible doctrine. If special equities exist, such as forum shopping to deny benefit of the natural forum to the other party, or when a party acting in bad faith filed first where the opposing party was anticipated to file suit in a less favorable forum, then the court could insist on proceeding with an action. Id. at 387.

Whether special equities allow a court to put aside the first filed rule is a fact specific inquiry, weighing fairness and comity generally with the discretion of the trial court. In carrying the initial burden, S&W must establish that the state court case should be stayed or dismissed because 1) there is a first filed action in "another state" and, 2) the parties, claims, and legal issues are substantially similar. If this initial burden is met, the burden will then shift to the Attorney General to establish special equities for this state court action to proceed. Id. at 392.

A stay or dismissal of a second filed action should be denied if an "injustice would be perpetrated" on a party in the first filed action and "no hardship, prejudice, or inconvenience"

would be inflicted on the other by proceeding in the second filed action. Id. at 389 citing Gosschalk v. Gosschalk 48 N.J. Super.566, 579 (App. Div. 1958).

This court finds that in weighing fairness and comity, this enforcement action is appropriately filed in state court by the Attorney General and should not be stayed, dismissed, nor should the subpoena be quashed.

Even if this court accepts for the sake of argument that the parties' claims and legal issues are substantially similar on the "first-filed" federal action, special equities exist for this subpoena enforcement action to continue in this state court. Special equities are reasons of a compelling nature that favor the retention of jurisdiction by the court in the later-filed action and may exist "when one party has engaged in jurisdiction shopping to deny the other party the benefit of its natural forum." Sensient Colors Inc. v. Allstate Ins. Co., 193 N.J. 373, 387-388 (2008) (identifying cases where one party preemptively files suit to prevent the "natural plaintiff" from initiating an action as proof of special equities). Furthermore, when a party acting in bad faith has filed first "in anticipation of opposing party's imminent suit in another, less favorable forum, deference to a first filed action is disfavored." Id. at 388. Of equal importance, when an action concerns "significant state interests…and when deferring to a proceeding in another jurisdiction 'would contravene the public or judicial policy' of the forum state, special equities are found to exist." Id. at 388-89; Am. Home. Prods. Corp. v. Adriatic Ins. Co. 286 N.J. Super. 24, 40-41 (App. Div. 1995) (recognizing New Jersey's interest in pollution remediation as a special equity that weighed against the first-filed rule).

This Court finds that the expected action in regard to the decision of Smith & Wesson not to comply with the subpoena would be for the Attorney General and the Division of Consumer Affairs – the natural plaintiffs in this case – to bring an action to enforce the Subpoena or, at least,

for Smith & Wesson to have brought what is now its cross-motion as an action in this court to dismiss, quash, or stay the subpoena. Instead, Smith & Wesson filed its suit in federal court before plaintiffs had the opportunity to initiate a subpoena enforcement action. See Wearly v. Federal Trade Comm'n., 616 F.2d 662, 665 (3d Cir. 1980).

This case involves state interests that overcome the considerations of comity raised by the first-filed rule. It is noteworthy that Smith & Wesson sought and received from plaintiffs a thirty-day adjournment to respond to the subpoena and the day after its compliance was expected, it filed a federal declaratory judgment action seeking a ruling on defenses to the subpoena. Thus, it appears, at worst, to have been a tactical maneuver, or at best an action that would create confusion and unnecessary lawsuits.

State courts routinely hear claims relating to state consumer protection laws and enforcement actions for related subpoenas.

Reportedly, Smith & Wesson initially filed its federal action seeking a preliminary injunction and temporary restraining order. Smith & Wesson has now apparently withdrawn that application and is pursuing the lawsuit through the normal course. Thus, the issues in the federal case will take months and more likely years to be litigated. In the meantime, the obligation of the Attorney General to investigate potential violations of the Consumer Fraud Act remain stymied. This is a situation where special equities justify the continuation of the enforcement action.

Defendant argues that NAACP v. Alabama requires that all constitutional issues related to a subpoena be resolved before it can be enforced and that before compulsion of information that trespasses on First Amendment freedoms can occur, the State must present a compelling subordinate State interest. NAACP v. Alabama, 357 U.S. 449, 463 (1958). The defendant's interpretation of NAACP is overly broad. There, the Supreme Court was concerned about how

Alabama's interest in obtaining an NAACP members list interfered with those members right to freely associate and pursue private interests as protected by the Fourteenth Amendment. Other cases, such as Local 1814, are similarly concerned with the freedom of association. Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. Waterfront Cmm'n of N.Y. Harbor, 512 F. Supp. 781 (S.D.N.Y. 1981). Here, the freedom of association is not implicated. The Attorney General does not seek information regarding S&W's association with other individuals or corporations, only information relating to representations they made about their products to the public.

### *The Subpoena*

The intention of the Consumer Fraud Act is to "confer on the Attorney General the broadest kind of power to act in the interest of the consumer public." Kugler v. Romain, 58 N.J. 522, 537 (1971). The subpoena in this case is not dissimilar to many subpoenas issued under the CFA and it is "reasonably related to a legitimate purpose" under the statute. On its face, the subpoena is tailored to determine whether Smith & Wesson engaged in (1) deceptive advertising as to product safety, benefits, and effectiveness and (2) failure to disclose that products marketed are unlawful to possess or use in the State without permit. The potential misrepresentations and omissions being investigated here are not different from those whose subject could be one of many products other than guns.

The CFA prohibits deceptive advertising, regardless of the subject, whether accomplished by knowing omission, intentional misrepresentation, or even a statement that unintentionally has the capacity to mislead a credulous consumer. N.J.S.A. 56:8-2.

