UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| SMITH & WESSON BRANDS, INC., SMITH & WESSON SALES COMPANY, and SMITH & WESSON, INC.<br><br>    Plaintiffs,<br><br>  v.<br><br>ANDREW J. BRUCK, in his official capacity as Acting Attorney General of the State of New Jersey and NEW JERSEY DIVISION OF CONSUMER AFFAIRS<br><br>    Defendants. | Hon. Julien Xavier Neals, U.S.D.J.<br><br>Docket No. 2:20-cv-19047<br><br>**CIVIL ACTION**<br><br>**(ELECTRONICALLY FILED)**<br><br>Return Date: August 2, 2021 |

_____

BRIEF IN OPPOSITION TO APPLICATION FOR A TEMPORARY
RESTRAINING ORDER AND A PRELIMINARY INJUNCTION
_____

**ANDREW J. BRUCK**
ACTING ATTORNEY GENERAL OF
 NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625
*Attorney for Defendants*

Angela Cai
Stephanie J. Cohen
Assistant Attorneys General
 Of Counsel and On the Brief

Robert J. McGuire
Michael T. Moran
John T. Passante
Monica Finke
Deputy Attorneys General
 On the Brief

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...............................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...............................4

ARGUMENT ...........................................................................................8

    I.    SMITH & WESSON HAS NOT DEMONSTRATED IRREPARABLE HARM TO JUSTIFY THIS EMERGENCY ACTION ..................................................10

    II.    SMITH & WESSON HAS NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS ..........................16

        A.    *Younger* disproves Plaintiff's likelihood of success on the merits ...............................................16

        B.    Plaintiff's claims are not likely to succeed on the merits ...........................................................20

    III.    THE REMAINING EQUITABLE FACTORS CUT AGAINST RELIEF ...................................................30

CONCLUSION .....................................................................................33

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acierno v. New Castle County*,
  40 F.3d 645 (3d Cir. 1994) ..............................................................................14

*ACRA Turf Club, LLC v. Zanzuccki*,
  748 F.3d 127 (3d Cir. 2014) ............................................................................17

*Adams v. Freedom Forge Corp.*,
  204 F.3d 475 (3d Cir. 2000) ..............................................................................9

*Arbitron Inc. v. Cuomo*,
  No. 08-8497, 2008 WL 4735227 (S.D.N.Y. Oct. 27, 2008) .............................19

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Atty. Gen. of N.J.*,
  910 F.3d 106 (3d Cir. 2018) ............................................................................29

*Backpage.com v. Hawley*,
  No. 17-1951, 2017 WL 5726868 (E.D. Mo. Nov. 28, 2017) ......................18, 19

*Conestoga Wood Specialties Corp. v. Sec. of U.S. Dep't of Health &*
  *Human Servs.*,
  No. 13-144, 2013 WL 1277419 (3d Cir. Feb. 8, 2013) .................................9, 10

*Doris Behr 2012 Irrevocable Trust v. Johnson & Johnson*,
  No. 19-8828, 2019 WL 1519026 (D.N.J. Apr. 8, 2019) ...................................14

*ECRI v. McGraw-Hill, Inc.*,
  809 F.3d 223 (3d Cir. 1987) ......................................................................11, 12

*EEOC v. University of Pa.*,
  850 F.2d 969 (3d Cir. 1988) ............................................................................20

*Exxon Mobil Corp. v. Schneiderman*,
  316 F. Supp. 3d 679 (S.D.N.Y. 2018) ..................................................25, 26, 27

*FTC v. Church & Dwight Co.*,
  756 F. Supp. 2d 81 (D.D.C. 2010)....................................................................13

*FTC v. Standard Oil Co. of Calif.*,
  449 U.S. 232 (1980)............................................................................................13

*Gibson v. Fla. Legislative Investigation Comm.*,
  372 U.S. 539 (1963)............................................................................................23

*Glasco v. Hills*,
  558 F.3d 179 (3d Cir. 1977) ..............................................................................11

*Goldstein v. Galvin*,
  719 F.3d 16 (1st Cir. 2013)................................................................................26

*Hicks v. Miranda*,
  422 U.S. 332 (1975)............................................................................................19

*Holiday Inns of Am., Inc. v. B&B Corp.*,
  409 F.2d 614 (3d Cir. 1969) ..............................................................................10

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
  882 F.2d 797 (3d Cir. 1989)................................................................................11

*Jicarilla Apache Nation v. United States*,
  91 Fed. Cl. 489 (2010) ......................................................................................13

*Juidice v. Vail*,
  430 U.S. 327 (1977)............................................................................................18

*Kos Pharms. Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004) ..................................................................9, 10, 30

*Kovacs v. State of N.J. Dep't of Labor & Workforce Dev.*,
  841 F. App'x 435 (3d Cir. 2021) ......................................................................19

*Kugler v. Romain*,
  279 A.2d 640 (N.J. 1971) ..................................................................................31

*Lane v. New Jersey*,
  725 F. App'x 185 (3d Cir. 2018) ......................................................................10

*Lupin Pharms. v. Richards*,
  No. 15-1281, 2015 WL 4068818 (D. Md. July 2, 2015)....................................18

*Macchione v. Coordinator Adm'r in Washington, D.C.*,
591 Fed. App'x 48 (3d Cir. 2014) ...............................................................10, 12

*Madigan v. Telemarketing Assocs.*,
538 U.S. 600 (2003)...............................................................................23, 25, 29

*Malhan v. Sec'y U.S. Dep't of State*,
938 F.3d 453 (3d Cir. 2019) ...............................................................................16

*McCammon v. United States*,
584 F. Supp. 2d 193 (D.D.C. 2008)....................................................................14

*NAACP v. Alabama*,
357 U.S. 449 (1958).......................................................................................22, 23

*Nat'l Org. for Marriage, Inc. v. Walsh*,
714 F.3d 682 (2d Cir. 2013) ...............................................................................23

*Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*,
477 U.S. 619 (1986)..............................................................................................23

*PDX N. Inc. v. Comm'r N.J. Dep't of Labor & Workforce Dev.*,
978 F.3d 871 (3d Cir. 2020) .........................................................................17, 19

*Pena v. Lindley*,
898 F.3d 969 (9th Cir. 2018) ...............................................................................28

*Pharmacia Corp. v. Alcon Labs.*,
201 F. Supp. 2d 335 (D.N.J. 2002) ...............................................................14, 16

*In re Platinum Partners Value Arbitrage Fund*,
No. 18-5176, 2018 WL 3207119 (S.D.N.Y. June 29, 2018).............................13

