<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SMITH & WESSON BRANDS, INC., SMITH & WESSON SALES COMPANY, and SMITH & WESSON INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>GURBIR S. GREWAL, in his official capacity as Attorney General of the State of New Jersey, and NEW JERSEY DIVISION OF CONSUMER AFFAIRS,<br><br>    Defendants. | No. 20cv19047 (EP) (ESK)<br><br>**OPINION** |

**PADIN, District Judge.**

Presently before the Court is Defendants Gurbir S. Grewal and New Jersey Division of Consumer Affairs' (collectively, the "State's") motion to dismiss Plaintiffs Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, and Smith & Wesson Inc.'s (collectively, "S&W's") amended complaint. D.E. 66. The Court has reviewed the parties' submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b). For the reasons stated below, the State's motion is **GRANTED**.

**I.    BACKGROUND**

    **A. The Attorney General and the New Jersey Consumer Fraud Act**

The New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1, *et seq.*, states that "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment,

suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . [constitutes] an unlawful practice." N.J.S.A. § 56:8-2. The NJCFA provides the New Jersey Attorney General with broad investigative powers to explore whether companies are committing NJCFA-defined "unlawful practices." *See* N.J.S.A. § 56:8-3 (detailing the circumstances under which the Attorney General may investigate, and the actions he may take in furtherance of that investigation). The NJCFA also expressly empowers the Attorney General to issue subpoenas to aid in any such investigation. *See* N.J.S.A. § 56:8-4.

**B. The State's October 13, 2020 Subpoena**

On October 13, 2020, the New Jersey Division of Consumer Affairs and then-New Jersey Attorney General Gurbir S. Grewal served a subpoena *duces tecum* on S&W pursuant to the NJCFA (the "Subpoena"). D.E. 66-2 at PageID: 1885-98. The Subpoena requests that S&W produce a multitude of documents, including, but not limited to: (1) all advertisements for S&W's merchandise that relate to home safety, concealed carry, personal protection, personal defense, personal safety, or home defense benefits of a firearm that were accessible in New Jersey; (2) all documents concerning any test, study, analysis, or evaluation considered or undertaken by S&W that relate to the claims made in those advertisements; and (3) all documents concerning: (i) whether S&W firearms can be legally carried and concealed while in New Jersey; (ii) whether the concealed carry of a firearm enhances one's lifestyle; (iii) whether it is safer to confront a perceived threat by drawing a firearm rather than seeking to move away; (iv) whether having a firearm makes a home safer; (v) whether S&W firearms are designed to be more safe, reliable, accurate, or effective than non-S&W-manufactured firearms for use in personal or home defense or other

2

activities; and (vi) whether novice, untrained consumers could successfully and effectively use an S&W firearm for personal or home defense. *Id.* at PageID: 1896.

The Subpoena originally had a November 13, 2020 return date, which was extended thirty days at S&W's request. *Id.* at PageID: 1900-03. On December 14, 2020, S&W produced no documents in response to the Subpoena; it instead responded in writing to the State, citing its various constitutional objections to the document demands within the Subpoena. *Id.* at PageID: 1905-28.

### C. S&W's December 15, 2020 Initiation of a Federal Civil Rights Lawsuit in District Court, and the State's Initiation of a Subpoena Enforcement Action in New Jersey Superior Court on February 12, 2021

On December 15, 2020 – the day after S&W's Subpoena response deadline passed – S&W filed a § 1983 civil rights complaint against the State in New Jersey District Court (the "District Court Action"). D.E. 1. S&W, by way of that pleading, avers that although the Subpoena purports to seek evidence of consumer fraud related to S&W's advertising, "in reality, it seeks to suppress and punish lawful speech regarding gun ownership in order to advance an anti-Second Amendment agenda that the Attorney General publicly committed to pursue." *Id.* ¶ 2. S&W avers that the Attorney General's Subpoena, and his associated initiation of an NJCFA-rooted investigation of S&W, "have violated [S&W's] First, Second, Fourth, Fifth, and Fourteenth Amendment rights." *Id.* ¶ 159. S&W's original federal pleading alleges separate causes of action for the State's purported violations of each of these Amendments. *See id.* at Counts I-III, V-VII. S&W's initial complaint also claims that the State's Subpoena and related investigation violates the Second and Fourteenth Amendment rights of "citizens" (Count IV), is preempted by the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. § 7901, *et seq.* (Count VIII), violates the Dormant

