**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1223
_____

SMITH & WESSON BRANDS, INC.; SMITH & WESSON
SALES CO.; SMITH & WESSON INC.
                                                     Appellants

v.

ATTORNEY GENERAL OF THE STATE OF NEW
JERSEY; NEW JERSEY DIVISION OF CONSUMER
AFFAIRS
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-20-cv-19047)
District Judge:  Honorable Evelyn Padin
_____

Argued:  November 15, 2023
_____

Before:  CHAGARES, Chief Judge, MATEY and FUENTES,
Circuit Judges.

(Opinion filed: June 25, 2024)

_____

Courtney G. Saleski [ARGUED]
DLA Piper LLP (US)
1650 Market Street
Suite 5000
Philadelphia, PA 19103

Joseph A. Turzi
Edward S. Schneideman
DLA Piper LLP (US)
500 Eighth Street, NW
Washington, DC, 20004

Christopher M. Strongosky
DLA Piper LLP (US)
51 John F. Kennedy Parkway
Suite 120
Short Hills, NJ 07078

Counsel for Appellants

Angela Cai
Stephanie Cohen
Jeremy Feigenbaum [ARGUED]
Monica Finke
Nathaniel I. Levy
Justine Longa
Matthew J. Platkin
Timothy Sheehan
Office of the Attorney General of New Jersey
25 Market Street

Richard J. Hughes Justice Complex
Trenton, NJ 08625

<u>Counsel for Appellees</u>

———————

OPINION OF THE COURT

———————

CHAGARES, <u>Chief</u> <u>Judge</u>.

This is an appeal challenging a New Jersey Attorney General subpoena in spite of a state court judgment enforcing the subpoena and rejecting the same claims pursued, but not yet resolved, in federal court. The Office of the Attorney General of New Jersey ("New Jersey Attorney General") issued a subpoena for the production of documents to Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, and Smith & Wesson Inc. (collectively, "Smith & Wesson") pursuant to its authority under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1–228. In opposition, Smith & Wesson filed a civil rights lawsuit in federal court to enjoin enforcement of the subpoena. The New Jersey Attorney General then filed a subpoena enforcement action in state court. Smith & Wesson opposed the state enforcement action by raising "carbon-copy" arguments of those in its federal complaint. Appendix ("App.") 188. The two cases proceeded simultaneously. The state court resolved the matter first. It rejected Smith & Wesson's objections to the subpoena and ordered the company to comply by providing the requested documents to the New Jersey Attorney General. The federal court then gave preclusive effect to the state court's order and dismissed Smith & Wesson's civil rights action on claim

preclusion grounds.  The state appellate court later affirmed the state court judgment.  In this appeal, Smith & Wesson contends that the District Court should not have given preclusive effect to the state court order for various reasons.  We will affirm the District Court's order.

I.

This is not the first time this Court has considered an appeal arising from the New Jersey Attorney General's efforts to enforce the subpoena.  See Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J., 27 F.4th 886 (3d Cir. 2022).  Although most of the facts are the same, state and federal courts have conducted additional proceedings, so we recount the relevant background in full.

The New Jersey Attorney General is investigating firearms designer and manufacturer Smith & Wesson for possible violations of the New Jersey Consumer Fraud Act.  See N.J. Stat. Ann. § 56:8-2 (prohibiting, inter alia, the "act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . .").[1]  To enforce the Act, the New Jersey

---

[1]  Although the Act applies to "person[s]," it defines "person[s]" to include "any natural person or his legal representative, partnership, corporation, company, trust, business entity or association," among others.  N.J. Stat. Ann. § 56:8-1.

4

Attorney General may issue subpoenas, "which shall have the force of law," id. § 56:8-4(a), in aid of an investigation into "whether a person in fact has engaged in, is engaging in or is about to engage in" any practice prohibited by the Act. Id. § 56:8-3. If a person fails to comply with its subpoena, the New Jersey Attorney General may move in the Superior Court of New Jersey for an order to enforce the subpoena and for other relief against the subpoenaed person. Id. § 56:8-6.

In October 2020, the New Jersey Attorney General issued a subpoena seeking documents from Smith & Wesson pursuant to its authority under the Act. The subpoena is part of the state's investigation into "whether [Smith & Wesson] had violated the [Consumer Fraud Act] by making any misstatements and/or knowing omissions to its consumers about the safety, benefits, effectiveness, and legality of its products." N.J. Att'y Gen. Br. 5. The New Jersey Attorney General requested copies of all advertisements for Smith & Wesson merchandise available in New Jersey concerning home safety and defense, concealed carry, personal protection and defense, as well as documents concerning the legality, safety, benefits, and effectiveness of concealed carry in New Jersey, among others.

Instead of complying with the subpoena and producing the requested documents, Smith & Wesson sent a letter to the New Jersey Attorney General objecting in December 2020. It wrote that the subpoena violated the First, Second, Fourth, Fifth, and Fourteenth Amendments, the Dormant Commerce Clause, the federal Protection of Lawful Commerce in Arms Act, and various evidentiary privileges, among other objections. The next day, Smith & Wesson filed a complaint in the United States District Court for the District of New

Jersey, asserting federal civil rights claims under 42 U.S.C. § 1983 for violations of the same constitutional provisions and federal statute. In its prayer for relief, it requested the District Court to enjoin any state court proceedings to enforce the subpoena and to enjoin the New Jersey Attorney General from enforcing the subpoena. It also requested declaratory judgments that the "[s]ubpoena and related investigation" violate Smith & Wesson's rights under the First, Second, Fourth, Fifth, and Fourteenth Amendments, New Jersey citizens' rights under the Second Amendment, the Dormant Commerce Clause, and the Supremacy Clause.[2] App. 82-83.

---

[2] In its federal complaint, Smith & Wesson included an additional request for a declaratory judgment that the subpoena is preempted by the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901–7903. App. 83. But Smith & Wesson made no mention of this claim in its briefs or at oral argument, instead only broadly referring to its "constitutional claims." See, e.g., Smith & Wesson Br. 3 (framing its argument in its introduction and writing that "Smith & Wesson is entitled to litigate the merits of its constitutional claims"); id. at 19 (writing in the first sentence of its summary of argument that "[t]he District Court erred by dismissing on the grounds of res judicata (claim preclusion) and the entire controversy doctrine and by failing to adjudicate Smith & Wesson's federal constitutional claims on the merits."); Reply Br. 1 (framing its argument in its introduction as one concerning the adjudication of "constitutional claims"). It is not apparent Smith & Wesson intended to include this request for declaratory relief in its discussion of its constitutional claims. As a result, we will not engage in a separate analysis focusing upon this request for declaratory relief.

Two months later, in February 2021, the New Jersey Attorney General sought to enforce the subpoena in the Superior Court of New Jersey, Chancery Division (the "state trial court"). The state trial court ordered Smith & Wesson to show cause why the court should not enter judgment against it and threatened sanctions of contempt and restraint from advertising or selling merchandise, among other sanctions, until it complied with the subpoena. Smith & Wesson filed a cross-motion to dismiss, stay, or quash the subpoena (the "cross-motion") in response. It raised the same constitutional concerns pled in its federal lawsuit. It went as far as to incorporate its federal lawsuit by reference and described the state court proceeding as "a carbon-copy dispute of the federal court lawsuit." App. 188. Meanwhile, in federal court, Smith & Wesson amended its complaint. The New Jersey Attorney General then moved to dismiss the amended complaint, arguing that Younger v. Harris, 401 U.S. 37 (1971), required the federal court to abstain from exercising jurisdiction.

The state trial court issued its judgment first and rejected Smith & Wesson's arguments. In June 2021, the state trial court denied Smith & Wesson's cross-motion and ordered the company to produce the subpoenaed documents within thirty days. Smith & Wesson sought an emergency stay of production, but the New Jersey Superior Court, Appellate Division (the "Appellate Division") and New Jersey Supreme Court denied it. Smith & Wesson also filed a formal notice of appeal.

The District Court then twice dismissed Smith & Wesson's complaint. The District Court first dismissed Smith & Wesson's complaint, abstaining under Younger, but this Court vacated that order and remanded for further proceedings.

See Smith & Wesson Brands, Inc., 27 F.4th at 895-96. On remand, the New Jersey Attorney General again moved to dismiss Smith & Wesson's complaint, this time on claim preclusion grounds. The District Court granted the motion and dismissed Smith & Wesson's complaint in December 2022. Smith & Wesson timely appealed.

While the present appeal was pending, the Appellate Division affirmed the state trial court's order in January 2023. The Appellate Division rejected Smith & Wesson's contention that it may raise its constitutional challenges to the subpoena.

II.

The District Court had jurisdiction under 28 U.S.C. § 1331. This Court has appellate jurisdiction over Smith & Wesson's appeal of the District Court's dismissal of its complaint under 28 U.S.C. § 1291. Our review of dismissals for claim preclusion is plenary. Elkadrawy v. Vanguard Grp., Inc., 584 F.3d 169, 172 (3d Cir. 2009); see also Beasley v. Howard, 14 F.4th 226, 231 (3d Cir. 2021).

III.

Smith & Wesson argues that the District Court erred in dismissing its complaint for two primary reasons. First, it argues the District Court incorrectly conducted its claim preclusion analysis. It contends that the state trial court order does not have preclusive effect because the state trial court's judgment does not satisfy the claim preclusion test and because the New Jersey Appellate Division's opinion was not on the merits. Second, Smith & Wesson contends the District Court incorrectly rejected its reservation of its rights to litigate in federal court.

A.

We first determine whether the District Court correctly afforded preclusive effect to the state trial court order. The Full Faith and Credit statute provides that "judicial proceedings of any court of any such State . . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. This means that the preclusive effect of a state court judgment or order is determined by the law of the state that rendered the judgment. Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); see also Jones v. Holvey, 29 F.3d 828, 829-30 (3d Cir. 1994) ("Federal courts must apply the doctrine of res judicata to civil actions brought under section 1983 and in this context 'must give to a state-court judgment the same preclusive effect as would be given [to] that judgment under the law of the [s]tate in which the judgment was rendered.'" (quoting Migra, 465 U.S. at 81)). Because we are considering the preclusive

9

effect of a New Jersey state court order, New Jersey preclusion law applies.

Claim preclusion "insulat[es] courts from the relitigation of claims." Watkins v. Resorts Int'l Hotel & Casino, Inc., 591 A.2d 592, 597 (N.J. 1991). This doctrine "provides that a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding." Velasquez v. Franz, 589 A.2d 143, 147 (N.J. 1991) (citing Roberts v. Goldner, 397 A.2d 1090, 1091 (N.J. 1979)); see also Wadeer v. N.J. Mfrs. Ins. Co., 110 A.3d 19, 27-28 (N.J. 2015). Claim preclusion serves the purposes of "finality and repose," the "prevention of needless litigation," the "reduction of unnecessary burdens of time and expenses," the "elimination of conflicts, confusion and uncertainty," and "basic fairness." Wadeer, 110 A.3d at 27-28 (quotation marks omitted) (quoting First Union Nat'l Bank v. Penn Salem Marina, Inc., 921 A.2d 417, 423 (N.J. 2007)). Under New Jersey law, claim preclusion requires that

> (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.

McNeil v. Legis. Apportionment Comm'n, 828 A.2d 840, 859 (N.J. 2003) (quoting Watkins, 591 A.2d at 599); see also Velasquez, 589 A.2d at 147 (writing that claim preclusion

applies to all valid and final "adjudication[s]" on the merits).[3] Applying these principles, we hold that all three elements of the claim preclusion test have been satisfied.

### 1.

As to the first element of the claim preclusion test, the state trial court issued a final order when it denied Smith & Wesson's cross-motion and ordered the company to comply with the New Jersey Attorney General's subpoena. Smith & Wesson appealed this final order to the New Jersey Appellate Division, which affirmed the state trial court's order. Neither party argues the state trial court's order was not a valid, final judgment on the merits when issued.

But Smith & Wesson now contends there was, in fact, no judgment on the merits because of what occurred in the state appeal.[4] The company argues the Appellate Division declined

---

[3] Although we apply New Jersey preclusion law, both this Court and the New Jersey Supreme Court recognize that New Jersey's claim preclusion test is the same as the federal common law test. See Hoffman v. Nordic Nats., Inc., 837 F.3d 272, 279 (3d Cir. 2016) (quoting In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008)); McNeil, 828 A.2d at 859; Watkins, 591 A.2d at 599.