On its face, this subpoena seeks information which may establish whether or not Smith & Wesson has engaged in any deceptive advertising by making misleading statements or omissions concerning the safety and effectiveness of the firearms it markets to New Jersey consumers.

Specifically, among other things, the subpoena requests:

a. Advertisements that are or were available or accessible in New Jersey concerning home safety, concealed carry, personal protection, personal defense, personal safety, or home defense benefits of a firearm, including a Smith & Wesson Firearm.

b. Documents concerning any test, study, analysis, or evaluation considered or relating to any claim made in the advertisements produced.

c. Documents relating to:

- Whether Smith & Wesson Firearms can be legally carried and concealed by any consumer while in New Jersey;

- Whether the concealed carry of a firearm enhances one's lifestyle;

- Whether it is safer to conform a perceived threat by drawing a firearm rather than seeking to move away from and avoid the source of the perceived threat;

- Whether having a Smith & Wesson firearm or other firearm makes a home safer;

- Whether Smith & Wesson firearms are designed to be more safe, reliable, accurate, or effective than firearms made by other firearm manufacturers for use it in personal or home defense or other activities; and

- Whether novice, untrained consumers could successfully and effectively use of a Smith & Wesson firearm for personal or home defense.

These documents, if any exist, would establish whether Smith & Wesson made any promises or representations to consumers and whether its document supported or belied those

claims. Thus, the document requests go to the very core of whether Smith & Wesson may have violated the CFA.

Contrary to the argument of Smith & Wesson, there is a distinction between puffery/opinion and statements which have the capacity to mislead or which address product attributes and are measurable by research. See e.g., Leon v. Rite Aid Corp., 340 N.J. Super. 462, 471-72 (App. Div. 2001); EP Henry Corp. v. Cambridge Pavers, Inc., 383 F. Supp. 3d 343, 349-51 (D.N.J. 2019); see also In re. Gen. Motors LLC Ignition Switch Litig., 257 F. Supp. 3d 372, 457 (S.D.N.Y. 2017) (claims discussing vehicles' "world class engineering" and "advanced safety and security and security features" were not puffery as they could be "objectively measured.)"

It is common for the Attorney General to investigate under the CFA various industries that advertise to New Jersey consumers. This subpoena is not arguably different from those for products from other industries.

The subpoena also reasonably seeks documents relating to the Hazardous Product Regulations which make it unlawful to advertise a product to New Jersey consumers which is illegal to possess or is in this State without a permit unless the advertiser "clearly and conspicuously disclose[s]" the fact. N.J.A.C. 13:45A-4.1(b). These regulations are "designed to promote the disclosure of relevant information to enable the consumer to make intelligent decisions in the selection of products and services," Div. of Consumer Affairs v. Gen. Elec. Co., 244 N.J. Super. 349, 353 (App. Div. 1990). A violation of this regulation does not require a showing of intent but rather constitutes strict liability. See Cox, 138 N.J. at 18; Int'l Union of Operating Eng'rs Local # 68 Welfare Fund v. Merck & Co., Inc., 384 N.J. Super. 275, 287 (App. Div. 2006).

Application of this regulation is within the realm of the investigation of Smith & Wesson by the Attorney General. Specifically, the subpoena seeks information as to whether Smith & Wesson violated these regulations by making advertisements available to New Jersey consumers depicting the concealed carry of forearms without disclosing that a permit is required for such concealed carry in New Jersey. See N.J.A.C. 13:54-2.2 (requiring a permit to conceal and carry a firearm in the State).

To be clear a subpoena need only be "sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." Greenblatt v. N.J. Bd. of Pharmacy, 214 N.J. Super. 269, 275-76 (App. Div. 1986) (quoting See v. Seattle, 387 U.S. 541, 544-45 (1967)); State v. Cooper, 2 N.J. 540, 556 (1949). As stated above, this Court generally finds the subpoena to come within these bounds at this very early stage of this investigation. Plaintiffs have demonstrated the relevance of the documents to its CFA investigation.

This Court rejects the argument that the subpoena itself violates constitutional rights. It neither bans speech nor does it "directly regulate the content, time, place, or manner of expression." SEC v. McGoff, 647 F.2d 185, 187-88 (D.C. Cir. 1981). This is merely an investigation. The Attorney General and the Division have not made any determinations regarding CFA violations by Smith & Wesson. Compliance with a subpoena which comes within the bounds of the CFA is not obviated in the face of constitutional objections.

Finally, this Court rejects the argument of Smith & Wesson that this subpoena must be quashed as a result of an "improper motive" by the Attorney General. Specifically, the defendant argues that "[t]he Attorney's General's personal views are the same as those of anti-Second Amendment activists seeking to undermine the constitutional right to bear arms" and that he has a "singular focus…limited to reducing gun ownership."

In <u>Exxon Mobil Corp. v. Schneiderman</u>, 316 F. Supp. 3d 679 (S.D.N.Y. 2018), the court rebuffed a nearly identical challenge by Exxon attempting to evade compliance with subpoenas, finding that Exxon's Complaint could "not allege any direct evidence of an improper motive" and found that the "circumstantial evidence put forth" was insufficient. <u>Id.</u> at 712. The theory of improper motive set forth by Smith & Wesson is speculative and fails to demonstrate that the Attorney General lacks a valid basis to believe that Smith & Wesson may have committed fraud.

The subpoena is valid on its face. Public officials, including the Attorney General, frequently make statements of public concern. This Attorney General has not impugned Smith & Wesson nor suggested that he has concluded that it should be charged with violations of the Consumer Fraud Act. It is possible that a review of the subpoenaed documents will raise no basis for such a claim.

***Conclusion***

For the foregoing reasons, plaintiffs' motion to enforce the Subpoena is hereby granted, and defendant's motion to dismiss, stay or quash the Subpoena is denied in its entirety.