*Rearick v. Wiedemer*,
No. 11-624, 2012 WL 3231096 (M.D. Pa. Aug. 6, 2012)..................................29

*Reilly v. City of Harrisburg*,
858 F.3d 173 (3d Cir. 2017) .................................................................................9

*Sampson v. Murray*,
415 U.S. 61 (1974).........................................................................................11, 14

iv

*SEC v. McGoff*,
   647 F.2d 185 (D.C. Cir. 1981) .............................................................23

*Sprint Commc'ns, Inc. v. Jacobs*,
   571 U.S. 69 (2013) .................................................................17, 18

*Sweezy v. State of N.H. by Wyman*,
   354 U.S. 234 (1957) ..........................................................................23

*Truck Ctr., Inc. v. Gen'l Motors Corp.*,
   847 F.2d 100 (3d Cir. 1998) ..............................................................9

*United States v. Marzzarella*,
   614 F.3d 85 (3d Cir. 2010) ..............................................................28

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*,
   425 U.S. 748 (1976)......................................................................23, 24

*Younger v. Harris*,
   401 U.S. 37 (1971).................................................................*passim*

*Zimmer v. N.J. Div. of Child Prot. & Permanency*,
   No. 15-2524, 2016 WL 234844 (D.N.J. Jan 20, 2016) ....................29

## Rules

Fed. R. Civ. P. 25(d) ....................................................................1

## PRELIMINARY STATEMENT

Smith & Wesson has now filed its second request for a temporary restraining order and preliminary injunction to prevent enforcement of a State investigative subpoena issued in October of 2020 ("Subpoena").[1] Over the past nearly ten months, Smith & Wesson has sought to avoid its obligation to comply with the Subpoena by myriad tactical and legal maneuvers, switching strategies based on what best serves its short-term needs to delay its obligation to produce documents. But just as multiple state courts already rejected the very arguments Smith & Wesson presents here, this Court should do the same. In short, Smith & Wesson is not entitled to a TRO for at least three independent reasons: (1) it cannot establish irreparable harm from document production; (2) it will not ultimately prevail in this Court because the case belongs in New Jersey state court where it is already being heard and its legal arguments against the enforcement of the Subpoena lack merit; (3) the relevant equitable factors and public interest weight heavily against Plaintiff's requests for a temporary restraining order.

First, Smith & Wesson is in the wrong court. As the State explained months ago in its motion to dismiss this federal action, *see* ECF 29 and 33, well-established

---

[1] On July 17, 2021, Andrew J. Bruck became Acting Attorney General of New Jersey. Consequently, his name was substituted for Gurbir S. Grewal in the caption, and he is now referenced as the Defendant as to all the claims originally against former Attorney General Grewal, pursuant to Fed. R. Civ. P. 25(d).

abstention principles foreclose this Court from interfering with ongoing state court subpoena enforcement actions—especially proceedings in which the state court has already ruled and decided to enforce the Subpoena, and where a state appellate court has already rejected Smith & Wesson's application to stay enforcement of the Subpoena. Under *Younger v. Harris*, 401 U.S. 37 (1971), such enforcement actions are the purview of the state courts, as important principles of comity and federalism ensure that New Jersey courts will get to assess the important state interests both in investigating fraudulent practices and in obtaining responses to subpoenas. And after all, as recent decisions issued in those state proceedings have proven, the New Jersey courts are an adequate and available forum to consider Plaintiff's constitutional claims. Both the New Jersey Superior Court and New Jersey Appellate Division have already spent considerable time in assessing and rejecting Smith & Wesson's arguments that it cannot be subject to the very same kinds of investigation for violation of consumer-protection laws as other businesses simply because it manufactures and sells firearms. This Court should not at the eleventh hour interfere with their conclusions.

Second, Smith & Wesson is not likely to win this case, and has no right to the strong medicine of an immediate injunction of the state court's order. The Division of Consumer Affairs' decision to issue an administrative subpoena to investigate whether Smith & Wesson's advertisements mislead consumers does not offend the

Constitution; this exercise of the police power to protect residents from fraud does not inhibit lawful speech, anyone's right to bear arms, equal protection of the laws, or any other right. And while Smith & Wesson tries to get around the weaknesses in its theories by claiming the Attorney General has impermissibly singled it out for unfair treatment, the facts pleaded fall far short of plausibly alleging that Smith & Wesson was targeted because of the product it sells, especially now that there is a new Attorney General who has likewise decided to proceed with this investigation. What singles out this action is only this *Plaintiff's* efforts to pull this Court into a quotidian subpoena dispute, not the actions the State has taken.

And finally, though perhaps most straightforwardly, Plaintiff cannot establish the irreparable harm necessary to obtain immediate federal-court intervention here. For one, Plaintiff's own delay and course of litigation conduct demonstrates that any "emergency" is self-created: Plaintiff filed the underlying litigation *ten months ago*, and even withdrew a prior motion for emergency relief of its own volition. *See* ECF 18. And even after a state court ordered compliance with an administrative subpoena, Smith & Wesson waited until the last business day before the compliance deadline to return to this Court. Not only that, but Smith & Wesson has provided no evidence irreparable harm actually exists from this document-production order. Whether the State will use this information in an enforcement action remains wholly speculative, and the mere act of turning over documents themselves is not the sort of harm that

justifies emergency action, as courts have held time and again. There is simply no basis for this Court, at the last minute, to essentially overrule two New Jersey state courts and interfere with appropriate state court proceedings.

At bottom, Smith & Wesson previously filed a motion for preliminary relief, and then, in March 2021, withdrew that request despite the ongoing state subpoena enforcement action. Now that Smith & Wesson has failed to convince the state courts of its unprecedented theories, it returns to this court for a second bite in the guise of seeking "emergent" assistance. Resolving this sort of self-created emergency—of a litigant unhappy with having to produce documents in a state court matter when the litigant had been served with a state-court subpoena—is not the sort of dispute federal courts adjudicate, let alone in TROs.

## **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Because the State already briefed a motion to dismiss, the State laid out to this Court the facts relevant to its Subpoena and subpoena enforcement action. For that reason, and given the expedited nature of briefing and argument, the State focuses in this opposition only on the most relevant intervening developments. In particular, the State focuses on Plaintiff's decision to change preferred routes in seeking relief several times, in ways that bear on its current emergency request.