Commerce Clause (Count IX), represents an abuse of process (Count X), and asks the District Court to enjoin enforcement of the Subpoena (Count XI). *Id.*

On February 12, 2021, the State initiated a separate summary action in New Jersey Superior Court to enforce the Subpoena, *Grewal v. Smith & Wesson Sales Co., Inc.*, Case No. ESX-C-25-21 (the "Superior Court Action"). D.E. 66-2 at PageID: 1851-2004.

### D. S&W's March 10, 2021 Amendment of Its District Court Pleading and the State's April 26, 2021 Motion to Dismiss the Same

On March 10, 2021, S&W amended its pleading in the District Court Action to assert additional First Amendment-based § 1983 claims rooted in S&W's assertion that the State's initiation of the Superior Court Action was done in retaliation for S&W's commencement of the District Court Action. D.E. 17 at Counts I, II, and V. All of S&W's earlier-asserted claims in the District Court Action, detailed above, also remain in S&W's amended pleading, albeit at different count numbers. *See id.* at Counts III, IV, and VI-XIII.

On April 26, 2021, the State moved to dismiss S&W's amended complaint in the District Court Action. D.E. 29. The State, by way of that motion, requested, *inter alia*, that the District Court decline to exercise jurisdiction over the parties' federal lawsuit based on *Younger*[1] abstention. D.E. 29. On May 17, 2021, S&W filed its opposition to the State's April 26, 2021 motion to dismiss. D.E. 30. The State submitted its reply on June 7, 2021. D.E. 33. And S&W sur-replied on June 21, 2021. D.E. 34.

### E. S&W's March 11, 2021 Filing of Cross-Motion to Dismiss, Stay or Quash the Subpoena in the Superior Court Action

On March 11, 2021 – the day after it amended its pleading in the District Court Action – S&W filed a cross-motion to dismiss, stay, or otherwise quash the Subpoena in the Superior Court

---

[1] *Younger v. Harris*, 401 U.S. 37 (1971).

Action. D.E. 66-2 at PageID: 2006-07. S&W's brief in support of that cross-motion, *see id.* at PageID: 2009-52, expressly claims that "threshold issues regarding the constitutionality of the Subpoena in the first instance must be resolved before any decision to enforce it may be made." *Id.* at PageID: 2019. S&W appended a copy of both its original and amended federal pleadings to its cross-motion in the Superior Court Action. *See id.* at PageID: 2022; *id.* at PageID: 2025. S&W's state court brief also expressly cross-references the substantive assertions made in its federal pleadings. *See id.* at PageID: 2025 ("on its face, the Subpoena demonstrates what the Federal Complaint alleges – that it targets [S&W's] First Amendment opinions on topics of current public debate or Second Amendment issues."). Indeed, S&W notes that its [original] federal complaint "sets forth in extensive detail, supported by citations to the public record, precisely why the Subpoena and the requests contained therein are unconstitutional, and precisely why [S&W] was justified in objecting to the Subpoena." *Id.* at PageID: 2022. S&W, in so doing, advanced all of the same constitutional arguments against enforcement of the Subpoena in the Superior Court Action that it has advanced in the District Court Action.

### F. The Superior Court's Resolution of the State's Subpoena Enforcement Action

On May 27, 2021, New Jersey Superior Court Judge Jodi Lee Alper held oral argument on the State's application to enforce, and S&W's cross-motion to quash, the October 13, 2020 Subpoena. *Id.* at PageID: 2307-59.