[4] Our dissenting colleague would hold that the state trial court's order was not a valid, final judgment on the merits when it was issued. Dissenting Op. 8-14. But neither party argued that the order was not on the merits in their briefs or at oral argument. Indeed, in its opening brief, Smith & Wesson wrote that "[t]he Chancery Division's decision—insofar as it can be read to

to engage in a merits determination of its constitutional objections because it determined that they were not ripe. This,

_____

address the merits of Smith & Wesson's constitutional objections—<u>no longer</u> has any force or effect in determining whether Smith & Wesson's claims were adjudicated 'on the merits.'" Smith & Wesson Br. 21 (emphasis added). At oral argument, Smith & Wesson even suggested the state trial court order was preclusive (and, therefore, necessarily a final judgment on the merits) when it argued that "the Appellate Division's decision is irreconcilable with the . . . alleged alternative holding of the Chancery court. The Chancery court's decision should not preclude anything here anymore because of the new decision by the Appellate Division . . . ." Oral Arg. at 2:31-2:51.

At no point did Smith & Wesson argue the state trial court's order failed to reach the merits. And by arguing that the Appellate Division decision "[r]emoves" the preclusive effect of the state trial court order, Reply Br. 2, 7, and the state trial court's decision "should not preclude anything here <u>anymore</u>," Oral Arg. at 2:31-2:51 (emphasis added), Smith & Wesson necessarily argues that the state trial court order was — before the issuance of the Appellate Division's decision — on the merits.

Insofar that our dissenting colleague writes that Smith & Wesson did argue that the state trial court's order was not a valid, final judgment on the merits, <u>see</u> Dissenting Op. 13 n.17, the company's argument concerned only whether it received a full and fair opportunity to litigate in the state forum. We address this in a later part of the opinion. <u>See</u> <u>infra</u> Part III(A)(4)(a).

Smith & Wesson contends, vitiates the state trial court's merits determination and "[r]emoves" the preclusive effect of the state trial court's order. Reply Br. 2, 7. Smith & Wesson's argument is premised upon its reading of the Appellate Division's ripeness discussion to mean its constitutional arguments were not ripe and therefore the state trial court should never have considered the company's constitutional claims. See Smith & Wesson Br. 21-26; Reply Br. 2-7.

Smith & Wesson, however, misconstrues the Appellate Division's opinion, which discussed ripeness only in the alternative. The Appellate Division expressly considered the merits of Smith & Wesson's constitutional arguments and rejected them for the same reasons as the state trial court. App. 597 ("We find Judge Alper did not err in her narrow reading of NAACP, and our analysis leads us to the same outcome."); App. 598 ("We disagree, as those theories are premised upon the argument that the United States Supreme Court's holding in NAACP permits them. We have already rejected that argument."). In the state trial and appellate courts, Smith & Wesson argued that the Supreme Court's decision in NAACP v. Alabama ex rel. Patterson, 357 U.S. 449 (1958), "stands for the proposition 'that the indispensable liberties of the First Amendment, whether of speech, press, or association, cannot be abridged by the government unless the state articulates compelling interests.'" App. 593 (quotation marks omitted). The Appellate Division held that it was "not persuaded," id., because it interpreted NAACP and earlier United States Supreme Court decisions to permit constitutional challenges to state subpoenas only for violations of the freedom of association under the First Amendment. App. 593-97. It determined that NAACP does not "permit[]" the company's "constitutional claims," and rejected the defenses outright.

App. 598.[5]   After rejecting the constitutional claims on the merits, the court wrote "**[e]ven if** we were persuaded that

_____

[5] The dissent states that the "sounder" reading of the Appellate Division's discussion is that the Appellate Division only decided "whether *NAACP* has a broad or narrow lens," and that question alone is the "only claim eligible for preclusion." Dissenting Op. 17.  But this characterization stops short of what the Appellate Division actually decided.  Not only does the plain text of the Appellate Division's decision belie this contention as discussed above, but the state appellate court record confirms this.

In its state appellate court briefing, Smith & Wesson argued that, in NAACP, "the Supreme Court spoke broadly about protecting all constitutional rights" guaranteed by the Constitution.   App. 435.   The company argued that all constitutional objections, not "only First Amendment freedom-of-association" concerns, App. 439, must be resolved as a threshold matter before ordering the production of documents. See App. 434-39.   The New Jersey Attorney General disagreed, arguing that NAACP only permits specific challenges to subpoenas for First Amendment associational or privacy concerns.  See App. 511-14.  Smith & Wesson replied that neither "the trial court below nor the [New Jersey] Attorney General point to any support in NAACP that the Supreme Court intended to limit its holding to freedom of association cases only."  App. 547.

The parties disagreed about whether Smith & Wesson could raise its constitutional claims to a subpoena at all.  When the Appellate Division wrote that it was not "persuaded that NAACP opened the door to constitutional defenses outside the

NAACP opened the door to constitutional defenses outside of freedom of association, we would find these federal constitutional claims not ripe for our consideration." App. 598 (emphasis added). This is the language of alternative holdings. The Appellate Division considered Smith & Wesson's constitutional defenses, held they were not legally cognizable, and held that, in the alternative, the claims were not ripe.[6] The

---

freedom of association" and that the decision does not "permit[]" them, it resolved that disagreement. App. 598. The Appellate Division not only decided that NAACP has a "narrow lens," Dissenting Op. 17, but also that as a result of this narrow lens, the subpoena does not implicate Smith & Wesson's constitutional rights.

[6] Because we determine that the Appellate Division considered Smith & Wesson's constitutional defenses, there is no need to consider the applicability or continuing propriety of Russell v. Russell, 134 F. 840 (3d Cir. 1905). The Court in Russell considered the preclusive effect of a state equitable decree made on multiple grounds after the state's highest court affirmed on only one ground and found it "unnecessary," Russell v. Russell, 49 A. 1081, 1081 (N.J. 1901), to consider the other. See Russell v. Russell, 129 F. 434, 437 (C.C.D.N.J. 1904); Russell, 49 A. at 1081. This Court held that the decree was preclusive as to both issues because the New Jersey high court affirmed it, reasoning that the decree "had not ceased to exist, but had been expressly continued in force." Russell, 134 F. at 841.

Our dissenting colleague raises a number of the Russell decision's limitations. Because the decision does predate Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), it is not clear

primary analysis did not depend on ripeness and was a judgment on the merits.

Smith & Wesson's tendentious reading of the opinion would have us hold that the Appellate Division rested solely on ripeness and never considered the merits of the company's constitutional defenses. It did consider and discuss them. See App. 597-98; see also App. 593-97. And it rejected them. In the alternative, it rejected them for an independently sufficient reason. We decline to construe the Appellate Division's categorical affirmance as undoing the preclusive effect of the appealed judgment. There was a valid, final judgment on the merits, and the Appellate Division's affirmance did not alter this.

2.

The second element of the claim preclusion test is also met. Both Smith & Wesson and the New Jersey Attorney General are the same parties in both actions. Smith & Wesson filed its federal complaint against the New Jersey Attorney General. A few months later, the New Jersey Attorney General

---

whether this Court applied federal common law preclusion principles or New Jersey state preclusion principles. The dissent casts additional doubt on the decision's continuing propriety by drawing upon this Court's jurisprudence, Supreme Court jurisprudence, and the Wright & Miller treatise for support for the opposite rule. See Dissenting Op. 14-15 & n.20. Insofar as we hold that the Appellate Division did affirm the state trial court's reasoning on the merits, Russell v. Russell is inapposite.

initiated the subpoena enforcement action against Smith & Wesson in state court.  Neither party disputes this.

3.

The third element is satisfied, as well.  Smith & Wesson argues that the state court judgment cannot be preclusive because the state and federal proceedings concerned distinct claims.  For two claims to grow out of the same occurrence, the claims must involve "substantially similar or identical causes of action and issues, parties, and relief sought."  Wadeer, 110 A.3d at 28 (quoting Culver v. Ins. Co. of N. Am., 559 A.2d 400, 405 (N.J. 1989)).  To decide if two causes of action are the same, courts must determine

> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.

Id.  The New Jersey Supreme Court has observed that this element is "the most difficult to determine" for a claim preclusion analysis.  Id.

The acts complained of and the demand for relief are essentially the same.[7]  In both actions, the wrong at issue is that

---

[7] The dissent takes issue with this holding, writing we do not accurately apply New Jersey's claim preclusion test.  Dissenting Op. 25-26 & n.29.  It states that what we apply is "not the legal standard for claim preclusion."  Id. at 26.  Unfortunately, this argument elevates form over function and overlooks how New Jersey courts apply New Jersey claim preclusion law.

This language comes directly from the New Jersey Supreme Court, which has precluded claims after holding "[t]he relief sought . . . is essentially the same," Culver, 559 A.2d at 405; see also First Union Nat'l Bank, 921 A.2d at 424 (precluding claims after finding "the other elements of relief are essentially the same").  By the plain terms of its decisions, the New Jersey Supreme Court does not require exact sameness and has repeatedly afforded preclusive effect where there is a "high degree of similarity between the two actions," First Union Nat'l Bank, 921 A.2d at 424, and where "the causes of action and essential issues" are "substantially the same," Culver, 559 A.2d at 405.  See also Wadeer, 110 A.3d at 28 ("Application of res judicata requires substantially similar or identical causes of action and issues, parties, and relief sought . . . ." (quotation marks omitted)); Betts v. Nichols, No. A-1378-21, 2023 WL 3990568, at *3 (N.J. Super Ct. App. Div. June 9, 2023) (per curiam) (affirming district court ruling that held "these claims are essentially the same as the claims made" before); Jefferson v. City & State Dep't of Health & Vital Stat., No. A-1533-20, 2022 WL 2352137, at *3 (N.J. Super Ct. App. Div. June 30, 2022) (per curiam) (holding claims were precluded because they were "essentially the same claims" asserted in the first

subpoena compliance purportedly violates federal law.  A comparison of Smith & Wesson's federal complaint and state cross-motion confirms this.  The company's federal complaint includes claims that the New Jersey Attorney General's subpoena violated various constitutional provisions.  See App. 72-82.  In its brief in support of its cross-motion, the company argued that the subpoena violated these same provisions.  See App. 190-98.  Therefore, the "wrong for which redress is sought" is identical in both actions.  Wadeer, 110 A.3d at 28; see also id. at 29 (holding the acts complained of were identical when they involved the conduct of the same insurer); Culver, 559 A.2d at 405 (same).

The demand for relief in both actions is also essentially the same.  Smith & Wesson sought to prevent the enforcement of the New Jersey Attorney General's subpoena in both actions.  In its federal complaint, Smith & Wesson asked the District Court to "[e]njoin any proceedings in the state courts of New Jersey to enforce the Subpoena" and "[e]njoin Defendants from enforcing the Subpoena."  App. 82.  In its state court cross-motion, the company also took issue with the

---

action); Gage v. Wells Fargo Bank, N.A., No. A-5350-13T2, 2016 WL 783055, at *1-2 (N.J. Super. Ct. App. Div. Mar. 1, 2016) (per curiam) (holding claims were precluded because they complained of "essentially the same misconduct" alleged in the prior actions and sought "essentially the same relief"); McPeek v. Deputy Att'y Gen., No. A-2181-07T3, 2008 WL 5273081, at *4 (N.J. Super. Ct. App. Div. Dec. 22, 2008) (per curiam) ("Res judicata bars repetitive litigation when there has been a final judgment by a court of competent jurisdiction and the causes of action, issues, parties, and relief sought are substantially similar.").

"enforceability of the Subpoena" and asked the state trial court to quash it.  App. 189.