Plaintiff's pattern began when it first received the subpoena in October 2020, at which time, it requested and received a thirty-day extension through December

14, 2020, to respond. On the last day of that extension, however, and without making any attempt to meet and confer about alleged objections to the Subpoena or moving to quash the subpoena in state court, Smith & Wesson instead advised that it would not produce documents. The very next day, December 15, 2020, Smith & Wesson filed this federal litigation plainly intended to preempt an expected motion to compel compliance with the Subpoena in the state court.

Because New Jersey's state courts are the traditional forum for resolving any disputes about Smith & Wesson's obligations under the Subpoena, the Attorney General and the Division of Consumer Affairs ("DCA") filed an action to compel compliance with the Subpoena in the New Jersey Superior Court on February 12, 2021. Smith & Wesson opposed the motion and cross-moved to quash the Subpoena, relying on the same constitutional arguments raised in this Court. Around the same time, on February 22, 2021, the State filed its motion to dismiss Smith & Wesson's original complaint in this Court. *See* ECF 14.

Shortly thereafter, on March 10, 2021, Smith & Wesson first filed an Order to Show Cause seeking a temporary restraining order that would prevent enforcement of the Subpoena, *see* ECF 18, and an Amended Complaint, *see* ECF 17. On March 15, 2021, Judge John Michael Vazquez conducted a telephone conference to discuss that Order to Show Cause and to set a briefing schedule. During that conference, Judge Vazquez expressed considerable skepticism about Smith & Wesson's ability

to prevail and indicated his initial impression that New Jersey's state courts were the proper forum to adjudicate Smith & Wesson's objections to the Subpoena. *See* Transcript of March 15, 2021, hearing, attached as Exhibit A to the Declaration of Robert J. McGuire, at 4:24 to 6:8. He further stated that he did not believe that Smith & Wesson could show a likelihood of prevailing on the merits, given the absence of authority for a party refusing to provide *any* responsive materials to a subpoena based on alleged constitutional grounds. *See id*. at 9:10-16. Judge Vazquez also noted that he found "nothing inappropriate" about the Subpoena. *Id*. at 8:17-18.

Less than two weeks later, on March 25, 2021, Smith & Wesson withdrew its request for entry of a preliminary injunction. Smith & Wesson therefore agreed to a briefing schedule in this Court for Defendants to pursue a motion to dismiss the Amended Complaint, but on a schedule that was anything but expedited. All briefing on that motion was completed by June 22, 2021, and a decision is pending. And in the meantime, Smith & Wesson litigated against the Subpoena in state court instead, which was moving on a more expeditious track.

Smith & Wesson lost its bet. After reviewing the parties' written submissions and hearing oral argument, New Jersey Superior Court Judge Jodi Lee Alper issued a comprehensive decision on June 30, 2021, which flatly rejected Smith & Wesson's arguments against enforcement of the Subpoena and compelled Smith & Wesson to

comply with the Subpoena by August 2, 2021.[2] Judge Alper held that the Subpoena was valid on its face and seeks documents that "go to the very core of whether Smith & Wesson may have violated the [New Jersey Consumer Fraud Act]." *See* Ex. B to McGuire Decl. at 11. Judge Alper also rejected Smith & Wesson's arguments that the Subpoena allegedly violated any constitutional rights and supposedly had been issued as a result of an "improper motive" by Attorney General Grewal. *Id*. at 12-13. She further held that Smith & Wesson's filing of this federal lawsuit prior to the filing of the state enforcement action did not require her to forestall consideration of the enforcement action, observing that Smith & Wesson's filing of this federal action "appears, at worst, to have been a tactical maneuver, or at best an action that would create confusion and unnecessary lawsuits." *Id*. at 8.

Smith & Wesson has subsequently made numerous failed efforts to stay Judge Alper's decision. It first requested that Judge Alper stay her orders while Smith & Wesson pursued a motion for leave to appeal. Judge Alper denied that motion, *see* Exhibit C to McGuire Decl., and Smith & Wesson filed an emergent motion for a stay to the New Jersey Appellate Division. The Appellate Division issued an order on July 29, 2021, that denied the stay request—unequivocally rejecting an assertion that Smith & Wesson faced any threat of irreparable injury from the enforcement of

---

[2] By letter dated July 2, 2021, Defendants provided this Court with a copy of Judge Alper's decision and orders. Copies of those materials are attached here as well—as Exhibit B to the McGuire Declaration—for the Court's convenience.

the Subpoena. (For the Court's convenience, a copy of that decision is attached here again as Exhibit D.) The Appellate Division's order says Smith & Wesson "has not established it would be irreparably harmed if a stay and emergent relief are denied"; "the trial court did not abuse its discretion in granting enforcement of the subpoena based on the finding that the information requested was relevant and should not be quashed as unconstitutional"; and "there is no indication the subpoena was oppressive or unreasonable." *See* Ex. D to McGuire Decl. at 3.

Subsequent to the denial of its emergent motion for a stay, and concomitant with its filing in this Court, Smith & Wesson filed an emergent application for a stay to the New Jersey Supreme Court, a copy of which is provided as Exhibit E to the McGuire Decl. The Supreme Court acknowledged the filing, *see* Exhibit F McGuire Decl., but has not issued any final ruling with respect to the stay request. The filing with the Supreme Court and the Appellate Division before it shows that, despite its protestations to the contrary, Smith & Wesson understands that state courts could grant it relief if they held that Plaintiff has satisfied the appropriate standards for emergency injunctions.

## **ARGUMENT**

Smith & Wesson's request for an injunction from this Court fails because it cannot meet *any* of the requirements for the provision of such extraordinary relief. At bottom, Smith & Wesson offers no support for the idea that a federal court should

enjoin a state court order enforcing a state agency's administrative subpoena on an emergency basis. This Court should decline that unprecedented invitation.

Begin with the applicable standard. "[T]he grant of injunctive relief," courts have explained, "is an extraordinary remedy which should be granted only in limited circumstances." *Truck Ctr., Inc. v. Gen'l Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1998); *see also, e.g.*, *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000) (confirming that the "dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat"). Such relief is "rarely granted" in the Third Circuit because "the bar is set particularly high." *Conestoga Wood Specialties Corp. v. Sec. of U.S. Dep't of Health & Human Servs.*, No. 13-144, 2013 WL 1277419, *1 (3d Cir. Feb. 8, 2013). In evaluating such a request, courts consider whether (1) a plaintiff "will suffer irreparable harm if the injunction is denied," (2) a plaintiff shows a "likelihood of success on the merits," (3) "granting preliminary relief will not result in even greater harm to the nonmoving party," and (4) "the public interest favors such relief." *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

The moving party always has the burden of "meet[ing] the threshold for the first two 'most critical' factors." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). And even if the moving party satisfies those first two tests, a court must still "consider[] the remaining two factors"—i.e., the balance of equities and public

9

interest—and "determine[] in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Kos Pharms*, 369 F.3d at 708. Finally, "[a] party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity." *Lane v. New Jersey*, 725 F. App'x 185, 187 (3d Cir. 2018) (citation omitted); *see also, e.g.*, *Conestoga Wood*, 2013 WL 1277419, *1 (noting "an injunction shall issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief"). In this case, Plaintiff cannot establish irreparable harm; a likelihood of success; or that the remaining factors support its demand.