On June 30, 2021, Judge Alper entered two orders in the Superior Court Action: (1) an order denying S&W's cross-motion to dismiss the state court complaint and quash the subpoena, *see id.* at PageID: 2054; and (2) an order requiring S&W to respond fully to the October 13, 2020 Subpoena within 30 days, *see id.* at PageID: 2153. Judge Alper also issued an accompanying 13-page statement of reasons. *Id.* at PageID: 2055-67. There, Judge Alper expressly found that

"special equities justif[ied] continuation of the [Superior Court Action,]" particularly because S&W's initiation of the District Court Action occurred *after* the State issued the Subpoena, but before the State "had the opportunity to initiate a subpoena enforcement action." *Id.* at PageID: 2062; *see also Wearly v. F.T.C.*, 616 F.2d 662, 665 (3d Cir. 1980) ("Resort to a court by recipients of investigative subpoenas before an action for enforcement has commenced is generally disfavored.") (cited by Judge Alper). Her Honor also found that the Subpoena was valid and enforceable. D.E. 66-2 at PageID: 2063-65. In addition, Judge Alper expressly rejected S&W's claims that the "[S]ubpoena itself violates constitutional rights." *Id.* at PageID: 2066.

On July 21, 2021, Judge Alper held a hearing on S&W's motion to stay enforcement of the Superior Court's June 30, 2021 Subpoena enforcement order pending S&W's appeal of that decision. *Id.* at PageID: 2170-92. During that hearing, Judge Alper: (1) confirmed that the deadline for S&W to respond to the Subpoena was August 2, 2021, *see id.* at PageID: 2191; and (2) denied S&W's stay application, *see id.* at PageID: 2186. Judge Alper issued a formal order denying S&W's request on the same day. *Id.* at PageID: 2168-69.

On July 26, 2021, S&W filed an emergent application with the Appellate Division to stay Judge Alper's order compelling S&W to respond to the Subpoena within 30 days of June 30th. *See id.* at PageID: 2198. On July 29, 2021, Judge Lisa A. Firko of the Appellate Division issued a three-page decision denying S&W's emergent application. *Id.* at PageID: 2198-2200. Judge Firko, in so doing, incorporated many of the same findings "set forth in the trial court's comprehensive written decision." *Id.* at PageID: 2200. S&W's subsequent application to the New Jersey Supreme Court for a stay pending appeal was denied on August 9, 2021. *Id.* at PageID: 2201.

### G. S&W's Subsequent Request for Injunctive Relief in District Court

On July 30, 2021 – the day after the Appellate Division denied S&W's emergent stay application in state court – S&W filed an emergent application in this Court by which it sought to enjoin enforcement of Judge Alper's June 30, 2021 order directing S&W to comply with the Subpoena. D.E. 41 at PageID: 1029-30. The State submitted its opposition to the same on August 2, 2021. D.E. 44.

On August 2, 2021, Judge Neals held a hearing that touched upon both S&W's July 30, 2021 emergent application and the State's April 26, 2021 motion to dismiss. D.E. 48. He ultimately found that the principles of *Younger* countenanced against exercising federal jurisdiction over the dispute between S&W and the State. *Id.* at 33-34. Judge Neals accordingly dismissed S&W's case and declined to grant S&W's request for injunctive relief. *Id.* In addition to his oral rulings on August 2, 2021, Judge Neals also entered a written opinion and order formally dismissing S&W's case. D.E.s 46, 47.

### H. S&W's Appeal of Judge Neals' August 2, 2021 Dismissal and the Third Circuit's Subsequent Remand to District Court

S&W appealed Judge Neals' August 2, 2021 dismissal ruling to the Third Circuit on August 9, 2021. On March 10, 2022, the Third Circuit reversed, finding that this was not an "exceptional" case in which *Younger* abstention was appropriate. *See Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey*, 27 F.4th 886, 896 (3d Cir. 2022). The Third Circuit also, however, noted that "[f]ederal courts owe due respect to state courts." *Id.*

### I. The State's Renewed Motion to Dismiss

On May 27, 2022, the State filed a second, now-pending motion to dismiss S&W's amended complaint. D.E. 66. The State, by way of that motion, requests that the Court dismiss this matter based on principles of *res judicata*. More specifically, the State avers that "preclusion

7

principles require this Court to stay or dismiss this duplicative litigation." D.E. 66-1 at 9. The State asserts that if the Court declines to dismiss and/or stay this matter based on preclusion, then dismissal is also appropriate for the reasons detailed by the State in its original April 26, 2021 motion to dismiss, which, in addition to the State's now-defunct *Younger* argument, presents a plethora of reasons why the claims in S&W's amended complaint fail to state a claim under Rule 12(b)(6). *See* D.E. 29-1.