Smith & Wesson's inclusion of requests for declaratory relief and a stop to the New Jersey Attorney General's "investigation" in its federal complaint changes nothing.  App. 82-83.  The gravamen of both actions is the same.  In the federal proceeding, Smith & Wesson sought to stop subpoena enforcement on the grounds that it is illegal.  In the state proceeding, Smith & Wesson sought to quash the subpoena and stop enforcement because it is illegal.  The specific forms of relief sought are immaterial so long as Smith & Wesson had the opportunity to seek identical relief — relief preventing enforcement of the subpoena — in both actions.  It had that opportunity and did exactly that.[8]  See First Union Nat'l Bank, 921 A.2d at 424 (applying claim preclusion test and holding that the claims were the same "[a]lthough the demand for relief [was] broader in the [subsequent action]" because it included a new demand for equitable relief); Culver, 559 A.2d at 405 (holding the relief sought was "essentially the same, even though in the second action the claim for damages is expanded to include" other forms of relief); see also Gregory v. Chehi, 843 F.2d 111, 118 (3d Cir. 1988) ("It is not significant that the

---

[8] The dissent mischaracterizes New Jersey claim preclusion law when it writes "[c]laim preclusion deals with the claims brought and decided, not the litigation paths unavailable and unexplored."  Dissenting Op. 30-31.  But in New Jersey, "[c]laim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined."  McNeil, 828 A.2d at 859 (quoting Watkins, 591 A.2d at 599).

relief obtainable in the two forums varies to some degree."); Exxon Mobil Corp. v. Healey, 28 F.4th 383, 400 (2d Cir. 2022) ("Nor does it matter that the two actions sought nominally different remedies. So long as the same relief was available in the [state] proceeding, the fact that Exxon opted to seek different forms of relief in the two actions is irrelevant to the issue of claim preclusion." (citations omitted)).  In addition, Smith & Wesson fails to explain how enjoining the subpoena's enforcement is any different from enjoining the "investigation." App. 82.  As the New Jersey Attorney General highlights, "the only investigative action challenged was the Subpoena, and there is no other action to enjoin if the Subpoena is quashed."  N.J. Att'y Gen. Br. 24; see also Oral Arg. at 22:53-23:10.[9]

---

[9] The dissent contends that there is an "investigation" distinct from the subpoena, as evidenced by allegations in Smith & Wesson's federal complaint.  Dissenting Op. 13 n.18, 21 n.25, 24-25.  But the cited allegations in the federal complaint only confirm that the subpoena was the only investigative step taken by the New Jersey Attorney General.  Our dissenting colleague cites allegations that New Jersey announced it "would" combine the investigative and enforcement powers of the state to "turn up the heat" on gun manufacturers, id. at 21 n.25 (quoting App. 55, 53), and "will" use its "investigatory and prosecutorial powers," id. (quoting App. 59).  These allegations, repletes with "wills" and "woulds," show that these supposed, nascent investigative steps are nonexistent. Nothing else has occurred.  At this time, the New Jersey Attorney General has not taken any investigative steps outside issuing a subpoena.

The theories of recovery are also the same. Even when causes of actions arise from different legal theories, the theories of recovery are sufficiently similar when they require the court to engage in substantially the same analysis. See Culver, 559 A.2d at 405-06 (holding that the theories of recovery were sufficiently similar to warrant claim preclusion, although one cause of action rested on equitable principles and the other on contract principles, because the court had to engage in largely the same analysis for both claims and both claims concerned the same factual inquiry). Smith & Wesson's theories in both proceedings concern the unconstitutionality of the New Jersey Attorney General's subpoena and are therefore the same for the purposes of claim preclusion.

The evidence and material facts are similarly identical across both actions. If "additional proofs neither required nor relevant" to the first proceeding are required in the second proceeding, then the matters may be distinct. See Bondi v. Citigroup, Inc., 32 A.3d 1158, 1188 (N.J. Super. Ct. App. Div. 2011). In both the federal complaint and state cross-motion, Smith & Wesson alleges violations of the same constitutional provisions because of the New Jersey Attorney General's subpoena. Compare App. 72-82 (federal complaint) with App. 190-98 (state cross-motion). The evidence required to demonstrate that the state violated Smith & Wesson's federal rights is the same whether litigated in federal or state court. And the material facts are the same. Smith & Wesson's legal challenges in both proceedings stem from the New Jersey Attorney General's efforts to enforce the subpoena against it. See Wadeer, 110 A.3d at 29; Culver, 559 A.2d at 405.

For the aforementioned reasons, we hold that the claims in the state and federal proceedings grew out of the same transaction or occurrence. We want to underscore that we are not the first to make this observation. Smith & Wesson's own admissions support this. In state court, Smith & Wesson argued that the state court should stay the state trial court action and "not adjudicate what amounts to a carbon-copy dispute of the federal court lawsuit." App. 188 (emphasis added). It went on to write that

> Both [proceedings] involve the same claims: the enforceability of the Subpoena and the validity of Smith & Wesson's constitutional objections to that Subpoena. While one case presents the issues in the context of an action for deprivation of rights and the other in the context of a motion to enforce, it is a distinction without a difference. The issue is the same: whether Smith & Wesson must comply with the Subpoena.

App. 189 (emphasis added). The company went so far as to incorporate its federal complaint by reference in its state trial court filing. See App. 190 n.17; see also App. 194-96 (explicitly referring to its federal complaint in its state trial court filing). Smith & Wesson cannot have it both ways. It argued the claims are the same for the purposes of a stay, but now attempts to frame them as distinct for the purposes of preclusion. Moreover, other courts have similarly looked to the party's own characterization of its actions in concluding two acts complained of were the same. See Exxon, 28 F.4th at 401 (relying upon Exxon's concession in Massachusetts trial court that all its claims in both actions arose from the same facts).

4.

Although we hold that New Jersey's claim preclusion test is satisfied, Smith & Wesson raises additional arguments for why its federal complaint should not be precluded.

a.

Smith & Wesson argues that the state court judgment cannot be preclusive because the company did not have the full and fair opportunity to litigate its constitutional arguments in the state court proceeding.  Although the full and fair opportunity to litigate is typically discussed in issue preclusion analyses and is not expressly part of the New Jersey claim preclusion test, the Supreme Court has held that "invocation of res judicata or claim preclusion is subject to the same limitation." Kremer v. Chem. Constr. Corp., 456 U.S. 461, 481 n.22 (1982); see also 18 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, and Vikram David Amar, Federal Practice and Procedure § 4423 (3d ed. 2016) [hereinafter Wright & Miller] (discussing the full and fair opportunity to litigate as necessary for issue preclusion).  New Jersey appellate courts have similarly held that claim preclusion does not apply unless the party whose claim is being sought to be barred had a full and fair opportunity to litigate its claims in the original action. See Bondi, 32 A.3d at 1188 (citing Cafferata v. Peyser, 597 A.2d 1101, 1104 (N.J. Super. Ct. App. Div. 1991)).

New Jersey appellate courts have listed factors to consider when determining whether a party had a full and fair opportunity to litigate.  Courts should consider whether "(1) the prior forum afforded plaintiffs procedural opportunities in

24

the presentation and determination of the issues; (2) plaintiffs could have effected joinder of the present defendant in the prior proceeding; and (3) other compelling circumstances make it appropriate that plaintiffs be permitted to relitigate the issue." Konieczny v. Micciche, 702 A.2d 831, 836 (N.J. Super. Ct. App. Div. 1997) (citing Restatement (Second) of Judgments § 29 (Am. L. Inst. 1982)).

Smith & Wesson had a full and fair opportunity to litigate its claims in state court. The company contends that the summary state court enforcement action lacked the procedural opportunities of plenary proceedings, and therefore cannot have preclusive effect. Summary actions are, "by definition, designed to accomplish the salutary purpose of swiftly and efficiently disposing of matters which lend themselves to summary treatment[.]" Levchuk v. Jovich, 855 A.2d 635, 640 (N.J. Super. Ct. App. Div. 2004) (quotation marks omitted) (alteration in original). Smith & Wesson correctly notes that the New Jersey courts do not seek to make summary proceedings "traps[s] for the unwary," id. at 641 (quoting Perry v. Tuzzio, 672 A.2d 213, 217 (N.J. Super. Ct. App. Div. 1996)), or "the unsuspecting," Cafferata, 597 A.2d at 1104, by creating preclusive consequences beyond the proceeding's scope. That is why, in a summary proceeding, "no counterclaim or cross-claim may be asserted without leave of court." Levchuk, 855 A.2d at 640 (citing N.J. C. R. 4:67-4(a)).

But the authority Smith & Wesson cites concerned circumstances critically distinct from its own state court summary proceeding. The company relies heavily upon two New Jersey appellate cases where the Appellate Division did not afford preclusive effect to a summary proceeding. See

Cafferata, 597 A.2d at 1102-04; B.F. v. Div. of Youth & Family Servs., 686 A.2d 1249, 1252-55, (N.J. Super. Ct. App. Div. 1997).  In Cafferata v. Peyser, the Appellate Division refused to apply issue preclusion to an order resulting from an "informal expedited mediation" conducted by the judge's "law secretary" to settle a "routine" medical bill collection matter. 597 A.2d at 1102-04.  The court did not preclude the patient from bringing a separate malpractice claim because he had no opportunity to raise the malpractice claim in the informal proceeding.  Id. at 1104.  The Appellate Division considered that the patient appeared pro se, there was no presiding judge, and it was an expedited small claims hearing.  Id.  Similarly, in B.F. v. Division of Youth & Family Services, the Appellate Division refused to apply New Jersey's entire controversy doctrine[10] and give preclusive effect to an order terminating parental rights after the parents brought a separate action under 42 U.S.C. § 1983 against non-parties to the termination proceeding because, in part, there was no "procedural mechanism" for them to join new parties and lodge their civil rights arguments in the initial termination proceeding.  686 A.2d at 1252-55.  The Appellate Division considered that the parents could not have brought the civil rights claims against the non-parties and that they were represented by appointed counsel with resources restricted to only the termination hearing.  Id. at 1255.

Cafferata and B.F. both concerned situations where the plaintiffs had no or limited legal representation and possessed no procedural mechanism to present their claims.  In stark contrast, a sophisticated national law firm represented Smith &

---

[10] See infra note 13 for an explanation of the entire controversy doctrine and its applicability to this case.

Wesson throughout the state proceedings. And the company not only had the opportunity to raise its objections when the trial court solicited its opposition to the subpoena, but it took advantage of that opportunity and vigorously argued its claims. Its own cross-motion put the constitutional objections at issue. Because Smith & Wesson had a forum for the presentation and determination of its constitutional arguments and the parties were the same in both proceedings, the state court provided a full and fair opportunity to litigate for the purposes of claim preclusion.

One of our sister Courts of Appeals recently came to a similar conclusion in an analogous case. In Exxon Mobil Corp. v. Healey, the Massachusetts Attorney General initiated an investigation into whether energy company Exxon Mobil committed consumer fraud. 28 F.4th at 388. The Massachusetts Attorney General served Exxon with a subpoena to produce documents concerning marketing and sales of fossil fuel products to Massachusetts residents. Id. at 389. Exxon then filed a federal complaint for civil rights violations against the Massachusetts Attorney General, seeking to enjoin the subpoena because the investigation violated the First, Fourth, and Fourteenth Amendments and the Dormant Commerce Clause. Id. One day after filing its federal complaint, Exxon initiated a Massachusetts state court proceeding to quash the subpoena and the Massachusetts Attorney General moved to compel enforcement. Id. at 389-90. The Massachusetts state court came to judgment first and held the subpoena was legitimate but refused to consider Exxon's constitutional arguments because the state's Attorney General was still investigating, which bore on whether Exxon's speech was afforded First Amendment protection as non-fraudulent commercial speech. Id. at 390. Applying

Massachusetts state law, the federal district court dismissed Exxon's federal complaint on claim preclusion grounds. Id. at 391. On appeal, the United States Court of Appeals for the Second Circuit affirmed the federal district court's claim preclusion dismissal. Id. at 403. The court rejected Exxon's argument that the state enforcement proceeding was limited in nature and did not afford the company a full and fair opportunity to litigate its federal claims. Id. at 401. The court held that being in a defensive posture when raising constitutional claims does not alter the claim preclusion analysis. Id. (citing Bartel Dental Books Co. v. Schultz, 786 F.2d 486, 489 & n.1 (2d Cir. 1986)).[11] Like the Court of

---

[11] Smith & Wesson argues Exxon is inapposite because of differences between the case and the present circumstances. It seeks to distinguish Exxon because Exxon had invoked the jurisdiction of the state court, unlike here where the New Jersey Attorney General first initiated the state subpoena enforcement action and because the Court of Appeals for the Second Circuit applied Massachusetts state law.