## I.    SMITH & WESSON HAS NOT DEMONSTRATED IRREPARABLE HARM TO JUSTIFY THIS EMERGENCY ACTION.

As explained below, Plaintiff's request lacks adequate basis on the merits—it seeks a federal court order interfering with an ongoing state enforcement action, and its constitutional arguments prove wanting. But there is an even simpler reason to deny the instant motion before addressing the merits—there is no irreparable harm to justify preliminary relief. First, there is no irreparable harm from simply providing documents. Second, Plaintiff's own delay undermines its claims.

Demonstrating the imminence of an irreparable harm is crucial because such relief "may not be used simply to eliminate a possibility of a remote future injury." *Holiday Inns of Am., Inc. v. B&B Corp*., 409 F.2d 614, 618 (3d Cir. 1969). Instead, "irreparable harm must be actual and imminent, not merely speculative." *Macchione*

10

*v. Coordinator Adm'r in Washington, D.C.*, 591 Fed. App'x 48, 49 (3d Cir. 2014). Said simply, the potential harm must actually be "'irreparable—not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'" *ECRI v. McGraw-Hill, Inc.*, 809 F.3d 223, 226 (3d Cir. 1987) (quoting *Glasco v. Hills*, 558 F.3d 179, 181 (3d Cir. 1977)). To demonstrate such harm, "the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial" and the preliminary injunction "must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc*., 882 F.2d 797, 801 (3d Cir. 1989). "The key word is irreparable . . . the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

<u>First</u>, Smith & Wesson cannot establish that compliance with a state court's subpoena enforcement order will generate irreparable harm. For one, the company's argument turns on the idea that it may face "prosecution" for its speech. *See* Pltf's Br. at 28-29. Even ignoring that Plaintiff is entirely wrong about the State's motives (as multiple courts have found), its fear of prosecution is simply *conjecture* that the company might be subject to *future* consequences, at some unknown point, based on what New Jersey finds in the documents. But as the state judge found in the related action, that is speculative: New Jersey has not yet "concluded that [Plaintiff] should

11

be charged with violations of the [CFA]" and so it remains entirely "possible that a review of the subpoenaed documents will raise no basis for such a claim." *See* Ex. B to McGuire Decl. at 13. In other words, that harm is not imminent whatsoever; rather, it involves speculation that some future enforcement proceeding alleging violation of consumer-protection statutes might be filed. That is precisely the kind of "speculative" claim the Third Circuit said in *Macchione* is insufficient. 591 Fed. App'x at 49.

Smith & Wesson also rather shockingly suggests that it faces the prospect of "irreparable harm" if it decides not to comply with the subpoena *in violation of the state court's order*, suggesting that it may be required to cease doing business in New Jersey. As noted previously, however, alleged injuries that can be remedied by money damages (such as repayment of lost profits) are not an "irreparable" harm that gives rise to a right to a preliminary injunction. *See ECRI*, 809 F.3d at 226 (finding injunctive relief inappropriate when monetary compensation can redress alleged damages). And, in any event, the notion that Smith & Wesson's harm comes from its choice to ignore a state court order is the very sort of self-created emergency that the federal courts do not sit to resolve. Smith & Wesson has a solution to a state court order to which it objects: appeal. That its appeals have been unsuccessful does not equate to harm that it can ask the federal courts to resolve by injunction.

That leaves Smith & Wesson with just one basis to claim harm—*i.e.,* the harm

associated with the production of the documents themselves. But case law sets forth that such a "requirement to produce documents, at least absent a claim of privilege or sensitivity, is not generally the type of injury that is irreparable." *In re Platinum Partners Value Arbitrage Fund*, No. 18-5176, 2018 WL 3207119, at \*6 (S.D.N.Y. June 29, 2018); *see also, e.g.*, *FTC v. Church & Dwight Co.*, 756 F. Supp. 2d 81, 87 (D.D.C. 2010) (concluding that "[p]roduction of the unredacted documents does not confront [defendant] with irreparable harm"). For good reason: under any contrary logic, every discovery order could turn into a dispute over preliminary relief that is immediately appealable—enmeshing appeals courts in a wide variety of document-production disputes regularly handled in the district court. That is not, and has never been, the law. *See FTC v. Standard Oil Co. of Calif.*, 449 U.S. 232, 244 (1980) (holding the costs of defending litigation "do[] not constitute irreparable injury"). Plaintiff does not even *try* to address this concern or any of those cases.

To make matters worse, Plaintiff utterly fails to explain how being required to furnish documents would create a harm that is actually "irreparable." To the contrary, if Plaintiff somehow ultimately prevails in its ongoing appeals to this subpoena, then any harm it may suffer from turning over documents can be rectified by a subsequent court order to return or destroy the documents produced. *See, e.g.*, *Jicarilla Apache Nation v. United States*, 91 Fed. Cl. 489, 494-95 (2010) ("[T]he court could order plaintiff to return to defendant the documents covered by the

production order . . . defendant has not demonstrated that irreparable harm will occur if it complies with this court's production order."); *McCammon v. United States*, 584 F. Supp. 2d 193, 198-99 (D.D.C. 2008) (finding no irreparable harm where agency "could be enjoined from using the subpoenaed documents in any administrative or court action if [the] appeal is successful"). But case law is clear that the availability of "adequate compensatory or other corrective relief . . . at a later date"—in this case, potential return or destruction of documents—contradicts assertions of "irreparable harm." *Sampson*, 415 U.S. at 90. Again, Plaintiff's insufficient discussion of harm, contained in a single page of its TRO brief, ignores this reality.