On June 13, 2022, S&W filed its opposition to the State's renewed motion to dismiss. D.E. 67. S&W avers that because of the expedited and summary nature of the Superior Court Action, it did not receive a full and fair opportunity to litigate the constitutional claims that are the subject of its amended federal complaint. D.E. 67 at 8-10. It avers, for example, that "[f]ulsome discovery was not possible in the specialized summary action," but it is available in the District Court Action. D.E. 67 at 10. S&W, in short, claims that "[t]he procedural and substantive weaknesses, which are inherent in summary actions, make such actions inappropriate for the application of preclusion." D.E. 67 at 11. On June 21, 2022, the State replied. D.E. 67. On July 1, 2022, S&W filed a sur-reply.[2] D.E. 71-1. On July 18, 2022, the State responded to S&W's sur-reply. D.E. 73.

## II.     LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Under Rule 12(b)(6), relief may not be granted when a suit is barred on *res judicata* grounds. *Dunleavy v. Gannon*, No. 2:11-CV-0361 DMC MF, 2011 WL 5321004, at *2 (D.N.J. Nov. 1, 2011). When a prior case has been

---

[2] S&W, at the time of that filing, also formally moved for permission to file the same. *See* D.E. 71. That motion is granted.

adjudicated in state court, federal courts must give "full faith and credit" to the state court's judgment. 28 U.S.C. § 1738; *see also Balthazar v. Atl. City Med. Ctr.*, 279 F. Supp. 2d 574, 584 (D.N.J. 2003). And *res judicata*[3] bars re-litigation of an issue that has already been determined on the merits by a court of competent jurisdiction. *Balthazar*, 279 F. Supp. 2d at 585. In order for *res judicata* to apply, there must be: (1) a valid, final judgment on the merits in the prior action; (2) the actions must involve the same parties; and (3) the second claim must arise out of the same transaction as did the claim in the first action. *United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 173 (3d Cir. 2009); *see also EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990).

## III.   ANALYSIS

The State avers that the Court should "dismiss this federal action because preclusion principles bar [S&W] from proceeding with duplicative claims in this Court." D.E. 66-1 at 9. More specifically, it argues that the New Jersey Superior Court's "June 30, 2021 order rejecting [S&W's] constitutional arguments is a final judgment that precludes relitigation of the same claims and issues in this case." *Id.* For the reasons that follow, the Court agrees.

### A.   Relevant *Res Judicata* Considerations

Federal courts are required to "give preclusive effect to state-court judgments whenever the courts of the [s]tate from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980). New Jersey recognizes the doctrine of *res judicata*, also known as claim preclusion. *Wadeer v. N.J. Mfrs. Ins. Co.*, 220 N.J. 591, 606 (2015); *see also McNeil v. Legis. Apportionment Comm'n*, 177 N.J. 364, 395 (2003) ("The concept that a party is required to bring

---

[3] There is often confusion as to the precise definitions of *res judicata* and collateral estoppel. To clarify, the term *res judicata*, when used narrowly, refers to claim preclusion; the term collateral estoppel, on the other hand, customarily refers to issue preclusion. *United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 173-74 (3d Cir. 2009).

all possible claims in one proceeding is embodied in the closely linked concepts of *res judicata* and the entire controversy doctrine."); *Long v. Lewis*, 318 N.J. Super. 449, 459 (App. Div. 1999) ("The claim preclusion aspect of the entire controversy doctrine is essentially *res judicata* by another name."). Under both federal law and New Jersey law, "claim preclusion requires that (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." *McNeil*, 177 N.J. at 395 (citation omitted). "Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined." *Id.* (citation omitted). Further, "where the same cause of action is pursued in different courts, the first judgment rendered is *res judicata* of the matter, irrespective of the order in which the cases were commenced, and becomes a bar in the second suit." *Heulitt v. W. Michigan Plumbing & Heating, Inc.*, 638 A.2d 153, 154 (N.J. Super. Ct. App. Div. 1994) (citing, *inter alia*, Restatement (Second) of Judgments § 14 (1982)).