But these are immaterial distinctions. First, as the Court of Appeals for the Second Circuit held, courts have expressly rejected "the notion that being in a 'defensive' posture would alter the analysis for claim preclusion." Exxon, 28 F.4th at 401. In its state court briefing, Smith & Wesson seems to agree that the different posture has no effect, writing "[w]hile one case presents the issues in the context of an action for deprivation of rights and the other in the context of a motion to enforce, it is a distinction without a difference." App. 189 (emphasis added). Second, Massachusetts's claim preclusion test mirrors New Jersey's test. Exxon, 28 F.4th at 398. Moreover, Smith & Wesson cites no authority for its

28

Appeals for the Second Circuit, we view the difference in posture between the two matters insignificant to the claim preclusion analysis. We thus hold that Smith & Wesson had a full and fair opportunity to litigate in the state court matter.

b.

Smith & Wesson also argues that a recent change in Second Amendment jurisprudence "requires a new determination on the merits." Smith & Wesson Br. 40. The Supreme Court issued its decision in New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022), in June 2022, almost exactly one year after the state trial court ordered Smith & Wesson to comply with the subpoena. In Bruen, the Supreme Court discarded the means-ends scrutiny test courts had applied to challenges to firearm regulations. Bruen, 597 U.S. at 17; see also Range v. Att'y Gen., 69 F.4th 96, 100 (3d Cir. 2023) (en banc). It instead held that "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." Bruen, 597 U.S. at 17. Smith & Wesson argues Bruen alters the preclusion analysis.

We are not convinced of the relevance of Bruen to the claim preclusion analysis here. There is no firearm regulation at issue in this appeal, and no court engaged in any Second Amendment analysis that would have been conducted differently pursuant to Bruen. Even assuming Bruen is relevant, Smith & Wesson cites no authority establishing that a subsequent change of law creates an applicable exception to

_____

contention that the procedural posture or Massachusetts state law dictate a different outcome.

claim preclusion in New Jersey.[12]  Smith & Wesson brought a bevy of constitutional claims in federal court, of which its

---

[12] In its Reply Brief, Smith & Wesson passingly mentions one New Jersey Supreme Court case that recognizes that a change in law may create a rare exception to an application of claim preclusion: City of Plainfield v. Public Service Electric & Gas Co., 412 A.2d 759 (N.J. 1980).  In City of Plainfield, the New Jersey Supreme Court did not afford preclusive effect to a 1916 decision interpreting an 1898 utilities contract that would have provided the City of Plainfield with free electricity in perpetuity despite a later-passed state regulation prohibiting unreasonable rates and preferential treatment in utilities rates. Id. at 761, 766; see also Velasquez, 589 A.2d at 151.  The New Jersey Supreme Court reasoned that the "special status of the litigants" (a municipality and "quasi-public regulated utility"), the total frustration of the state statute, and the significant public interest in the equal treatment of electricity customers weighed toward not applying preclusion.  City of Plainfield, 412 A.2d at 764, 766.  The New Jersey Supreme Court explained in a later opinion that the exception recognized in City of Plainfield is "narrow" and "extraordinary" and only arises "where the issue is purely one of law that affects a substantial public interest, and the decision would 'frustrate totally the essential purpose of a statute' and result in inequitable administration of the law if not reconsidered." See Velasquez, 589 A.2d at 151 (quoting City of Plainfield, 412 A.2d at 736).

Aside from any preservation issue, this exception is not applicable to this appeal.  The present case is a far cry from the circumstances of City of Plainfield.  There is no statute at issue here, let alone one that an application of preclusion would

30

Second Amendment claim was only one.  Preclusion principles apply equally to all of its claims — no matter their substance.[13]

---

totally frustrate.  And Smith & Wesson is a company pursuing its own corporate interest, not a quasi-public energy company serving the citizens of New Jersey.  The New Jersey Supreme Court has cautioned that "[o]nly in extraordinary circumstances has the Court departed from strict deference to *res judicata* principles."  Velasquez, 589 A.2d at 151.  We see no such extraordinary circumstance here and therefore will not do so now.

[13] Smith & Wesson also argues the District Court incorrectly concluded that Smith & Wesson's federal complaint was barred by New Jersey's entire controversy doctrine.  By way of background, the entire controversy doctrine is New Jersey's mandatory claim and counterclaim joinder rule that requires parties to bring all claims and counterclaims that "arise from related facts or the same transaction or series of transactions." Bank Leumi USA v. Kloss, 233 A.3d 536, 540 (N.J. 2020) (quotation marks omitted) (quoting Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 203 A.3d 133, 149 (N.J. 2019)); see also Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 885-86 (3d Cir. 1997).  It is similar to claim preclusion, but more preclusive.  Bank Leumi USA, 233 A.3d at 540-41.  But the District Court never held the entire controversy doctrine bars the federal complaint.  It rested its conclusion on claim preclusion.  The District Court made passing mention of the entire controversy doctrine once in the text of its opinion.  The District Court mentioned it in two additional instances in quoting parentheticals discussing claim preclusion.  It never explained what the doctrine is, how it operates, or its elements.  See generally App. 3-21.  These

* * * * *

All elements of New Jersey's claim preclusion test are satisfied and Smith & Wesson's other arguments are without merit.  Therefore, we agree with the District Court that Smith & Wesson's federal claims are barred by claim preclusion.

### B.

We turn to Smith & Wesson's other argument that the District Court incorrectly rejected its reservation of its right to litigate in its chosen, federal forum.

In Railroad Commission of Texas v. Pullman, the Supreme Court recognized the first abstention doctrine.  312 U.S. 496, 501 (1941).  The Supreme Court held that "[i]f there are unsettled questions of state law in a case that may make it unnecessary to decide a federal constitutional question, the federal court should abstain until the state court has resolved the state questions."  17A Wright & Miller § 4241 (discussing Pullman, 312 U.S. at 501-02).  But when a federal court invokes Pullman abstention and stays proceedings to allow the state courts to decide the preliminary and essential question of state law, the litigants run the risk that the state court may reach beyond the state law issue and decide the litigants' federal constitutional questions.  See England v. La. State Bd. of Med. Exam'rs, 375 U.S. 411, 413-14, 419 (1964).  To address this problem, the Supreme Court held that "when a federal court abstains from deciding a federal constitutional issue to enable

---

brief references are not sufficient to convince us that the District Court relied upon the entire controversy doctrine in reaching its decision.

the state courts to address an antecedent state-law issue, the plaintiff may reserve his right to return to federal court for the disposition of his federal claims." San Remo Hotel, L.P. v. City & Cnty. of San Francisco, 545 U.S. 323, 339 (2005) (citing England, 375 U.S. at 419). This is England reservation, or the England doctrine, named after the Supreme Court opinion that first recognized it. See England, 375 U.S. at 419-23.

But England reservation only applies to instances that resemble Pullman abstention. In San Remo Hotel, the Supreme Court clarified the scope of England reservation and explained that

> [o]ur discussion of the "typical case" in which reservations of federal issues are appropriate makes clear that our holding was limited to cases that are fundamentally distinct from petitioners'. "Typical" *England* cases generally involve federal constitutional challenges to a state statute that can be avoided if a state court construes that statute in a particular manner. In such cases, the purpose of abstention is not to afford state courts an opportunity to adjudicate an issue that is functionally identical to the federal question. To the contrary, the purpose of *Pullman* abstention in such cases is to avoid resolving the federal question by encouraging a state-law determination that may moot the federal controversy. Additionally, our opinion made it perfectly clear that the effective reservation of a federal claim was dependent on the condition that plaintiffs take no action to broaden the scope

33

> of the state court's review beyond decision of the antecedent state-law issue.

545 U.S. at 339-40 (citations and footnotes omitted).  Some of our sister Courts of Appeals have interpreted San Remo Hotel to explicitly limit England reservation only to situations where a district court abstains under Pullman.  See Davison v. Rose, 19 F.4th 626, 634 (4th Cir. 2021) ("[A]n *England* reservation only applies after a federal court abstains under *Pullman*."); Atwater v. Chester, 730 F.3d 58, 63 (1st Cir. 2013) ("The right to reserve claims arises only when the district court abstains under *Pullman*.").  In a decision that precedes San Remo Hotel, however, we recognized that "the Supreme Court has never explicitly limited *England* to the *Pullman* abstention context." Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1071 (3d Cir. 1990).

We need not decide whether England reservation only applies to instances of Pullman abstention at this time.  Even if England reservation applies in a broader array of circumstances than just Pullman abstention, it must at least resemble a "typical case" permitting England reservation.  San Remo Hotel, 545 U.S. at 339.  It does not here.  "Typical *England* cases generally involve federal constitutional challenges to a state statute that can be avoided if a state court construes the statute in a particular manner." Id.  Smith & Wesson does not challenge the constitutionality of any state statute.  The parties do not identify any issues of statutory construction in this case.  Moreover, Smith & Wesson did "take [an] action to broaden the scope of the state court's review beyond" the state law issue by raising its federal constitutional challenges in its cross-motion.  Id. at 340. Therefore, England reservation is unavailable, and the District

34

Court did not err in rejecting Smith & Wesson's attempt to reserve its rights for federal court.

## IV.

The District Court properly found that claim preclusion barred Smith & Wesson's claims in federal court. When these issues arise across the federal system, federal courts must honor and give full faith and credit to the competent adjudication of state courts. After all, comity between state and federal courts is the "bulwark of the federal system." Allen v. McCurry, 449 U.S. 90, 96 (1980). To permit litigants to frustrate an unfavorable state court ruling by pursuing a carbon-copy lawsuit in federal court seeking substantially the same relief undermines our judicial system. Litigants get one opportunity to make their arguments. Not two. And they cannot file a federal lawsuit to hedge against a potentially unfavorable state ruling.

We note that the operation of claim preclusion is quite modest in this case. The District Court correctly precluded Smith & Wesson's constitutional claims against the New Jersey Attorney General for its efforts to enforce its subpoena because these claims already had been decided in New Jersey state court. The preclusive effect of the state court judgment only concerns the subpoena at issue — not any nascent and further investigative step or future enforcement action. The New Jersey Attorney General conceded as much. See Oral Arg. at 20:13-21:25. We express no opinion on whether Smith & Wesson's claims for constitutional violations due to further investigative steps would be precluded.

For the foregoing reasons, we will affirm the District Court's order of dismissal.

MATEY, *Circuit Judge*, dissenting.

More than three years ago, Smith & Wesson asked a federal court to decide whether the novel decision by New Jersey's Attorney General to use a state consumer fraud law to investigate ads for ordinary guns and ammo treads on the freedoms recognized by the U.S. Constitution. Today, and four opinions later, those questions remain unanswered. In round one, New Jersey raised the flag of *Rooker-Feldman*[1] to avoid the merits, an argument we rejected in round two. Remand brought round three and should have resulted in a review of the claims raised and relief sought. Ever eager, it seems, to avoid that sort of scrutiny, New Jersey's Attorney General reached for res judicata. It worked, and the District Court dismissed the entire controversy,[2] a decision the majority affirms today in the

---

[1] *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

[2] Ordinarily, claim preclusion "may not afford the basis for a Rule 12(b)(6) dismissal unless it is 'apparent on the face of the complaint.'" *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 280 (3d Cir. 2016) (quoting *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997)); *see also* 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4405 (3d ed. updated 2023). But Smith & Wesson's federal suit was filed first, so it is unclear how a claim preclusion defense, based on a later-instituted state action, could be apparent on the face of the earlier-filed federal complaint. Because Smith & Wesson's federal complaint was the first appearance of these claims, they cannot be precluded by a later, different action. *See* Restatement (Second) of Judgments §§ 21–23, 26, 86 cmt. f (Am. L. Inst. 1982). Claim

fourth round of decisions that writes not a word about the merits of this suit.

Respectfully, this roundabout approach departs from the classical contours of preclusion because there has never been a final decision on the merits of Smith & Wesson's claims. Not in the federal courts, nor in the state actions—a point helpfully confirmed by the Appellate Division of the New Jersey Superior Court, which took pains to point out that it was passing on, not deciding, the legal questions presented.

At bottom, New Jersey has not carried its burden of proving that res judicata applies. It has not successfully shown that the Chancery Division and the Appellate Division decisions were final and disposed of Smith & Wesson's federal claims on the merits. Smith & Wesson, like any litigant, is entitled to an answer to the allegations in its federal complaint. And "[t]he ease and efficiency of *res judicata* as a means of quickly avoiding an evaluation of the merits of a plaintiff's claim does not imply that the decision to apply the doctrine should be either facile or hasty." *Purter v. Heckler*, 771 F.2d 682, 690 (3d Cir. 1985). I would reverse the decision of the District Court and so respectfully dissent.[3]

---

preclusion is further strained here because Smith & Wesson was the plaintiff in the federal suit, but the defendant in the state action. *See* Restatement (Second) of Judgments §§ 21, 26, 86.