Second, Smith & Wesson's delay in filing the present application on the eve of its production deadline also undermines the claim that the company is facing an "imminent" harm. Black letter law provides that delay can "knock[] the bottom out of any claim of immediate and irreparable harm," and it is a "dispositive basis" for rejecting a preliminary injunction. *Pharmacia Corp. v. Alcon Labs.*, 201 F. Supp. 2d 335, 382 (D.N.J. 2002); *see also Doris Behr 2012 Irrevocable Trust v. Johnson & Johnson*, No. 19-8828, 2019 WL 1519026, *4 (D.N.J. Apr. 8, 2019) (noting "delay in filing" for relief "undermines" claims for irreparable harm). On that basis, courts have routinely rejected assertions that a party faces an imminent harm when the party delays filing a request for injunctive relief. *Acierno v. New Castle County*, 40 F.3d 645, 647 (3d Cir. 1994). That is independently fatal to Plaintiff's claim.

14

As noted previously, Smith & Wesson filed this lawsuit in December 2020, yet the company delayed until March 10, 2021, before filing even its first request for preliminary injunctive relief. Then, most notably, Smith & Wesson *withdrew* that first Order to Show Cause about two weeks later. In the many months between that withdrawal and the present eleventh-hour motion in this Court, state proceedings moved forward significantly. By no later than Judge Alper's issuance of her written decision on June 30, 2021, Smith & Wesson knew it was required to comply with the Subpoena by August 2, 2021. Yet Smith & Wesson delayed in filing in this Court until the last business day before compliance is required—waiting until after Judge Alper issued two significant decisions (the June 30, 2021 decision and her denial of a stay request with respect to that ruling) and after the New Jersey Appellate Division also expended its resources addressing an emergent motion for a stay (which that court emphatically denied). In other words, Plaintiff's delay in seeking relief—four months after withdrawing a prior request for an injunction for tactical reasons—has resulted in three state-court rulings, all adverse to Smith & Wesson.

Thus, to the extent that Smith & Wesson seeks "emergent" relief in this Court because of some alleged "urgency," this Court should decline to intervene, as the need for "urgent" action in this Court is self-inflicted. This is especially true because Smith & Wesson forced the state courts to expend resources and issue rulings during the time in which Smith & Wesson could have sought this Court's intervention. The

combination of Smith & Wesson's withdrawal of a prior request for an injunction, coupled with a four-month delay in renewing any application for an injunction, "knocks the bottom out of any claim of immediate and irreparable harm," and is a "dispositive basis" for rejecting Plaintiff's application. *See Pharmacia Corp.*, 201 F. Supp. 2d at 382. Federal courts are not meant as a second bite at the apple for those plaintiffs that try, but fail, to prevail state courts of their view.

## II.   SMITH & WESSON HAS NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS.

The other most crucial factor in securing preliminary relief is a likelihood of success on the merits—a test that Smith & Wesson plainly fails. The company runs into two primary problems: it is seeking relief from a court that must instead abstain, and its constitutional arguments lack any merit. For the reasons laid out in the State's motion to dismiss, either (or both) will ultimately demand dismissal of this lawsuit. But at a minimum, these grounds foreclose this request for emergency relief.

### A.   *Younger* disproves Plaintiff's likelihood of success on the merits.

As explained in the State's already-pending motion to dismiss, no injunctive relief is proper in this case because the *Younger* abstention doctrine applies squarely to this dispute. *See Younger v. Harris*, 401 U.S. 37 (1971). That doctrine "requires federal courts to abstain from deciding cases that would interfere with certain ongoing state proceedings." *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019). *Younger* serves an important "dual-purpose": (1) "to promote comity,

16

'a proper respect for state functions,' by restricting federal courts from interfering with ongoing state judicial proceedings and (2) to restrain equity jurisdiction from operating when state courts provide adequate legal remedies for constitutional claims and there is no risk of irreparable harm." *PDX N. Inc. v. Comm'r N.J. Dep't of Labor & Workforce Dev.*, 978 F.3d 871, 882 (3d Cir. 2020) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)). Under *Younger*, abstention is warranted both where there are ongoing civil enforcement proceedings and where there are civil proceedings involving orders in furtherance of the state courts' judicial function.'" *Id.* (quoting *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014)). Both forms of abstention apply to this case.

Because the issue of *Younger* abstention has already been briefed by the State and by Smith & Wesson—the result of the company's decision to seek preliminary relief ten months into the case, after the filing of briefing on dispositive motions— the State does not address it in considerable detail in these papers, but focuses on the role of intervening developments. As explained in the prior briefing, this was already not a close case under *Younger*: there is an ongoing subpoena enforcement action in New Jersey state court; it implicates important state interests both in investigating fraudulent practices and in obtaining responses to subpoenas; and the Superior Court is an adequate and available forum to consider Plaintiff's constitutional claims. But since the State's briefing, those harms to comity and federalism have only grown all

17

the more important. Most obviously, the state courts have proven that they are an adequate and available forum for Plaintiff: the same constitutional arguments have been raised there and adjudicated by both the trial and appellate courts. (That the company keeps losing on the merits does not mean it lacks an available forum; the right to press one's claims is not the right to prevail if one is wrong.)

But most importantly, intervening developments have confirmed that this is a case involving "orders uniquely in furtherance of the state courts' ability to perform their judicial functions"—in particular, the ability to enforce state subpoenas. *Sprint*, 571 U.S. at 78. As the State previously explained, "'federal-court interference with the State's contempt process is an offense to the State's interest . . . likely to be every bit as great as it would be were [the action] a criminal proceeding.'" *Lupin Pharms. v. Richards*, No. 15-1281, 2015 WL 4068818, at *4 (D. Md. July 2, 2015) (quoting *Juidice v. Vail*, 430 U.S. 327, 335 (1977)). That includes orders in furtherance of the State's power to enforce a state subpoena; because such an order "lies at the core of the administration of a State's judicial system," any "interference with the contempt process unduly interferes with the legitimate activities of the State." *Backpage.com v. Hawley*, No. 17-1951, 2017 WL 5726868, at *8 (E.D. Mo. Nov. 28, 2017). That is even more true now: the state court has already *acted* to enforce a subpoena, and has made clear that further sanctions are warranted for noncompliance, and the state appellate courts have allowed that order to stand. Any federal-court order interfering

18

with those decisions unquestionably strikes at the "comity and federalism" interests that undergird *Younger*'s central command. *Id.* That provides a compelling enough reason to reject Smith & Wesson's demand for relief.