Here, the Court finds – and the parties appear to agree – that Judge Alper's June 30, 2021 order compelling S&W to respond to the Subpoena represents a prior final judgment on the merits in a suit involving the same parties, and thus, that the first two *res judicata* elements are satisfied. Where the parties' positions differ sharply is whether the third element is satisfied, *i.e.*, whether the claims in the District Court Action arise out of the same transaction as the claims that are the subject of the Superior Court Action.

For purposes of determining what constitutes a "cause of action" for purposes of satisfying the third *res judicata* element, a court looks to "the essential similarity of the underlying events giving rise to the various legal claims." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d

Cir. 2010). "[T]he focus is on 'whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same.'" *Shah v. United States*, 540 F. App'x 91, 94 (3d Cir. 2013) (quoting *Lurizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)); *accord Culver v. Ins. Co. of North America*, 115 N.J. 451, 461-62 (1989) ("To decide if two causes of action are the same, the court must consider: (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the *material* facts alleged are the same.") (internal citations omitted) (emphasis in original). "A mere difference in the theory of recovery is not dispositive." *Lurizol Corp.*, 929 F.2d at 963.

### B. S&W's Claims Opposing *Res Judicata* Are Contradicted By the Record

Here, S&W avers that the third element of *res judicata* is not satisfied because the claims raised in S&W's federal civil rights complaint are sufficiently distinct from the claims at issue before the Superior Court. S&W specifically asserts that (1) "the acts complained of and demands for relief [sought in the Superior Court Action and the District Court Action] are different;" (2) "the two proceedings concern different theories of recovery;" (3) "the evidence required in each proceeding is different;" and (4) "the material facts are entirely different." D.E. 67 at 15-16. S&W, in making these assertions conveniently ignores that its amended federal pleading, at its core, requests that this Court enjoin the State from enforcing the Subpoena and declare that the Subpoena and the Attorney General's related CFA investigation violate S&W's constitutional rights, *see*

11

D.E. 17 at ¶¶ 218-23, which is essentially the exact same relief it sought in the Superior Court Action when it cross-moved to quash the Subpoena.

S&W likewise ignores that it already raised all of the same constitutional arguments in Superior Court that it is now attempting to have this Court adjudicate. Indeed, S&W appended and expressly incorporated-by-reference both of its federal pleadings to its state court motion. It also explicitly advised the Superior Court that its federal complaint "sets forth in extensive detail, supported by citations to the public record, precisely why the Subpoena and the requests contained therein are unconstitutional, and precisely why [S&W] was justified in objecting to the Subpoena." D.E. 66-2 at PageID: 2022.

S&W further disregards that it explicitly argued to the Superior Court that "threshold issues regarding the constitutionality of the Subpoena in the first instance must be resolved before any decision to enforce it may be made." D.E. 66-2 at PageID: 2019. And that Judge Alper expressly rejected S&W's claims that the "[S]ubpoena itself violates constitutional rights." D.E. 66-2 at PageID: 2066. S&W, in other words, had the opportunity to – and did in fact – present the threshold constitutional arguments, with numerous citations to the public record, in the Superior Court Action; that Judge Alper disagreed that S&W's "threshold" constitutional arguments prevented the State from enforcing the Subpoena does not change this fact.