[3] New Jersey's "deviation from ordinary principles of law is unfortunate, though not surprising." *Silvester v. Becerra*, 583 U.S. 1139, 1147 (2018) (Thomas, J., dissenting from the denial of certiorari). Claims sounding in the Second

## I.

Res judicata expresses the classical principle of finality that when a claim is decided on the merits, it cannot be relitigated in another suit between the same parties raising the same facts. As explained by the first Justice John Marshall Harlan: "The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies." *S. Pac. R.R. Co. v. United States*, 168 U.S. 1, 48 (1897). The correlative principle, fixing the doctrine's limited nature, is that preclusion requires "sameness"—a mere overlap of claims or controversies will not do. And claim preclusion "does not apply where '[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy,'" a limit that "protects a plaintiff's right to bring claims that he 'was not at liberty to assert' in a prior forum of limited jurisdiction." *Beasley v. Howard*, 14 F.4th 226, 232 (3d Cir. 2021) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 382 (1985) (alteration in original), *Est. of Roman v. City of Newark*, 914 F.3d 789, 805 (3d Cir. 2019)).

---

Amendment were, for generations, "second-class right[s], subject to an entirely different body of rules." *Id*. at 1149 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010)). Fourteen years later, that suspicion continues to distort the decisions in firearms cases where the "ordinary rules of law—and fairness—are suspended." *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 661 (2016) (Alito, J., dissenting).

3

These positive and negative principles of res judicata have Roman roots[4] that grew into English common law,[5] and by the 1200s, English courts recognized a basic form of res judicata.[6] English courts took inspiration from both estoppel

---

[4] *See Digest* from Emperor Justinian I's *Corpus Juris Civilis*, which was published in 534 A.D. Dig. 42.1.1 (Modestinus, Pandects 7) ("Things it is said to have been judged, which is the end of controversies by the pronouncement of the judge He accepts: that happens either by condemnation or by acquittal."); Cary R. Alburn, *Corpus Juris Civilis: A Historical Romance*, 45 A.B.A. J. 562, 562 (1959). Roman law provided for a plea known as *exceptio rei judicatae*, available only when a subsequent suit involved the same parties and same legal claim. Zollie Steakley & Weldon U. Howell, Jr., *Ruminations on Res Judicata*, 28 Sw. L.J. 355, 355 (1974); Robert Wyness Millar, *The Premises of the Judgment as Res Judicata in Continental and Anglo-American Law*, 39 Mich. L. Rev. 1, 6 (1940). The Roman version of res judicata was motivated by finality, designed to protect litigants from never-ending suits. Lindsey D. Simon, *Claim Preclusion and the Problem of Fictional Consent*, 41 Cardozo L. Rev. 2561, 2569 (2020). As Ulpianus explained, "[w]here the origin of two claims is the same, it also makes a second demand the same." *See* Dig. 44.2.7 (Ulpianus, On the Edict 75). But when "a new cause of action from which I derive ownership" arises, "I will not be barred . . . ." *Id.*

[5] Alburn, *supra* note 4, at 565.

[6] *See* Kevin M. Clermont, *Res Judicata as Requisite for Justice*, 68 Rutgers U. L. Rev. 1067, 1072 (2016). Henry de Bracton's description of res judicata from 1260 resembles the res judicata of today: "The assise also falls if the demandant

4

by record[7] and res judicata, and over time the two merged. *Developments in the Law—Res Judicata*, 65 Harv. L. Rev. 818, 820–21 (1952). Always, the goal remained the same: preventing endless litigation between the same parties on the same claim. As Lord Coke remarked, "if there should not be an end of suits, then a rich and malicious man would infinitely vex him who hath right by suits and actions." *Ferrer v. Arden* (1598) 77 Eng. Rep. 263, 266; 6 Co. Rep. 7 a, 9 a.[8]

Preclusion followed settlers to the courts in the English colonies in North America[9] and, after Independence, became a

---

claims by assise what he lost by judgment, for the assise falls because of the exception of *res judicata*." 3 Bracton on the Laws and Customs of England 296 (Samuel E. Thorne trans., 1977) (1260).

[7] Estoppel by record, an early preclusion doctrine that originated before the Norman Conquest, got its name because it relied for preclusive effect on "some part of the record-proceedings anterior to judgment"—such as the declarations and admissions from the parties in the previous case—rather than on the judgment itself. Robert Wyness Millar, *Historical Relation of Estoppel by Record to Res Judicata*, 35 Ill. L. Rev. 41, 42, 45 (1940).

[8] English courts also clarified that claim preclusion should only apply to matters *actually decided* in the prior suit. Millar, *supra* note 4, at 240–42 (surveying English court cases from the late eighteenth and early nineteenth centuries and concluding "whatever had necessarily come to direct decision . . . had attained the property of res judicata").

[9] Prior to the American Revolution, Massachusetts and Connecticut adopted laws imposing preclusion on judgments

staple of courts in the United States.[10] *See* Kevin M. Clermont, *Res Judicata as Requisite for Justice*, 68 Rutgers U. L. Rev. 1067, 1073 (2016). New Jersey was no exception. Before 1947, New Jersey maintained separate courts of law and equity. *See* Edwin H. Stern, *Comments on the Comments—Reflections on the Presentations Regarding the Entire Controversy Doctrine*, 28 Rutgers L.J. 193, 193 (1996). Each enjoyed jurisdiction to hear different claims, and plaintiffs who lost at law could still sue in the chancery without facing the bar of res judicata. *Id.* at 194. In its 1947 constitution, New Jersey merged the courts of law and equity into one with separate Law and Chancery divisions. Geoffrey C. Hazard, Jr., *An Examination Before and Behind the "Entire Controversy" Doctrine*, 28 Rutgers L.J. 7,

---

from courts in other colonies. Ronan E. Degnan, *Federalized Res Judicata*, 85 Yale L.J. 741, 743 (1976).

[10] *See, e.g.*, *Hopkins v. Lee*, 19 U.S. (6 Wheat.) 109, 113 (1821) ("[A]s a general rule . . . . a verdict and judgment of a Court of record . . . puts an end to all further controversy concerning the points thus decided between the parties to such suit."); *Smith v. Kernochen*, 48 U.S. (7 How.) 198, 217 (1849) (explaining that the suit of the plaintiff below must be dismissed because his case "falls within the general rule[] that the judgment of a court of concurrent jurisdiction directly upon the point" bars relitigation of the same point between the same parties); *Wash., A. & G. Steam Packet Co. v. Sickles*, 65 U.S. (24 How.) 333, 341–42 (1860) (noting that res judicata and the rules governing it were "derived by us from the Roman law and the Canonists," and explaining that the rule that a prior judgment on the same cause of action between the same parties is admissible as evidence in a subsequent suit "is supported by adjudged cases, and the authority of writers on the law of evidence").

11 (1996). As a result, a party could no longer relitigate a case by refiling in another division.[11]

Today, just like federal common law, res judicata in New Jersey balances efficiency with fairness, ensuring that parties are not barred from bringing claims that a prior court never ruled on and *could not* have ruled on. *See Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 591 A.2d 592, 599 (N.J. 1991) (citing Restatement (Second) of Judgments §§ 25 cmt. e, 26(1)(c) (Am. L. Inst. 1982)). And whether we look to the classical or modern version of claim preclusion, Smith & Wesson's complaint is not barred.

## II.

Under both New Jersey and federal law, claim preclusion is an affirmative defense. *See* N.J. Ct. R. 4:5-4; Fed. R. Civ. P. 8(c)(1). New Jersey, as the "party asserting preclusion[,] must carry the burden of establishing all necessary elements." *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) (quoting 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4405 (2d ed. 2002)). New Jersey law,[12] again like federal law, requires that three

---

[11] *See* N.J. Const. art. VI § 3, ¶ 4; John A. Boyle, *Returning to Its Roots: An Examination of the 1998 Amendments to the Entire Controversy Doctrine*, 30 Seton Hall L. Rev. 310, 317–18 (1999).

[12] We apply New Jersey law under 28 U.S.C. § 1738, which provides that state court judgments "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . .

elements be satisfied before a claim is precluded: *first*, "the judgment in the prior action must be valid, final, and on the merits"; *second*, "the parties in the later action must be identical to or in privity with those in the prior action"; and *third*, "the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." *McNeil v. Legis. Apportionment Comm'n of State*, 828 A.2d 840, 859 (N.J. 2003) (quoting *Watkins*, 591 A.2d at 599). Because New Jersey has not carried its burden on the first and third elements, Smith & Wesson's claims are not precluded.

## A.

New Jersey first fails to establish a valid and final judgment on the merits where "the factual issues directly involved . . . [were] actually litigated and determined." *Adelman v. BSI Fin. Servs., Inc.*, 179 A.3d 431, 436 (N.J. Super. Ct. App. Div. 2018) (quoting *Slowinski v. Valley Nat'l Bank*, 624 A.2d 85, 91 (N.J. Super. Ct. App. Div. 1993)); *see also Velasquez v. Franz*, 589 A.2d 143, 147 (N.J. 1991). To preclude Smith & Wesson's federal suit, New Jersey relies on two judgments: one from the Superior Court, Chancery Division and another from the Superior Court, Appellate

---

from which they are taken." We must give the judgment the "'the same' faith and credit as under the law of the rendering state, no more as well as no less." Restatement (Second) of Judgments § 86 cmt. g; *see also Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986) ("[A] federal court must give the same preclusive effect to a state-court judgment as another court of that State would give."); *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 139, 142–43 (3d Cir. 1999) (applying New Jersey preclusion law).

Division.[13] Neither will do. The Chancery Division, considering only New Jersey's action to enforce the subpoena, did not address—and indeed could not have addressed—all the claims raised and relief sought in Smith & Wesson's federal complaint. The Appellate Division noted Smith & Wesson's additional claims, but explicitly declined to reach them. That leaves no full and final state court decision on the merits of Smith & Wesson's federal claims to preclude its federal suit.

### 1.

"[B]efore assessing the effect of [a] judgment, [we must] consider what [the court] actually decided." *Davis v. U.S. Steel Supply, Div. of U.S. Steel Corp.*, 688 F.2d 166, 182 (3d Cir.

---

[13] The Chancery Division is one of two trial divisions in the New Jersey Superior Court (the other trial division is the Law Division). *See* Jeffrey S. Mandel, New Jersey Appellate Practice 1:3-1(a) (2024). The Chancery Division "exercises jurisdiction over all '[a]ctions in which the plaintiff's primary right or the principal relief sought is equitable in nature.'" *Id.* at 1:3-1(a)(1) (citing N.J. Ct. R. 4:3-1(a)(1)). Typical matters include "requests for temporary and final restraining orders or preliminary and permanent injunctions." *Id.* In contrast, the Law Division "handles the bulk of civil and criminal litigation within the state courts," because any matter that falls outside the specific enumerated case types in N.J. Ct. R. 4:3-1(1)–(4) must be "filed and heard in the Law Division." *Id.* at 1:3-1(2); N.J. Ct. R. 4:3-1(a)(5). The Appellate Division is New Jersey's intermediate appellate court. Mandel, New Jersey Appellate Practice 1:21-1. "Appeals may be taken to the Appellate Division of the Superior Court from the law and chancery divisions of the Superior Court." N.J. Const. art. VI § 5, ¶ 2.

1982) (en banc) (Gibbons, J., dissenting). The Chancery Division did not render a decision on Smith & Wesson's federal claims that can establish res judicata because it simply did not consider, much less decide, most of them.

The Chancery Division decision has two parts.[14] In the first, the Chancery Division addressed Smith & Wesson's request to stay the subpoena's enforcement pending resolution of its constitutional claims in federal court. As the Chancery Division explained, Smith & Wesson "argue[d] that *NAACP v. Alabama* requires that all constitutional issues related to a subpoena be resolved *before* it can be enforced." App. 283 (citing 357 U.S. 449, 463 (1958)) (emphasis added).[15] The Chancery Division disagreed, explaining that *NAACP* involved "how Alabama's interest in obtaining an NAACP members list interfered with those members['] right to freely associate and pursue private interests as protected by the Fourteenth Amendment." App. 283–84. Concluding that New Jersey's subpoena did not implicate Smith & Wesson's freedom of association, the Chancery Division saw no reason to stay the enforcement application. With that threshold concern resolved, the Chancery Division declined to discuss, let alone decide,

---

[14] The opinion is framed as a "statement of reasons" in support of the Chancery Division's "order for subpoena responses." App. 274, 276.