Rather than grapple with *Younger* abstention, Smith & Wesson raises a series of straw men. For one, Plaintiff makes much of the fact that this court has *jurisdiction* to issue injunctions under the Anti-Injunction Act, even where there is an ongoing state proceeding. But the point of abstention is that, even when the federal court has jurisdiction, comity and principles of federalism require deference to the state court action. *See PDX*, 978 F.3d at 877 n.1; *see also Kovacs v. State of N.J. Dep't of Labor & Workforce Dev.*, 841 F. App'x 435, 437 (3d Cir. 2021) ("If the target of a state enforcement action thinks the action violates federal law, ordinarily he must make that point to the enforcement agency—not to a federal court."); *id.* (noting abstention ensures that, "absent extraordinary circumstances, federal courts should not interfere with state enforcement proceedings," even if they have power to do so).

For another, Plaintiff repeatedly argues that it filed the federal suit before the state court enforcement action was filed. But the State already rebutted that response in detail, explaining that *Younger* is applicable "where state . . . proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in federal court." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975); *Arbitron Inc. v. Cuomo*, No. 08-8497, 2008 WL

4735227, at *3-4 (S.D.N.Y. Oct. 27, 2008) (abstaining where no proceedings on merits occurred in federal suit prior to filing of state-court action). That makes sense: applying such a rigid "first-to-file" rule would permit, and even incentivize, the very forum shopping abstention is designed to prevent—encouraging entities who receive warning letters or subpoenas to rush to this Court to eventually avoid *Younger*. *See EEOC v. University of Pa.*, 850 F.2d 969, 978 (3d Cir. 1988) ("Because the first-filed rule is based on principles of comity and equity, it should not apply when at least one of the filing party's motives is to circumvent local law and preempt an imminent subpoena enforcement action."). And as the state court put it in the related case, that is what happened here: Plaintiff filed its federal action just one day after it announced its refusal to comply an approach "at worst . . . a tactical maneuver" to avoid the state court enforcement, "or at best an action that would create confusion and unnecessary lawsuits." *See* Ex. B to McGuire Decl. at 8. The state appellate court agreed. This Court, like the state courts, must refuse to reward that sort of gamesmanship.

This case presents a classic example of *Younger* abstention. This Court should decline to issues order directly interfering with the state courts' own order. Plaintiff's responses about the Anti-Injunction Act and the suits' timing are unavailing.

B.    <u>Plaintiff's claims are not likely to succeed on the merits</u>.

In addition to a lack of irreparable harm (which Plaintiff barely grapples with),

and in addition to the company's inability to overcome *Younger* abstention (which Plaintiff essentially ignores in its preliminary injunction papers), there is still a third independently sufficient basis to reject Plaintiff's request: its claims lack merit. As noted above, the State's briefing on its motion to dismiss already addresses why the claims fail under the First, Second, Fourth, Fifth, and Fourteenth Amendment rights. All that has changed is that multiple state courts now agree.

Begin with what other courts have now said on the subject. Indeed, all three state-court decisions have concluded that Smith & Wesson will not succeed on the merits of its claims against enforcement of the Subpoena. Judge Alper did so twice, first by granting a motion to compel compliance with the Subpoena and denying the motion to quash it, and then deciding not to stay her decision pending an appeal. The Appellate Division order denying a stay was also unequivocal, stating that "the trial court did not abuse its discretion in granting enforcement of the subpoena based on the finding that the information requested was relevant and should not be quashed as unconstitutional" and that "there is no indication the subpoena was oppressive or unreasonable." *See* Ex. C to McGuire Decl. at 3.[3]

Although Plaintiff inaccurately says that these state courts did not actually

_____

[3] As noted previously, although Judge Vazquez did not formally decide the issue, he also expressed heavy skepticism about Smith & Wesson's likelihood of success in the March 2021 teleconference regarding Smith & Wesson's earlier and abandoned motion for a preliminary injunction. *See* Ex. A to McGuire Decl. at 9:10-16.

grapple with the constitutional issues, the plain language of the opinions themselves demonstrate this is untrue: in an opinion the Appellate Division described as "comprehensive," Judge Alper explicitly reviewed and "reject[ed] the argument that the subpoena itself violates constitutional rights." *See* Ex. B to McGuire Decl. at 12 For one, the court rejected Plaintiff's reliance on *NAACP v. Alabama*, 357 U.S. 449 (1958), explaining that the requests for NAACP member lists infringed upon associational and privacy rights which are "not implicated" here. *See* Ex. B to McGuire Decl. at 9. For another, the court found that Plaintiff's remaining First Amendment defenses fail because the State's administrative subpoena does not ban or regulate speech at all. *Id*. at 12. Last, the court rebuffed the argument that the Division's investigation somehow violated the Constitution because it is based on an improper motive, finding that Plaintiff's bald accusations were simply "speculative." *Id.* at 13. So as this Court reviews the same claims, far from assuming that it is the first to adjudicate them, this Court should be mindful that other judges have already assessed and rejected them all.

Indeed, Smith & Wesson's constitutional challenges lack any merit. Plaintiff's primary argument—namely, that enforcement of a subpoena that only requires Plaintiff to produce documents violates its First Amendment rights by "chilling" speech or "compelling" speech—fails for numerous reasons. For one, the law is clear that administrative subpoenas do not "regulate" speech; indeed, they seek production

of documents through a process prescribed by law. *See Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc*., 477 U.S. 619, 628 (1986) (noting State "violates no constitutional rights by merely investigating" potentially unlawful conduct); *SEC v. McGoff*, 647 F.2d 185, 187 (D.C. Cir. 1981) (agreeing administrative subpoenas "do not directly regulate the content, time, place, or manner of expression"). In addition, Smith & Wesson's suggestion that it may possibly face legal consequences in the future if a determination is made that has violated consumer-protection laws does not mean the Subpoena that sought documents as part of an investigation "regulated" that speech. And, in any event, an enforcement action involving fraudulent speech— e.g., involving false claims about product safety—would simply not be protected by the First Amendment. *See Madigan v. Telemarketing Assocs*., 538 U.S. 600, 612 (2003) ("[T]he First Amendment does not shield fraud."); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 771 (1976) ("Untruthful speech, commercial or otherwise, has never been protected for its own sake.").[4]

Relatedly, Plaintiff argues "an advertisement does not retain[] its commercial

---

[4] *NAACP* and the other cases on which Plaintiff relies are not to the contrary. *See, e.g.*, *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539 (1963); *Sweezy v. State of N.H. by Wyman*, 354 U.S. 234 (1957). These cases all involve a narrow exception where enforcing a subpoena for specific documents violates associational or privacy rights. *See Gibson*, 372 U.S. 539 (disclosure of private membership lists); *Sweezy*, 354 U.S. 234 (relating to membership in a political party). Because Plaintiff cannot identify any such interest or privilege, its bare "abstract, subjective fear that [its] rights are chilled" does not establish a First Amendment injury. *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013).