S&W's assertion that it has reserved its right to litigate its constitutional claims in federal court pursuant to *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964), *see* D.E. 67 at 20-22, also fails when accounting for the foregoing considerations. In *England*, the Supreme Court "held that when a federal court abstains from deciding a federal constitutional issue to enable the state courts to address an antecedent state-law issue [pursuant to *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941) and its progeny], the plaintiff may reserve his right

12

to return to federal court for the disposition of his federal claims." *San Remo Hotel, L.P. v. City & Cnty. of San Francisco, Cal.*, 545 U.S. 323, 339 (2005) (citing *England*, 375 U.S. at 419). In *England*, "the antecedent state issue requiring abstention was *distinct* from the reserved federal issue." *Id.* (citing *England*, 375 U.S. at 418-19). "'Typical' *England* cases generally involve federal constitutional challenges to a state statute that can be avoided if a state court construes the statute in a particular manner." *Id.* "[T]he purpose of [such] abstention is not to afford state courts an opportunity to adjudicate an issue that is functionally identical to the federal question. To the contrary, the purpose of *Pullman* abstention in such cases is to avoid resolving the federal question by encouraging a state-law determination that may moot the federal controversy." *Id.* The Supreme Court has also "made it perfectly clear that the effective reservation of a federal claim [under *England* is] dependent on the condition that plaintiffs take no action to broaden the scope of the state court's review beyond decision of the antecedent state-law issue." *Id.* at 340.

Here, this Court never concluded that federal claims asserted by S&W in its federal pleadings could be mooted by resolution of a distinct state-law issue. *See Atwater v. Chester*, 730 F.3d 58, 63 (1st Cir. 2013) ("The right to reserve claims [under *England*] arises only when the district court abstains under *Pullman*."). Moreover, the record is abundantly clear that even if the Court had effectively abstained under *Pullman*, S&W, in raising the above-referenced constitutional arguments in New Jersey Superior Court, broadened the scope of the state court's court review to consider those claims. And by "includ[ing these] claims, [S&W] effectively asked the state court to resolve the same federal issues they [now assert they] asked it to reserve. *England* does not support the exercise of any such right." *Id.* at 340.

The Court is also unpersuaded by the principal argument advanced in S&W's sur-reply that the Supreme Court's June 23, 2022 decision in, *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,

13

142 S.Ct. 2111 (2022), materially changes the nature of its constitutional claims or otherwise injects new life into them. *See* D.E. 71-1. In *Bruen*, the Court ruled that "an individual's right to carry a handgun for self-defense outside the home" is a constitutional right under the Second Amendment. 142 S.Ct. at 2112. *Bruen* further found that New York State's requirement that applicants who sought unrestricted licenses to carry a concealed pistol on their person "demonstrate[] a special need for self-defense" violated the Constitution. *Id*. *Bruen*, in short, governs the analysis for laws that burden an individual's Second Amendment right to armed self-defense; it does not speak to the primary issue in this case, *i.e.*, whether S&W's constitutional rights have been abridged by the State's issuance of the Subpoena and its related CFA investigation. The State's CFA investigation is not, as S&W characterizes it, a *Bruen*-related "firearm regulation." D.E. 71-1 at 4. The *Bruen* decision accordingly does not, as S&W argues, represent "an intervening change in the applicable law that [forecloses application of preclusion principles] and requires a new determination on the merits." *Id.* at 5.

The Court is likewise hard-pressed to give any credence to S&W's claim that it did not receive a full and fair opportunity to litigate its constitutional claims in the Superior Court Action because of the expedited and summary nature of that proceeding. *See* D.E. 67 at 8-11 ("The procedural and substantive weaknesses, which are inherent in summary actions, make such actions inappropriate for the application of preclusion.").

To begin with, such a claim ignores the express provisions within the New Jersey Court Rule governing summary proceedings that: (1) allow for a *defendant* to demand a trial by jury, *see* N.J. Ct. R. 4:67-4(b); and (2) enable the Superior Court to convert the summary proceeding into a plenary one "for good cause shown," *see* N.J. Ct. R. 4:67-5. S&W likewise fails to acknowledge that New Jersey's "entire controversy doctrine, codified by R. 4:30A requires defendant to seek

14

leave to file a counterclaim or cross-claim in the summary action in order to preserve it, despite the likely severance of such a claim." *See* Pressler & Verniero, Rules Governing the Courts of the State of New Jersey (2023), N.J. Ct. R. 4:46-4 at Comment 1. Importantly, S&W does not appear to have availed itself of any of these available remedies during the summary proceeding in Superior Court. S&W's apparent failure to do so should not now be a basis for it to assert that it did not receive a full and fair opportunity to litigate its constitutional claims in state court. Furthermore, it is unclear to this Court how allowing additional "[f]ulsome discovery" in the District Court Action, *see* D.E. 67 at 10, would so fundamentally alter the strength of S&W's underlying constitutional claims, which, by S&W's own admission, are already well-supported by extensive citations to the public record.