[15] In the briefing before the Chancery Division, and in the order to show cause hearing, both New Jersey and Smith & Wesson put forth additional authority for their positions. *See, e.g.*, App. 243–44. But the Chancery Division zeroed in on *NAACP*.

"the issues in the federal case" that "will take months and more likely years to be litigated." App. 283.[16]

_____

[16] The understanding that the Chancery Division was not adjudicating Smith & Wesson's federal claims is the only one that makes sense based on the record. The Chancery Division opened the order to show cause hearing by noting that "[t]he matter comes before the Court on an Order to Show Cause which was filed on behalf of the Attorney General *essentially to enforce a subpoena* which was filed pursuant to . . . the Consumer Fraud Act." App. 224 (emphasis added).

And New Jersey conceded during the order to show cause hearing that it understood it to be a "subpoena enforcement proceeding," App. 224, meaning that "Smith & Wesson's Constitutional objections . . . *cannot be adjudicated at this early subpoena enforcement stage*," App. 226 (emphasis added). Both parties agreed on this: Smith & Wesson described its federal complaint as "raising constitutional and federal statutory issues *in an appropriate court*." App. 241 (emphasis added). And New Jersey did not dispute that characterization, telling the Chancery Division at one point that Smith & Wesson had "filed . . . their Constitutional claims as a complaint in federal court." App. 267.

Given this, New Jersey only sought an "order directing Smith & Wesson to comply with the subpoena," not an adjudication of Smith & Wesson's constitutional claims. App. 225. Smith & Wesson did not ask for an adjudication of its federal claims, either—telling the Chancery Division that the court "doesn't need to and shouldn't decide the Constitutional and Federal issues right now." App. 238; *see also* App. 252 (Smith & Wesson telling the Chancery Division that "[i]n the first instance, it's our request that Your Honor

In the second, the Chancery Division analyzed the subpoena's validity under the New Jersey Consumer Fraud Act and its Hazardous Product Regulations. The Chancery Division found New Jersey's subpoena valid because it was "not arguably different from those" subpoenas that the Attorney General used "to investigate under the [Consumer Fraud Act] various industries that advertise to New Jersey consumers." App. 286. As a result, the Chancery Division ordered enforcement over Smith & Wesson's objections, finding that "[c]ompliance with a subpoena which comes within the bounds of the [Consumer Fraud Act] is not obviated in the face of constitutional objections." App. 287. The Chancery Division concluded that the "subpoena itself" does not "violate[] constitutional rights" because it did not ban or directly regulate Smith & Wesson's speech, App. 287, and that New Jersey was not motivated by anti-firearm animus in issuing the subpoena.

In sum, the Chancery Division decided that 1) enforcement of the subpoena need not be stayed pending resolution of Smith & Wesson's federal claims, and 2) the subpoena is a valid exercise of the Attorney General's authority under the Consumer Fraud Act and Hazardous

---

*stay* in comity to the First Filed Action") (emphasis added). Indeed, Smith & Wesson communicated to the Chancery Division the status of the federal proceeding, noting its complaint had been filed "two months before this one," and that New Jersey "is actively participating in [the federal] action." App. 239. Further, at the time of the order to show cause hearing, New Jersey had filed its first motion to dismiss in the federal action and briefing for that motion was almost finished.

Product Regulations. That is not a holding "on the merits" of Smith & Wesson's federal claims, *McNeil*, 828 A.2d at 859, because those issues were not "actually litigated and determined," *Adelman*, 179 A.3d at 436 (quoting *Slowinski*, 624 A.2d at 91).[17] The parties and the Chancery Division agreed and acted on the understanding that the federal action was a separate proceeding and the appropriate forum for Smith & Wesson's federal claims. New Jersey cannot now reach for res judicata in (another) attempt to preclude review of Smith & Wesson's federal claims.[18]

---

[17] Contrary to the majority's suggestion that no party argued that the Chancery Division decision was not a "valid, final judgment on the merits when it was issued," Majority Op. at 11–12 & n.4, Smith & Wesson repeatedly raised precisely that point, *see* Opening Br. 4, 19–20, 26–30; Reply Br. 16–20; Oral Arg. at 3:57–5:35.

[18] Even assuming the Chancery Division decided a constitutional claim also presented in the federal complaint, that ruling could only preclude counts coextensive with the Chancery Division's decision. In other words, the preclusive effect would be limited to those federal claims that 1) focused on the one subpoena and 2) fell within the scope of the Chancery Division's discussion of the First and Second Amendments. But among the thirteen counts in the federal complaint, few fit both those criteria. Rather, Smith & Wesson cried foul that *both* the subpoena *and the underlying investigation* violated its federal rights and asserted a panoply of constitutional rights beyond the First and Second Amendments. *See, e.g.*, App. 72–73 (Count II alleging that the investigation and enforcement action violated Smith & Wesson's rights); App. 78 (Count IX alleging that the

Res judicata was designed to prevent parties from suing repeatedly on the same claim—not to prevent parties from bringing claims that a previous court did not hear, and could not have heard, in the first place. New Jersey cannot use the Chancery Division decision to preclude review of Smith & Wesson's federal claims in federal court.

## 2.

But even if the Chancery Division's decision could be read to decide Smith & Wesson's federal claims, the Appellate Division's decision controls and confirms preclusion is improper.[19] It is black-letter res judicata law that when "an

_____

investigation violates Smith & Wesson's rights); App. 78–82 (Count IX raising claims under the Equal Protection Clause of the Fourteenth Amendment; Count X raising claims under the Fifth and Fourteenth Amendments; Count XI raising claims under the Fourth and Fourteenth Amendments; Count XIII raising claims under the Dormant Commerce Clause of Article I).

[19] The Appellate Division's decision arrived after the District Court dismissed the federal suit. That alone should counsel restraint, because while a "judgment otherwise final remains so despite the taking of an appeal," "the pendency of . . . an appeal from a judgment . . . is relevant in deciding whether the question of preclusion should presently be decided . . . . It may be appropriate to postpone decision of that question until the proceedings addressed to the judgment are concluded." Restatement (Second) of Judgments § 13 cmt. f. Indeed, rendering a decision in the face of a pending appeal "may give rise to a problem of inconsistent judgments." _Id._ Precisely the case here.

14

appeal has been taken, the nature of the ultimate final judgment in a case ordinarily is controlled by the actual appellate disposition" such that "preclusion is limited to the matters actually resolved by the appellate court." 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4432 (3d. ed. updated 2023).[20]

So what did the Appellate Division decide? Not much, owing to the "the lens of strict necessity" it applied to Smith &

---

[20] *See also Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009) (citing with approval 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4432 (2d ed. 2002) and observing that, in another case, "res judicata did not apply" to a trial court's determination of constitutional issues when the appellate court affirmed the trial court without reaching those constitutional issues); *Jennings v. Stephens*, 574 U.S. 271, 278 (2015) (in the context of issue preclusion, discussing that "preclusion no longer attaches to the ground on which the trial court decided the case" when the "appellate court affirmed the judgment" on an "alternative ground"); 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4433 n.21 (3d. ed. updated 2023) (discussing the effect of a res judicata defense in the second action where the first action is modified or reversed on appeal).

In its brief before this Court, New Jersey cited a prior Third Circuit case that seems to take the opposite, and unsupported, view. *See Russell v. Russell*, 134 F. 840 (3d Cir. 1905). But *Russell* arrived before *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), did not apply New Jersey law, and has been regularly rejected in the last 118 years.

Wesson's constitutional claims. App. 593.[21] The Appellate Division agreed with the Chancery Division's interpretation of *NAACP*: that it was unnecessary to decide "all of defendant's constitutional objections . . . before production of the sought-after documents can be compelled." App. 597. Then, to eliminate any ambiguity, the Appellate Division stated that in any event, "[it] would find these federal constitutional claims not ripe for [its] consideration." App. 598. No mere throwaway thought, as the Appellate Division then ticked through its conclusions. First, "[i]n determining whether an issue is fit for judicial review, we consider whether additional factual development is required," and "[w]e find that to do so on this record would be improper, where there are few actual facts." App. 599. Better to wait, the Appellate Division wrote, for the benefits of "a fulsome discovery process." App. 599.[22] Second,

---

[21] An approach the Appellate Division based on *Rescue Army v. Municipal Court of Los Angeles*, outlining "a series of rules under which [the Court] has avoided passing upon a large part of all the constitutional questions pressed upon it for decision . . . . until necessity compels it in the performance of constitutional duty." 331 U.S. 549, 569 (1947) (internal citation and quotation marks omitted). The Appellate Division similarly found that it should "not address constitutional questions when a narrower, non-constitutional result is available." App. 592 (internal citation and quotation marks omitted).

[22] The majority disagrees with the Appellate Division and finds that additional facts are "neither required nor relevant" in the federal action. Majority Op. at 22 (quoting *Bondi v. Citigroup, Inc.*, 32 A.3d 1158, 1188 (N.J. Super. Ct. App. Div. 2011)). I do not see license for that new factual finish

"there is no hardship to the parties by declining to address defendant's constitutional arguments now." App. 599. That is because Smith & Wesson "has preserved its claims." App. 599. Both these considerations counseled against "premature adjudication" that would entangle the state court in "abstract disagreements," so the Appellate Division "end[ed] [its] analysis of [Smith & Wesson's] sweeping constitutional claims here." App. 599.

But the majority restarts the analysis the Appellate Division ended, writing that the Appellate Division rejected the "constitutional claims on the merits." Majority Op. at 14. Respectfully, that is either wrong or only half right. The Appellate Division, expressly following the reasoning of the Chancery Division, held *NAACP* does not permit a wide range of federal constitutional objections to a state subpoena, only those sounding in the freedom of association. App. 593 ("According to defendant, *NAACP* protects not only freedom of association, but also governmental trespass of 'fundamental freedoms' and 'indispensable liberties.' We are not persuaded."). If the majority means the Appellate Division decided whether *NAACP* has a broad or narrow lens, then I agree, and that is the only claim eligible for preclusion. If, however, it means that the Appellate Division decided the other federal constitutional claims Smith & Wesson presents in the federal complaint, that fights the Appellate Division's own framing of the question.

The former reading is sounder. The Appellate Division did not read *NAACP* to permit Smith & Wesson to raise non-

---

line, one never drawn by the District Court, and one directly rejected by the state court decision.

associational harms to object to the subpoena. As the Appellate Division explained: "Taking the position that *NAACP* requires all of defendant's constitutional objections to be resolved before production of the sought-after documents can be compelled," Smith & Wesson "raises multiple constitutional objections in support of its motion to quash." App. 597. The Appellate Division responded: "We disagree, as these theories are premised upon the argument that the United States Supreme Court's holding in *NAACP* permits them. We have already rejected that argument." App. 598. And, even if it does, the Appellate Division would not hear them as they are not ripe at "this preliminary stage of litigation." App. 599.[23]

In sum, the Appellate Division decided that: 1) it need not consider Smith & Wesson's arguments that the subpoena violates the Constitution before it considers the subpoena's validity; 2) even if it did consider the constitutional arguments,

---

[23] Of course, any ambiguity in the Appellate Division decision must be construed against preclusion. Because claim preclusion can have wide-ranging effect, the doctrine should be applied with care. *Purter*, 771 F.2d at 690. As the Supreme Court noted in its decision in *Brown v. Felsen*, "[b]ecause res judicata may govern grounds and defenses not previously litigated . . . it blockades unexplored paths that may lead to truth. For the sake of repose, res judicata shields the fraud and the cheat as well as the honest person. It therefore is to be invoked *only after careful inquiry*." 442 U.S. 127, 132 (1979) (emphasis added). This Court has followed Justice Blackmun's reasoning from *Brown. See Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 611 (3d Cir. 2020) ("[W]e construe ambiguities against claim preclusion."); *see also Beasley*, 14 F.4th at 232.

18

those claims would not be ripe for review; and 3) the subpoena is enforceable under state law. None of these touch upon the merits of Smith & Wesson's federal constitutional claims, meaning they were not "actually litigated and determined." *Adelman*, 179 A.3d at 436 (quoting *Slowinski*, 624 A.2d at 91).