character when it is inextricably intertwined with otherwise fully protected speech," *see* Pltf.'s Br. at 23, but that misrepresents the nature of the investigation and falsely suggests Smith and & Wesson may face potential punishment for "opinions" in its advertising. The Subpoena does not seek to investigate matters of pure opinion, but rather seeks materials related to the basis for factual representations in advertisements, such as whether possessing a particular company's firearm makes a consumer "safer" in particular circumstances, that are capable of being evaluated based on empirical data. Such a statement, if belied by actual data known to Smith & Wesson, is not "fully protected speech," as the Supreme Court has made clear that "[u]ntruthful speech, commercial or otherwise, has never been protected." *See Va. State Bd. of Pharmacy*, 425 U.S. at 771. And, again, because this is merely a State's *investigation*, all that matters on this currently posture is the potential for violations that the requested document production would speak to.

Smith & Wesson's "compelled speech" argument is weaker still, including for all the reasons laid out in the State's prior motion-to-dismiss briefing. Plaintiff says that requiring it to disclose information in its advertising that a permit is required to use its product in New Jersey is unlawful "compelled speech" because—although New Jersey statutes do require a permit for firearms—Smith & Wesson personally opposes that law. Smith & Wesson claims it should be exempt from the requirement to disclose the truthful information about the permitting law to potential customers

24

(thereby exposing Smith & Wesson customers to potential consequences if they use own or use a Smith & Wesson firearm without the necessary permit) on that ground. But the First Amendment does not bar "States from assuring that their residents are positioned to make informed choices," and States naturally "may seek to inform the public and prevent fraud through [] disclosure requirements." *Madigan*, 538 U.S. at 623-24. Just as a car manufacturer may not lie about the laws governing seatbelts even if it opposes them, or a drug company may not lie about FDA regulations for the same reason, so too does a requirement that Smith & Wesson speak truthfully to New Jersey consumers as to the current New Jersey law fall well within permissible bounds.  Plaintiff can say what it wishes about the *propriety* of New Jersey firearm statutes, but it is not free to misrepresent to consumers what the law actually *is*.[5]

The final First Amendment claim—*i.e.*, that the subpoena and the state court enforcement action reflect impermissible animus towards and/or retaliation against Plaintiff's speech—is baseless for the reasons given in the State's motion to dismiss, and has only grown weaker since that time. As explained in the motion-to-dismiss briefing, other attempts to use limited circumstantial evidence as a shield against a state Attorney General's fraud investigation have been raised and rejected. In *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679 (S.D.N.Y. 2018), for example, a

---

[5] The prior-restraint argument is likewise unavailing for the reasons already given in the State's motion to dismiss and in its reply in support of that motion.

court rebuffed a nearly identical claim by a company attempting to evade compliance with state subpoenas. Exxon claimed that the officers' real purpose in investigating the company for fraud was to punish and deter its views on climate change. *See id.* at 686. Exxon relied on arguments like Plaintiff's—that officials had "acted not based on a good faith belief that Exxon may have violated state laws, but to retaliate against Exxon." *Id.* at 704. The court rejected those claims, reasoning that Exxon had not done anywhere near enough to plausibly allege that Attorneys General were "pursuing an investigation even though [they] do[] not believe that Exxon may have committed fraud." Id. at 707; *see also id.* at 712 ("[W]hether viewed separately or in the aggregate, Exxon's allegations fall well short of plausibly alleging that the [states' actions] are motivated by an improper purpose.").

So too here: Plaintiff fails to show the Division lacks a valid "reason to believe that [the company] may have committed fraud." *Id.* at 707. The Division is neither the first nor the only public agency to investigate Plaintiff's potentially misleading advertising, and none of the prior Attorney General's statements targeted Smith & Wesson. That a public official spoke on an issue of public concern like gun violence is hardly carte blanche for companies to engage in fraud if they sell related products. *See, e.g.*, *Goldstein v. Galvin*, 719 F.3d 16, 30 (1st Cir. 2013) ("Not only do public officials have free speech rights, but they also have an obligation to speak out on matters of public concern."). Indeed, to accept Smith & Wesson's claim would mean

putting "attorneys general in a straight-jacket relative to their public comments." *Exxon*, 316 F. Supp. 3d at 710, n.29. But "'[a]ccurate information' is the lifeblood of our democracy — not a goal that suggests skullduggery." *Id.*[6]

Notably, although claims as to the State's motion were never sufficient, they are even weaker now. For one, both the state trial judge and a state appellate panel have reviewed these claims and have found their aspersions "speculative" at best. *See* Ex. B to McGuire Decl. at 13 (Judge Alper rejecting the assertion that a nefarious and improper motive was the impetus for the subpoena, stating that the "theory of improper motive set forth by Smith & Wesson is speculative and fails to demonstrate that the Attorney General lacks a valid basis to believe that Smith & Wesson may have committed fraud," that the Subpoena "is valid on its face," and that Attorney General Grewal has never "impugned Smith & Wesson nor suggested that he has concluded that it should he charged with violations of the Consumer Fraud Act"); *see also* Ex. D to McGuire Decl. at 3 (Appellate Division agreeing there was "no

---

[6] To substantiate its claims of improper motive, Plaintiff tells this Court that "[t]he Attorney General has hired the law firm, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, as his own 'Special Firearms Counsel' to pursue firearms manufacturers on a contingency basis, thus creating a bounty system." Pltf's TRO Br. at 5-6. Plaintiff is confused. The State did issue a Request for Qualifications for Special Counsel for Firearms Safety Litigation ("RFQ") to handle a range of related cases, just as the State does for all manner of other topics, from employment defense to environmental enforcement. But those lists are for approved firms who *can* work on cases; nothing about placement on those lists guarantees a firm representation for any specific case. And Paul Weiss has not been retained to handle the Smith & Wesson investigation. Claims to the contrary are categorically false.

indication the subpoena was oppressive or unreasonable"). And as importantly, the Attorney General who took all the various actions that Smith & Wesson point to for an improper motive no longer serves in the role.  Instead, a new Attorney General has continued moving forward with this investigation, undermining Plaintiff's claim that the state Subpoena resulted from one official's allegedly improper motive. Plaintiff offers nothing suggesting that Acting Attorney General Bruck has an impermissible motive. Ultimately, Plaintiff's argument is that because a former official allegedly exhibited bias against it (which he did not), now no New Jersey Attorney General can ever investigate that same company and its potential fraudulent representations to consumer. No authority supports this sweeping position.