    **C. The Second Circuit's *Exxon Mobil* Decision**

The State, in support of its claim that the third element of *res judicata* has been satisfied, relies heavily on the Second Circuit's decision in the factually-analogous *Exxon Mobil Corporation v. Healey*, 28 F.4th 383 (2d Cir. 2022). *See* D.E. 66-1 at 14-19. The Court finds that *Exxon Mobil* persuasively demonstrates why dismissal of S&W's amended complaint under the doctrine of *res judicata* is appropriate. There, the Massachusetts Attorney General, in 2016, commenced an investigation into whether Exxon committed consumer or securities fraud by misrepresenting its knowledge of climate change. *Id.* at 388. In April 2016, the Massachusetts Attorney General served a Civil Investigative Demand ("CID") on Exxon to investigate potential violations of Section 2 of Massachusetts General Laws chapter 93A, which prohibits unfair or deceptive acts or practices in trade or commerce. *Id.* at 388-89. "The CID focused on the marketing and sale of fossil fuel products to Massachusetts consumers, and on the marketing and sale of Exxon securities to investors." *Id.* at 389.

15

On June 15, 2016, Exxon filed a federal civil rights complaint against the Attorney General of Massachusetts seeking declaratory and injunctive relief. *Id.* "Among other things, Exxon sought to enjoin the CID, alleging that the Massachusetts investigation was pretextual and violated the dormant Commerce Clause and Exxon's rights under the First Amendment, its right to be free of unreasonable searches under the Fourth Amendment, and its due process rights under the Fourteenth Amendment." *Id.* On November 10, 2016, Exxon amended its federal complaint to allege that the investigation was biased and conducted with improper political motives, and pointed to public comments made by the Massachusetts AG which purportedly supported this claim. *Id.*

On June 16, 2016, one day after Exxon filed its original complaint against the Massachusetts Attorney General in federal court, Exxon separately petitioned a Massachusetts Superior Court to set aside the CID. *Id.* In that petition, Exxon contended, among other things, that the CID violated state constitutional protections for free speech and freedom from unreasonable searches, and that the CID was arbitrary and capricious. *Id.* at 389-90. Acknowledging that its petition raised issues that potentially overlapped with those in its federal suit, Exxon requested that the Massachusetts Superior Court grant a stay pending the outcome of the federal litigation. *Id.* at 390. The Massachusetts Attorney General cross-moved to compel Exxon to comply with the CID. *Id.*

On January 11, 2017, the Massachusetts Superior Court denied Exxon's petition to set aside the CID and granted the Massachusetts Attorney General's motion to compel. *Id.* The Superior Court rejected Exxon's assertion that the Attorney General's actions constituted political bias or viewpoint discrimination rising to the level of arbitrary and capricious conduct, determining instead that the Attorney General had "assayed sufficient grounds – her concerns about Exxon's possible misrepresentations to Massachusetts consumers – upon which to issue the CID" and thus

acted in good faith. *Id.* The state court also expressly declined to consider Exxon's free speech claim at that time, reasoning that the Attorney General was still investigating whether Exxon's statements or omissions in communications to consumers were misleading or deceptive, and that misleading or deceptive speech would not be "entitled to any free speech protection." *Id.*

On March 29, 2018, the federal trial court issued an order dismissing Exxon's amended federal complaint with prejudice, finding "that Exxon's claims against the Massachusetts Attorney General were barred by *res judicata* – also known as claim preclusion – since Exxon could have raised those claims in the Massachusetts proceeding." *Id.*