## B.

New Jersey has further failed to establish that Smith & Wesson's claims in state and federal court "grow out of the same transaction or occurrence." *McNeil*, 828 A.2d at 859 (quoting *Watkins*, 591 A.2d at 599). "Causes of action are deemed part of a single 'claim' if they arise out of the same transaction or occurrence," *id.*, but "[t]he test for identity of a cause of action is the most difficult to determine," *Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 28 (N.J. 2015). Courts must consider "whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions)"; "whether the theory of recovery is the same"; "whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first)"; and "whether the *material* facts alleged are the same." *Culver v. Ins. Co. of N. Am.*, 559 A.2d 400, 405 (N.J. 1989) (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)). New Jersey's argument that Smith & Wesson's federal claims are precluded by the state action fails out of the gate, because "the acts complained of and the demand for relief" are not the same. *Id*. But not only are the demands for relief in the two actions

different, Smith & Wesson also *could not have sought* the relief it seeks in its chosen federal forum in the state proceeding.[24]

---

[24] A full and fair opportunity to litigate claims is a cornerstone of res judicata. As the majority notes, this consideration can appear in discussions of issue preclusion, not claim preclusion. *See* Majority Op. at 24. But both the Supreme Court and this Court have recognized that a full and fair opportunity to litigate is required to invoke claim preclusion. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 n.22 (1982); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 276 (3d Cir. 2014) ("[C]laim preclusion . . . gives dispositive effect to a prior judgment if a particular issue . . . could have been raised in the earlier proceeding.") (citation omitted).

New Jersey courts agree. *See Bondi*, 32 A.3d at 1188 ("Res judicata does not apply unless 'the party whose claim is being sought to be barred . . . had a fair and reasonable opportunity' to fully litigate that claim in the first action.") (quoting *Cafferata v. Peyser*, 597 A.2d 1101, 1104 (N.J. Super. Ct. App. Div. 1991)). A full and fair opportunity to litigate is also required to apply New Jersey's entire controversy doctrine, a "blood relative[]" of res judicata. *Rycoline Prods.*, 109 F.3d at 886; *see also Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C.*, 203 A.3d 133, 148 (N.J. 2019) (rejecting application of entire controversy doctrine where the "prior forum did not afford a fair and reasonable opportunity to have fully litigated the . . . claim") (internal citations and quotation marks omitted).

But as relevant here, the fact that Smith & Wesson faced a procedural bar to seeking the relief outlined in its federal complaint in state court undermines any argument that the demands for the relief are the same in both actions, and thus

**1.**

A comparison of the state and federal complaints reveals marked differences in the demands for relief in each forum. In its federal complaint, Smith & Wesson brought claims pursuant to 42 U.S.C. § 1983; the First and Fourteenth Amendments (Counts I, II, III, IV, V, VI, VII); the Second and Fourteenth Amendments (Count VIII); the Equal Protection Clause of the Fourteenth Amendment (Count IX); the Fifth and Fourteenth Amendments (Count X); the Fourth and Fourteenth Amendments (Count XI); the federal Preemption, Protection of Lawful Commerce in Arms Act (Count XII); and the Dormant Commerce Clause of Article I, Section 8 of the U.S. Constitution (Count XIII).[25] In the complaint's prayer for relief, Smith & Wesson asked the federal court to:

---

cannot "grow out of the same transaction or occurrence." *See* Restatement (Second) of Judgments § 24 cmt. a ("Equating claim with transaction, however, is justified only when the parties have ample procedural means for fully developing the entire transaction in the one action going to the merits.").

[25] The majority holds that Smith & Wesson's challenge to the subpoena is the same as its challenge to New Jersey's investigation. *See* Majority Op. at 19–21. But Smith & Wesson alleges facts challenging the investigation as a whole, not just the particular subpoena the Attorney General issued. For example, Smith & Wesson alleged in its federal complaint that New Jersey had publicly announced it would "combine the investigative and enforcement powers of the State with the expertise of the nation's leading gun litigation," App. 65 (quoting the Attorney General at a press conference), to "'turn up the heat' on gun manufacturers," App. 53; *see also* App.

Enjoin any proceedings in the state courts of New Jersey to enforce the Subpoena;

Enjoin Defendants from enforcing the Subpoena;

Issue a declaratory judgment pursuant to 28 U.S.C. § 2201, declaring that the Subpoena and related investigation violate Smith & Wesson's rights under the First, Second, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

Issue a declaratory judgment pursuant to 28 U.S.C. § 2201, declaring that the Subpoena and related investigation violate New Jersey citizens' rights under the Second Amendment to the United States Constitution;

---

348 (tweet from the New Jersey Office of Attorney General's account that "we're now turning up the heat on gun manufacturers"). And Smith & Wesson further alleges that New Jersey, in partnering with anti-Second Amendment activists, will wield its "immense investigatory and prosecutorial powers . . . to infringe on Smith & Wesson's constitutionally protected rights." App. 59. The majority accepts these loudly professed state actions but dismisses them as "nascent" and "nonexistent." Majority Op. at 21 n.9. Respectfully, I take the sovereign at its word, even when it speaks with hashtags. We must also accept these well-pled allegations as true on a motion to dismiss, leaving materiality to be measured after discovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009).

Issue a declaratory judgment pursuant to 28 U.S.C. § 2201, declaring that the Subpoena and related investigation are preempted by the Protection of Lawful Commerce in Arms Act;

Issue a declaratory judgment pursuant to 28 U.S.C. § 2201, declaring that the Subpoena and related investigation violate the Dormant Commerce Clause and the Supremacy Clause of the United States Constitution; [and]

Award Plaintiffs such costs and reasonable attorney's fees to which it might be entitled by law[.]

App. 82.[26]

By contrast, New Jersey's order to show cause application in the Chancery Division only asked the court to

enter an Order [a]djudging [Smith & Wesson] in contempt of Court for failing or refusing to obey the Subpoena; [r]estraining [Smith & Wesson] from engaging in the advertisement, offering for sale, or sale of any merchandise until it fully responds to the Subpoena; [d]irecting [Smith & Wesson] to respond fully to the Subpoena within ten (10) days; [and] [e]njoining the destruction of any documents specifically requested in the Subpoena.

---

[26] All referenced, contrary to the majority's conclusion, in Smith & Wesson's brief before this Court. *See* Opening Br. 35–38 (referring to all claims "in the federal action").

23

App. 128.[27] And in opposition, Smith & Wesson only asked the Chancery Division to "*dismiss* the Attorney General's Complaint or, in the alternative, *stay this proceeding* pending the outcome of the federal declaratory judgment action or, in the alternative, *quash* the Subpoena and *deny* the Attorney General's request for relief." App. 167 (emphases added).[28]

It is an easily seen contrast between narrow and wide. The demand in the state action was either the enforcement or quashing of a single subpoena. Smith & Wesson's federal complaint requests relief not just from this particular subpoena, but the investigation as a whole. *See* App. 82 (requesting that the federal court declare "that the Subpoena *and related investigation* violate Smith & Wesson's rights") (emphasis

---

[27] During the order to show cause hearing, Judge Alper described the proceeding as an action by "the Attorney General essentially to *enforce a subpoena*." App. 224 (emphasis added). And New Jersey expressed that it was seeking an "order directing Smith & Wesson to *comply with the subpoena*." App. 225 (emphasis added).

[28] The majority points to language in Smith & Wesson's brief in opposition to the order to show cause that the dispute in the Chancery Division is a "carbon-copy dispute of the federal court lawsuit." Majority Op. at 23 (quoting App. 188). But in that same brief, Smith & Wesson told the Chancery Division that its claims were "entirely federal," and indeed some of its claims were "uniquely federal." App. 189. Smith & Wesson's incorporation of its federal complaint into its brief in opposition responded to New Jersey's failure to address the "complex" constitutional issues raised both in Smith & Wesson's objections to the subpoena and in the federal complaint. App. 190 n.17.

24

added). And it requests declaratory relief not just for Smith & Wesson, but also for New Jersey citizens. *See* App. 82 (requesting that the federal court declare "that the Subpoena and related investigation violate *New Jersey citizens' rights* under the Second Amendment to the United States Constitution") (emphasis added). Finally, the federal complaint seeks "costs and reasonable attorney's fees," App. 82, which were not sought, and could not have been sought, in the order to show cause proceeding. Mandel, New Jersey Appellate Practice 1:3-1(a).

To avoid the distinctions between the two actions, the majority paints with a broad brush and repeatedly finds that the two matters are "essentially the same."[29] Majority Op. at 18,

---

[29] The majority also cites *Culver* to support its contention that the relief sought in the state action and federal action is the same. *See* Majority Op. at 22. But the language cited is not the rule. *See Culver*, 559 A.2d at 405 (quoting *Athlone Indus.*, 746 F.2d at 984, for the considerations to determine whether causes of action and demands for relief are "the same"). And even if it were, the New Jersey Supreme Court there found the relief sought to be the same because both actions asked to set aside a subrogation agreement and for a new distribution of proceeds. *Id*. at 401. The only difference was that the claims for damages included "other forms of monetary relief." *Id.* at 405. But here, the demands for relief are nowhere near as close as they were in *Culver*. New Jersey courts have recognized that such differences should preclude the application of preclusion. *See, e.g.*, *Garvey v. Twp. of Wall*, 696 A.2d 71, 74 (N.J. Super. Ct. App. Div. 1997); *Brick Twp. v. Vannell*, 151 A.2d 404, 408 (N.J. Super. Ct. App. Div. 1959);

19. But that is not the legal standard for claim preclusion. *See Culver*, 559 A.2d at 405. The state and federal matters diverge on the theories of recovery, the demands for relief, the acts complained of, and the facts and evidence implicated. Labeling over those differences as "essentially" the same "gravamen" abandons the nuanced inquiry necessary for preclusion by blurring the differences between claims and arguments. Majority Op. at 20.[30] That is an unwarranted departure from the test we have repeatedly reaffirmed, that when the causes of action and demands for relief are not the same in two actions, claim preclusion is unavailable as a defense. *See Donegal Steel Foundry Co. v. Accurate Prods. Co.*, 516 F.2d 583, 588 (3d Cir. 1975).

## 2.

Further undermining any argument that the two actions "grow out of the same transaction or occurrence"—Smith &

---

*David M. Cohen, P.A., L.L.C. v. Davis, Saperstein & Salomon, P.C.*, No. A-1323-20, 2022 WL 869091, at *5 (N.J. Super. Ct. App. Div. Mar. 24, 2022) (per curiam); *see also Donegal Steel Foundry Co. v. Accurate Prods. Co.*, 516 F.2d 583, 588 (3d Cir. 1975) (rejecting res judicata defense where the proceedings "involved a different cause of action").

[30] Recall that Smith & Wesson filed a federal complaint and opposed the state application; the company did not counter or cross-claim under N.J. Ct. R. 4:67-4(a). The limits the relief Smith & Wesson sought—and the only relief the Chancery Division could order—was quashing the subpoena. The constitutional *arguments* Smith & Wesson offered in support of that single request is different from raising *claims* sounding in those arguments.

Wesson could not have sought the relief it seeks in its chosen federal forum in the state proceeding. Examining New Jersey procedure shows that the order to show cause was a limited matter[31] circumscribed both by statute and the New Jersey court rules.

Recall what happened. New Jersey sent Smith & Wesson a subpoena, and Smith & Wesson filed written objections to complying with the demand for documents. The day after the subpoena return date, Smith & Wesson filed its complaint in federal court. Two months later, and without addressing any of Smith & Wesson's responses and objections to the subpoena, New Jersey moved to enforce the subpoena by instituting an order to show cause in the Chancery Division.

That order to show cause is not the equivalent of an ordinary civil action—it is a focused and specialized mechanism to "seek relief in aid of a litigant's rights to enforce a subpoena." Subpoenas: Procedure for Enforcing a Subpoena (NJ) (Westlaw). It provides an "expedited method for a party to request an order from the court." Provisional Remedies: Procedure for Obtaining a Preliminary Injunction (NJ) (Westlaw). There are a few types of orders to show cause, *see* 3 N.J. Prac., Civil Practice Forms § 11:1 (6th ed. updated

---

[31] A point even New Jersey conceded during the order to show cause hearing, that "nearly all of Smith & Wesson's Constitutional objections . . . cannot be adjudicated at this early subpoena enforcement stage." App. 226.