Plaintiff's Second Amendment arguments also are infirm. The State's motion to dismiss catalogued the deficiencies in such arguments, including the fact that a requirement to disclose documents neither restricts gun ownership nor "impose[s] a burden on conduct falling within the scope of the Second Amendment's guarantee"—a core requirement that the Third Circuit has identified as a necessary component of a claim for an alleged Second Amendment violation. *See United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010); *see also Pena v. Lindley*, 898 F.3d 969, 1008 (9th Cir. 2018) (Bybee, J., concurring in part and dissenting in part) (finding "rules of general applicability," a category that includes the CFA and the

subpoena authority it confers, "do not violate the Second Amendment just because they place conditions on commercial sales, including sales of handguns"). And even if it did somehow burden Second Amendment interests, the Subpoena would fit reasonably the State's powerful need to investigate fraud. *See Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Atty. Gen. of N.J.*, 910 F.3d 106, 122 (3d Cir. 2018) (discussing the relevant standard for means-end scrutiny); *Madigan*, 538 U.S. at 623-24 (noting state interest in "vigorously enforc[ing] antifraud laws").

Moreover, no Third Circuit precedent suggests governmental inquiry burdens Second Amendment rights when it does not impinge on any *individual's possession or use of any firearm*. Indeed, the cases say the opposite—that Second Amendment rights are not burdened simply because a state entity makes an informational inquiry of someone who possess firearms. *See, e.g.*, *Zimmer v. N.J. Div. of Child Prot. & Permanency*, No. 15-2524, 2016 WL 234844, at *12 (D.N.J. Jan 20, 2016) (holding that child protective services worker's inquiry into "Plaintiff's gun ownership and gun safety practices, or inspecting Plaintiff's firearms and gun safe, did not burden Plaintiff's rights to possess and carry firearms"); *Rearick v. Wiedemer*, No. 11-624, 2012 WL 3231096, at *3 (M.D. Pa. Aug. 6, 2012) (concluding employer's "mere questioning [an employee] about her gun permit does not rise to the level of a Second Amendment violation"). Thus, an information request to a manufacturer or seller of

firearms certainly does not violate the Second Amendment.[7]

Even if this Court reaches the merits (and it need not given the lack of irreparable harm and the need to abstain under *Younger*), Smith & Wesson plainly cannot establish a likelihood of success. Its emergency motion must be denied.

## III.   THE REMAINING EQUITABLE FACTORS CUT AGAINST RELIEF.

The final factors in evaluating a request for a preliminary injunction require a court to examine whether "granting preliminary relief will not result in even greater harm to the nonmoving party" and whether "the public interest favors such relief." *Kos Pharms.*, 369 F.3d at 708. Because the State's goal is to investigate on behalf of its citizens whether Smith & Wesson has violated state consumer-protection laws, those factors overlap. And they both favor a robust and timely investigation into Plaintiff's advertising to protect consumers, an interest far greater than the alleged speculative future "harms" Smith & Wesson has alleged it might face.

The New Jersey Legislature determined that its residents' interest would best be served by "confer[ring] on the Attorney General the broadest kind of power to

---

[7] Given its kitchen-sink approach to opposing the subpoena, Smith & Wesson has also offered a smorgasbord of other claims about why the subpoena is unlawful, alleging violation of the Protection of Lawful Commerce in Arms Act ("PLCAA"), and alleged violations of rights under the Due Process, Equal Protection, and the Dormant Commerce Clauses. The arguments Plaintiff makes on those issues are ever more attenuated than the arguments under the First and Second Amendments, and Defendants rely on the relevant portions of their motion to dismiss as to why this Court should discount those purported causes of action.

act in the interest of the consumer public" through the Consumer Fraud Act, *Kugler v. Romain*, 279 A.2d 640, 648 (N.J. 1971), and the Attorney General here believes that consumers will best be protected by investigating Smith & Wesson's conduct. Granting an injunction against enforcing the Subpoena will delay an investigation, at least until this federal matter is finally resolved. Judge Alper aptly observed when she declined to stay her order that "[i]f the Attorney General is required to wait until the appeal process is exhausted, then . . . his power under the statutes to pursue investigations relating to the Consumer Fraud Act are stymied." Moreover, if Smith & Wesson sets an example for other recipients of investigative subpoenas to follow the approach of making preemptive filings in federal court before state enforcement proceedings are commended, accompanied by subsequent motions for preliminary injunctions across the state and federal courts, that would invite the subjects of other state investigations to engage in similar gamesmanship. This could seriously hamper the States' ability to investigate deceptive advertising, consumer fraud, and a range of other violations that harm consumers and state residents. That is why Plaintiff has not identified a *single* analogous case ordering this sort of injunctive relief.

Contrary to Plaintiff's suggestion that the existence of a tolling agreement between these parties mitigates any potential compromise of an investigation into Smith & Wesson, that does not alleviate the harm caused by any ongoing violations that may potentially be deceiving the public in the interim. The tolling agreement

31

simply preserves the right in the future for Defendants to prosecute Smith & Wesson for any violations that the State ultimately finds. But until Smith & Wesson complies with the Subpoena, Defendants cannot move any investigation forward—and so cannot halt any ongoing exposure of New Jersey consumers to deceptive advertising. By stalling the active investigation, an injunction would deny the public the benefits of robust investigation and enforcement under the CFA. The state judges who have reviewed the very same equities have thus far recognized the harm to the State that would inure from an injunction, and this Court should as well.

Finally, the Court should deny the request to enjoin the state court order enforcing the Subpoena because an injunction would do violence to the important policy interest of comity vital to our federalist system. Smith & Wesson asks this Court to essentially overrule two New Jersey state courts who have considered the same arguments presented to this Court. This is anathema to what the *Younger* court cautioned, as there is an important interest in preserving "a proper respect for state functions" because "the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." 401 U.S. at 44.

## <u>CONCLUSION</u>

For these reasons, and for the reasons set forth in Defendants' pending motion to dismiss, this Court should deny Smith & Wesson's emergency request to enjoin the New Jersey trial court's order enforcing a state administrative subpoena.

Respectfully submitted,

ANDREW J. BRUCK
ACTING ATTORNEY GENERAL OF
 NEW JERSEY

By:/s/ Robert J. McGuire
Robert J. McGuire
Deputy Attorney General

Date: August 2, 2021

33