The Second Circuit agreed that Exxon's federal claims against the Massachusetts Attorney General were precluded by *res judicata*. *Id.* at 398. In so doing, it expressly rejected Exxon's argument that *res judicata* did not apply because the claims asserted in the federal action were not raised in or decided by the Massachusetts state court. *Id.* The Second Circuit found that Exxon's state court petition and federal complaint both concerned the same essential violations of legal rights and both identified the same relevant injury: the CID's alleged violation of various federal constitutional provisions and their state analogues. *Id.* at 399. The fact that the actions arose in different procedural circumstances – via an action to stop CID enforcement in the state case versus an affirmative § 1983 claim in federal court – did not alter that conclusion. *Id.* at 400. The federal appeals court also made a point to note that "Exxon itself implied that the two actions involved overlapping claims – not merely overlapping arguments – in its state court filings." *Id.* at 400.

The Second Circuit also held that it was immaterial that the two actions sought nominally different remedies: So long as the same relief was available in the Massachusetts proceeding, the fact that Exxon opted to seek different forms of relief in the two actions was irrelevant to the issue of claim preclusion. *Id.* The federal appeals court also expressly rejected Exxon's claims that the

17

two proceedings were sufficiently distinct for purposes of *res judicata* because: (1) the state proceedings pertained to the enforcement of a specific CID, while the federal action sought an injunction of the Massachusetts Attorney General's investigation; and (2) certain declaratory and injunctive relief available for its affirmative § 1983 claims would not have been available in the "limited" CID proceeding.  *Id.*  In so doing, the court made a point to note that "the specific relief that Exxon now claims was available only in federal court – namely, an injunction prohibiting pretextual investigations and ending the Massachusetts Attorney General's investigation – was equally available in state court." *Id.*  The Second Circuit also rejected Exxon's contention that *res judicata* did not apply because the Massachusetts CID proceeding was limited in nature and thus failed to provide Exxon with a full and fair opportunity to litigate its federal claims.  *Id.* at 401.

      Here, as in *Exxon Mobil*, S&W's state court petition and its federal complaint both concern the same essential violations of legal rights.  Both identify the same relevant injury: the Subpoena and related investigation's alleged violation of various federal constitutional provisions.  The fact that the District Court Action and the Superior Court arose in different procedural circumstances – via a cross-motion to quash the Subpoena in a state court summary proceeding versus affirmative § 1983 claims in federal court – does not alter that reality.  In that respect, it is immaterial – as it was in *Exxon* – that S&W may have sought nominally different remedies in the two actions: Because the same relief was available to S&W in the New Jersey proceeding, the fact that S&W may have opted to seek different forms of relief in the two actions is irrelevant to the issue of claim preclusion.  The Court likewise finds that the limited nature of the summary action in Superior Court did not deprive S&W of a full and fair opportunity to litigate its federal claims.

### D. *Res Judicata* Bars Litigation of the Present Action

For the reasons detailed above, the Court finds, with respect to the third element of *res judicata*: (1) that the acts S&W complained of in the District Court Action and the Superior Court Action, *i.e.*, that the New Jersey Attorney General's Subpoena and its associated CFA investigation represents an unconstitutional infringement of S&W's rights, and its demands for relief, *i.e.*, that enforcement of the Subpoena be halted, are the same; (2) that S&W's theory of recovery in both actions is the same; (3) that the evidence necessary for S&W to prove its claims in both matters is substantially the same; and (4) that the *material* facts alleged in support of S&W's claims in both actions are the same. As noted, the first two elements of *res judicata* have also been satisfied as: (1) Judge Alper's June 30, 2021 order compelling S&W to respond to the Subpoena represents a prior final judgment on the merits; (2) in a suit involving the same parties. The Court accordingly concludes that S&W's claims in the District Court Action are barred by *res judicata*. Again, "[f]ederal courts owe due respect to state courts." *Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey*, 27 F.4th 886, 896 (3d Cir. 2022). The Court will accordingly dismiss S&W's amended complaint with prejudice.

### IV.   CONCLUSION

For the reasons above, the State's motion to dismiss is **GRANTED**. S&W's amended complaint is accordingly dismissed with prejudice.

Dated: December 27, 2022                                            /s/ Evelyn Padin
                                                                                                                        Evelyn Padin, U.S.D.J.