2023), but the Chancery Division here proceeded under N.J. Ct. R. 4:67-1(a) as a summary action.[32]

As permitted, New Jersey sought an order to show cause by a "complaint, verified by affidavit . . . presented to the court ex parte." N.J. Ct. R. 4:67-2(a). Smith & Wesson then had three options to respond: "serve and file either an answer, an answering affidavit, or a motion." N.J. Ct. R. 4:67-4(a). Note what is absent: Smith & Wesson could not assert a "counterclaim or cross-claim . . . *without leave of court*." N.J. Ct. R. 4:67-4(a) (emphasis added).[33] Following the rules, Smith & Wesson moved to dismiss, stay, or quash the subpoena. So the matter proceeded as a summary action under

---

[32] The purpose of summary actions under N.J. Ct. R. 4:67-1 is to "swiftly and effectively dispos[e] of matters which lend themselves to summary treatment." Sylvia B. Pressler & Peter G. Verniero, N.J. Court Rules – Annotated, R. 4:67-1 cmt. 1; *accord Grabowsky v. Twp. of Montclair*, 115 A.3d 815, 822 (N.J. 2015).

[33] Indeed, the New Jersey Supreme Court recognized that the requirement to seek leave for counterclaims and cross-claims under N.J. Ct. R. 4:67-4(a) in summary actions renders those actions different for preclusion purposes. *Prevratil v. Mohr*, 678 A.2d 243, 250 (N.J. 1996). While discussing the closely related entire controversy doctrine, *Prevratil* notes that actions under N.J. Ct. R. 4:67-4(a) are excepted as an initial matter from being precluded. *Id.*; *see also id.* at 246 (citing N.J. Ct. R. 4:30A, entire controversy doctrine).

N.J. Ct. R. 4:67-1(a)[34]—a quick and straightforward affair[35] that allowed the Chancery Division to provide only "interim restraint and other appropriate intermediate relief as may be necessary to prevent immediate and irreparable damage." N.J. Ct. R. 4:67-2(a).

And this already limited proceeding was narrowed further still by the statutory authority invoked by New Jersey to initiate it: N.J. Stat. Ann. § 56:8-6. Part of the New Jersey Consumer Fraud Act, § 56:8-6 allows the "Attorney General . . . [to] apply to the Superior Court and obtain an order" against "any person [that] fail[s] . . . [to] obey any subpoena issued by the Attorney General." N.J. Stat. Ann. § 56:8-6. But § 56:8-6 makes clear New Jersey was only permitted to obtain a time-limited order providing relief "until

---

[34] N.J. Ct. R. 4:67-5 allows the Chancery Division to convert the action to "proceed as in a plenary action," instead of a summary action, but it did not. Thus, the proceeding was limited "only to those actions in which the court is permitted by rule or by statute to proceed in a summary manner." 3 N.J. Prac., Civil Practice Forms § 11:1.

[35] The only requirement for the order to show cause hearing is that the "court record the . . . hearing verbatim." Provisional Remedies: Procedure for Obtaining a Preliminary Injunction (NJ) (Westlaw) (citing N.J. Ct. R. 4:52-1(a)). Otherwise, there are "no[] . . . other requirements for how the judge must conduct the hearing." *Id*. Though the judges may take oral testimony under N.J. Ct. R. 4:52-1(c), "they rarely do so." *Id*.

the person . . . obeys the subpoena." *Id.* § 56:8-6(d).[36] That means New Jersey, at best, gets an order about the subpoena, good until Smith & Wesson responds to the subpoena; Smith & Wesson, at most, gets to quash the subpoena. Neither the parties, nor the two New Jersey courts, thought this one hearing could do more.

The federal complaint, of course, is where Smith & Wesson asked for more, because there was simply no mechanism for Smith & Wesson to meaningfully bring its claims before the Chancery Division in this procedural posture. And it is no answer to say Smith & Wesson could have sought leave of court to assert counterclaims, any more than noting New Jersey could have filed a civil suit for declaratory relief beyond this subpoena. Claim preclusion deals with the claims

---

[36] Under this statute, New Jersey could only seek an order from the Superior Court that 1) adjudged Smith & Wesson in contempt of court for failing to obey the subpoena; 2) restrained Smith & Wesson's "sale or advertisement of any merchandise"; 3) vacated, annulled, or suspended Smith & Wesson's corporate charter or certificate of authority to do business in New Jersey; and 4) granted to New Jersey "such other relief as may be required." N.J. Stat. Ann. § 56:8-6(a)–(d). And this was, in fact, the very relief New Jersey sought. By instituting the action against Smith & Wesson through an order to show cause that proceeded as a summary action, New Jersey itself established the boundaries for what the Chancery Division could—and could not—adjudicate. This proceeding was—by operation of statute and court rules—jurisdictionally limited to determining the enforcement of the subpoena, and its power only extended to coercing Smith & Wesson's immediate compliance with the subpoena.

brought and decided, not the litigation paths unavailable and unexplored. That is why a foundational principle of preclusion is that "the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's presenting to a court in one action the entire claim including any theories of recovery or demands for relief." Restatement (Second) of Judgments § 26 cmt. c. "When such formal barriers in fact existed and were operative . . . , it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first." *Id.*; *see also Marrese,* 470 U.S. at 382 ("[For] matters that were not decided in the state proceedings, we note that claim preclusion . . . does not apply where '[t]he plaintiff was unable . . . to seek a certain remedy because of the limitations on the subject matter jurisdiction of the courts.'") (quoting Restatement (Second) of Judgments § 26); *Watkins*, 591 A.2d at 599 ("If . . . a claim could not have been presented in the first action, then it will not be precluded in a later action.").

The structural limitations imposed by New Jersey law prevented Smith & Wesson from raising the claims contained in its federal complaint in the state action, so it cannot be that the causes of action and demands for relief are the same in both actions. Without the identity of causes of action and demands for relief, the state action and federal actions do not, in fact, "grow out of the same transaction or occurrence." *McNeil*, 828 A.2d at 859. And for this reason, Smith & Wesson's federal claims are not precluded.[37]

--------

[37] Smith & Wesson cites two cases in support of its contention that the order to show cause summary proceeding

here should not have preclusive effect. *See Cafferata*, 597 A.2d at 1102–04; *B.F. v. Div. of Youth & Fam. Servs.*, 686 A.2d 1249, 1252–55 (N.J. Super. Ct. App. Div. 1997). The majority distinguishes those two cases because "the plaintiffs had no or limited legal representation and possessed no procedural mechanism to present their claims." Majority Op. at 26.

As to the first distinction, the majority's assertion that the quality of counsel bears on whether a claim is precluded misreads those cases. In *Cafferata*, the Appellate Division observed that the forum was designed be "informal[], mediation-type proceedings in which *pro se* litigants are able quickly, inexpensively, expeditiously, and with minimum resort to legal counsel" litigate their claims so that the forum could "cope effectively with the volume of minor commercial litigation." 597 A.2d at 1104. The Appellate Division found that proceedings in this "inequal[] . . . forum" "were never intended to have preclusionary consequences beyond their own scope." *Id*. This discussion of representation then goes to the quality of the forum, not the ultimate presence or quality of representation. And in *B.F.*, the Appellate Division expressly rejected the argument that being represented by "assigned, pro bono counsel," rather than a privately retained attorney, was relevant to the application of res judicata. 686 A.2d at 1259.

Even so, for the reasons already articulated, the majority is incorrect that Smith & Wesson had a procedural mechanism to present their claims. *See* Majority Op. at 24–29. But more importantly, neither New Jersey nor the majority cite any authority from New Jersey in support of finding a claim precluded based on a prior summary proceeding. We must afford "the same" preclusive effect to the order to show cause summary proceeding that New Jersey courts would give, so the

\*       \*       \*

Where does this leave the case? New Jersey tells us it welcomes Smith & Wesson to file another challenge to future enforcement actions, subpoenas, and investigations, but I am confident in predicting New Jersey will then argue those actions are precluded, too. For if Smith & Wesson's federal complaint cannot proceed now, then when can it, and on what grounds? Certainly Smith & Wesson cannot raise anything that has been precluded by this matter—which includes, it seems, every possible challenge to this first, but not last, application of the Consumer Fraud Act to supplement New Jersey's endless maze of firearms laws "in, as always, the name of 'safety.'" *Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 27 F.4th 886, 896 (3d Cir. 2022) (Matey, J., concurring). Smith & Wesson is simply stuck on this now "well-traveled road in the Garden State, where long-dormant regulatory powers suddenly spring forth to address circumstances that have not changed." *Id*. Intimidation, rather than litigation—where law must be offered, facts found, and an impartial decision reached—seems to be New Jersey's plan. A plan that,

---

lack of authority here in support of the majority's position, and the disregarding of authority going the other way, in fact renders the preclusive effect "more." Restatement (Second) of Judgments § 86 cmt. g. "If we honor the undoubted principle that courts need give a prior judgment no more force or effect that the issuing State gives it, the case before us is resolved." *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 247 (1998) (Kennedy, J., concurring in the judgment). *Exxon Mobil Corp. v. Healey*, 28 F.4th 383 (2d Cir. 2022), cited by the majority and New Jersey, involved Massachusetts, not New Jersey law, and does not alter that conclusion.

surprising no one, has now spread to the Attorney General's next disfavored group under the guise of the Consumer Fraud Act. *See* Brief of Appellant at 4–6, *First Choice Women's Res. Ctrs. Inc. v. Att'y Gen. of N.J.*, No. 24-1111 (3d Cir. Jan. 23, 2024), ECF No. 4 (detailing New Jersey's "wave of increasing hostility" against Christian pregnancy centers that resulted in appellant's receipt of a subpoena requesting "more than a decade" of "detailed information about . . . clients, donors, and associated entities," as well as the "identities of personnel, officers, and board members").[38]

And in its crusades, New Jersey follows the familiar playbook endorsed by this Court today, creating a "preclusion trap" by initiating an order to show cause in state court to quickly secure enforcement of a subpoena before a federal challenge can be heard, and then arguing that the summary proceeding results in a "permanent loss of [the] right to federal judicial review." *Id*. at 2; Letter of Appellant at 1, *First Choice Women's Res. Ctrs. Inc. v. Att'y Gen. of N.J.*, No. 24-1111 (3d Cir. Feb. 6, 2024), ECF No. 18; *see also* Brief of Appellant at

---

[38] First Choice Women's Resource Centers petitioned for a writ of mandamus from the Supreme Court after the U.S. District Court for the District of New Jersey dismissed its challenge to the subpoena on ripeness grounds, *see First Choice Women's Res. Ctrs., Inc. v. Platkin*, 2024 WL 150096, at *5 (D.N.J. Jan. 12, 2024), and this Court denied its emergency motion for an injunction pending appeal, Order, *First Choice Women's Res. Ctrs. Inc. v. Att'y Gen. of N.J.*, No. 24-1111 (3d Cir. Feb. 15. 2024), ECF No. 20. On May 13, 2024, the Supreme Court denied the petition for a writ of mandamus. Order, *In Re First Choice Women's Res. Ctrs., Inc.* (No. 23-941), 2024 WL 2116515, at *1.

19, 23–26, *First Choice Women's Res. Ctrs. Inc. v. Att'y Gen. of N.J.*, No. 24-1111 (3d Cir. Apr. 22, 2024), ECF No. 34 (identifying this preclusion trap as a "Catch-22" where subpoena recipients are forced to "first litigate their claims in state court" and then be barred by "res judicata . . . from ever filing in federal court").[39] Yet another reason to apply the "accepted principles of *res judicata*." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981).

New Jersey's Attorney General may cheer the result today. But the expansion of res judicata this win requires cannot be cabined to the chosen causes of the current executive. In time, New Jersey may come to lament losses in less tweet-worthy investigations. Such is the cost of departing from the classical legal tradition, and the reason I would stay firmly tethered to the law of preclusion, unedited. For that reason, I respectfully dissent.

---

[39] The operation of claim preclusion is especially troubling for Smith & Wesson's 42 U.S.C. § 1983 claims, since "[t]he Civil Rights Act of 1871, after all, guarantees a 'federal forum for claims of unconstitutional treatment at the hands of state officials.'" *Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019) (quoting *Heck v. Humphrey*, 512 U.S. 477, 480 (1994)).